**CASE NO. 24-2179**

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

| | |
|---|---|
| MARK W. SPINELLI, | ) |
| | ) |
| Plaintiff/Appellee, | ) |
| | ) |
| vs. | ) |
| | ) |
| COHERUS BIOSCIENCES, INC., | ) |
| | ) |
| Defendant/Appellant. | ) |

---

On Appeal from the United States District Court
For the District of New Mexico
The Honorable Judge David H. Urias
D.C. No. 1:23-cv-00361-DHU-KK

---

**APPELLANT'S OPENING BRIEF**

---

Respectfully submitted,

Vanessa L. DeNiro, Esq.
DENIRO LAW, LLC.
P.O. Box 45104
Rio Rancho, NM  87124
Phone: (505) 252-1697
Fax: (505) 750-9836
vanessa@denirolaw.com
**Attorney for Appellant**

**ORAL ARGUMENT IS REQUESTED.**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................. ii

ATTACHMENTS ........................................................................ vi

TABLE OF AUTHORITIES ....................................................... vii

PRIOR RELATED APPEALS ...................................................... xiv

STATEMENT OF JURISDICTION ............................................. 1

STATEMENT OF THE ISSUES ................................................. 1

STATEMENT OF THE CASE ..................................................... 3

    STATEMENT OF THE FACTS ........................................ 3

        A. Recruitment, Employment, and Remote Position .................... 3

        B. Mandate Announcement........................................... 4

        C. Spinelli's Disability Substantially Limits his
           Major Life Activities ................................................ 5

        D. Exemption Requests, Accommodation Sought,
           and Termination ....................................................... 6

    PROCEEDINGS BELOW.................................................... 9

        A. Administrative Exhaustion/Early Litigation.................. 9

        B. Coherus' Motion to Dismiss and Order Granting......... 10

        C. Spinelli's Motion to Alter or Amend
           Judgment and Order Denying........................................ 10

SUMMARY OF THE ARGUMENTS ........................................ 10

I.    COUNTS I AND IV OF THE AMENDED COMPLAINT
      SUFFICIENTLY PLEAD FACTUAL ALLEGATIONS
      TO SURVIVE A MOTION TO DISMISS PURSUANT
      TO RULE 12(b)(6)............................................................ 10

A. District Court Erred When it Granted the Motion to Dismiss and Did Not Review Reasonable Inferences In Favor of Spinelli and Did Not Liberally Construe the Pleadings.............................................. 11

B. Spinelli Is a Member of a Protected Class Under the NMHRA Due to His Serious Medical Condition..................... 12

C. Coherus's Termination of Spinelli After He Submitted His Medical Exemption Request Constitutes Retaliatory Discharge.............................................. 14

D. Common Law Retaliation........................................................... 16

II.    THE DISTRICT COURT ERRED WHEN IT DENIED SPINELLI'S MOTION TO ALTER OR AMEND JUDGMENT UNDER 59(e)................................................ 16

A. The Motion to Reconsider Should Have Been Granted with Respect to its Dismissal of Counts I & IV under 12(b)(6)....................................... 16

B. The district court should have allowed Spinelli to Amend his Complaint.............................................. 17

STANDARD OF REVIEW……………..................................................... 17

ARGUMENT ……………................................................................... 17

I.    THE DISTRICT COURT ERRED WHEN IT DISMISSED COUNT I AND COUNT IV OF SPINELLI'S AMENDED COMPLAINT UNDER RULE 12(B)(6). ................................................. 17

A. Motion to Dismiss Standard Pursuant to 12(b)(6).................... 17

B. Spinelli's Employment Discrimination Claim Based on a Serious Medical Condition or Disability Under the NMHRA.................................................. 20

1. Appellant Sufficiently Pled that his Disability Substantially Limits One or More Major Life Activity.......................................................... 20

C. Retaliation Based on Spinelli's Serious
Medical Condition or Disability Under the NMHRA.............. 25

    1. The Causal Connection Element
       Was Sufficiently Met........................................................ 25

        a) Temporal Proximity............................................... 28

D. Common Law Retaliation
Should Not Have Been Dismissed........................................... 33

    1. Public Policy.................................................................... 34

    2. Common Law Retaliation Claim Based on
       his Religious Beliefs Survives Even if
       it Does Not Survive Under NMHRA............................. 36

II.   THE DISTRICT COURT ERRED WHEN IT
DENIED SPINELLI'S MOTION TO RECONSIDER
AND REQUEST FOR AMENDMENT
UNDER RULE 59(e)....................................................................... 37

  A. Denial of Rule 59(e) Relief Was an Abuse of Discretion......... 37

    1. Rule 59(e) Standard......................................................... 38

    2. The 59(e) Ruling Was Not
       Supported by Sound Reasoning...................................... 39

  B. Misapprehension of Facts or Law............................................. 41

    1. Discrimination Based on
       Disability Claim Under NMHRA................................... 42

        a) Qualified to Perform
           Essential Functions............................................... 45

        b) Reasonable Accommodations,
           Undue Hardship.................................................... 47

        c) Terminated because of His Disability................... 47

2. Retaliation Under NMHRA Claim................................. 49

3. Common Law Retaliation.............................................. 51

C. Manifest Injustice....................................................... 53

1. Denial of Amendment was Prejudicial to
Spinelli and a Manifest Injustice................................... 54

CONCLUSION AND RELIEF SOUGHT.................................... 56

STATEMENT REGARDING ORAL ARGUMENT.................................. 56

CERTIFICATE OF SERVICE ....................................................... 57

# **ATTACHMENTS**

Attachment 1 - Memorandum Opinion and Order (Granting Motion to Dismiss), filed April 26, 2024

Attachment 2 - Order Denying Plaintiff's Motion to Alter or Amend Judgment, filed November 4, 2024

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Allen v. SouthCrest Hosp.*
 455 F. App'x 827, 25 (10th Cir. 2011).................................................... 23-24

*Anderson v. Coors Brewing*
 181 F.3d 1171, 1179 (10th Cir. 1999)........................................................ 29

*Aquila, Inc. v. C.W. Mining*
 545 F.3d 1258, 1263 (10th Cir. 2008)........................................................ 41

*Artes-Roy v. City of Aspen*
 31 F.3d 958, 29 Fed. R. Serv. 3d (Callaghan) 1339, 1994 U.S. App. LEXIS
 19572 (10th Cir. 1994)................................................................................ 38

*Ashcroft v. Iqbal*
 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).................. 18

*Att'y Gen. of Okla. v. Tyson Foods, Inc.*
 565 F.3d 769, 775 (10th Cir. 2009)............................................................ 17

*Babakr v. Fowles*
 No. 23-3026, 12,  2024 U.S. App. LEXIS 8184 (10th Cir. Apr. 5,
 2024)............................................................................................................ 39

*Becker v. Bateman*
 709 F.3d 1019, 2013 U.S. App. LEXIS 4059 (10th Cir. 2013).................... 23

*Bell Atl. Corp. v. Twombly*
 550 U.S. 127, 544, 548, 555, 570, S. Ct. 1955, 167 L. Ed. 2d 929
 (2007)........................................................................................... 11, 18-19

*Brereton v. Bountiful City Corp.*
 434 F.3d 1213, 2006 U.S. App. LEXIS 1869 (10th Cir. 2006).................... 55

*Caporicci v. Chipotle Mexican Grill, Inc.*
    189 F. Supp. 3d 1314, 1323 (M.D. Fla. 2016)................................................ 44

*Cordova v. New Mexico*
    283 F. Supp. 3d 1028, 1047-48 (D.N.M. 2017)...................................... 35-36

*Cruzan v. Dir., Mo. Dep't of Health*
    497 U.S. 261, 269, 110 S. Ct. 2841, 2846 (1990)...................................... 52

*de Gomez v. Adams Cty.*
    No. 22-1199, 2023 U.S. App. LEXIS 20953 (10th Cir. Aug. 11, 2023)................................................................................................... 55

*Dixon v. Okla. ex rel. Reg'l Univ. Sys. of the OK Bd. of Regents*
    125 F.4th 1321, 1327 (10th Cir. 2025)....................................................... 28

*Duffee v. T-Mobile USA Inc.*
    No. 1:23-cv-00536-MIS-LF, 2023 WL 6391376 (D.N.M. 2023)............................................................................................... 26-27

*Eastwood v. Dep't of Corr.*
    846 F.2d 627, 631 (10th Cir. 1988)............................................................ 51

*EEOC v. PVNF, L.L.C.*
    487 F.3d 790, 804 (10th Cir. 2007)............................................................ 29

*Fallon v. CTSC, LLC*
    No. 13-00176 MV/ACT, 2013 U.S. Dist. LEXIS 189034 (D.N.M. Sep. 26, 2013)............................................................................. 22

*Fye v. Okla. Corp. Comm'n*
    516 F.3d 1217, 1224 (10th Cir. 2008)........................................................ 37

*Gandy v. Wal-Mart Stores, Inc.*
    1994-NMSC-040,    12, 117 N.M. 441, 872 P.2d 859........................................................................ 35-37

*Garrett v. Hewlett-Packard Co.*
    305 F.3d 1210, 1221 (10th Cir. 2002)............................................................ 28

*Gonzales v. City of Albuquerque*
    849 F. Supp. 2d 1123, 1152 (D.N.M. 2011)................................................. 34

*Hall v. Bellmon*
    935 F.2d 1106 (10th Cir. 1991)..................................................................... 55

*Hayes v. Dist. of Columbia*
    275 F.R.D. 343, 2011 U.S. Dist. LEXIS 83045 (D.D.C. 2011).................. 56

*Hayes Family Tr. v. State Farm Fire & Cas. Co.*
    845 F.3d 997, 1005 (10th Cir. 2017)....................................................... 38-39

*Heinold Hog Market, Inc. v. Superior Feeders, Inc.*
    623 F.2d 636, 1979 U.S. App. LEXIS 17811 (10th Cir. 1979)................... 42

*In re Estate of Keeney*
    1995-NMCA-102, 121 N.M. 58, 908 P.2d 751,
    1995 N.M. App. LEXIS 145 (N.M. Ct. App.), cert. denied,
    120 N.M. 828, 907 P.2d 1009, 1995 N.M. LEXIS 416
    (N.M. 1995)................................................................................................... 39

*Jeffers v. Butler*
    762 F. Supp. 308, 309 (D.N.M. 1990).................................................... 52-53

*Laul v. Los Alamos Nat'l. Labs*
    309 F. Supp. 3d 1119, 1152 (D.N.M. 2016) aff'd., 714 F. App'x 832 (10th
    Cir. 2017)....................................................................................................... 26

*Lihosit v. I&W, Inc.*
    1996–NMCA–033,   7, 121 N.M. 455, 257............................................... 34

*Lincoln v. BNSF Ry. Co.*
    900 F.3d 1166, 1209 (10th Cir. 2018)........................................................... 26

*McDade v. Weston Cty. Hosp. Dist.*
    No. 24-8031 2025 U.S. App. LEXIS 2659 (10th Cir. Feb. 6,
    2025)............................................................................................................... 21

*McNellis v. Douglas Cty. Sch. Dist.*
116 F.4th 1122, 1130-31 (10th Cir. 2024)...................................................... 18

*McNulty v. Sandoval Cty.*
No. CIV 05-221 BB/ACT, 2005 U.S. Dist. LEXIS 59716, at 6-7
(D.N.M. Aug. 15, 2005)................................................................................. 54

*Meiners v. Univ. of Kan.*
359 F.3d 1222, 1231 (10th Cir. 2004).................................................... 28, 51

*Metzler v. Fed. Home Loan Bank of Topeka*
464 F.3d 1164, 1171 (10th Cir. 2006)................................................... 28-29

*Michaels v. Anglo American Auto Auctions, Inc.*
1994-NMSC-015, ¶¶ 15-17, 117 N.M. 91, 869 P.2d 279........................... 36

*Orr v. City of Albuquerque*
531 F.3d 1210, 1215 (10th Cir. 2008)........................................................ 41

*Paca v. K-Mart Corp.*
1989-NMSC-034, 108 N.M. 479, 481.......................................................... 52

*Paraham v. Atriums Mgmt. Co.*
No. 16-2539, 2019 U.S. Dist. LEXIS 53496, at 10
(D. Kan. Mar. 28, 2019)............................................................................... 43

*Perkins v. Kan. Dep't of Corr.*
165 F.3d 803, 806 (10th Cir. 1999)............................................................. 17

*Porter v. Ford Motor Co.*
917 F.3d 1246, 1248 (10th Cir. 2019)......................................................... 17

*Pueblo of Jemez v. United States*
63 F.4th 881, 889 (10th Cir. 2023).............................................................. 38

*Rutila v. Buttigieg*
No. 23-6157, 2024 U.S. App. LEXIS 32048, at 3
(10th Cir. Dec. 18, 2024).............................................................................. 28

*Servants of Paraclete v. Does*
    204 F.3d 1005, 1012 (10th Cir. 2000)........................................................... 38

*Sharpe-Miller v. Walmart, Inc.*
    No. 2:22-cv-00406-KWR-GJF, 6, 2024 U.S. Dist. LEXIS 41230 (D.N.M.
    Mar. 7, 2024)...................................................................................... 41, 53

*Sherrill v. Farmers Ins. Exch.*
    2016-NMCA-056, 374 P.3d 723.................................................................. 15

*Sims v. Mercy Hospital of Monroe*
    451 F.2d 171, 1971 U.S. App. LEXIS 6923 (6th Cir. 1971)........................ 55

*Smith v. U.S.*
    561 F.3d 1090, 1098 (10th Cir. 2009)........................................................... 20

*Sparrow v. United Air Lines, Inc.*
    216 F.3d 1111, 1117, 342 U.S. App. D.C. 268 (D.C. Cir. 2000)................... 56

*Strobel v. Rusch*
    No. CIV 18-0656 RB/JFR, 2020 U.S. Dist. LEXIS 225215, at 21-22
    (D.N.M. Dec. 2, 2020)................................................................................. 39

*Swierkiewicz v. Sorema N.A.*
    534 U.S. 506, 508, 122 (2002)..................................................................... 19

*Ulibarri v. State Corr. Acad.*
    2006-NMSC, ¶ 16, 139 N.M. 193, 200.......................................................
26

*Union P. R. Co. v. Botsford*
    141 U.S. 250, 251, 11 S. Ct. 1000, 1001 (1891)........................................... 51

*United States v. Golubski*
    No. 22-cr-40055-TC-1, 2024 U.S. Dist.
    LEXIS 113937, at 14 (D. Kan. June 27, 2024).......................................... 51

*Waggoner v. Frito-Lay, Inc.*
    No. 22-3111, 2023 U.S. App. LEXIS 9045, at 6-7 (10th Cir. Apr. 17,
    2023)............................................................................................................ 41

*Wells v. Colo. Dep't of Transp.*
        325 F.3d 1205, 1218 (10th Cir. 2003)............................................................ 14

*White v. York Int'l Corp.*
        45 F.3d 357, 360 (10th Cir. 1995)................................................................42

*Yinger v. Postal Presort, Inc.*
        693 F. App'x 768, 772-73 (10th Cir. 2017)......................................... 43, 49

## RULES/REGULATIONS

Fed. R. Civ. P. 8(a)(1)............................................................................... 55

Fed. R. Civ. P. 8(a)(2)............................................................................... 23

Fed. R. Civ. P. 12(b)(6)......................................................................... 11, 55

Fed. R. Civ. P. 15(a)............................................................................ 55-56

Fed. R. Civ. P. 59(e)............................................................................ 37, 39

29 C.F.R. § 1630.2(j)(1)(ix)...................................................................... 25

29 C.F.R. § 1630.2(j)(4)(ii)....................................................................... 25

## STATUTES

42 U.S.C.S. § 12102(3)(B)........................................................................ 25

42 U.S.C.S. § 12111(10)(A)...................................................................... 47

NMSA 1978 § 28-1-2(M)........................................................................ 22

NMSA 1978 § 28-1-7.............................................................................. 1

**OTHER**

Food and Drug Administration, Guidance - Content & Format CMC for
Vaccine & Related Product, (1999),
https://www.fda.gov/media/73614/download,
*last viewed on* March 10, 2025................................................................. 26

Coherus Current Job Posting for Oncology Account Manager
https://job-boards.greenhouse.io/coherusbiosciences/jobs/6621282,
*last viewed on* March 10, 2025................................................................. 7

## STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related appeals.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this matter pursuant to 28 U.S.C. §§ 1446(d) and 1332. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because it seeks review of a final decision of the court that disposed of all the parties' claims.

This appeal is timely. The court entered its Memorandum Opinion and Order dismissing Spinelli's claims in full on April 26, 2024. Within the 28-day limit Spinelli filed a Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. P. 59(e). On November 4, 2024, the court entered its Order Denying Plaintiff's Motion to Alter or Amend Judgment. Spinelli then filed this appeal on December 3, 2024, within the 30-day limit of Federal Rule of Appellate Procedure 4(a)(1).

## STATEMENT OF THE ISSUES

I.    Whether the court erred when it granted Coherus' Motion to Dismiss under Rule 12(b)(6) with respect to Spinelli's claims in Count I (in part) for discrimination and retaliation on the basis of disability under the New Mexico Human Rights Act ("NMHRA") NMSA 1978 § 28-1-7, and in Count IV for Common Law Retaliation, in the Amended Complaint.

  A. Did the court properly evaluate the complaint and determine whether it contained enough allegations of fact to state a claim to relief that is plausible on its facts in Counts I and IV.

1

    a.  The court failed to review all well-pleaded allegations in light most favorable to Spinelli nor accepted them as true.

B. Spinelli has set forth a plausible claim that he is a member of a protected class with a serious medical condition or disability[1] under NMHRA.

    a.  Whether the court erred by concluding Spinelli did not have an actual disability as defined by the NMHRA or Americans with Disability Act ("ADA").

    b.  Spinelli adequately alleged that an adverse employment action occurred under the circumstances which give rise to inference of unlawful discrimination.

C. Did Spinelli sufficiently allege facts supporting a claim of retaliatory discharge under the NMHRA.

    a.  The court erred when it held that Spinelli failed to show a causal connection between the alleged protected activity and the adverse employment action.

D. Whether Spinelli set forth a plausible claim of common law retaliation.

    a.  The court erred when it concluded Spinelli failed to identify an

---

[1] "Serious medical condition" and the word "disability" are interchangeably used.

2

expressly mandated public policy.

II.    In denying Spinelli's Motion to Alter or Amend Judgment, the court failed to correct clear errors in dismissing claims under Counts I and IV.

A. The court erred by misapprehending the facts alleged in Spinelli's complaint and misapplying the governing law regarding his disability that substantially limits his major life activities.

B. The court erred by not considering all facts and circumstances demonstrating repeated protected activity and retaliatory conduct which established a causal connection for retaliation under NMHRA.

C. The court misapplied the law by refusing to consider violation of one of the public policy mandates set out in the NMHRA as a specific expression of public policy which the discharge violated.

D. The court failed to correct a manifest injustice when reviewing the Motion to Dismiss and supporting exhibits in favor of the Coherus, and did not apply the proper review to Spinelli's Complaint.

a. Whether the court abused its discretion when it denied Spinelli's request to amend his pleading.

### STATEMENT OF THE CASE

### I.    STATEMENT OF THE FACTS

#### A. *Recruitment, Employment, and Remote Position*

Mark Spinelli ("Spinelli"), Appellant, terminated his employment with his prior employer after being recruited by Coherus BioSciences, Inc. ("Coherus"), the Appellee. His employment with Coherus as an Oncology Account Manager ("OAM") commenced on February 1, 2021. Due to COVID-19 restrictions, Spinelli consistently worked remotely and never worked in an office with colleagues. Coherus did not inform Spinelli that vaccination was a requirement for continued employment, even though a COVID-19 vaccine was publicly available at the time of his hiring. Appellant's Appendix page 25,    17.[2]

### B. Mandate Announcement

On June 14, 2021, Coherus announced a company-wide vaccine mandate which required all employees to show proof of a vaccination by July 19, 2021. On June 28, 2021, Coherus sent a company-wide email that prohibited unvaccinated employees from engaging in-person customer interactions, and requiring that 60% of all employee-customer interactions were to be face-to-face. App. 26,    ¶24-25.

Even if Spinelli had chosen to receive the vaccine and was willing to comply with company policy, it would have been practically impossible for him to meet the 60% in-person interaction requirement that was implemented. This was due to external circumstances beyond his control. At the time, of his total 40 customer accounts, only two of them were permitting in-person contact. This limitation was

---

[2]Hereafter, citations to Appellant's Appendix will appear as "App. [page number] [paragraph number]."

primarily due to restrictions and policies put in place by the customers themselves, likely in response to the prevailing public health situation. Therefore, even with the vaccine, Spinelli's ability to interact in person with the required percentage of clients was severely limited by factors outside of his own volition or company policy. App. 26, ¶27. Notwithstanding, in the first three quarters of employment, Spinelli exceeded sales quotas and outperformed all other OAMs. App. 28,   38.

### C. Spinelli's Disability Substantially Limits his Major Life Activities

In 2015, Spinelli suffered a severe adverse reaction to a vaccine, resulting in the paralysis of the left side of his torso and face. This paralysis inflicted permanent and irreversible damage, including complications affecting the trigeminal nerve, which is responsible for sensation in the face and motor functions such as biting and chewing. Due to the extent and enduring nature of these injuries, Spinelli's healthcare provider has determined that he meets the criteria for disability as defined by the ADA. This determination acknowledges that Spinelli's condition substantially limits one or more major life activities[3], and as such, he is entitled to the protections and accommodations afforded by the ADA. App. 26,

---

[3]Spinelli's disability impacts major life activities, including his ability to sleep due to chronic pain, difficulty and pain while chewing, and brushing teeth on the left side. Operating a vehicle is challenging due to his inability to sense pressure and grip with his left hand and arm; and cooking with his left hand has resulted in accidental burns which he only noticed after observing redness and blistering. App. 220,   4-5.

24; and 225    24.

### D. Exemption Requests, Accommodation Sought, and Termination

On July 1, 2021, Spinelli promptly sought a professional medical opinion from his healthcare provider to discuss his concerns and explore potential exemptions or accommodations based on his individual medical history. App. 223, 17. His provider recommended that Spinelli not receive any of the currently available Covid-19 vaccines because he is at an increased risk of further nerve damage and/or paralysis from the vaccines. App. 27,    31.

On July 19, 2021, Spinelli submitted a medical exemption request through a form provided by Coherus and requested accommodation to work remotely, which was status quo. Two days later, on July 21, 2021, Coherus denied his request and told Spinelli that his last day of employment would be August 15, 2021. On July 30, 2021, Spinelli also submitted a religious exemption request with a detailed explanation that the ingredients of the vaccine were inconsistent with his sincerely held religious beliefs. App. 46-47.

On August 2, 2021, Spinelli provided Coherus with a signed ADA Accommodation form from his provider describing his disability and her recommendation against taking the COVID-19 vaccine. App. 121-122. On August 4, 2021, Spinelli was informed that it would be reasonable for him to work remotely while a co-worker covered the only 2 accounts that were allowing

in-person interactions. App. 225, ¶24. On August 10, 2021, Spinelli was informed that Coherus was still reviewing his medical exemption request. However, Coherus continued to encourage Spinelli to receive the COVID-19 vaccine and had extended the deadline to do so to September 15, 2021. App. 139; 225,   26.

In September of 2021, Spinelli learned that other employees that submitted medical exemption requests were fired. App. 227,   32. Coherus posted job openings for the fired employees' OAM positions, requiring vaccination as a condition of employment with standard ADA language for exemption/ accommodation requests.[4]

On September 1, 2021, Spinelli was advised that Coherus was still "working through" his medical exemption request. On September 8, 2021, Coherus emailed Spinelli inquiring about his accommodation request. Spinelli explained that the accommodation request to work remotely would be no different than his current job arrangement because 38 of his customers were not meeting in person, therefore only 2 accounts needed to be covered by another OAM. He also proposed reviewing the arrangement on a monthly basis to ensure that it was reasonable until the restrictions or mandate was lifted. App. 227,   30.

---

[4]See https://job-boards.greenhouse.io/coherusbiosciences/jobs/6621282, *last viewed on* March 10, 2025; (Coherus' job posting for OAMs no longer lists vaccination against COVID-19 as a condition of employment, and allows applicants to voluntarily self-identify disabilities. On the list of examples, Coherus recognizes "Partial or complete paralysis (any cause)" as a disability that affects major life activities.)

On September 15, 2021, Coherus instructed Spinelli to obtain a new signed note by his medical provider or clinician stating that he "could or would suffer negative health consequences should he receive any of the three available COVID-19 vaccines." On September 29, 2021, Spinelli submitted another note from his medical provider per Coherus' request. App. 123.

On October 1, 2021, Spinelli received an email from Coherus denying his medical exemption and request for accommodation and advised that his last day of employment would be October 7, 2021. The total time between his last medical exemption request and termination notice was merely 2 days, and 8 days before his last day. App. 28,   36-37; and 228,   33.

On October 6, 2021, Spinelli received an email from Coherus, congratulating him for finishing as number one in the company for third quarter sales achievement. App. 28,   38.

## II.   PROCEEDINGS BELOW

### A. Administrative Exhaustion/Early Litigation

On November 19, 2021, Spinelli filed charges of discrimination against Coherus with the New Mexico Human Rights Bureau ("NMHRB") and the U.S. Equal Employment Opportunity Commission ("EEOC") on December 2, 2021. Both agencies issued Notices of Non-Determination.

On March 13, 2023, Spinelli timely filed a Complaint against Coherus in the

8

Second Judicial District Court of the State of New Mexico. Coherus subsequently removed the case to the United States Court for the District of New Mexico, and then filed a Partial Motion to Dismiss. App. 21-22. In its Partial Motion to Dismiss, Coherus did *not* move to dismiss Count I, for discrimination and retaliation based on a serious medical condition or disability, nor did it include dismissal of Count IV for Common Law Retaliation.

Spinelli amended his Complaint as a matter of course due to the higher pleading standard in Federal Court and to address the deficiencies in the Partial Motion to Dismiss. Spinelli's claims included Count I for Discrimination and Retaliation in Violation of NMHRA, Count II for Breach of Employment Contract, Count III for Breach of the Covenant of Good Faith and Fair Dealing, Count IV for Common Law Retaliation, and Count V for Intentional Infliction of Emotional Distress. App. 23-50.

### B. Motion to Dismiss and Order Granting Same

On June 7, 2023, Coherus filed a Motion to Dismiss the Amended Complaint and Spinelli's Response in opposition was filed on June 28, 2023, which further elaborated on facts pled in the Amended Complaint as to Spinelli's disability, causal connection for retaliation, and the public policy argument for the common law tort. App. 52-95 (Motion to Dismiss); and 96-147 (Response to Motion to Dismiss). After the briefing was completed a hearing was held and oral

arguments were presented regarding Spinelli's serious medical condition and clarified the accommodation sought, among other arguments. The court granted Coherus' Motion to Dismiss on April 26, 2024. The Order granting Motion to Dismiss dismissed Spinelli's religious discrimination claim *with* prejudice, however, it dismissed all other claims *without* prejudice. App. 164-184.

### C. Motion to Alter or Amend Judgment and Order Denying

On May 24, 2024, Spinelli filed a Motion to Alter or Amend Judgment Memorandum Opinion and Order entered April 26, 2024, as to the Dismissal of Counts I, IV, and V (hereafter, "Motion to Reconsider") which fully addressed the court's errors and deficiencies in its Order dismissing his claims without prejudice and included an alternate request for leave to amend his Complaint. App. 185-235. On November 4, 2024, after briefing was completed the court denied Spinelli's Motion to Reconsider in its entirety, including the request for leave to amend on the basis that amendment would be futile. App. 14-20. On December 3, 2024, Spinelli appealed the Order denying the Motion to Reconsider and the underlying Order granting Coherus' Motion to Dismiss. App. 269-270.

The Order denying Spinelli's Motion to Alter or Amend Judgment is a final, appealable Order.

### SUMMARY OF THE ARGUMENTS

**I.   SPINELLI SUFFICIENTLY PLED FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT TO SURVIVE A MOTION TO**

### DISMISS UNDER RULE 12(b)(6) ON COUNTS I (IN PART) AND IV

**A. District Court Erred When it Granted the Motion to Dismiss and Did Not Review Reasonable Inferences In Favor of Spinelli and Did Not Liberally Construe the Pleadings.**

At the Fed. R. Civ. P. 12(b)(6) stage, the plaintiff must plausibly allege a claim, but he is not required to conclusively prove a claim. The pleading standard does not require a plaintiff to plead facts that could only be known through discovery. The complaint must plead sufficient facts, taken as true, to provide "plausible grounds" that discovery will reveal evidence to support the plaintiff's allegations. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955 167 L. Ed. 2d 929 (2007). Thus, the pleading standard contemplates a plaintiff perfecting a "plausible" claim through the discovery process.

Spinelli stated a plausible discrimination claim and retaliation claim on the basis of a serious medical condition or disability under the NMHRA, and therefore Count I (in part) should not have been dismissed under 12(b)(6). Likewise, Spinelli established a plausible claim under Common Law Retaliation and identified a mandated public policy that was violated by the discharge to support that claim in his Amended Complaint [5], thus Count IV should not have been dismissed under 12(b)(6). The court therefore erred in dismissing Spinelli's Complaint for failing to state a plausible claim in Counts I and IV.

---

[5]For clarity and ease of reading this Brief uses "Amended Complaint" and "Complaint" interchangeably.

### B. Spinelli Is a Member of a Protected Class Under the NMHRA Due to Disability.

Under Count I of the Complaint, Spinelli sufficiently pled employment discrimination against Coherus due to his disability in violation of NMHRA. The court ruled that Spinelli did not properly plead disability because he did not identify a single major life activity that was substantially limited by his serious medical condition and therefore his Complaint failed to establish a prima facie case of discrimination based on disability under the NMHRA.

As shown in the Complaint, Spinelli suffers from permanent paralysis of the left side of his torso and face, and trigeminal nerve complications from a previous vaccine injury he received in 2015. As a result of this disability, Spinielli is not able to get vaccines due to substantial risk of further paralysis and nerve damage. The very nature of paralysis is loss of sensation, and immobility. The definition of trigeminal neuralgia is severe pain to one side of the face. The Complaint explains that in response to Coherus' COVID-19 vaccine mandate, Spinelli submitted a medical exemption request and provided a letter from his medical provider advising of his medical condition, irreversible nerve damage and trigeminal nerve problems stemming from a previous vaccine injury, and recommending he not get the vaccine. Coherus denied the request and fired Spinelli.

Spinelli elaborated on his disability in his Response to the Motion to Dismiss, sufficiently demonstrating his permanent paralysis and trigeminal nerve

damage interferes with major life activities, such as sleeping, chewing, driving, cooking, and living with chronic pain. Spinelli also pointed out that not being able to take vaccines, or the negative side effects of the same,  is a substantial limitation to major life activities.

The NMHRA protects employees with disabilities, defined as a health-related impairment that substantially limits one or more major life activities and is verifiable by medical diagnosis. Spinelli's clinician explicitly advised against taking the COVID-19 vaccine due to the substantial risk of further nerve damage and paralysis. Spinelli's partial mobility, lack of sensation, chronic pain, and inability to receive a vaccine without risking catastrophic side effects, directly affects daily living functions and major life activities. Therefore, the district court erred in concluding that Spinelli failed to sufficiently establish a disability under the NMHRA.

### C. Termination of Spinelli After He Submitted His Medical Exemption Request Constitutes Retaliatory Discharge.

The court erroneously dismissed Spinelli's retaliation claim on the basis that July 19, 2021 to October 1, 2021, which is a 2 month, 1 week, and 5 days (74 days) gap between his exemption request and termination was too long to establish causal link. However, causation may be inferred from a pattern of adverse actions, particularly when an employer announces a vaccine mandate, rejects exemptions without consideration, and terminates employees without alternative

13

accommodations. *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003) (holding that temporal gaps do not defeat retaliation claims when an employer conduct shows discriminatory intent).

Spinelli's termination was an adverse employment action that resulted from his request for a medical exemption, which is a protected act under NMHRA. His Complaint provided sufficient details to illustrate a connection between the two, establishing a discriminatory/retaliatory motive. Although Spinelli was not required to plead any specific facts in particular at the pleading stage, the court dismissed his claim for insufficient pleading as to causal connection.

In his Response to the Motion to Dismiss, Spinelli demonstrated that his initial notice of termination occurred much closer in time to his initial exemption request, exactly two days. Only after Coherus extended the time for Spinelli to receive the vaccine, did the actual adverse employment action stretch out to over two months. Spinelli demonstrated in the Response that he was later required to submit another exemption request from his medical provider, and therefore repeated his protected activity, and two days after it was submitted, Coherus notified him of his termination which would occur six days later. A retaliatory motive may be inferred when an adverse action closely follows protected activity.

In his Complaint alone, Spinelli was able to establish that retaliation played a motivating part in the adverse employment action. In his Response he further

14

developed those facts with documented evidence demonstrating the causal connections and pattern of behavior. In its decision to dismiss the claim for retaliation under the NMHRA, the court overlooked the multiple acts of protected activity Spinelli engaged in, as well as Coherus' pattern of adverse conduct in response to those protected acts. The claim for retaliation under NMHRA should not have been dismissed.

### D. Common Law Retaliation

New Mexico law recognizes a public policy exception to at-will employment when an employee is fired in retaliation for asserting legal rights or refusing to violate public policy. *Sherrill v. Farmers Ins. Exch.*, 2016-NMCA-056, 374 P.3d 723. Spinelli's submission of his request for religious and medical exemption from taking the COVID-19 vaccine is a clearly articulated public policy under the NMHRA, as well as furthering the public policy of personal bodily integrity and medical choice protected under state and federal law. Coherus violated public policy and retaliated against Spinelli for exercising his legally protected rights by failing to provide reasonable accommodation and terminating employment.

## II.   THE DISTRICT COURT ERRED WHEN IT DENIED SPINELLI'S MOTION TO RECONSIDER UNDER RULE 59(e)

### A. The Motion to Reconsider Should Have Been Granted with Respect to The Dismissal of Counts I (in part) & IV.

The court abused its discretion to deny Spinelli's Rule 59(e) Motion to Reconsider. Spinelli's Motion demonstrated that the dismissal by the court of Counts I and IV pursuant to Rule 12(b)(6) constitutes an error. This procedural rule permits dismissal only in instances where the complaint fails to articulate a claim that provides a basis for the granting of relief. Spinelli argued that the court misapprehended the facts and law in those counts, and applied incorrect standards, particularly at an early stage in the case.

In order to show that the dismissal was premature, Spinelli attached additional evidence to his Motion. This evidence, which would ordinarily be produced through discovery and offered during the summary judgment phase, was intended to demonstrate that the dismissal was premature. It was an abuse of discretion for the court not to consider Spinelli's arguments specifically pointing out the court's misapplication of law and misunderstanding of the facts. Spinelli did not simply rehash old arguments, but rather demonstrated to the court why it was a manifest injustice to dismiss Spinelli's Complaint when he sufficiently pled facts under Counts I and Count IV.

**B. The district court should have allowed Spinelli to Amend his Complaint.**

The court acted erroneously in denying Spinelli's request to amend his Complaint, a request that, if granted, would have enabled Spinelli to rectify any inadequacies and potentially present a claim that possesses legal validity. The court

should have allowed the parties to engage in discovery, present evidence, and resolve the matter on its merits. The court abused its discretion not allowing Spinelli to amend his pleading and cure the deficiencies in his Complaint.

## STANDARD OF REVIEW

This Court reviews dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo, accepting all well-pled factual allegations as true and construing them in the light most favorable to the plaintiff. *Porter v. Ford Motor Co.,* 917 F.3d 1246, 1248 (10th Cir. 2019). These facts and allegations, as well as "any reasonable inferences that might be drawn from them," must be construed in the light most favorable to the appellant. *Perkins v. Kan. Dep't of Corr.,* 165 F.3d 803, 806 (10th Cir. 1999). A district court abuses its discretion when it "commits an error of law or makes clearly erroneous factual findings." *Att'y Gen. of Okla. v. Tyson Foods, Inc.,* 565 F.3d 769, 775 (10th Cir. 2009). An abuse of discretion may be "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Id.*

## ARGUMENT

### I. THE DISTRICT COURT ERRED WHEN IT DISMISSED COUNT I AND COUNT IV OF SPINELLI'S AMENDED COMPLAINT UNDER RULE 12(b)(6).

Spinelli reincorporates all preceding paragraphs as if fully set forth herein.

### A. <u>Motion to Dismiss Standard Under 12(b)(6)</u>

The court erroneously dismissed Spinelli's lawsuit. When the court evaluates

"a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings." *McNellis v. Douglas Cty. Sch. Dist.,* 116 F.4th 1122, 1130-31 (10th Cir. 2024) (alterations, citations, and quotations omitted). Notwithstanding, a complaint cannot rely on labels or conclusory allegations—"a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations and citations omitted). Rather, to withstand a motion to dismiss, the dispositive inquiry is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Here, the court ruled that Spinelli failed to plead necessary facts to establish the first element of a prima facie case of employment discrimination based on a serious medical condition under the NMHRA. App. 172,   3. Likewise, it ruled that Spinelli did not plead facts showing causation to satisfy the third element of a prima facie case of retaliation under the NMHRA, because temporal proximity alone was insufficient. App. 174,   1. The court also ruled that Spinelli's

18

Complaint did not satisfy the first element of the retaliatory discharge framework for his claim of common law retaliation because he did not successfully identify a clearly articulated public policy. App. 182,    2. The court dismissed those claims in Count I and Count IV under Rule 12(b)(6), for failure to state a claim.

The pleading standard allows a plaintiff to present a claim that is believable and capable of being further developed during the discovery process. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 (2002) (An employment discrimination complaint need not include specific facts establishing a prima facie case of discrimination and instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief.) The district court's standard does not necessitate that the plaintiff plead specific facts that can only be obtained through discovery. *Twombly,* at 555 (stating "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds'" that discovery will reveal evidence to support the plaintiff's allegations.")[6]

The court's decision exhibited fundamental errors stemming from an

---

[6]In *Twombly,* the Court stated that "[t]his analysis does not run counter to *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, 122 S. Ct. 992, 152 L. Ed. 2d 1, which held that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination.'" *Id.* at 548; *e.g. Swierkiewicz,* at 508 (holding that "the precise requirements of a prima facie case of employment discrimination can vary depending on the context and are not intended to be rigid, mechanized, or ritualistic. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases.")

incorrect application of the standard governing review of a motion to dismiss. The court is mandated to construe factual allegations within the complaint in a manner most favorable to the plaintiff, Spinelli. Contrary to this requirement, the court erroneously extended such preferential treatment to Coherus. *Smith v. U.S.,* 561 F.3d 1090, 1098 (10th Cir. 2009)("For purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")

Consequently, the district court's ruling warrants reversal.

**B.** <u>**Spinelli's Employment Discrimination Claim Based on a Disability Under the NMHRA**</u>

1. *Appellant Sufficiently Pled that his Disability Substantially Limits One or More Major Life Activity*

The court found that Spinelli failed to meet the first element of his NMHRA discrimination claim because he did not sufficiently plead facts to show that his disability or serious medical condition severely limits a major life activity.

Coherus argued that Spinelli's Count I failed "because he has not alleged that his disability or serious medical condition substantially limits a major life activity." App. 172,¶ 3. The Court agreed with Coherus stating that "[w]ithout evidence permitting this Court to infer that Plaintiff's serious medical condition limits a major life activity, Plaintiff has not pled enough facts in his Complaint to plausibly allege his serious medical condition falls within NMHRA's definition."

*Id*. This is an unfair and capricious conclusion.

Spinelli expressly stated in the Complaint that within two weeks of receiving the Varicella vaccine in 2015, he experienced a significant adverse reaction that caused his entire left side of his torso and face to become paralyzed. Spinelli was left with permanent, irreversible nerve damage as a result of the vaccination. App. 27,   9. Importantly, Spinelli specifically pled in the Complaint that he "has a serious medical condition or disability that makes vaccination particularly dangerous" that the "vaccination presents a real risk of the condition becoming serious and exacerbated". App. 33,¶ 64. Under the New Mexico Administrative Code as "a serious health-related impairment other than a disability, which substantially limits one or more of an individual's major life activities, as 'major life activities' is defined within these rules." NMAC 9.1.1.7(Z). Significantly, the definition of a "serious medical condition" applicable to NMHRA requires the Plaintiff to demonstrate that his serious medical condition substantially limits at least one of Plaintiff's major life activities." App. 172,¶ 2.  The ADA defines "disability" as follows: (A) a physical or mental impairment that substantially limits one or more major life activities of such an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. *McDade v. Weston Cty. Hosp. Dist.*, No. 24-8031, 2025 U.S. App. LEXIS 2659 (10th Cir. Feb. 6, 2025).

Coherus further argued that Spinelli "relies on a reaction that he experienced from an unrelated chickenpox vaccine over 6 years ago and speculative risks about the COVID-19 vaccine." App. 55, ¶1. "Specualtive risks" is a baseless and insensitive statement made by Coherus. There is nothing speculative about the risks that once threatened Spinelli's health. The NMHRA defines "physical or mental handicap" as "a physical or mental impairment that substantially limits one or more of a person's major life activities." N.M. Stat. Ann. § 28-1-2(M). The NMHRA further provides that a "person is also considered to be physically or mentally handicapped if the person . . . is regarded as having a physical or mental handicap." *Fallon v. CTSC, LLC*, No. 13-00176 MV/ACT, 2013 U.S. Dist. LEXIS 189034 (D.N.M. Sep. 26, 2013).

Because of Spinelli's previous vaccine injury, he has a permanently deformed hand - a diminished sense of feeling in his left hand, which has rendered his left hand useless in the operation of a vehicle. Spinelli cannot operate parts of his face and hand as that of an average person. Subjecting him to another vaccine could potentially be fatal. Spinelli contends that there is no overly-technical reason for him to specifically state that his disability substantially limits a major life activity at this stage in the case, and his failure to state that, when Coherus has his medical documentation signed by his doctor stating that his medical condition [paralysis ...] prevents him from taking the vaccine, is not grounds for dismissal of

his claims. The Court must view the alleged facts in the light most favorable to Spinelli and a reasonable inference from his allegation is that he had a disability that substantially limits a major life activity.

While the Court concluded that Spinelli failed to plead facts of his disability, it is crucial to introduce Fed. R. Civ. P. 8(a)(2), which states that Plaintiff is not required, under Americans With Disabilities Act (ADA), 42 USCS §§ 12101 to 12213, to provide precise description of major life activity allegedly affected by her disability. *Allen v. SouthCrest Hosp.,* 455 Fed. Appx. 827, 25 Am. Disabilities Cas. (BNA) 1702, 2011 U.S. App. LEXIS 25488 (10th Cir. 2011) (Unpublished Opinion)[7].

Similarly, the plaintiff in *Allen* filed an action which included ADA claims for failure to accommodate and wrongful termination due to the consistent migraines, which resulted in chest pains, during working hours. *Id.*  The defendant moved for summary judgment arguing that Plaintiff was not disabled because she was capable of driving and going about her normal life while experiencing them. *Id.* In our case, Coherus is arguing that Spinelli is able to continue work and that the recommendation of taking the Covid-19 vaccine is only speculative to cause harm, and that there is insufficient evidence to support that the Covid-19 vaccine

---

[7]See USCS Fed Rules App Proc R 32.1; *see also Becker v. Bateman,* 709 F.3d 1019, 2013 U.S. App. LEXIS 4059 (10th Cir. 2013) (Appellate court cited decision solely for its persuasive value because case was unpublished, and therefore not precedential.)

will actually cause harm.

In *Allen*, the court began its analysis with the major life activity of "caring for oneself." The court further explains that it will start its analysis there because it will only consider "the major life activity of working…only as a last resort." *Id.* Stating "[i]f an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working." *Id.* Following the holding in *Allen*, Spinelli experiences pain and has difficulties chewing and brushing his teeth on the left side of his face, is also unable to sense pressure and grip and cannot operate a motor vehicle with his left hand and arm due to the paralysis and nerve damage.

Spinelli currently sustains more physical impairments in comparison to the plaintiff in *Allen*, whose physical impairment is limited to migraine and chest pains. Spinelli's disability impacts major life activities such as his ability to sleep, as the pain is constant and sometimes increases to the point of waking him up. Also, due to his diminished sense of feeling in his left hand, he has accidentally burned himself when cooking and did not realize it until he saw redness and blistering. These impairments show that Spinelli is "substantially limited in the major life activity of caring for himself as compared to the average person in the general population." *Id.* Spinelli also pled in his Complaint that he cannot take vaccines as a result of his disability, which is also a substantial limitation in a

24

major life activity. Even temporary impairments can qualify as disabilities within the meaning of the Americans with Disabilities Act. 42 U.S.C.S. § 12102(3)(B); 29 C.F.R. § 1630.2(j)(1)(ix). Additionally, the non-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity. 29 C.F.R. § 1630.2(j)(4)(ii). Spinelli experienced permanent non-ameliorative or negative side effects from an adverse reaction to vaccine injury which is an amelioration or therapy.[8]

It is with humility that Spinelli pleads with the Court to reverse the district court's Order and grant the opportunity to amend his complaint.

### C. Retaliation Based on Spinelli's Disability Under the NMHRA

1. *The Causal Connection Element Was Sufficiently Met*

The court agreed with Coherus that it should dismiss Spinelli's NMHRA claims because he failed to plead sufficient facts connecting his termination to any alleged protected activity.

The NMHRA prohibits employers from retaliating against an employee who

---

[8]See Food and Drug Administration, Guidance - Content & Format CMC for Vaccine & Related Product, (1999), https://www.fda.gov/media/73614/download, *last viewed on* March 10, 2025 (According to the FDA Guidance, a vaccine is defined as "an immunogen, the administration of which is intended to stimulate the immune system to result in the prevention, amelioration or therapy of any disease or infection.")

exercises or attempts to exercise rights defined under the NMHRA. A plaintiff must show: (i) he engaged in protected activity; (ii) suffered adverse employment action; and (iii) there is a causal connection between these two events. *Ulibarri v. State Corr. Acad.,* 2006-NMSC, 16, 139 N.M. 193, 200. To establish causation, a plaintiff must show a "but for" causal connection existed between the protected activity and the materially adverse action. *Laul v. Los Alamos Nat'l Labs.,* 309 F. Supp. 3d 1119, 1151-52 (D.N.M. 2016) *aff'd.,* 714 F. App'x 832 (10th Cir. 2017). Notably, an employee's request that his employer provide him accommodation for a disability constitutes a protected activity. *Lincoln v. BNSF Ry. Co.,* 900 F.3d 1166, 1209 (10th Cir. 2018).

The court acknowledged that Spinelli adequately alleged that he engaged in protected activity by submitting his medical exemption request from taking the COVID-19 vaccine. App. 173, 2. The court also conceded that Spinelli "sufficiently pled the second element of suffering an adverse employment action, which was Plaintiff's termination." App. 173, 2. Spinelli also pleads that Coherus' denial of his exemption request and failure to provide a reasonable accommodation was a materially adverse action that resulted in his termination. App. 37, 79. However, to state a retaliation claim, Spinelli must also allege a causal connection between the protected activity and the alleged materially adverse action he suffered. Here, the court concluded that Spinelli failed to demonstrate

causation because he failed to plead any other facts besides the timing of his

termination in support of the causation element. App. 174,   2. The district court

also cited to *Duffee v. T-Mobile USA Inc.,* No. 1:23-cv-00536-MIS-LF, 2023 WL

6391376 (D.N.M. 2023),[9]  holding that "the plaintiff was not fired because of her

disability which prevented her from taking the COVID-19 vaccine, but instead

because of her failure to adhere to the mandatory COVID-19 vaccine policy." App.

174,   1. Spinelli contends that the court's conclusion for the same was improper at

the 12(b)(6) stage.

The court's order states that "[u]nder Tenth Circuit precedent, 'two months

and one  week' has been determined to be too extensive of a time period 'to

establish causation by temporal  proximity alone.'" *Meiners v. Univ. of Kan.,* 359

F.3d 1222, 1231 (10th Cir. 2004). App. 174,   1. The reliance upon the

aforementioned case was misplaced due to its determination at the summary

judgment phase. The evidentiary threshold demanded of a plaintiff post-discovery,

specifically at the summary judgment juncture, diverges significantly from the

pleading requirements in an initial complaint. Consequently, it is more judicious to

adjudicate such factual matters within the context of a summary judgment

proceeding.

---

[9]*Duffee v. T-Mobile USA Inc.* was subsequently appealed by the Plaintiff and the
parties eventually settled and dismissed the appeal. The 10th Circuit does not
recognize *Duffee* as binding or established law.

For purposes of the retaliation claim at this prima facie stage is "whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1221 (10th Cir. 2002) (quotations and citations omitted). Plaintiff need not show both that the defendant's reasons were a pretext and that the real reason was discrimination—the fact of pretext alone may allow the inference of discrimination. *Dixon v. Okla. ex rel. Reg'l Univ. Sys. of the OK Bd. of Regents*, 125 F.4th 1321, 1327 (10th Cir. 2025). Plaintiffs need only plead circumstances which "give rise to an inference of unlawful discrimination." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).

A plaintiff need not establish a prima facie case in his complaint. *Rutila v. Buttigieg,* No. 23-6157, 2024 U.S. App. LEXIS 32048, at 3 (10th Cir. Dec. 18, 2024) (quotations and citations omitted). But "[t]o evaluate whether a complaint survives a motion to dismiss, we consider whether a plaintiff has 'set forth a plausible claim in light of the elements of [his] claim." *Id.* Accordingly, Spinelli did not need to *prove* causation at the pleading stage, rather he just needed to plead enough facts to make it plausible on its face.

a) <u>Temporal Proximity</u>

Although Spinelli is not required to *prove* causation at this stage, he contends that his allegations in his Complaint are sufficient to plead that he

28

engaged in protected activity and there was a causal connection between that activity and Coherus' denial of his medical exemption request and ultimate termination.

This Court recognizes temporal proximity between protected conduct and termination as relevant evidence of a causal connection sufficient to "justify an inference of retaliatory motive." *Metzler,* at 1171 (quotations omitted). The plaintiff, however, "may rely on temporal proximity alone only if "the termination is very closely connected in time to the protected activity." *Id. citing Anderson v. Coors Brewing,* 181 F.3d 1171, 1179 (10th Cir. 1999) (emphasis in original) ("we have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation," but "we have held that a three-month period, standing alone, is insufficient.") When "a plaintiff has engaged in multiple protected activities, we measure the temporal proximity between the plaintiff's "last instance of protected activity and the adverse employment action." *EEOC v. PVNF, L.L.C.,* 487 F.3d 790, 804 (10th Cir. 2007).

The court's temporal proximity analysis failed to account crucial factors that significantly impact the timeline and demonstrate a causal link between the protected activity and adverse employment action. When these facts are considered, the timeframe between exemption request and termination is much shorter and demonstrates a causal connection to support Spinelli's retaliation

claims. Specifically, the ruling neglected to factor in the timing between Spinelli's

request for medical exemption, Coherus' initial denial of same, its termination that

followed, Coherus' voluntary decision to extend the vaccination deadline, its

ongoing dialogue with Spinelli concerning his accommodation request, and

additional documentation requested by Coherus from Spinelli's clinician, all of

which led to the material adverse employment action.[10] The timeline of events is as

follows:

- **July 19:** Spinelli submitted his COVID-19 Reasonable Accommodation
  Request.

- **July 21:** Coherus advised medical exemption could not be accommodated
  and advised Spinelli his last day of employment is August 15. App. 138.

- **July 30:** Spinelli submitted the ADA Accommodation form from his
  medical provider to Coherus.

- **August 2:** Spinelli submitted Religious Accommodation Request to
  Coherus.

- **August 4:** Spinelli had conversation with Coherus agreeing that remote
  work and having a colleague cover the two customers that may allow

---

[10] The district court stated in its Order that it did not consider Spinelli's factual arguments outside his Complaint but considered exhibits attached to Cohehus' Motion to Dismiss. App. 171 FN 5; and 176   2. Exhibit C to the Motion to Dismiss, is Spinelli's Charge of Discrimination filed with NMHRB, which outlines the timeline of events set forth herein that the district court should have considered. App. 87-90. These facts were further reiterated in Spinelli's Response to the Motion to Dismiss, and Motion to Reconsider. App. 137-147; 205-207; and 219-231.

in-person visits, with periodic reassessments would make for reasonable accommodation.

- **August 10:** Spinelli received email from Coherus voluntarily extending vaccine deadline to September 15. App. 139.

- **August 25:** Spinelli received email from Coherus offering a severance package which he denied.

- **September 1 - 3:** Spinelli received email from Coherus that medical accommodation review was still ongoing and asked if FDA approval of Pfizer vaccine changed anything.

- **September 8:** Coherus asked Spinelli for specific information as to his accommodation request. App 145.

- **September 12 - 14:** Spinelli proposed a reasonable accommodation. Coherus sought clarification. Spinelli expressed preference for face-to-face work and a monthly review of the accommodation. App 145.

- **September 15:** Coherus requested Spinelli's clinician provide signed statement as to concerns of negative health consequences from COVID-19 vaccines. App 142-143.

- **September 16 - 20:** Coherus fired two employees with valid medical exemptions. Coherus posted job openings for the fired employees' positions with a vaccine requirement and accommodation language.

- **September 29:** Spinelli submitted signed medical clinician's note to Coherus. This constitutes Spinelli's third, latest protected activity. App. 124.

- **October 1:** Spinelli received email from Coherus stating medical exemption

31

request could not be accommodated and his last day of employment is
October 7.

- **October 6:** Spinelli received performance evaluation reflecting he finished
  number one in the company for third quarter sales.

- **October 7:** Spinelli's last day of employment.

The temporal proximity between Spinelli's request for an exemption and his
subsequent termination is significantly reduced when these critical details are
considered. As demonstrated above, Spinelli's initial medical exemption request
was submitted on July 19th and Coherus' denial and contemporaneous notice of
termination occurred on July 21st merely two days later. The temporal proximity
between this protected activity and this particular adverse action was rapid.

Upon Spinelli submitting a religious exemption request, on July 30th
Coherus announced an extension to the vaccination deadline which naturally
extended Spinelli's employment. Spinelli's exemption requests and proposed
accommodation were under review by Coherus for nearly two months. During that
duration, Coherus continued to encourage Spinelli to take the vaccine. When it was
evident that Spinelli would not, Coherus requested additional documentation
concerning his medical condition. As instructed by Coherus, Spinelli sent his final
exemption request to Coherus September 29th. Less than two days later, on

October 1st, Coherus denied Spinelli's exemption requests, failed to provide a reasonable accommodation, and notified him of termination.

Between July 19 and October 1 Spinelli's protected activity was ongoing and even renewed at certain times at the request of Coherus. The last and final protected activity and adverse action were only two days apart. Spinelli can prove causation by temporal proximity alone and pled a prima facie case of retaliation. Notwithstanding, Spinelli did plead other factual allegations/circumstantial evidence to demonstrate a pattern and practice of discriminatory/retaliatory behavior, thereby supporting a causal connection. Spinelli demonstrated that Coherus did not take his exemption request seriously and kept requiring more documentation from him to establish his disability necessitating accommodation from taking the COVID-19 vaccine. Additionally, Coherus continued to encourage him to take the vaccine, despite its knowledge that he would be at risk of further paralysis and nerve damage if he were to take the vaccine, demonstrating its disregard for Spinelli's medical condition and his provider's medical opinion and recommendation. The close temporal proximity between the protected activity (requests for exemption) and the adverse employment action (termination), coupled with these facts regarding Coherus' behavior toward Spinelli's medical condition, creates a strong inference of retaliation as defined by the NMHRA.

### D. **Common Law Retaliation Should Not Have Been Dismissed**

The Courts determine whether an employee has stated a sufficient policy to recover for the tort of wrongful discharge on a case-by-case basis. *Gonzales v. City of Albuquerque*, 849 F. Supp. 2d 1123, 1152 (D.N.M. 2011). For an employee to recover under common law retaliation, he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn. *Id*. There must be a causal connection between the employee's actions and the retaliatory discharge by the employer. *Id*.

To state a prima facie claim for common law retaliation under New Mexico law in the context of retaliatory discharge, an "employee must (1) identify a specific expression of public policy which the discharge violated; (2) demonstrate that he or she acted in furtherance of the clearly mandated public policy; and (3) show that he or she was terminated as a result of those acts." *Lihosit v. I&W, In*c., 1996–NMCA–033,   7, 121 N.M. 455, 257.

1. *Public Policy*

The court erred when it dismissed Spinelli's common law retaliation claim on the basis that he failed to plead a clearly articulated expression of public policy. The court reasoned that Spinelli's refusal to take the COVID-19 vaccine was not an action in furtherance of public policy and was not an action that would benefit the public at large. App. 182,   2. However, Spinelli's medical and religious

34

exemption requests for accommodation are protected acts covered by the New Mexico Human Rights Act ("NMHRA"). The NMHRA is a clearly mandated public policy sufficient to support a claim of retaliatory discharge, even though it provides a remedy for a violation of the policy. *Gandy v. Wal-Mart Stores, Inc.,* 1994-NMSC-040, ⁋ 12, 117 N.M. 441, 872 P.2d 859. In the Amended Complaint, Spinelli stated that his conduct was authorized and protected by public policy on the following grounds: (i) a workplace free from religious discrimination, medical discrimination, and discrimination based upon other protected class distinctions is of vital interest to the public at large, and (ii) maintaining personal bodily integrity and medical choice is necessary for the preservation of individual liberty guaranteed by both State and Federal Constitutions. App. 43, ⁋ 111.

Although Spinelli did not specifically identify the NMHRA in his Amended Complaint as the public policy, Spinelli not only incorporated the preceding paragraphs of the Amended Complaint which discussed the NMHRA into his Common Law Retaliation claim, but also the statute he was referring to can be inferred from the context that the public policy being furthered was the NMHRA. Spinelli's Response to the Motion to Dismiss elaborates on these points, however, the court ignored the explanation even though it could have been inferred on the facial reading of the Complaint.

The court in *Cordova v. New Mexico,* 283 F. Supp. 3d 1028, 1047-48

(D.N.M. 2017), made it very clear that the NM Supreme Court has held that a violation of the NMHRA supports a claim for discharge in violation of public policy despite the statutory remedy, stating "New Mexico Supreme Court later specifically rejected the 'argument that the tort of retaliatory discharge cannot be founded on a declaration of public policy embodied in a legislative enactment that provides its own remedial scheme.'" *Id. citing Gandy,* ¶¶ 10-12. The *Cordova* court explained that while the Supreme Court agreed that the plaintiff could not recover twice for the same harm, it noted that a tort claim might provide different remedies than those available under the statutory scheme and that judicial procedures could prevent a double recovery. *Id. See also Michaels v. Anglo American Auto Auctions, Inc.,* 1994-NMSC-015, ¶¶ 15-17, 117 N.M. 91, 869 P.2d 279, (where the Court similarly allowed a retaliatory discharge claim to be based on violation of the Worker's Compensation Act.)

New Mexico courts have discussed a number of different types of legislative declarations that could provide the public policy basis for the tort of retaliatory discharge, and NMHRA, dealing with discriminatory practices, falls within this category. The district court therefore erred in finding that Spinelli failed to identify a specific public policy violation.

### 2. *Common Law Retaliation Claim Based on his Religious Beliefs Survives Even if It Does Not Survive Under NMHRA*

Spinelli concedes that compliance with the grievance procedure of NMHRA

36

is a prerequisite to suit under the Act. However, Spinelli is not prevented from filing a complaint based on common law tort without first resorting to such administrative remedies. *Gandy,*    1. Spinelli contends that Coherus retaliated against him when he submitted his request for exemption from Coherus' COVID-19 vaccine mandate based on his sincerely held religious beliefs. App. 34

  69. Not only did Coherus not even acknowledge his request, it ultimately denied his request without explanation and terminated Spinelli's employment. App. 105, 2; 186   3; 187   1; and 228,   4.

Spinelli's request for exemption based on his religious beliefs was an act in furtherance of the clear mandated public policy contained in NMHRA. Spinelli's claim for common retaliation was sufficiently pled because he alleged facts that showed that his discharge by Coherus was based on a violation of one of the public policy mandates set out in NMHRA. Therefore, the district court should not have dismissed this claim under 12(b)(6).

## II.   DISTRICT COURT ERRED WHEN IT DENIED SPINELLI'S MOTION TO RECONSIDER AND REQUEST FOR LEAVE TO AMEND UNDER RULE 59(e)

Spinelli reincorporates all preceding paragraphs as if fully set forth herein.

### A. Denial of Rule 59(e) Relief Was an Abuse of Discretion.

A district court's ruling on a Fed. R. Civ. P. 59(e) motion is reviewed for abuse of discretion. *Fye v. Okla. Corp. Comm'n,* 516 F.3d 1217, 1224 (10th Cir.

2008). A district court abuses its discretion if it made a clear error of judgment or

exceeded the bounds of permissible choice in the circumstances. The

abuse-of-discretion standard includes review to determine that the discretion was

not guided by erroneous legal conclusions. *Hayes Family Tr. v. State Farm Fire &*

*Cas. Co.,* 845 F.3d 997, 1004-05 (10th Cir. 2017). Although appeal from denial of

FRCP 60 motion does not itself preserve for review merits of underlying judgment,

appeal from denial of FRCP 59(e) motion is sufficient to permit consideration of

merits of underlying summary judgment, if appeal is otherwise proper, intent to

appeal is clear, and opposing party was not prejudiced. *Artes-Roy v. City of Aspen,*

31 F.3d 958, 961 n.5 (10th Cir. 1994).

### 1. Rule 59(e) Standard

The Tenth Circuit reviews rulings on Rule 59(e) motions for abuse of

discretion, reversing only if the ruling was "arbitrary, capricious, whimsical, or

manifestly unreasonable." *Pueblo of Jemez v. United States,* 63 F.4th 881, 889

(10th Cir. 2023) (internal citation omitted). However "an error of law per se

constitutes an abuse of discretion." *Id.* Grounds for relief under Rule 59(e) "include

(1) an intervening change in the controlling law, (2) new evidence previously

unavailable, and (3) the need to correct clear error or prevent manifest injustice."

*Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000).

A motion to reconsider must be based on one of the same three criteria. Such motions may not be used to revisit issues already addressed or advance arguments that could have been raised in prior briefing. *Babakr v. Fowles,* No. 23-3026, 2024 U.S. App. LEXIS 8184, at 12 (10th Cir. Apr. 5, 2024) (citations and quotations). However, a motion under Fed. R. Civ. P. 59(e) allows a party to reargue previously articulated positions to correct clear legal errors. *Hayes Family Tr.* In a will contest action initiated by a niece, the trial court improperly granted summary judgment to a neighbor and a cousin when the presumption of undue influence was present and when the trial court had the power to review an affidavit presented by the niece upon reconsideration pursuant to Rule 1-059(E) NMRA because the affidavit was not submitted for strategic reasons and its relevance outweighed any prejudice that would have resulted. *In re Estate of Keeney,* 1995-NMCA-102, 121 N.M. 58, 908 P.2d 751, *cert. denied, Gurule v. Baca (In re Estate of Keeney),* 120 N.M. 828, 907 P.2d 1009 (1995).

Ultimately, the Court finds distasteful such "'gotcha!'-style litigation, where parties seek judgment based on technical errors [rather than] the merits of the case." *Strobel v. Rusch,* No. CIV 18-0656 RB/JFR, 2020 U.S. Dist. LEXIS 225215, at 21-22 (D.N.M. Dec. 2, 2020) (internal quotation and citations omitted).

*2. The 59(e) Ruling Was Not Supported by Sound Reasoning*

Spinelli plausibly alleged facts and circumstances showing that Coherus discriminated and retaliated against him as a person with a serious medical condition or disability as defined by NMHRA. His Complaint contained facts plausibly showing that Spinelli would have retained his position with Coherus but for his disability that prevented him from taking the COVID-19 vaccine. Allegations regarding his medical exemption and accommodation requests, and the denials of the same and the termination of his employment that immediately followed, were sufficient to state a plausible claim of disability discrimination and retaliation under NMRHA. Spinelli plausibly alleged facts and circumstances showing common law retaliation as a result of his medical and religious exemption requests. His Complaint contained facts demonstrating requests for accommodation as a result of his disability and sincerely held religious beliefs were in furtherance of public policy protecting such acts, as demonstrated in his allegations regarding violation of NMHRA, as well as other state and federal laws that protect personal bodily integrity and medical choice.

The district court did not properly apply the Rule 12(b)(6) standard, instead requiring Spinelli to prove his claims with evidence at the pleading stage, and failed to view all reasonable inferences in favor of Spinelli, the non-moving party, and did not construe his pleading liberally. Accordingly, the court abused its

discretion in denying the Rule 59(e) motion, and denying Spinelli the opportunity

to amend and cure the deficiencies in his complaint.

### B.  Misapprehension of Facts or Law

A court commits clear error if its finding "is without factual support in the

record or if, after reviewing all the evidence, we are left with a definite and firm

conviction that a mistake has been made. *Sharpe-Miller v. Walmart, Inc.*, 710 F.

Supp. 3d 971 (D.N.M. 2023) *citing Aquila, Inc. v. C.W. Mining,* 545 F.3d 1258,

1263 (10th Cir. 2008). We do not "look at each piece of evidence in isolation;

rather, in assessing whether plaintiffs have shown pretext, we are obliged to

consider their evidence in its totality." *Orr v. City of Albuquerque,* 531 F.3d 1210,

1215 (10th Cir. 2008). This is a close case, but considering the evidence as a whole

under the applicable legal standards, the court erroneously granted summary

judgment to Frito-Lay on Waggoner's failure-to-promote claim. *Waggoner v.

Frito-Lay, Inc.,* No. 22-3111, 2023 U.S. App. LEXIS 9045 (10th Cir. Apr. 17,

2023). ("[I]t is not our role at the summary-judgment stage to choose between two

reasonable explanations. Such is the jury's province."). *Waggoner,* at 9. Trial

court's denial of motion for new trial is erroneous where there has been insufficient

development of facts by parties, so as to amount to failure of proof of either

position advanced, and consequently condition precedent to invoking of appellate

review is not satisfied and therefore remand for further developments of facts must

follow. *Heinold Hog Mkt., Inc. v. Superior Feeders, Inc.,* 623 F.2d 636 (10th Cir. 1979).

### 1. *Discrimination Based on Disability Claim Under NMHRA*

The district court relied on the Tenth Circuit standard in *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995), stating "a plaintiff must establish (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability." *Id.* App. 170,   3. In *White,* this standard was applied at the summary judgement phase in the case and not pursuant to FRCP 12(b)(6) Motion. But here, the court improperly applied it on a 12(b)(6) Motion.

The court decided Spinelli did not satisfy the first element of the case that he was a disabled person because the "Complaint fails to plead facts or allegations identifying a major life activity that is affected by Plaintiff's serious medical condition or disability." App. 171,   3. As discussed above in Section I(B) of this Brief, Spinelli contends he sufficiently stated facts in his complaint by plausibly alleging that he was a disabled person as defined by NMHRA or ADA. He directly quoted his healthcare provider's letter that stated his disability is permanent nerve damage and trigeminal nerve problems which places him at increased risk of further nerve damage or paralysis from the COVID-19 vaccine. App. 27,   31.

42

Trigeminal neuralgia, is a chronic pain disorder, which inherently interferes with Spinelli's major life activities, such as sleeping, eating, and brushing his teeth. App. 101,   1; and 220,   4-5. Spinelli also suffers permanent paralysis on the left side of his torso, neck, and face, resulting in loss of mobility also pled in the Complaint (App. 27,   29, 31), and interferes with other major life activities such as loss of sensation, inability to feel heat while cooking, impaired ability to sense pressure, grip interfering with his ability to operate a motor vehicle with left hand and arm. App.  220,   5.

The Tenth Circuit reversed the district court's summary judgment which determined that plaintiff was not disabled nor entitled to reasonable accommodations because his heart-related infection was merely temporary. *Yinger v. Postal Presort, Inc.,* 693 F. App'x 768, 772-73 (10th Cir. 2017) (Unpublished Decision). The district court erred because "Yinger presented uncontroverted evidence that he has a heart condition, which requires him to have a pacemaker in order to live. He further alleged that this condition interferes with his ability to lift, stand, and walk distances. A reasonable jury could therefore conclude Yinger has a physical impairment that substantially limits one or more major life activities." *Id.* at 772. *See also Paraham v. Atriums Mgmt. Co.,* No. 16-2539, 2019 U.S. Dist. LEXIS 53496, at 10 (D. Kan. Mar. 28, 2019) ("While no evidence shows that any doctor placed lifting restrictions on plaintiff, the trial evidence, taken in the light

most favorable to plaintiff, would allow a reasonable jury to infer that his back condition substantially limited his ability to engage in unassisted heavy lifting and the class of jobs requiring that ability."); *e.g., Caporicci v. Chipotle Mexican Grill, Inc.,* 189 F. Supp. 3d 1314, 1323 (M.D. Fla. 2016) ("Plaintiff required time off work to adjust her medications, and she experienced significant side effects from her new medication. Consistent with the Regulations, the Court therefore finds that Plaintiff's bipolar disorder at least arguably causes substantial limitations in the major life activities of working and brain function.")

Here the court concluded that because Plaintiff failed to identify a single major life activity that was substantially limited by Plaintiff's disability, Plaintiff's Complaint fails to establish the first element of a prima facie case of employment discrimination based on a disability under NMHRA. App. 172, ¶ 4; and 173, ¶1. However, the record refutes this conclusion. The court refused to consider the facts and circumstances alleged in Spinelli's Complaint that he has a disability as defined by NMHRA, that prevents him from taking the vaccine. App. 27, ¶ 29, 31; and p. 31 ¶ 54, ¶ 58. The court intentionally ignored the facts alleged in Spinelli's Response to the Motion Dismiss, which detailed the major life activities that were substantially limited by his disability. Spinelli's Motion to Reconsider, with additional evidence, was unsuccessful. Therefore, the district court erred by concluding that Spinelli did not have an actual disability as defined by the ADA.

44

### a) Qualified to Perform Essential Functions

In its denial of the Motion to Reconsider, and denial to Amend pleading, the court ruled that it would be futile to permit amendment. The court did not explain the futility of an amendment. In its Order Granting the Motion to Dismiss, the elements under *White* were not discussed because the court decided that the first element was not satisfied.

An amendment would not have been futile because Spinelli is a disabled person as defined by the ADA and was qualified to perform the essential functions of the job with or without accommodation. As discussed in his Complaint, Spinelli was hired as a remote worker, and did not have an established office or workplace to physically report to in person. Because he was hired during COVID-19 lockdowns, most of his work was performed at home, through phone meetings, virtual conferences, and email. He understood that upon restrictions being lifted, some of his work would be performed in person, with face-to-face meetings with customers. If he met with people in-person, he utilized all safety precautions available to him, including masking, COVID-19 tests, sanitizing, etc. Prior to, and after Coherus announced its mandate, Spinelli remained a top performer in the company even against his colleagues who were permitted to meet in-person with customers up through the last day of employment. Spinelli demonstrated he was qualified to perform essential functions of his job with or without accommodation.

When Spinelli was terminated, of his forty customer accounts, only two customers were permitting in person meetings. The vast majority of his accounts could be served by Spinelli. Customers were not requiring Coherus personnel to become vaccinated in order to meet with them, the vaccine requirement was required by Coherus, only. Coherus argued at the hearing that Spinelli demanded an accommodation to work from home in perpetuity and therefore could not perform the essential functions of the job. App. 273,    24-25; 274,    13-14; 284, 16-19; 286,    22-24; and 287,    7-8. But that is not true, Spinelli did not ask for an accommodation to work from home, rather, he asked that his job remain status quo, which was performing the vast majority of his work remotely because 38 of his 40 accounts could not meet in person anyway. App. 26,    26; 144-145; 288,    14-20. His request for accommodation was to have another OAM cover the two accounts that he could not meet with in person, until the COVID-19 restrictions were lifted. Moreover, he proposed that the accommodation or working conditions be revisited on a monthly basis to ensure that it was working well for Coherus. App. 143; 144; 288    21-23.

Spinelli's request was reasonable, and took into account Coherus' business needs, with the understanding that the situation would not last forever. Spinelli also expected the COVID-19 pandemic to eventually end, or for restrictions to be lifted, particularly in light of the vaccine rollout and other preventive measures that were

taking place.

b) <u>Reasonable Accommodations, Undue Hardship</u>

ADA defines "undue hardship" as an action requiring significant difficulty

or expense. 42 U.S.C.S. § 12111(10)(A). Specific factors to be considered include:

(i) the nature and cost of the accommodation needed; (ii) the overall financial

resources of the facility or facilities involved in the provision of the reasonable

accommodation; (iii) the overall financial resources of the covered entity; and (iv)

the type of operation or operations of the covered entity.

Coherus never demonstrated how Spinelli's requested accommodation

created an undue hardship, nor did it acknowledge that he could not do face-to-face

meetings with the majority of his (38 of 40) customers at the time in question.

Either way, qualification to do the essential functions of the job, reasonableness of

the accommodation, and whether it created an undue hardship on Coherus, are all

questions of fact that should have been proven through the discovery process and

decided on their merits, not as a legal conclusion that it was a facially unreasonable

request as Coherus argued, at least not at the 12(b)(6) stage. App. 287, ⁋ 4.

Accordingly, the court erred when it determined that an amendment would be

futile.

c) <u>Terminated because of His Disability</u>

Similarly, the district court did not discuss whether Spinelli was terminated

47

as a result of his disability because the court determined that Spinelli pleaded no

plausible facts that he was disabled under ADA. Nevertheless, Spinelli pleaded that

he was terminated because of his disability, that but for his disability, he would not

have been fired from Coherus. Spinelli pled in his Amended Complaint that his

disability prevented him from receiving the COVID-19 vaccine. Spinelli also

produced a letter from his medical provider recommending against taking the

vaccine as a result of his disability. Coherus fired him because of his disability.

Coherus argued that the vaccine mandate was facially neutral and did not

single him out. App. 68, 3; and 69 1. However, Spinelli produced a medical

exemption request, requesting exemption from the mandate because of his

disability. Coherus initially fired him two (2) days later as discussed above in

Section I(C). Although Coherus extended the termination date, it was only to

extend the time for Spinelli to receive the vaccine, and not because it was

providing a reasonable accommodation to Spinelli. App. 224 22; 225 26; and

139. Coherus requested additional information from Spinelli's medical provider

because apparently the first form his provider prepared was insufficient. Coherus

denied Spinelli's request for medical exemption and fired him six days later. App.

28, 36-37; 128; and 224 22. This is a matter of fact that warranted resolution on

the merits during the discovery phase, rather than dismissal by the court at such a

preliminary juncture in the litigation.

## 2. *Retaliation Under NMHRA Claim*

As demonstrated in Section I(C) above, the court conceded that Spinelli engaged in a protected activity under NMHRA, when he submitted his medical exemption request. The court agreed that being terminated from a job is an adverse employment action. The court did not find that Spinelli pled plausible facts demonstrating a causal connection between the protected activity and the adverse action, and therefore dismissed the claim for Retaliation under NMHRA and also decided that it would be futile to permit amendment of this claim, when it denied the Motion to Reconsider.

The court held that Spinelli failed to show a causal connection between the July 19, 2021 medical exemption request, and the October 1, 2021 termination notice, citing that "two months and one week" is too extensive of a time period to establish causation by temporal proximity alone." *Meiners supra.* It also concluded that Spinelli failed to plead any other facts to support the causation element.

In *Yinger,* the Tenth Circuit reversed the district court's ruling which concluded that the nine-month time lapse could not give rise to any inference of causation. *Yinger v. Postal Presort, Inc.,* at 775-76. Holding that proximity in time between a protected activity and discharge is a typical beginning point for proof of a causal connection, it is not the sole means of establishing that element of a conduct leading to the termination. If the pattern of retaliatory conduct begins soon

49

after the protected activity and only culminates later in actual discharge, it is especially important that temporal proximity not be read too restrictively. *Id.*

Coherus engaged in a pattern of discriminatory and retaliatory conduct shortly after Spinelli engaged in his protected activity. Spinelli was initially notified on July 21, two days after he submitted his first exemption request, that it was denied and his employment with Coherus would be terminated on August 15, which is less than one month from the protected activity. Coherus later decided to extend the vaccine deadline by one month, until September 15, but never provided a reasonable accommodation so that Spinelli could stay employed. App. 139; and 225  26. Instead Coherus requested additional documentation from Spinelli regarding his medical condition. Spinelli's last protected activity was on September 29, when he delivered his medical provider's signed form recommending. App. 228,  33. Two days later, on October 1, Coherus denied his request and terminated Spinelli's employment effective October 7, which was nine days after Spinelli's last protected activity. App. 128.

The court erred when it determined it would be futile to amend the complaint because Spinelli is able to demonstrate other facts of constituting causal connection, as demonstrated in the Motion to Reconsider. Causation is a question of fact that should have been allowed to be proven through the discovery process and determined on its merits, not at the 12(b)(6) stage.

50

### 3. *Common Law Retaliation*

The district court erred when it determined that Spinelli failed to identify a specific expression of public policy which Coherus' discharge violated. In the Motion to Reconsider, Spinelli attempted to demonstrate to the court that specific expression of public policy was identified in the Complaint as the right to be free from both religious and medical discriminatory conduct in the workplace as prohibited in NMHRA, as well as constitutional provisions which protect the rights of personal bodily integrity and medical choice.

Spinelli's public policy arguments can also be found in the Fourteenth Amendment that protects bodily autonomy. The Supreme Court held in *Union Pacific v. Botsford,* "[n]o right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person." *Union P. R. Co. v. Botsford,* 141 U.S. 250, 251, 11 S. Ct. 1000, 1001 (1891); *cited by Eastwood v. Dep't of Corr.,* 846 F.2d 627, 631 (10th Cir. 1988); *e.g., United States v. Golubski,* No. 22-cr-40055-TC-1, 2024 U.S. Dist. LEXIS 113937, at 14 (D. Kan. June 27, 2024) (The right to bodily integrity has been and continues to be recognized by the Supreme Court.) That "[t]his notion of bodily integrity has been embodied in the requirement that informed consent is generally required for medical treatment." *Cruzan v. Dir., Mo. Dep't of Health,* 497 U.S. 261, 269, 110 S. Ct. 2841, 2846 (1990).

Maintaining personal bodily integrity and medical choice is not a vague or questionable public policy, it is a specific expression of public policy that has been in existence for over a hundred years. However the court erroneously concluded that "[t]he action Plaintiff took in furtherance of the previously stated public policies was *presumably* refusing the COVID-19 vaccine." This interpretation of Spinelli's articulated public policy was misapprehended. Spinelli's refusal to take the vaccine was not the act that furthered the clearly mandated public policy, it was his request for medical and religious exemption as provided by the NMHRA, and further supported by state and federal constitutions safeguarding the right of bodily integrity and medical choice.

The court misapplied the holding in *Paca v. K-Mart Corp.,* 1989-NMSC-034, 108 N.M. 479, 481. Spinelli never pled that his refusal to take the COVID-19 vaccine was an act in furtherance of a public policy. Rather it was his act of submitting his medical and religious exemption requests from taking the vaccine that was a protected act in furtherance of public policy. Coherus fired employees, including Spinelli, who submitted valid medical exemption requests from receiving the COVID-19 vaccines in violation of a clearly mandated public policy. App. 227,  32.

Spinelli engaged in conduct that is governed by NMHRA when he submitted his religious and medical exemption requests. Coherus denied Spinelli's

accommodation request, refused to engage in a collaborative dialogue regarding the same, and never offered an alternative accommodation, nor explained the purported undue hardship that it would allegedly cause. NMHRA prohibits Coherus from firing Spinelli after he engaged in that protected activity without providing a remedy such as an accommodation.

The district court erred when it determined that Spinelli failed to state a prima facie claim for common law retaliation.

### C. Manifest Injustice

Manifest Injustice must entail at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law. *Sharpe-Miller,* at 6-7; (holding that manifest injustice arises from rulings that upset settled expectations - expectations on which a party might reasonably place reliance... manifest injustice does not result merely because a harm may go unremedied). *Id.* at 12. Moreover, defendants that rely on "facts" that are not contained in the amended complaint, and on inferences not favorable to Plaintiff that are drawn from that complaint are not proper as part of a motion to dismiss, and are more appropriately raised after both sides have had an opportunity to perform discovery. *Id. citing Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1117, 342 U.S. App. D.C. 268 (D.C. Cir. 2000) (where employer claims nondiscriminatory reason for its actions, plaintiff must have opportunity for

discovery to attempt to show reason is pretext for discrimination, and motion to dismiss should not have been granted). On a 12(b)(6) Motion, "the Court must accept all well-pleaded factual allegations in the complaint as true, and view those allegations in the light most favorable to Plaintiff." *McNulty,* at 7.

The court erred in dismissing Spinelli's claims under Counts I and IV under 12(b)(6), resulting in manifest injustice. Spinelli was not afforded the opportunity to introduce evidence as permitted under Rule 56, much less engage in discovery and offer evidence into the record. App. 289    20-25, and 290    1-10.

1. Denial of Amendment was Prejudicial to Spinelli and a
Manifest Injustice

A Fed. R. Civ. P. 12(b)(6) motion to dismiss gives a plaintiff notice and an opportunity to amend. *Id.* Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss *sua sponte* "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon,* 935 F.2d 1106 (10th Cir. 1991). Although seller did not have standing to challenge restrictions of Bountiful City, Utah, Code § 13-1-103(4)(a), (b) based on First Amendment, dismissal with prejudice was inappropriate since it was based on jurisdictional grounds; moreover, denial of leave to amend under Fed. R. Civ. P. 15(a) based on futility also did not warrant dismissal with prejudice. *Brereton v. Bountiful City Corp.,* 434 F.3d 1213,

2006 U.S. App. LEXIS 1869 (10th Cir. 2006).

Plaintiff should be given opportunity to amend under Rule 15, where complaint fails to comply with Rule 8(a)(1) and there is nothing to suggest that any prejudice would be worked upon defendant by permitting such amendment, particularly where plaintiffs' cause of action in state court would be barred by statute of limitations. *Sims v. Mercy Hospital of Monroe*, 451 F.2d 171, 1971 U.S. App. LEXIS 6923 (6th Cir. 1971). In interest of efficient judicial administration, court construed motion for reconsideration, in alternative, as motion nunc pro tunc to extend period in which plaintiff could amend her complaint as matter of right pursuant to Fed. R. Civ. P. 15(a). *Hayes v. Dist. of Columbia,* 275 F.R.D. 343, 2011 U.S. Dist. LEXIS 83045 (D.D.C. 2011).

The court expressly stated in its ruling that Spinelli did not plead any facts demonstrating that his disability substantially impacted any major life activities. App. 171,   3. However, it recognized that in his Response to the Motion, he did plead such facts, yet ignored those facts when it concluded that an amendment would be futile. The same analysis occurred in the court's determination that Spinelli failed to plead sufficient facts establishing a causal connection between the protected act and adverse employment action in the Retaliation claim. However, the court chose to ignore such facts highlighted in the Response and Motion to Reconsider, when it determined that an amended pleading would be futile. For

those reasons, Spinelli contends that the court abused its discretion when it denied Spinelli the opportunity to amend.

For those reasons, the district court erred when it failed to consider the manifest injustice to Spinelli in its review of the Motion to Reconsider, and should have either altered its ruling on the Motion to Dismiss, or permit Spinelli to amend his pleading.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, the Appellant respectfully requests that the lower court's Order and Opinion Granting Appellee's Motion to Dismiss, and its Order denying Appellant's Motion to Alter, or Amend Judgment are reversed and remanded.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. Appellant believes that oral argument may assist the Court in understanding the facts, analyzing the authorities, evaluating the arguments of the parties, and reaching a decision on the matters presented by this appeal.

Respectfully submitted,

By: */s/ Vanessa L. DeNiro*
Vanessa L. DeNiro, Esq.
*Counsel for Appellant*
P.O. Box 45104
Rio Rancho, NM 87174

vanessa@denirolaw.com
Office: (505) 977-8975

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was

electronically filed and delivered to:

Faith Kalman Reyes
VERDI & OGLETREE PLLC
150 Washington Ave. No. 201
Santa Fe, NM 87501
Mobile: 505.660.0749
freyes@verdiogletree.com

Ryan Carlson, Esq.
Iman A. Wells, Esq.
NUKK-FREEMAN & CERRA, P.C.
26 Main Street, Suite 202
Chatham, New Jersey 07928
Tel: (973) 665-9100
Fax: (973) 665-9101
rcarlson@nfclegal.com
iwells@nfclegal.com


<u>*/s/ Vanessa L. DeNiro*</u>                                 <u>March 10, 2025</u>
Vanessa L. DeNiro, Esq.                                  Date

57

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARK W. SPINELLI,**

      **Plaintiff,**

**v.**                                                    **1:23-cv-00361-LF-KK**

**COHERUS BIOSCIENCES, INC.,**

      **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Mark W. Spinelli ("Plaintiff") was employed by Defendant Coherus BioSciences, Inc. ("Defendant") as an Oncology Account Manager from February 1, 2021, until October 7, 2021. He has brought this action against Defendant, claiming that Defendant: 1) discriminated against him on account of his serious medical condition and sincerely held religious beliefs in violation of the New Mexico Human Rights Act ("NMHRA"), NMSA 1978, § 28-1-1 *et seq*; 2) breached an implied employment contract with Plaintiff; 3) breached the common law covenant of good faith and fair dealing; 4) retaliated against Plaintiff under both the NMHRA and at common law on account of his serious medical condition and his sincerely held religious beliefs, and 5) subjected him to intentional infliction of emotional distress. Defendant now moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. After careful consideration of the motion, briefs and submissions of the parties and relevant case law, the Court GRANTS the motion and enters judgment accordingly.

# I.
# FACTS AND PROCEDURAL BACKGROUND

The following facts are either undisputed or taken as true as required upon consideration of a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6).[1]

### A. Plaintiff's Employment at Coherus

Plaintiff was hired by Defendant as an Oncology Account Manager ("OAM") on February 1, 2021. *Id.* at ¶ 11. Plaintiff was hired as an at-will employee and acknowledged his at-will status by signing an acknowledgement form of Defendant's employment policy.[2] Doc. 25-2, Ex. A. Plaintiff's primary job responsibility as an OAM employed by Defendant was to "develop relationships with Oncology practices … and present educational materials and information to encourage them to use … a medicine used to treat low white blood cells that is caused by cancer treatments." Doc. 15 at ¶ 12. Plaintiff was hired by Defendant during the COVID-19 pandemic and as a result worked remotely for the entirety of his employment with Defendant. *Id.* at ¶¶ 15-16.

On June 28, 2021, Defendant announced that it would require all of its employees to provide Defendant with proof of vaccination against COVID-19 by July 19, 2021. *Id.* at ¶ 24. A few weeks later, Defendant's Vice President of Sales implemented a policy that would require "sixty (60%) of all customer interactions ...  be face-to-face" and prohibiting "unvaccinated employees … from having face-to-face interactions with customers." *Id.* at ¶ 25.

---

[1] *Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir. 1995) ("In reviewing a facial attack on the complaint [raised under Rule 12(b)(1)], a district court must accept the allegations in the complaint as true."); *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("For purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.).

[2] Plaintiff's at-will status is a fact contested by the parties. However, even taking Plaintiff's version of the facts as true, the Court is without any factual support to find Plaintiff was not an at-will employee. *See infra* III.2.

After becoming aware of Defendant's COVID-19 vaccine mandate, Plaintiff "consulted with his primary healthcare provider, Monica Ortega, for a medical opinion and recommendation on whether the COVID-19 vaccine would be safe for him, considering his medical history." *Id.* at ¶ 28.[3] Plaintiff obtained a "Healthcare Provider's Note" from Ms. Ortega expressing that Plaintiff "has a prior vaccine injury, which resulted in permanent nerve damage and trigeminal nerve problems. He is at an increased risk for further nerve damage and/or paralysis from the COVID-19 vaccines" and should not be vaccinated against COVID-19. *Id.* at ¶ 31.

On July 19, 2021, Plaintiff submitted two exemption requests to Defendant seeking exemption from Defendant's COVID-19 vaccine mandate based on his medical history and on his sincerely held religious beliefs, which prohibit him from "put[ting] an experimental drug into his body, particularly one that is developed, tested, and/or produced with technology that an individual deems morally repugnant." *Id.* at ¶¶ 30, 32.

On October 1, 2021, Plaintiff received an email stating his exemption requests had been "denied, asserting that the accommodation [Plaintiff] sought would create an undue hardship and burden on [Defendant's] business and negatively impact its ability to do what is necessary to reach its revenue goals." *Id.* at ¶ 36. On the same day, Plaintiff received an email terminating his employment with Defendant. *Id.* at ¶ 37.

### B.  Plaintiff's Filing with the EEOC and NMHRB

On November 19, 2021, Plaintiff filed a charge of discrimination with the New Mexico Human Rights Bureau ("NMHRB"). Doc. 15 at 51. On Plaintiff's charge of discrimination,

---

[3] The medical history Plaintiff was concerned about related to a 2015 incident where Plaintiff received a dose of the Varicella vaccine as required by his employer at the time.  Id. at ¶ 29. As a result of that vaccination, Plaintiff alleges he experienced temporary paralysis on the "left side of his torso and face" and sustained "permanent, irreversible nerve damage." Id. at ¶ 29.

Plaintiff checked the boxes for "retaliation," "disability," and "other" signifying "serious medical condition" under the charge of discrimination's "discrimination based on" field. Doc. 25-2, ex. C. Nowhere in the narrative portion of Plaintiff's charge of discrimination does Plaintiff allege he was discriminated or retaliated against on account of his sincerely held religious beliefs. *Id*; Doc. 25-1 at 4.

On December 2, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 47. On Plaintiff's charge of discrimination, Plaintiff checked the boxes for "disability" and "retaliation" under the charge of discrimination's "circumstances of alleged discrimination" field. Doc. 25-2, ex. D. Nowhere in the narrative portion of Plaintiff's charge of discrimination does Plaintiff allege he was discriminated or retaliated against on account of his sincerely held religious beliefs. *Id*; Doc. 25-1 at 4.

On December 13, 2022, the NMHRB issued an "Order of Non-Determination" to Plaintiff. Doc. 15 at ¶ 52.

### C. Plaintiff's Lawsuit

Plaintiff filed his Amended Complaint before this Court on May 24, 2023, alleging employment discrimination and retaliation in violation of the NMHRA based on his serious medical condition or disability and his sincerely held religious beliefs, breach of his employment contract, breach of the implied covenant of good faith and fair dealing, retaliation at common law, and intentional infliction of emotional distress.

Defendant filed its motion to dismiss on June 7, 2023. Defendant raises two arguments for dismissal under Federal Rule of Civil Procedure 12. First, the Defendant argues that this Court lacks subject matter jurisdiction over Plaintiff's religious discrimination and retaliation claims raised in Count I of Plaintiff's Amended Complaint under Rule 12(b)(1). As to the remaining

claims, Defendant raises a Rule 12(b)(6) challenge. This Court held a hearing on the instant motion on January 8, 2024.

## II.
## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss claims raised by a plaintiff's complaint for which it lacks subject matter jurisdiction.  Rule 12(b)(1) motions can take the form of either "(1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).  On a Rule 12(b)(1) motion, the Court is to regard a plaintiff's factual allegations as true. *Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir. 1995).

Under Rule 12(b)(6), a court "may dismiss a complaint for 'failure to state a claim upon which relief can be granted.'" *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (quoting Fed. Rule of Civ. P. 12(b)(6)). Under the *Twombly/Iqbal* approach adopted by the United States Supreme Court, a complaint must contain "facial plausibility … that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). Significantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to achieve facial plausibility. *Id.* Well pleaded facts in the plaintiff's complaint "must be taken as true … and all reasonable inferences must be indulged in favor of the plaintiff." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). However, conclusory allegations are entitled to no such deference. *See Bowling v. Rector*, 584 F.3d 959, 963 (10th Cir. 2009).

**III.**

**ANALYSIS**

**A.  Defendant's Motion to Dismiss Count I of Plaintiff's Complaint for Discrimination and Retaliation in Violation of the NMHRA is Granted.**

Count I of Plaintiff's Complaint alleges he was subject to discrimination and retaliation by Defendant on account of his serious medical condition or disability and his sincerely held religious beliefs. Because Plaintiff failed to plead necessary facts alleging that his serious medical condition qualifies Plaintiff as disabled under the NMHRA and because Plaintiff failed to exhaust his administrative remedies regarding his religious discrimination and retaliation claims, Count I is dismissed.

**1)  <u>Plaintiff's Discrimination and Retaliation Claim Under the NMHRA Regarding his Serious Medical Condition or Disability.</u>**

Through its motion to dismiss, Defendant argues that Plaintiff failed to sufficiently plead the requisite elements of a discrimination claim under the NMHRA because Plaintiff failed to plead facts showing that Plaintiff's disability or serious medical condition substantially limits a major life activity. Doc. 25-1 at 11. Defendant argues that Plaintiff's failure to demonstrate a major life activity limited by Plaintiff's serious medical condition or disability prevents Plaintiff from being considered "disabled" or having a serious medical condition under the meaning of the NMHRA. *Id.*

Plaintiff alleges that he suffers from a serious medical condition or disability in the form of "permanent, irreversible nerve damage" sustained because of an adverse reaction to the Varicella vaccine he received in 2015. Doc. 15 at ¶ 29. Plaintiff submitted a request to Defendant to be exempt from Defendant's COVID-19 vaccine mandate on the grounds that his nerve damage could be exacerbated by receiving the COVID-19 vaccine. As part of Plaintiff's exemption request, he provided Defendant with a "Healthcare Provider's Note" which explained that Plaintiff "is at an increased risk for further nerve damage and/or paralysis from the COVID-19 vaccines." *Id.* at ¶

31.   Plaintiff alleges that Defendant's denial of his exemption request, and his termination for failing to receive the vaccine, constituted discrimination and retaliation against him on the basis of his serious medical condition or disability in violation of the NMHRA.[4] *Id.* at ¶ 64.

     *i.*     *Discrimination Based on Plaintiff's Disability Under the NMHRA.*

An employer violates the NMHRA when "an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of ... physical or mental handicap or serious medical condition." NMSA 1978, § 28–1–7(A).

When evaluating claims of employment discrimination raised under the NMHRA, the Court applies the Tenth Circuit's framework for analyzing claims brought under the ADA. *Id.* ("The New Mexico Supreme Court has relied upon the Tenth Circuit's articulation of the elements of a prima facie unlawful termination case under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213 (1994), a federal statute prohibiting discrimination against persons with a disability, and applied those same elements to a NMHRA disability claim."). Under the Tenth Circuit standard, "a plaintiff must establish (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability." *White v. York Intern. Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995). The definition of "physical or mental disability" under the NMHRA is "a physical or

---

[4] Plaintiff asserted throughout the pleadings that the adverse reaction he suffered from the Varicella vaccine constituted either a "serious medical condition" or a "disability." As such, Plaintiff's Complaint is analyzed separately to determine if he pled sufficient facts to plausibly allege that he suffers from either a disability or a serious medical condition under the meaning of the NMHRA.

mental impairment that substantially limits one or more of a person's major life activities." NMSA 1978, § 28-1-2(O). Major life activities encompass "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." NMSA 1978, § 28-1-2(P).

To satisfy the first element of the prima facia claim for employment discrimination based on a disability under the NMHRA, Plaintiff must first qualify as disabled under the NMHRA. *See White*, 45 F.3d at 360. To do so, Plaintiff must plead sufficient facts in his Amended Complaint to plausibly allege that his disability substantially limits one of his major life activities.[5]

Plaintiff alleges that the nerve damage he suffered as a reaction to the Varicella vaccine constitutes a disability. Doc. 15, at ¶ 64. Plaintiff further alleges that the chance his nerve damage could be exacerbated by the COVID-19 vaccine rises to the level of a disability. However, Plaintiff's Complaint fails to plead any facts or allegations identifying a major life activity that is affected by Plaintiff's serious medical condition or disability. Based on the definition of a "disability" under the NMHRA, Plaintiff's failure to plead facts showing a major life activity affected by his disability is fatal to Plaintiff's discrimination claim. *See Lusk v. Ryder*, 238 F.3d 1237, 1241 (10th Cir. 2001) (granting summary judgment for employer when employee failed to show his "lifting restriction" substantially limited a major life activity).

---

[5] In Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff alleges for the first time that "Mr. Spinelli's mobility, including his ability to perform manual tasks without pain, his ability to sleep and perform other major life activities have been substantially limited as a result of the permanent, irreversible nerve damage he sustained" as a result of his reaction to the Varicella vaccine. Doc. 32 at 6. However, because Plaintiff failed to raise these factual allegations in his Amended Complaint, the Court does not consider these allegations when determining the factual sufficiency of his pleadings. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.") (quotation marks and citation omitted).

Because Plaintiff failed to identify a single major life activity that was substantially limited by Plaintiff's adverse reaction to the Varicella vaccine, Plaintiff's Complaint fails to establish the first element of a prima facie case of employment discrimination based on disability under the NMHRA. Accordingly, Plaintiff's claim for discrimination based on his disability cannot proceed under these allegations and is dismissed without prejudice.

    *ii.*    *Discrimination Based on Plaintiff's Serious Medical Condition Under the NMHRA.*

    A serious medical condition can serve as the basis for a discrimination claim asserted under the NMHRA. *See* NMSA 1978, § 28–1–7(A). A "serious medical condition" is defined under the New Mexico Administrative Code as "a serious health-related impairment other than a disability, which substantially limits one or more of an individual's major life activities, as 'major life activities' is defined within these rules." NMAC 9.1.1.7(Z). Significantly, the definition of a "serious medical condition" applicable to the NMHRA requires the Plaintiff to demonstrate that his serious medical condition substantially limits at least one of Plaintiff's major life activities.

    Plaintiff alleges that the nerve damage he suffered as a reaction to the Varicella vaccine constitutes a serious medical condition. Doc. 15, at ¶ 64. However, as discussed previously, Plaintiff's Complaint fails to identify a major life activity that is limited by Plaintiff's serious medical condition. Without evidence permitting this Court to infer that Plaintiff's serious medical condition limits a major life activity, Plaintiff has not pled enough facts in his Complaint to plausibly allege his serious medical condition falls within the NMHRA's definition.

    Therefore, because Plaintiff failed to identify a single major life activity that was substantially limited by Plaintiff's serious medical condition, Plaintiff's Complaint fails to establish the first element of a prima facie case of employment discrimination based on a serious

medical condition under the NMHRA. Accordingly, Plaintiff's claim for discrimination based on his serious medical condition cannot proceed as alleged and is dismissed without prejudice.

    *iii.*    *Retaliation Based on Plaintiff's Serious Medical Condition or Disability Under the NMHRA.*

Plaintiff further alleges in Count I of his Complaint that Defendant retaliated against him based on Plaintiff's serious medical condition or disability.[6] Doc. 15 at ¶ 60.  To plead a prima facie claim of retaliation under the NMHRA, the Plaintiff "must establish 'that (1) he or she engaged in a protected activity, (2) he or she suffered a material adverse action, and (3) there was a causal connection between the protected activity and the adverse action.'" *Muffoletto v. Christus St. Vincent Reg'l Med. Ctr.*, 157 F.Supp.3d 1107, 1117 (D.N.M. 2015) (quoting *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015)). "An employee's request that his employer provide him an accommodation for a disability constitutes a protected activity." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018).

To support Plaintiff's claim, Plaintiff alleges that he was terminated by Defendant for submitting exemption requests from Defendant's vaccine mandate. Doc. 15 at ¶ 110. Although, Plaintiff fails to clearly identify the protected activity Plaintiff engaged in, the Court presumes the Plaintiff's protected activity to be his submission of exemption requests to Defendant's vaccine mandate. Therefore, the Plaintiff has sufficiently pled the first element of a retaliation claim under the NMHRA. *See Lincoln*, 900 F.3d at 1209. Plaintiff also sufficiently pled the second element of suffering an adverse employment action, which was Plaintiff's termination. However, Plaintiff's

---

[6] As discussed previously, Plaintiff did not plead sufficient facts to plausibly allege he suffers from either a serious medical condition or a disability under the meaning of the NMHRA. *See supra* A.1.i.-ii. However, because the framework for a NMHRA retaliation claim does not require this Court to make a preliminary finding of whether the Plaintiff suffers from a serious medical condition or disability, the Court abstains from doing so for the purpose of Plaintiff's NMHRA retaliation claim.

claim fails to demonstrate causation. Plaintiff alleges that being terminated in October of 2021 constitutes sufficient proof of causation, even though Plaintiff submitted his exemption requests two and a half months earlier in July 2021. Under Tenth Circuit precedent, "two months and one week" has been determined to be too extensive of a time period "to establish causation by temporal proximity alone." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004). Plaintiff failed to plead any other facts besides the timing of his termination in support of the causation element.

Further, in a recent case issued by another court in the District of New Mexico, a similar claim by an employee who was terminated for failing to adhere to an employer's mandatory COVID-19 vaccine policy was also found deficient in proving causation. *See Duffee v. T-Mobile USA Inc.*, No. 1:23-cv-00536-MIS-LF, slip op. at *4, 2023 WL 6391376 (D.N.M. 2023). In *Duffee,* the court determined that the plaintiff was not fired because of her disability which prevented her from taking the COVID-19 vaccine, but instead because of her failure to adhere to the mandatory COVID-19 vaccine policy. *Id.*

Therefore, without facts showing causation between Plaintiff's medical exemption requests and his termination two and a half months later, temporal proximity is insufficient on its own to satisfy the third element of a prima facie case of retaliation under the NMHRA. Accordingly, Plaintiff's retaliation claim regarding his disability is dismissed without prejudice.

### 2) <u>Plaintiff's Failure to Exhaust his Administrative Remedies Regarding his Discrimination and Retaliation Claim Relating to his Sincerely Held Religious Beliefs.</u>

In Defendant's motion to dismiss, Defendant argues that this Court lacks subject matter jurisdiction over Plaintiff's discrimination and retaliation claims regarding Plaintiff's sincerely held religious beliefs because he failed to exhaust his administrative remedies prior to bringing his action in this Court. Defendant maintains that a complainant of employment discrimination or retaliation in violation of the NMHRA must strictly adhere to the administrative procedure

contained in the NMHRA prior to filing an action in federal court. Doc. 25-1 at 6-7. Defendant

argues, and Plaintiff concedes, that Plaintiff failed to indicate on his charges of discrimination filed

with the EEOC and the NMHRB that Plaintiff was claiming discrimination or retaliation on the

grounds of religion. *Id.* at 6; Doc. 15 at ¶ 69.[7] Defendant argues that Plaintiff's failure to properly

give notice of his religious discrimination and retaliation claims constitutes an absolute bar to

Plaintiff's relief under the NMHRA as Plaintiff cannot retroactively alter his charges of

discrimination and the time for Plaintiff to file additional charges of discrimination expired on July

28, 2022. Doc. 25-1 at 8.

Plaintiff alleges that his sincerely held religious beliefs prevent him from receiving the

COVID-19 vaccine. According to Plaintiff's Complaint, "Plaintiff may not put an experimental

drug into his body, particularly one that is developed, tested, and/or produced with technology that

and individual deems morally repugnant." Doc. 15 at ¶ 32. While Plaintiff submitted a request to

Defendant to be exempt from Defendant's COVID-19 vaccine mandate on the grounds that his

sincerely held religious beliefs prevent him from receiving the COVID-19 vaccine, Plaintiff admits

he failed to claim discrimination and retaliation on the grounds of Plaintiff's religion on the

*charges of discrimination* he filed with the EEOC and the NMHRB. *Id.* at ¶ 32 and 69. Plaintiff

notes that he intends to amend his charges of discrimination but fails to cite any avenue for

---

[7] Plaintiff alleges that his sincerely held religious beliefs prevent him from receiving the COVID-19 vaccine. According to Plaintiff's Complaint, "Plaintiff may not put an experimental drug into his body, particularly one that is developed, tested, and/or produced with technology that and individual deems morally repugnant." Doc. 15 at ¶ 32. While Plaintiff submitted a request to Defendant to be exempt from Defendant's COVID-19 vaccine mandate on the grounds that his sincerely held religious beliefs prevent him from receiving the COVID-19 vaccine, Plaintiff admits he failed to claim discrimination and retaliation on the grounds of Plaintiff's religion on the charges of discrimination he filed with the EEOC and the NMHRB. *Id.* at ¶ 32 and 69. Plaintiff notes that he intends to amend his charges of discrimination but fails to cite any avenue for amending his charges after the applicable filing period for his discrimination and retaliation claims expired nine months prior to the filing of his Complaint.

amending his charges after the applicable filing period for his discrimination and retaliation claims expired nine months prior to the filing of his Complaint.

Under Tenth Circuit precedent, "a plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). Further, "the failure to mark a particular box [on the charge of discrimination] creates a presumption that the charging party is not asserting claims represented by that box." *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (citing *Gunnell v. Utah Valley State Coll.* 152 F.3d 1253, 1260 (10th Cir. 1998)). The Tenth Circuit has permitted plaintiffs to rebut this presumption created by failing to check an applicable box on a charge of discrimination so long as "[t]he charge … contain[s] facts concerning the discriminatory and retaliatory actions underlying each claim." *Id.*

Here, Plaintiff failed to indicate religious discrimination on either charge of discrimination that he properly filed with the EEOC and the NMHRB. Doc. 25-2, exs. C; D. The charges of discrimination filed by Plaintiff with the EEOC and NMHRB fail to rebut the presumption created by Plaintiff when he failed to check the box on his charges of discrimination for discrimination and retaliation on account of his religion. The narrative portions of Plaintiff's charges of discrimination do not contain any allegations regarding his religion and fatally do not mention anywhere on the faces of his charges of discrimination that he requested a religious exemption from Defendant's vaccine mandate. Under Tenth Circuit precedent, Plaintiff simply failed to properly exhaust his administrative remedies, as required by law, regarding his religious discrimination and retaliation claims. Because Plaintiff's claim became time-barred to file additional charges with the EEOC and NMHRB on August 3, 2022, and Plaintiff cannot

retroactively amend his charges, Plaintiff's claims for discrimination and retaliation on account of his religion in violation of the NMHRA are dismissed with prejudice.[8]

**B. Defendant's Motion to Dismiss Count II of Plaintiff's Complaint for Breach of Employment Contract is Granted.**

In Defendant's motion to dismiss, Defendant argues that Plaintiff fails to state a claim for breach of an employment contract with Defendant. Doc. 25-1 at 19. Defendant claims that Plaintiff was an at-will employee while employed by Defendant. *Id*. Further, Defendant maintains that its explicit employment policy states that "employment at Coherus is at will" and any changes to an employment contract with Defendant must be made in writing and signed by Defendant's Chief Executive Officer. *Id.* at 21; Ex. A.

Plaintiff claims that he and Defendant were parties to an implied employment contract. Doc. 15 at 83. Plaintiff alleges that his employment with Defendant was not at-will and was instead modified by verbal representations made to Plaintiff by Defendant's agents which led Plaintiff to believe he would only be fired for good cause. Doc. 15 at ¶ 88. Plaintiff further alleges that Defendant breached the modified employment contract when Defendant terminated Plaintiff "absent [non]compliance with [Defendant's] policies, procedures, and rules." *Id.* at ¶ 83.

---

[8] Plaintiff contests the fact that he cannot retroactively amend his charges of discrimination with the EEOC or the NMHRB. However, Plaintiff has consistently been unable to identify a mechanism that would allow amendment of his charges of discrimination, only that he could resubmit his charges of discrimination. *See* Mot. Hr'g Tr., January 8, 2024 at 17:21-25 (this Order cites to the court reporter's unofficial transcript. All page citations are subject to change on the official edited version of the transcript.) However, at the time of Plaintiff's resubmission (June 16, 2023), the 300-day window to file Plaintiff's charges had already expired on August 3, 2022. *See* NMSA 1978, § 28-1-10(A) ("All complaints shall be filed with the division within three hundred days after the alleged act was committed."). Therefore, because it is impossible for Plaintiff's resubmission to counter the expiration of his filing window, Plaintiff's claim is dismissed with prejudice.

Both parties correctly state that the default rule in New Mexico is for all employment contracts to be "terminable at the will of either party unless there is an express contractual provision stating otherwise." *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P.2d 776, 779 (1993). Certainly, New Mexico courts have consistently recognized that "an employer can create an implied employment contract based on representations in an employment manual or other practices." *Gonzales v. City of Albuquerque*, 849 F.Supp.2d 1123, 1150 (D.N.M 2011). However, the promises or representations made must be "sufficiently specific" to support a finding of an implied contract. *Hartbarger*, 115 N.M. at 672, 857 P.2d at 783. Further, the reasonableness of an employee's reliance on any expectation created by an employer's representations or conduct is "measured by just how definite, specific, or explicit" the representations or conduct the employee relied on were. *Id.* at 783. "If the alleged employer's promise is not sufficiently explicit, the courts will not find an implied contract." *Gonzales*, 849 F.Supp.2d at 1150; *Gormley v. Coca–Cola Enters.*, 2004–NMCA–021, ¶ 20, 135 N.M. 128, 135, 85 P.3d 252, 259 ("To support the existence of an implied contract, an oral representation must be sufficiently explicit and definite.").

Plaintiff's Complaint provides no specificity regarding what representations Plaintiff alleges Defendant's agents made to him, the identity of those agents, or when the representations were made. Instead, Plaintiff merely states that agents of Defendant made representations that Plaintiff would not be fired unless for good cause. In the absence of any factual support for Plaintiff's allegations, Plaintiff's claim for breach of an implied employment contract cannot proceed.[9] Accordingly, Count II of Plaintiff's claim is dismissed without prejudice.

---

[9] In fact, the parties' briefing seems to only provide support for the Defendant's employment policies which specifically prohibit the type of oral modifications to employment contracts that Plaintiff alleges he had with the Defendant. Defendant's employment policy, which was signed by the Plaintiff, requires any modification to an employment contract to be made by Defendant's CEO in writing. Doc. 25-1 at 21; Doc. 15-2, ex. A. The fact that an employer has policies forbidding the

**C. Defendant's Motion to Dismiss Count III of Plaintiff's Complaint for Breach of the Implied Covenant of Good Faith and Fair Dealing is Granted.**

Count III of Plaintiff's Complaint alleges that Defendant breached the "implied covenant of good faith and fair dealing" when "Defendant wrongfully terminated Plaintiff" absent any misconduct on Plaintiff's behalf. Doc. 15 at ¶¶ 104, 106. Defendant alleges that because there was no modification of Plaintiff's at-will employment status with Defendant, there was no breach of contract by Defendant. Doc. 25-1 at 22. Without a breach of contract claim, Defendant argues, a cause of action for breach of the implied covenant of good faith and fair dealing cannot survive. *Id.*

In reply to Defendant's argument, Plaintiff does not dispute that his claim for breach of the implied covenant of good faith and fair dealing relies on an accompanying sufficient allegation of breach of contract. Doc. 32 at 20.  Instead, Plaintiff merely asserts that his breach of contract claim was pled in his Complaint with sufficient plausibility. *Id.*

New Mexico courts "do not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship" absent a finding of an implied contract term that modifies an employee's at-will status. *Melnick v. State Farm Mut. Auto. Ins. Co.*, 1988-NMSC-012, ¶ 13, 106 N.M. 726, 730. Because Plaintiff failed to adequately state a claim for breach of an implied employment contract, at this time, Plaintiff's claim for breach of the implied

---

modification of an employment contract on its own is not fatal to Plaintiff's claim but indicates that Plaintiff's belief or reliance on the implied contract term is likely unreasonable. *See Chavez-Acosta v. Sw. Cheese Co., LLC*, 610 F. App'x 722, 733 (10th Cir. 2015) ("Given the repeated written acknowledgments of [the employee's] at-will status and the company policy prohibiting oral modification of that status, we find unreasonable any belief [the employee] may have harbored that her status as an at-will employee had morphed into something different.").

covenant of good faith and fair cannot proceed. Accordingly, Count III of Plaintiff's Complaint is also dismissed without prejudice.

**D. Defendant's Motion to Dismiss Count IV of Plaintiff's Complaint for Common Law Retaliation is Granted.**

Count IV of Plaintiff's Complaint alleges a cause of action for common law retaliation under New Mexico state law against Defendant. Defendant argues in its motion to dismiss that Plaintiff failed to identify a clearly articulated public policy which Plaintiff's actions advanced and fails to demonstrate causation between any of Plaintiff's actions and his eventual termination by Defendant. Doc. 25-1 at 17. Defendant proposes that Plaintiff's decision to request an exemption from Defendant's vaccine mandate reflects a personal, private choice which does not constitute an action in furtherance of public policy. *Id.* Defendant maintains that Plaintiff's failure to adequately plead a public policy advanced by his conduct and a causal connection between his conduct and his termination is fatal to Plaintiff's claim for common law retaliation.

Plaintiff alleges Defendant's vaccine mandate required Plaintiff to "disclose sincerely held religious beliefs … and Plaintiff's serious medical condition." Doc. 15 at ¶ 109. As a result of Plaintiff's disclosures, Plaintiff alleges Defendant retaliated against him by terminating him. *See id.* at 112-14. Plaintiff argues that Plaintiff's exemption request submitted to Defendant constituted an action in furtherance of the public policy rationales of promoting "a workplace free from religious [and] medical discrimination" and "maintaining bodily integrity and medical choice." Doc. 32 at 13-14. Plaintiff argues that causation is demonstrated because Plaintiff's disclosure of his serious medical condition and sincerely held religious beliefs "were contributing and motivating factors behind Defendant's decisions to take wrongful employment actions against Plaintiff." *Id.* at 14.

To state a prima facie claim for common law retaliation under New Mexico law in the context of retaliatory discharge, an "employee must (1) identify a specific expression of public policy which the discharge violated; (2) demonstrate that he or she acted in furtherance of the clearly mandated public policy; and (3) show that he or she was terminated as a result of those acts." *Lihosit v. I&W, Inc.*, 1996–NMCA–033, ¶ 7, 121 N.M. 455, 257. The New Mexico Supreme Court categorized the permissible types of clear public policies which satisfy the first prong of the retaliatory discharge framework in *Sherrill v. Farmers Insurance Exchange*. 2016-NMCA-056, ¶ 15, 374 P.3d 723, 728. A plaintiff may identify a statute that

> (1) provide[s] both that an employer may not terminate employees on particular grounds and a remedy in the event of such termination, (2) prohibit[s] an employer from firing an employee on specified grounds without providing a specific remedy for an employee who has been so terminated, or (3) define[s] a public policy that governs the employee's conduct, but does not provide the employee with either a right not to be terminated in violation of that policy, or a remedy for such termination in which case the employee must seek judicial recognition of both the right and the remedy.

*Id.* In the absence of a statute, a court "may determine that, based on other relevant statutes or an implicit public policy, both a right and a remedy should be recognized." *Id.*

Plaintiff alleges the public policy implemented by his actions are "a workplace free from religious discrimination, medical discrimination, and discrimination based upon other protected class distinctions … maintaining personal bodily integrity and medical choice." Doc. 15 at ¶ 111-14. The action Plaintiff took in furtherance of the previously stated public policies was presumably refusing the COVID-19 vaccine.

Plaintiff's argument that his choice to refuse the COVID-19 vaccine furthers a clearly articulated public policy fails. First, Plaintiff does not successfully identify a clearly articulated public policy. Plaintiff does not cite a statute or legislative enactment which clearly states his public

policy rationales. Nor does Plaintiff state any relevant decisions from New Mexico state courts or the Tenth Circuit articulating Plaintiff's public policy rationales.

Second, the New Mexico Supreme Court has previously refused to find an employee's failure to adhere to its employer's policies to be conduct in furtherance of public policy. *Paca v. K-Mart Corp.*, 1989-NMSC-034, ¶ 10, 108 N.M. 479, 481. Additionally, the Tenth Circuit has affirmed district courts' holdings that a protected action that does not serve to benefit the public at large is not an action in furtherance of public policy. *Jeffers v. Butler*, 1991 WL 59365 at *1 (10th Cir. 1991).

Given the precedent of the New Mexico state courts and the Tenth Circuit, Plaintiff's refusal to take the COVID-19 vaccine is not an action in furtherance of public policy. First, Plaintiff's refusal to take the COVID-19 vaccine constitutes a violation of Defendant's policy, (Defendant's vaccine mandate), which applied to all its employees, and as discussed previously, a violation of an employer's policy is not an action in furtherance of public policy. Second, Plaintiff's refusal to take the COVID-19 vaccine was not an action that would benefit the public at large. Instead, refusing to take the COVID-19 vaccine was a private decision that would only serve to benefit the Plaintiff. Given the private nature of Plaintiff's action and Plaintiff's failure to identify any statutes or court decisions supporting Plaintiff's stated public policy rationales, Plaintiff's Complaint has not satisfied the first element of the retaliatory discharge framework. Accordingly, Count IV of Plaintiff's Complaint is dismissed without prejudice.

**E.   Defendant's Motion to Dismiss Count V of Plaintiff's Complaint for Intentional Infliction of Emotional Distress is Granted.**

Count V of Plaintiff's Complaint alleges that Defendant's discriminatory and retaliatory conduct towards Plaintiff based on Plaintiff's serious medical condition and sincerely held religious beliefs constitutes intentional infliction of emotional distress ("IIED"). In Defendant's

motion to dismiss, Defendant argues that Plaintiff's IIED claim fails because Plaintiff failed to identify extreme or outrageous conduct by Defendant or its agents and failed to sufficiently plead Plaintiff's severe emotional distress that resulted from Defendant's actions. Doc. 25-1 at 24.

Plaintiff alleges that Defendant used "its power to coerce Plaintiff" into taking the COVID-19 vaccine, which could have exacerbated Plaintiff's serious medical condition or disability and violate Plaintiff's sincerely held religious beliefs. Doc. 15 at ¶ 21-22. As a result of Defendant's conduct, Plaintiff allegedly "suffered severe emotional distress, including but not limited to severe Post-Traumatic Stress Disorder." *Id.* at ¶¶ 54, 121.

To allege a prima facie claim for IIED under New Mexico law, a plaintiff must establish "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Hakkila v. Hakkila*, 112 N.M. 172, 182, 812 P.2d 1320, 1330 (N.M. Ct. App. 1991). Both parties accurately state that New Mexico courts have found termination of an employee to "support a claim of intentional infliction of emotional distress" but "only in extreme circumstances." *Stock v. Grantham*, 1998-NMCA-081, ¶ 31, 125 N.M. 564, 574. Specifically, the termination must be "conducted in a manner that is 'utterly intolerable in a civilized society.'" *Id.* ¶ 35 (citing *Stieber v. J. Pub. Co.*, 120 N.M. 270, 274, 901 P.2d 201, 205 (N.M. Ct. App. 1995)).

Plaintiff's Complaint fails to allege the Defendant engaged in such severe and intolerable conduct required to plead a cause of action for IIED. As the New Mexico Court of Appeals has stated, "being fired is a common occurrence that rarely rises to the level of being 'beyond all possible bounds of decency' and 'utterly intolerable in a civilized community.'" *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, F, 617, 41 P.3d 333, 338 (2001). Plaintiff failed to allege any facts that

indicate his termination was accompanied by outrageous or severe conduct. Plaintiff was terminated via an email and was offered a severance package by Defendant. Based on Plaintiff's recitation of the facts of his termination, there was no outrageous or severely harmful conduct that could have plausibly been the cause of Plaintiff's severe emotional distress, besides simply being terminated. Without facts alleging the Defendant engaged in outrageous or severe conduct in its treatment of Plaintiff, the Plaintiff has not sufficiently pled an IIED claim. Accordingly, Count V of Plaintiff's Complaint is dismissed.

## IV.
## CONCLUSION

For the reasons stated above, Plaintiff's claim for discrimination and retaliation in violation of the NMHRA on the basis of Plaintiff's sincerely held religious beliefs is dismissed with prejudice. The Court further grants Defendant's motion to dismiss Plaintiff's remaining claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because Plaintiff has failed to plausibly plead the prima facie causes of action for any of Plaintiff's claims.

**IT IS THEREFORE ORDERED** that Defendant Coherus BioSciences, Inc.'s Motion to Dismiss under Rule 12(b)(1) and 12(b)(6) (**Doc. 25**) is **GRANTED**.

**IT IS SO ORDERED.**

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MARK W. SPINELLI,

     Plaintiff,

v.                                           1:23-cv-00361-DHU-KK

COHERUS BIOSCIENCES, INC.,

     Defendant.

## ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

## I.
## BACKGROUND

Before the Court is Mark Spinelli's ("Plaintiff") Motion to Alter or Amend Judgment of the Court's Memorandum Opinion and Order Entered April 26, 2024 as to Counts I, IV and V ("Motion") (Doc. 40). Having considered the Motion, the record before the Court, and the applicable law, the Court will deny Plaintiff's Motion.

The parties are familiar with the facts and procedural history of the suit, described in the Court's Memorandum Opinion and Order (Doc. 39). In summary, Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New Mexico Human Rights Bureau ("NMHRB") after his employer terminated employment because Plaintiff refused to vaccinate against COVID-19. Doc. 39 at 2-4.

Plaintiff filed his Amended Complaint before this Court on May 24, 2023, alleging employment discrimination and retaliation in violation of the New Mexico Human Rights Act ("NMHRA") based on a serious medical condition or disability, his sincerely held religious beliefs, breach of his employment contract, breach of the implied covenant of good faith and fair dealing, retaliation at common law, and intentional infliction of emotional distress. Doc. 39 at 1. Coherus

Biosciences Inc. ("Defendant") filed its Motion to Dismiss on June 7, 2023, raising two arguments under Fed. R. Civ. P. 12. First, Defendant argued that this Court lacked subject matter jurisdiction under rule 12(b)(1) as to Count I, and second, Defendant also raised 12(b)(6) challenges to the remaining claims. After hearing arguments on the Motion on January 8, 2024, considering the pleadings and applicable law, the Court issued a Memorandum Opinion and Order Granting Defendant's Motion to Dismiss.

## II.
## LEGAL STANDARD

Plaintiff's Motion to Alter or Amend Judgment under Fed. R. Civ. P. 59(e) is interpreted as a request for reconsideration. A motion for reconsideration is not recognized by the Federal Rules of Civil Procedure. *Clough v. Rush*, 959 F.2d 182, 184 n.4 (10th Cir. 1992). However, "Courts may treat motions for reconsideration as a rule 59(e) motion when the movant files within twenty-eight days of a court's entry of judgment." *United States v. Lewis*, 432 F. Supp. 3d 1237, 1269-70 (D.N.M. 2020) (citing *Price v. Philpot*, 420 F.3d 1158, 1167 n.9. (10th Cir. 2005)). Whether a court should consider a motion under rule 59 is a question of timing and on the reasons expressed by the movant. *Lewis*, 432 F. Supp. 3d at 1270. When a motion involves a court's reconsideration of matters encompassed in a decision on the merits, then the motion is considered under rule 59. *Id*.

"[A] motion for reconsideration is an extreme remedy to be granted in rare circumstances[.]" *Brumark Corp. v. Samson Resources Crop.*, 57 F.3d 941, 948 (10th Cir. 1995). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A rule 59 motion is not an appropriate vehicle to reargue an issue previously addressed by the court when the motion simply advances new arguments or facts previously available. *Servants of Paraclete*,

204 F.3d at 1012. "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.*

### III.
### DISCUSSION

**A.  Plaintiff's Motion to Reconsider Its Dismissal of Count I**

**1.  Plaintiff Has Not Presented an Intervening Change in the Controlling Law Warranting Reconsideration**

Plaintiff argues that lack of exhaustion and untimeliness do not affect subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and that the Court erred by dismissing his claim with prejudice. Doc. 40 at 5. The Court engaged in analysis regarding the scope of a Plaintiff's administrative complaint in federal court. Doc. 39 at 13. The case law is clear on the matter, that a federal court's jurisdiction is limited by the scope of the administrative investigation that can reasonably be expected to follow the Charge of Discrimination submitted to the EEOC. *See MacKenzie v. City & Cnty. Of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). There have been no changes in the controlling law.

**2.  Plaintiff Has Not Presented New Evidence That Was Previously Unavailable Warranting Reconsideration**

This Court found that Plaintiff admitted he failed to claim discrimination and retaliation on religious grounds in both the EEOC and NMHRB charges, Doc. 39 at 12, thereby limiting the scope of administrative investigation and the federal court's jurisdiction. Plaintiff asserts in his present Motion that the EEOC has allowed him to resubmit his amended Charge of Discrimination by adding the religious discrimination claim. Doc. 40 at 7. However, Plaintiff's Exhibit 2 to his Motion makes clear that the EEOC representative wrote "[w]e are unable to amend the charge, and it is already closed." Doc. 40 Ex. 2. In response, Plaintiff resubmitted the Charge of Discrimination now adding the religious discrimination claim. *Id*. While the Plaintiff has resubmitted his claim to

the EEOC, it still falls out of this Court's jurisdiction because the Court reviews the Plaintiff's

Amended Complaint for 12(b) purposes, which was filed on May 24, 2023, and not the Plaintiff's

EEOC resubmission which was filed on August 1, 2023. Doc. 40 Ex. 2.

### 3. Plaintiff Does Not Present a Need to Correct Clear Error or to Prevent Manifest Injustice.

Clear error exists when a factual finding lacks any factual support in the record, or after

reviewing the evidence, the record convincingly shows that the Court made a mistake. *See United

States v. Rico*, 3 F.4th 1236, 1238 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 302 (2021) (citing

*United States v. Hooks*, 551 F.3d 1205, 1216 (10th Cir. 2009). District Courts within the Tenth

Circuit define manifest injustice as "'more than just a clear and certain prejudice to the moving

party, but also a result that is fundamentally unfair in light of governing law.'" *Navarette v. Corizon

LLC*, No. 18-CV-0057 WJ/SMV, 2020 WL 209317, at *2 (D.N.M. Jan. 14, 2020) (citations

omitted). "Where reconsideration is sought due to manifest injustice, the moving party can only

prevail if it demonstrates that the injustice from the case is 'apparent to the point of being

indisputable.'" *Tri-State Truck Ins., Ltd. v. First Nat. Bank of Wamego*, No. 09-4158-SAC, 2011

WL 4691933, at *3 (D. Kan. Oct. 6, 2011). Having reviewed applicable law regarding a federal

court's jurisdiction of an underlying administrative charge and law regarding manifest injustice

and clear error standards, the Court determines that Plaintiff has not demonstrated either clear error

or manifest injustice warranting reconsideration under its 12(b)(1) analysis. Plaintiff's present

Motion as to Count I is denied.

Plaintiff also argues in his present Motion that the Court erred in dismissing Count I, under

Fed. R. Civ. P. 12(b)(6), Doc. 40 at 9, because "he pled sufficient facts to draw a reasonable

inference that his disability substantially limited a major life activity to prove that he is disabled

under the NMHRA." Doc. 40 at 10. Plaintiff's argument does not present (1) a change in

controlling law; (2) new evidence previously unavailable; or (3) the need to correct clear error or prevent manifest injustice. Accordingly, Plaintiff's Motion to Reconsider Dismissal as to Count I under the Court's 12(b)(6) analysis is also denied.

**B.  Plaintiff's Motion to Reconsider Its Dismissal of Count IV**

Plaintiff argues that his Count IV claim, common law retaliation, should not be dismissed under 12(b)(6) because the NMHRA is a "mandated policy" sufficient to support a claim for retaliatory discharge, or that the court may determine that based on other statutes, an implicit policy should be recognized. Doc. 40 at 24-25.

This Court discussed in its Memorandum Opinion and Order that Plaintiff's argument that he was retaliated against for refusing the COVID-19 vaccine is not a clearly articulated expression of public policy. Doc. 39 at 18. Plaintiff may not use this Motion to reargue an issue previously addressed by the Court when the Motion simply advances new arguments or facts previously available. *Servants of Paraclete*, 204 F.3d at 1012. Presently, Plaintiff attempts to argue that the NMHRA is public policy supporting a claim of retaliation and that Defendant violated the statute by discharging Plaintiff for "sincerely held religious beliefs[,]" a matter previously heard by this Court. Doc. 40 at 25. Accordingly, Plaintiff's Motion to Reconsider dismissal of Count IV is denied.

**C.  Plaintiff's Motion to Reconsider Its Dismissal of Count V**

Plaintiff argues that the claim for Intentional Infliction of Emotional Distress should not have been dismissed under 12(b)(6) because "Defendant's conduct was extreme and outrageous when it abused its authority" for imposing a vaccine requirement for employees. Doc. 40 at 27. Again, Plaintiff attempts to further arguments that have previously been addressed by this Court

and offers no additional showing warranting reconsideration. Plaintiff's Motion to Reconsider Dismissal as to Count V is denied.

**D.  Plaintiff's Request to File a Second Amended Complaint**

Plaintiff's motion to file a second amended complaint is denied because it would be futile and subject to dismissal. [T]he grant or denial of an opportunity to amend is within the discretion of the District Court[]." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv.'s Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

First, as to Plaintiff's 12(b)(1) argument, Plaintiff's second amended complaint would not change the scope of his original NMHRB and EEOC charges where he failed to claim religious discrimination. Doc. 15 at ¶ 32, 69. Plaintiff's Exhibit 2 makes clear that the EEOC representative wrote "[w]e are unable to amend the charge, and it is already closed." Doc. 40, Ex. 2. Instead, Plaintiff resubmitted the claim, which is not the same as amending a live claim. As such, an amended complaint does not change this Court's lack of jurisdiction to hear the matter and would make the amended complaint futile. Second, Plaintiff's resubmission of a second amended complaint would also be futile because as this Court has addressed above, the law on the matter has not changed, there is no new evidence, and there is no clear error or manifest injustice making an amended complaint futile and subject to dismissal.

**IV.**
**CONCLUSION**

For the reasons stated above, Plaintiff's motion to alter or amend judgment as to dismissal of Counts I, IV, and V of his amended complaint is denied. Plaintiff's request to file a second amended complaint is also denied.

6

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Alter or Amend Judgment as to the Dismissal of Counts I, IV, and V (Doc. 40) is **DENIED**.

**IT IS SO ORDERED.**

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE