## Case No. 24-2179

*In the*

# United States Court of Appeals

*for the*

# Tenth Circuit

---

MARK W. SPINELLI,

*Plaintiff-Appellant,*

v.

COHERUS BIOSCIENCES, INC.,

*Defendant-Appellee.*

---

*Appeal from a Decision of the United States District Court for the
District of New Mexico-Albuquerque
Case No. 1:23-CV-00361-DHU-KK · Honorable David Urias, U.S. District Judge*

# ANSWERING BRIEF
# [ORAL ARGUMENT REQUESTED]

RYAN S. CARLSON, ESQ.
IMAN A. WELLS, ESQ.
NUKK-FREEMAN & CERRA, PC
26 Main Street, Suite 301
Chatham, New Jersey 07928
(973) 665-9100 Telephone
rcarlson@nfclegal.com
iwells@nfclegal.com

FAITH KALMAN REYES, ESQ.
VERDI & OGLETREE PLLC
150 Washington Avenue, No. 201
Santa Fe, New Mexico 87501
(505) 660-0749 Telephone
freyes@verdiogletree.com

*Attorneys for Appellee Coherus Biosciences, Inc.*

 

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Fed. R. Civ. P. 26.1(a), 28(a)(1), and 28(b), Appellee Coherus Biosciences, Inc. ("Coherus") states that it is a nongovernmental corporate party and has no parent corporation. No publicly held corporation owns 10% or more of its stock.

# <u>TABLE OF CONTENTS</u>

**Page**

<u>TABLE OF CONTENTS</u>.................................................................i

<u>ADDENDUM TABLE OF CONTENTS</u> ................................. iii

<u>TABLE OF AUTHORITIES</u> ........................................vi

<u>STATEMENT OF RELATED CASES</u> ................................. xii

<u>COUNTER-STATEMENT OF JURISDICTION</u> ......................................1

<u>COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>..................1

<u>COUNTER-STATEMENT OF THE CASE</u> ......................................1

I.   <u>NATURE OF THE CASE</u> ......................................1

II.  <u>COURSE OF PROCEEDINGS AND DISPOSITION BELOW</u>...................3

    A.   <u>Spinelli's Employment With Coherus, Charge Of Discrimination, And Original Complaint</u>..............................3

    B.   <u>Coherus's Motion To Dismiss The Amended Complaint</u>....................5

    C.   <u>The District Court's Dismissal Of Spinelli's Amended Complaint</u> ......................................6

    D.   <u>Spinelli's Motion To Alter Or Amend The Court's Grant Of Appellee's Motion To Dismiss Amended Complaint</u>......................7

    E.   <u>The District Court's Denial Of The Motion To Alter Or Amend</u> ......................................9

    F.   <u>Notice of Appeal</u> ......................................10

<u>SUMMARY OF ARGUMENT</u> ......................................10

<u>ARGUMENT</u> ......................................12

I.   <u>THE DISTRICT COURT CORRECTLY DISMISSED COUNTS I AND IV OF APPELLANT'S AMENDED COMPLAINT</u> ...................12

    A.   <u>Standard Of Review Of Dismissal Pursuant To Fed. R. Civ. P. 12(B)(6)</u> ......................................12

B.     The District Court Properly Applied The Twombly/Iqbal Standard In Dismissing Appellant's Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) ...................................................13

C.     The District Court Correctly Dismissed Appellant's NMHRA Disability/Serious Medical Condition Discrimination Claim.............16

     i.      Appellant's Reliance On Post Hoc Allegations Do Not Excuse His Failure To Allege A Disability/Serious Medical Condition As Defined By The NMHRA ....................18

     ii.     Appellant Confirms That The Amended Complaint Contains *No Allegations* That Appellant Has A NMHRA Covered Disability/Serious Medical Condition That Substantially Limits A Major Life Activity....................................................................................20

     iii.    The District Court Could Not Have Inferred A Substantially Limiting Disability/Serious Medical Condition Based On The Amended Complaint ........................22

     iv.    Appellant Is Not A Qualified Person With A Disability/Serious Medical Condition ......................................26

     v.     Appellant's Reliance On Inapposite Case Law Cannot Revive His Claims ....................................................27

D.     The District Court Correctly Dismissed Appellant's NMHRA Retaliation Claim...................................................................29

     i.      An Employer Enforcing A Facially Neutral COVID-19 Vaccine Policy Cannot Form The Basis Of A NMHRA Retaliation Claim ....................................................30

     ii.     Appellant's Waived Arguments As To Temporal Proximity Cannot Be Considered Nor Do They Establish Causation....................................................32

E.     The District Court Correctly Dismissed Appellant's Common Law Retaliation Claim ............................................................34

II.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING APPELLANT'S MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(E) AND REQUEST FOR LEAVE TO AMEND ........................................................38

A.    The Standard Of Review For The District Court's Denial Of Rule 59(E) Motion To Alter Or Amend Is Abuse Of Discretion ........................................................................38

B.    The District Court Did Not Abuse Its Discretion In Denying Appellant's Rule 59(E) Motion To Alter Or Amend .........................39

    i.    The District Court Properly Denied Reconsideration Of Appellant's Disability Discrimination And Retaliation Claims In Count I Of The Amended Complaint.......................40

    ii.   The District Court Properly Denied Reconsideration Of Appellant's Common Law Retaliation Claim In Count IV Of The Amended Complaint .........................................43

C.    The District Court Correctly Denied Appellant's Request for Leave to Amend the Amended Complaint..........................................44

    i.    Appellant's Failure To Meet His Burden Under Rule 59(E) Is Fatal To His Request For Leave To Amend...............44

    ii.   Even If Appellant Met His Burden Under Rule 59(E) And His Request For Leave Was Proper, The District Court Correctly Denied Leave Because Amendment Would Be Futile ........................................................45

CONCLUSION.................................................................................48

STATEMENT REGARDING ORAL ARGUMENT ...............................48

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT..................49

ADDENDUM

ADDENDUM TABLE OF CONTENTS

Anderson v. Textron Aviation, Inc.,
    No. 22-CV-01145-JAR-KGG, 2022 WL 15427625
    (D. Kan. Oct. 27, 2022) ...........................................................ADD-1

Beckerich v. St. Elizabeth Medical Center,
    No. 21-105-DLB-EBA, 2021 WL 4722915 (E.D. Ky. 2021)...............ADD-7

Bridges v. Houston Methodist Hospital,
    543 F. Supp. 3d 525 (S.D. Tex. 2021), aff'd.,
    No. 21-20311, 2022 WL 2116213 (5th Cir. June 12, 2022) .................ADD-9

iii

Calero v. Core Civic of Tennessee, LLC.,
    No. 1:20-CV-01015-KWR-KK, 2021 WL 1663711
    (D.N.M. Apr. 28, 2021) ...................................................................ADD-12

Chatterton v. Summit Food Servs., LLC,
    No. CV 12-0082 JCH/WPL, 2013 WL 12328899
    (D.N.M. Aug. 9, 2013) .....................................................................ADD-19

Chatterton v. Summit Food Services, LLC,
    No. CV 12-0082 JCH/WPL, 2013 WL 12328900
    (D.N.M. Sept. 3, 2013) ...................................................................ADD-26

Duffee V. T-Mobile USA Inc.,
    No. 1:23-CV-00536-MIS-LF, 2023 WL 6391376
    (D.N.M. Oct. 2, 2023) .....................................................................ADD-27

Duffee V. T-Mobile USA, Inc.,
    No. 23-2176, 2024 WL 1885567 (10th Cir. Jan. 5, 2024) .................ADD-32

Fallon v. CTSC, LLC,
    No. CIV. 13-00176 MV/ACT, 2013 WL 9853376
    (D.N.M. Sept. 26, 2013) ..................................................................ADD-33

Haskew v. Sw. Airlines Co.,
    No. CV 19-732 JAP/LF, 2020 WL 6781754
    (D.N.M. Nov. 18, 2020) ...................................................................ADD-44

Hughes v. Terminix Pest Control, Inc.,
    No. 23-30617, 2024 WL 3440465
    (5th Cir. July 17, 2024) ...................................................................ADD-51

Jorgenson v. Conduent Transport Solutions, Inc.,
    No. CV SAG-22-01648, 2023 WL 1472022
    (D. Md. Feb. 2, 2023) ......................................................................ADD-53

Jorgenson v. Conduent Transport Solutions, Inc.,
    No. 23-1198, 2023 WL 4105705 (4th Cir. June 21, 2023) ................ADD-58

Keenan-Coniglio v. Cumbre & Toltec Scenic Operating Comm.,
    -- F. Supp. 3d --, 2025 WL 684320 (D.N.M. Mar. 4, 2025) ..............ADD-59

Laufer v. Looper,
    No. 20-CV-0, 2475-NYW, 2021 WL 5299585
    (D. Col. Jan. 27, 2021).....................................................................ADD-91

Long v. E. New Mexico Univ. Bd. or Regents,
     No. CV 13-380 RB/SMV, 2015 WL 13667230
     (D.N.M. Jan. 26, 2015).........................................................................ADD-97

Mercer v. ViacomCBS/Paramount,
     No. 22 CIV. 6322 (LGS), 2024 WL 3553133
     (S.D.N.Y. July 26, 2024)....................................................................ADD-108

Neri v. Board of Education for Albuquerque Public Schools,
     No. CIV 19-8 JCH/SCY, 2022 WL 3998643
     (D.N.M. Sept. 1, 2022).....................................................................ADD-116

Neri v. Board of Education for Albuquerque Public Schools,
     No. CV 19-8 JCH/SCY, 2022 WL 4546250
     (D.N.M. Sept. 29, 2022)...................................................................ADD-147

Norman v. NYU Langone Health Sys.,
     492 F. Supp. 3d 154 (S.D.N.Y. 2020), aff'd.,
     No. 20-3624, 2021 WL 5986999 (2d Cir. Dec. 17, 2021) ...............ADD-154

Sullivan v. Am. Online, Inc.,
     No. CV 04-864 JH/DJS, 2005 WL 8163599
     (D.N.M. Aug. 23, 2005), aff'd., 219 F. App'x 720
     (10th Cir. 2007) ...............................................................................ADD-160

West v. Scott Laboratories, Inc.,
     No. 22-CV-07649-CRB, 2023 WL 2632210
     (N.D. Cal. Mar. 24, 2023).................................................................ADD-166

West v. Scott Laboratories, Inc.,
     No. 23-15502, 2023 WL 6172009 (9th Cir. Sept. 22, 2023).............ADD-172

CERTIFICATE OF DIGITAL SUBMISSION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Allen v. SouthCrest Hosp.,
  455 F. App'x 827 (10th Cir. 2011) ............................................................22, 27, 28

Anderson v. Textron Aviation, Inc.,
  No. 22-CV-01145-JAR-KGG, 2022 WL 15427625
  (D. Kan. Oct. 27, 2022) ..........................................................................................22

Anshutz Land and Livestock Co., Inc. v. Union Pac. R.R. Co.,
  820 F.2d 338 (10th Cir. 1987) ................................................................................18

Armour v. Universal Protection Servs.,
  724 F. App'x 63 (10th Cir. 2018) ...........................................................................45

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ................................................................................................13

Beckerich v. St. Elizabeth Medical Ctr.,
  563 F. Supp.3d 633 (E.D. Ky. 2021) .................................................................37, 38

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007) ................................................................................................13

Bridges v. Houston Methodist Hospital,
  543 F. Supp. 3d 525 (S.D. Tex. 2021), aff'd,
  No. 21-20311, 2022 WL 2116213 (5th Cir. June 12, 2022) .................................37

Calderon v. Kansas Dept. of Social & Rehabilitation Servs.,
  181 F.3d 1180 (10th Cir. 1999) ..............................................................................44

Calero v. Core Civic of Tennessee, LLC,
  No. 1:20-CV-01015-KWR-KK, 2021 WL 1663711 (D.N.M. Apr. 28,
  2021) .......................................................................................................................36

Castanon v. Cathey,
  976 F.3d 1136 (10th Cir. 2020) .........................................................................44, 46

Chatterton v. Summit Food Servs., LLC,
  No. CV 12-0082 JCH/WPL, 2013 WL 12328899 (D.N.M. Aug. 9, 2013),
  report and recommendation adopted, No. CV 12-0082 JCH/WPL, 2013
  WL 12328900 (D.N.M. Sept. 3, 2013) ...................................................................36

Chavez v. Qwest, Inc.,
   483 F. Supp. 2d 1103 (D.N.M. 2007) ....................................................35

Cohon ex. rel. Bass v. New Mexico Dept. of Health,
   646 F.3d 717 (10th Cir. 2011) ...............................................................19

Dennis v. Watco Co., Inc.,
   631 F.3d 1303 (10th Cir. 2011) .............................................................12

Duffee v. T-Mobile USA Inc.,
   No. 1:23-CV-00536-MIS-LF, 2023 WL 6391376
   (D.N.M. Oct. 2, 2023), appeal dismissed, No. 23-2176,
   2024 WL 1885567 (10th Cir. Jan. 5, 2024) .............................6, 26, 27, 31, 46, 47

Erickson v. Pardus,
   551 U.S. 89 (2007)..................................................................................22

Fallon v. CTSC, LLC,
   No. CIV. 13-00176 MV/ACT, 2013 WL 9853376
   (D.N.M. Sept. 26, 2013) ........................................................................17

Fifth Third Bancorp v. Dudenhoeffer,
   573 U.S. 409 (2014)...............................................................................15

Full Life Hospice, LLC v. Sebelius,
   709 F.3d 1012 (10th Cir. 2013)..............................................................46

Glenn v. First Nat'l. Bank,
   868 F.2d 368 (10th Cir. 1989).................................................................44

Gutierrez v. Sundancer Indian Jewelry, Inc.,
   1993-NMCA-156, 117 N.M. 41, 868 P.2d 1266.......................................35

Hale v. Harrison Cnty. Bd. of Supervisors,
   8 F.4th 399 (5th Cir. 2021)......................................................................24

Haskew v. Sw. Airlines Co.,
   No. CV 19-732 JAP/LF, 2020 WL 6781754 (D.N.M. Nov. 18, 2020)...........33, 34

Hughes v. Terminix Pest Control, Inc.,
   No. 23-30617, 2024 WL 3440465 (5th Cir. July 17, 2024).................24

James v. Platte River Steel Co.,
   113 F. App'x 864 (10th Cir. 2004).........................................................38

Jojola v. Chavez,
   55 F.3d 488 (10th Cir. 1995)..................................................................19

Jones v. Heaton,
    775 F. App'x 966 (10th Cir. 2019) ........................................................15

Jorgenson v. Conduent Transp. Sols., Inc.,
    No. CV SAG-22-01648, 2023 WL 1472022 (D. Md. Feb. 2, 2023),
    aff'd., No. 23-1198, 2023 WL 4105705 (4th Cir. June 21, 2023) .......................32

Kaylor v. Fields,
    661 F.2d 1177 (8th Cir. 1981) ..............................................................15

Kearney v. Dimanna,
    195 F. App'x 717 (10th Cir. 2006) ..................................................19, 21

Keenan-Coniglio v. Cumbre & Toltec Scenic Operating Comm.,
    -- F. Supp. 3d --, 2025 WL 684320 (D.N.M. Mar. 4, 2025) ................................33

Keller v. Bd. of Educ.,
    182 F. Supp. 2d 1148 (D.N.M. 2001) ....................................................16

Khalik v. United Air Lines,
    671 F.3d 1188 (10th Cir. 2012) .............................................................22

Laufer v. Looper,
    No. 20-CV-0, 2475-NYW, 2021 WL 5299585 (D. Col. Jan. 27, 2021) ..............45

Laul v. Los Alamos Nat'l. Labs,
    309 F. Supp. 3d 1119 (D.N.M. 2016), aff'd.,
    714 F. App'x 832 (10th Cir. 2017) ......................................................29

Little v. Budd Co., Inc.,
    955 F.3d 816 (10th Cir. 2020) ...................................................... 18-19, 33

Long v. E. New Mexico Univ. Bd. or Regents,
    No. CV 13-380 RB/SMV, 2015 WL 13667230 (D.N.M. Jan. 26, 2015) .......33, 34

Lyons v. Jefferson Bank & Trust,
    994 F.2d 716 (10th Cir. 1993) ...............................................................18

McDonald v. Kinder-Morgan, Inc.,
    287 F.3d 992 (10th Cir. 2002) ...............................................................19

Meiners v. Univ. of Kan.,
    359 F.3d 1222 (10th Cir. 2004) .............................................................34

Mercer v. ViacomCBS/Paramount,
    No. 22 CIV. 6322 (LGS), 2024 WL 3553133 (S.D.N.Y. July 26, 2024) ..............24

Neitzke v. Williams,
490 U.S. 319 (1989)..............................................................................................15

Nelson v. City of Albuquerque,
921 F.3d 925 (10th Cir. 2019)..............................................................................38

Neri v. Bd. of Educ. for Albuquerque Pub. Sch.,
No. CIV 19-8 JCH/SCY, 2022 WL 3998643 (D.N.M. Sept. 1, 2022),
report and recommendation adopted, No. CV 19-8 JCH/SCY,
2022 WL 4546250 (D.N.M. Sept. 29, 2022) ........................................................25

Nixon v. City & Cnty. of Denver,
784 F.3d 1364 (10th Cir. 2015)............................................................................31

Norman v. NYU Langone Health Sys.,
492 F. Supp. 3d 154 (S.D.N.Y. 2020), aff'd,
No. 20-3624, 2021 WL 5986999 (2d Cir. Dec. 17, 2021)....................................24

Papasan v. Allain,
478 U.S. 265 (1986)..............................................................................................13

Phelps v. Hamilton,
122 F.3d 1309 (10th Cir. 1997)......................................................................38, 39

Pueblo of Jemez v. United States,
63 F.4th 881 (10th Cir. 2023)..........................................................................38, 39

Punt v. Kelly Servs.,
862 F.3d 1040 (10th Cir. 2017)......................................................................26, 27

Ruby v. Sandia Corp.,
699 F. Supp. 2d 1247 (D.N.M. 2010) ..................................................................29

Servants of Paraclete v. Does,
204 F.3d 1005 (10th Cir. 2000)........................................................... 39, 40-41, 43

Seymour v. Thornton,
79 F.3d 980 (10th Cir. 1996)................................................................................44

Sharikov v. Philips Med. Sys. MR, Inc.,
103 F.4th 159 (2d Cir. 2024)..........................................................................31, 43

Sherill v. Farmers Ins. Exchange,
2016-NMCA-056, 374 P.3d 723 ...................................................................... 34-35

Smith v. United States,
561 F.3d 1090 (10th Cir. 2009)............................................................................21

Sprint Nextel Corp. v. Middle Man, Inc.,
   822 F.3d 524 (10th Cir. 2016) ................................................................39

Sullivan v. Am. Online, Inc.,
   No. CV 04-864 JH/DJS, 2005 WL 8163599 (D.N.M. Aug. 23, 2005),
   aff'd., 219 F. App'x 720 (10th Cir. 2007) .............................................36

Sutton v. New Mexico Dep't. of Child., Youth & Fams.,
   922 F. Supp. 516 (D.N.M. 1996) ...........................................................23

Tele-Commc'ns., Inc. v. Comm'r. of Internal Revenue,
   104 F.3d 1229 (10th Cir. 1997) .............................................................18

Trujillo v. Northern Rio Arriba Elec. Co-op, Inc.,
   2002–NMSC–004, 131 N.M. 607, 41 P.3d 333 ....................................16, 35-36

Ulibarri v. State Corr., Acadm.,
   131 P.3d 43 (N.M. 2006) .......................................................................29

United States v. Mabry,
   728 F.3d 1163 (10th Cir. 2013) .............................................................13

United States v. McComb,
   519 F.3d 1049 (10th Cir. 2007) .............................................................38

United States v. Rico,
   3 F.4th 1236 (10th Cir. 2021), cert. denied, 142 S. Ct. 302 (2021) .....................41

Valdez v. Grisham,
   559 F. Supp. 3d 1161 (D.N.M. 2021) ....................................................37

Valdez v. McGill,
   462 F. App'x 814 (10th Cir. 2012) .........................................................16

Ward v. Jewell,
   772 F.3d 1199 (10th Cir. 2014) .............................................................29-30

West v. Scott Lab'ys., Inc.,
   No. 22-CV-07649-CRB, 2023 WL 2632210 (N.D. Cal. Mar. 24, 2023),
   aff'd., No. 23-15502, 2023 WL 6172009 (9th Cir. Sept. 22, 2023) ....................32

White v. York Int'l Corp.,
   45 F.3d 357 (10th Cir.1995) ..................................................................16, 42

Zwygart v. Bd. of Cnty. Comm'r. of Jefferson Cnty., Kan.,
   483 F.3d 1086 (10th Cir. 2007) .............................................................25

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ........................................................................................ 1

28 U.S.C. § 1332 ........................................................................................ 1

28 U.S.C. § 1446(d) ................................................................................... 1

D.N.M.L.R.-Civ. 15.1 ............................................................................... 43

Fed. R. Civ. P. 12(b)(1) .......................................................................... 5, 9

Fed. R. Civ. P. 12(b)(6) .......................... 5, 14, 13, 15, 21, 24, 31, 33, 34, 40, 41, 42

Fed. R. Civ. P. 15 ......................................................................... 42, 44, 45

Fed. R. Civ. P. 15(a) ............................................................................... 44

Fed. R. Civ. P. 59(e) ................................................... 38, 39, 40, 43, 44, 45

Fed. R. Civ. P. 60(b) ............................................................................... 44

NMAC § 9.1.1.7 ....................................................................................... 17

NMAC § 9.1.1.7(GG)(2) .......................................................................... 25

NMSA 1978, § 28-1-2 (2021) ................................................................... 17

## STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related appeals.

## **COUNTER-STATEMENT OF JURISDICTION**

Coherus agrees with Appellant Mark W. Spinelli's ("Spinelli" or "Appellant") statement that the District Court had subject matter jurisdiction over Spinelli's claims pursuant to 28 U.S.C. §§ 1446(d) and 1332 because the matter was properly removed from State Court and the parties are diverse. Coherus also agrees that this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is from a final judgment and was timely filed. Coherus does not adopt or respond to Spinelli's other commentary in the "Statement of Jurisdiction" of his Opening Brief.

## **COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW**

I.      Whether the District Court erred in determining Spinelli failed to plausibly allege claims for relief in Counts I and IV.

II.     Whether the District Court abused its discretion in denying Spinelli's Motion to Alter or Amend Judgment.

## **COUNTER-STATEMENT OF THE CASE**

## **I.    NATURE OF THE CASE**

This appeal stems from Spinelli's attempt to manufacture New Mexico Human Rights Act ("NMHRA") and common law claims based on his personal disagreement with his former employer Coherus's COVID-19 Vaccination Policy

(the "Vaccine Policy") and commitment to the safety of its employees, clients, and the highly immunocompromised patients they serve.

On May 24, 2023, Spinelli filed a five-count Amended Complaint alleging that he was terminated in retaliation for seeking an exemption from the Vaccine Policy, and/or on the basis of his religion or disability as well as law contract-related and retaliation claims. As recognized by the District Court, the claims of the Amended Complaint were either procedurally deficient or supported by nothing more than threadbare factual allegations and conclusory statements.

Indeed, on April 26, 2024, the District Court issued a 21-page, comprehensive written opinion dismissing all of Spinelli's claims. The District Court properly held that Spinelli either failed to exhaust administrative remedies or failed to plausibly allege claims upon which relief can be granted. The District Court cemented the Motion to Dismiss Order when it also subsequently denied Spinelli's Motion to Alter or Amend.

Despite the District Court's well-reasoned and supported decisions, Spinelli now seeks to have this Court revisit only the dismissal of the NMHRA disability/serious medical condition discrimination and retaliation claims within Count I, Common Law Retaliation claim in Count IV, and the denial of his Motion to Alter or Amend. As fully set forth below, Appellant still cannot meet the definition of disability/serious medical condition based on threadbare recitals and

speculative beliefs about the potential impact of the vaccine, there is no causal connection between any alleged protected activity and his termination, and his personal choice to refuse the COVID-19 vaccine cannot form the basis of a common law retaliation claim.

## II.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW

### A.    Spinelli's Employment With Coherus, Charge Of Discrimination, And Original Complaint

Spinelli began his employment with Coherus on February 1, 2021 as an Oncology Account Manager.  (Appellant's Appendix ("App.") at 24).  Spinelli was an at-will employee.  (Id. at 38, 83).  Spinelli was hired during a time when "COVID-19 restrictions were still at their height."  (Id. at 25).

On or about June 14, 2021, Coherus announced its Vaccine Policy requiring all employees to show proof of vaccination by July 19, 2021.  (Id. 26, 86).  On July 19, 2021, Spinelli submitted a request to be exempt from the Vaccine Policy based upon a reaction he had 6 years prior (in 2015) to a Varicella vaccine (chickenpox vaccine).  (Id. at 27).  After taking the Varicella vaccine, Spinelli allegedly experienced "permanent nerve damage and trigeminal nerve problems."  (Id.).  On July 30, 2021, Spinelli submitted another exemption request based on religion. (App. at 27, 34).  On October 1, 2021, Spinelli received an email denying both of his exemption requests.  (Id. at 28).  Spinelli's last day of employment with Coherus was October 7, 2021.  (Id.).

On November 19, 2021, Spinelli filed a Charge of Discrimination with the New Mexico Human Rights Bureau ("NMHRB").  (Id. at 24, 30, 88-90).  On December 2, 2021, Spinelli filed a Charge with the Equal Employment Opportunity Commission ("EEOC").  (Id. at 30, 92-93).  On his Charges, Spinelli did <u>not</u> check the boxes for discrimination or retaliation based on religion nor did Spinelli indicate in the narrative portion that he was making any claims for religious discrimination or retaliation.  (Id. at 88-93).  On December 13, 2022, the NMHRB issued an Order of Non-Determination.  (App. at 24, 30, 95).

On March 13, 2023, Spinelli filed a five-count Complaint in the State of New Mexico, County of Bernalillo, Second Judicial District Court against Coherus, alleging: (1) retaliation and discrimination based on a serious medical condition/disability and religion in violation of the NMHRA (Count I); Breach of Employment Contract (Count II); Breach of Covenant of Good Faith and Fair Dealing (Count III); Common Law Retaliation (Count IV); and Prima Facie Tort (Count V).  (Id. at 56).  On April 27, 2023, Coherus timely removed the matter to the District Court of New Mexico.  (Id. at 8).

On May 3, 2023, Coherus filed a Partial Motion to Dismiss.  (Id. at 21-22). In lieu of an opposition to Coherus's Motion, on May 23, 2024, Spinelli filed an Amended Complaint alleging: (1) retaliation and discrimination based on a serious medical condition/disability and religion in violation of the NMHRA (Count I);

Breach of Employment Contract (Count II); Breach of Covenant of Good Faith and Fair Dealing (Count III); Common Law Retaliation (Count IV); and IIED (Count V) – which replaces the frivolous prima facie tort claim that Spinelli withdrew. (Id. at 23-45).

### B.    Coherus's Motion To Dismiss The Amended Complaint

On June 7, 2023, Coherus moved to dismiss the Amended Complaint in its entirety for lack of subject matter jurisdiction and/or failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Id. at 52).

For Spinelli's claims that are the subject of this appeal – disability/serious medical condition-based discrimination and retaliation both subsumed in Count I and common law retaliation in Count IV – Coherus argued: (1) Spinelli's disability/serious medical condition-based discrimination failed because Spinelli did not allege that his disability or serious medical condition substantially limits a major life activity.  (App. at 64-67).  Instead, Spinelli relied on a reaction that he experienced from an unrelated chickenpox vaccine over 6 years ago and speculative risks about the COVID-19 vaccine.  (Id. at 65).  Accordingly, Spinelli did not allege a NMHRA recognized disability or serious medical condition nor was he a qualified individual with a disability under the law.  (See Id. at 64-67); (2) Spinelli's NMHRA retaliation claim in Count I failed because he did not sufficiently allege causation; and (3) the common law retaliation claim in Count IV

fails to include any allegations that he was terminated for engaging in action in furtherance of a public policy rather than his personal decision to refuse to get vaccinated from the COVID-19 virus.  (See id. at 67-71).

### C.    The District Court's Dismissal Of Spinelli's Amended Complaint

On April 26, 2024, the District Court entered its Memorandum Opinion and Order granting Appellee's Motion to Dismiss and dismissing the Amended Complaint in its entirety (the "Motion to Dismiss Order").  (Id. at 164).

For Spinelli's discrimination and retaliation claim based on disability/serious medical condition, the District Court found that Spinelli failed to identify a single major life activity that was substantially limited by his adverse reaction to the Varicella vaccine, so he could not establish a *prima facie* case of disability/serious medical condition discrimination.  (Id. at 171-72).  For the retaliation claim, the District Court found that Spinelli did not plead causation because the time between his exemption requests and his termination was insufficient to establish temporal proximity.  (App. at 172).  The District Court also relied on the recent decision in Duffee v. T-Mobile USA Inc., No. 1:23-CV-00536-MIS-LF, 2023 WL 6391376, at *5 (D.N.M. Oct. 2, 2023), appeal dismissed, No. 23-2176, 2024 WL 1885567 (10th Cir. Jan. 5, 2024), in which the court granted an employer's motion to dismiss the plaintiff's disability discrimination and retaliation claims because the employee could not show causation where the employer terminated her for failing

to adhere to the employer's mandatory COVID-19 vaccine policy, not for a disability that prevented her from taking the COVID-19 vaccine. (Id. at 173-74). The District Court dismissed Appellant's NMHRA retaliation and discrimination claims without prejudice. (Id.).

In dismissing Spinelli's claim for common law retaliation, the District Court found that Spinelli's refusal to take the COVID-19 vaccine was not an act in furtherance of public policy or one that would benefit the public. (Id. at 182). The District Court further held that Spinelli's refusal to take the COVID-19 vaccine violated Coherus's Vaccine Policy, which applied to all its employees and a violation of an employer's policy is not an action in furtherance of public policy. (Id.). Therefore, the District Court dismissed Count IV without prejudice. (App. at 182).

## D.  Spinelli's Motion To Alter Or Amend The Court's Grant Of Appellee's Motion To Dismiss Amended Complaint

On May 24, 2024, Spinelli filed a Motion to Alter or Amend the District Court's grant of Coherus's Motion to Dismiss the Amended Complaint, which included a request for leave to amend. (Id. at 185). Spinelli did not seek reconsideration of the District Court's dismissal of Counts II and III or seek leave to amend those claims. (Id.) For Spinelli's religious discrimination and retaliation claim (Count I), he again alleged that it was not time-barred as he was attempting to resubmit the claim with the EEOC, but provided no detail on what procedure he

was relying upon to do so.  (Id. at 191).  For the Court's dismissal of Spinelli's claim for disability/serious medical condition-based discrimination and retaliation (Count I), common law retaliation (Count IV), and IIED (Court V), Spinelli argued the District Court incorrectly ruled that he did not properly plead claims and the claims should not have been dismissed, essentially relitigating arguments he made in his Opposition to the Motion to Dismiss.  (See id. at 194-214).  Spinelli also requested an opportunity to file a second amended complaint but did not include a proposed amended pleading or state what new facts would be included in the amended pleading.  (See id. at 214-17).

On June 18, 2024, Coherus filed a Response to the Motion to Alter or Amend.  (App. at 236).  Coherus contended that Spinelli's Motion was an attempt to regurgitate already rejected allegations in his Amended Complaint, relitigate issues, introduce waived arguments, and repackage old evidence as new.  (Id. at 237).  Spinelli did not point to any change in controlling law, offer any new evidence that was previously unavailable to him, and failed to identify any clear error or manifest injustice that would warrant reconsideration.  (Id.).  Therefore, Coherus argued there was no basis to reconsider the District Court's Motion to Dismiss Order dismissing the Amended Complaint.  (Id.).  Coherus also argued that because all of Spinelli's claims were futile, an amended pleading would still be

subject to dismissal, and he should not be given an opportunity to file a second amended complaint.  (Id. at 253-54).

### E.    The District Court's Denial Of The Motion To Alter Or Amend

On November 4, 2024, the District Court entered an Order denying Spinelli's Motion to Alter or Amend Judgment ("Alter or Amend Order") and denied his request to file a second amended complaint because it would be futile and subject to dismissal.  (Id. at 14).  As to Count I, the District Court found that there had been no change in the controlling law, Spinelli had not presented new evidence that was previously unavailable to him, and could not demonstrate clear error or manifest injustice warranting reconsideration of its Rule 12(b)(1) analysis. (App. at 16-17).  For Counts IV and V, the District Court reasoned that Spinelli could not use the Motion to Alter or Amend as a tool to reargue an issue previously addressed by the Court, as Spinelli did not raise any new arguments or facts previously unavailable for either Count.  (Id. at 18-19).  Additionally, for Spinelli's request to file a second amended complaint, the District Court held any amendment would be futile and subject to dismissal.  (Id. at 19).  With respect to Spinelli's Rule 12(b)(1) argument, the District Court held that an amended pleading would not change the scope of his original NMHRB and EEOC charges where he failed to claim religious discrimination, as the EEOC had told Spinelli the matter was closed.  (Id.).  The District Court also found that resubmission of a second

amended complaint would be futile because the law on the matter had not changed, there was no new evidence, and there was no clear error or manifest injustice Spinelli could raise.  (Id.).

    **F.**    **Notice of Appeal**

Spinelli filed a Notice of Appeal of the Motion to Dismiss Order as to the disability/serious medical condition discrimination and retaliation claims within Count I and the Common Law Retaliation claim, Count IV.  Spinelli is also appealing the Alter or Amend Order.

## SUMMARY OF ARGUMENT

The District Court's decisions below were correct: all of Spinelli's claims on appeal – disability/serious medical condition-based discrimination and retaliation (Count I) and common law retaliation (Count IV) – failed to state a plausible claim for relief.  Accordingly, this Court should affirm the decisions to grant Coherus's Motion to Dismiss and deny Spinelli's Motion to Alter or Amend Judgment.

For his disability/serious medical condition discrimination claim in Count I, Spinelli has not and cannot allege a recognized disability or serious medical condition nor is he a qualified individual with a disability under the law.  As properly recognized by the District Court, the Amended Complaint includes ***no*** allegations that Appellant has a disability that substantially limits a major life activity and Appellant's unsupported and speculative theories based on fear of or

10

disagreement with the COVID-19 vaccine and Coherus's Vaccine Policy do not amount to actionable claims. The threshold element of the *prima facie* burden for disability discrimination claims is to have a recognized disability as defined by the law and Spinelli failed to advance such allegations.

Additionally, for his retaliation claims in Count I and IV, the District Court correctly determined that Spinelli failed to sufficiently allege causation between his termination and his request for a vaccine exemption because Coherus issued its Vaccination Policy prior to Spinelli engaging in any protected activity. The District Court also correctly determined that Spinelli failed to sufficiently identify a public policy or any conduct he engaged in in furtherance of public policy, as a refusal to submit to a COVID-19 policy is not in furtherance of public policy under Tenth Circuit law.

Lastly, the District Court correctly denied Spinelli's Motion to Alter or Amend because Spinelli failed to identify any intervening change in the law, previously unavailable evidence, or clear error to prevent manifest injustice in the Court's prior Motion to Dismiss Order, and his belated request to file a second amended complaint was futile.

Because the District Court's analysis was correct under the governing law, and Spinelli's claims cannot succeed under his chosen legal theories, this Court

should come to the same conclusions and affirm dismissal of Spinelli's claims with prejudice.

## ARGUMENT

## I.    THE DISTRICT COURT CORRECTLY DISMISSED COUNTS I AND IV OF APPELLANT'S AMENDED COMPLAINT

Even a cursory review of the Motion to Dismiss Order, makes clear, that the District Court's dismissal of Appellant's Amended Complaint should be affirmed. Appellant's deficient pleading puts forth no allegations nor any theory to support his purported NMHRA protected disability/serious medical condition, there is no causal connection between his termination and any alleged protected activity, and his personal choice to refuse the COVID-19 vaccine was not in furtherance of public policy.  In other words – Appellant has failed to state plausible claims for NMHRA disability/serious medical condition discrimination, NMHRA retaliation, and common law retaliation.  The District Court's decision should therefore be affirmed as Appellant has not demonstrated any error in the District Court's findings.

### A.    Standard Of Review Of Dismissal Pursuant To Fed. R. Civ. P. 12(B)(6)

The Court of Appeals reviews "the grant of a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) *de novo*." Dennis v. Watco Co., Inc., 631 F.3d 1303, 1305 (10th Cir. 2011).  "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible when the plaintiff pleads facts that allow the court to "reasonably infer that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678-79.  The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," and "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). In its review, the Court of Appeals can affirm a district court's decision "on any grounds adequately supported by the record, even grounds not relied upon by the district court." United States v. Mabry, 728 F.3d 1163, 1166 (10th Cir. 2013)

### B.  The District Court Properly Applied The Twombly/Iqbal Standard In Dismissing Appellant's Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(6)

Appellant argues in scant fashion that the District Court misapplied the legal standard when assessing his allegations by not affording reasonable inferences in his favor.  (Appellant's Opening Brief ("App. Br.") at 17-20).  He further argues that the plausibility standard does not require a plaintiff to plead facts that can only be obtained through discovery and that the decision "exhibited fundamental errors stemming from an incorrect application of the standard governing review of a

13

motion to dismiss." (Id.).  This argument is misguided and fails to summarize the District Court's proper application of the Twombly/Iqbal standard to Appellant's defective pleading.

In the Motion to Dismiss Order, the District Court specifically acknowledged the Twombly/Iqbal standard, which requires the District Court to take **well pleaded** facts "as true" and "all reasonable inferences [to be] indulged in favor of the plaintiff."  (App. at 160).  However, when applying this standard to Appellant's Amended Complaint – the Amended Complaint fails to pass muster.  As the Motion to Dismiss Order makes clear, the District Court carefully reviewed the allegations in the Amended Complaint, and correctly determined that Appellant did not meet his burden to plausibly allege he was subject to discrimination and/or retaliation.  Specifically, the District Court held that Appellant failed to meet the standard because: (1) he did not "plead necessary facts alleging that his serious medical condition qualifies [him] as disabled"; (2) Appellant's sole argument in support of his NMHRA retaliation claim – temporal proximity – failed because the time between his termination and any alleged protected activity was too remote to rely on temporal proximity alone; and (3) Appellant's termination did not violate public policy where it was based on his failure to comply with a lawful vaccine policy.  (Id. at 160).

Moreover, while Appellant is not required to plead all facts or those that could only be known through the discovery process – discovery is not guaranteed. The purpose of Rule 12(b)(6) is to "streamline litigation by dispensing with needless discovery and factfinding," and motions to dismiss filed under that Rule should typically be resolved before discovery begins. <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989); <u>see</u> <u>also</u> <u>Kaylor v. Fields</u>, 661 F.2d 1177, 1184 (8th Cir. 1981) ("Discovery should follow the filing of a well-pleaded complaint. It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.") Indeed, the United Sates Supreme Court recognizes Rule 12(b)(6) motions as "important mechanism[s] for weeding out meritless claims." <u>Fifth Third Bancorp v. Dudenhoeffer</u>, 573 U.S. 409, 425 (2014); <u>see</u> <u>also</u> <u>Jones v. Heaton</u>, 775 F. App'x 966 (10th Cir. 2019) ("Rule 12(b)(6) is an **"important mechanism for weeding out meritless claims"**") (quoting <u>Fifth Third Bancorp v. Dudenhoeffer</u>, 573 U.S. at 425) (internal quotes omitted) (emphasis in original).

Accordingly, the District Court properly applied the plausibility standard in dismissing Appellant's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Appellant's unfounded belief that the Court extended "preferential treatment to Coherus" is not supported by the record.

**C.    The District Court Correctly Dismissed Appellant's NMHRA Disability/Serious Medical Condition Discrimination Claim**

As the District Court correctly determined, Appellant's claim for disability/serious medical condition discrimination fails to state a claim for relief because Appellant did not plausibly allege that he suffered from a disability/serious medical condition that substantially limits any major life activity as defined by the NMHRA.  (App. at 171-72).  This Court should come to the same conclusion and affirm the judgment below.

The *prima facie* standard for NMHRA disability/serious medical condition claims applies the same elements as claims under the Americans with Disabilities Act ("ADA").  See Valdez v. McGill, 462 F. App'x 814, 819 n.4 (10th Cir. 2012) (if a person is not a qualified individual with a disability under the ADA then they are not qualified under the NMHRA).  Under this standard, Appellant must show: "(1) that he [] is a disabled person within the meaning of the [statute]; (2) that he [] is qualified ...; and (3) that the employer terminated him [] because of the disability." Trujillo v. Northern Rio Arriba Elec. Co-op, Inc*, 2002–NMSC–004 ¶ 20, 131 N.M. 607, 612, 41 P.3d 333 (quoting White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995).)  Significantly, the first element of the *prima facie* case requires Appellant to demonstrate that he is disabled or has a serious medical condition as defined under the NMHRA.  Keller v. Bd. of Educ.*, 182 F.Supp.2d 1148, 1154–55 (D.N.M. 2001) ("To establish a *prima facie* case of disability

16

discrimination under the ADA or NMHRA, plaintiff must show that [he] is disabled"); see also Fallon v. CTSC, LLC, No. CIV. 13-00176 MV/ACT, 2013 WL 9853376, at *6-9 (D.N.M. Sept. 26, 2013) (unpub.) ("Regardless of the type of disability claim plaintiff alleges or the theory upon which plaintiff relies, plaintiff must establish, as a threshold matter, that he has a "physical or mental handicap" within the meaning of the NMHRA.")

The NMHRA defines "physical or mental handicap" as "physical or mental impairment that substantially limits one or more of a person's major life activities…" See NMSA 1978, § 28-1-2 (2021). "'Major life activities' means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Id. The NMHRA regulations define a "disabled person" as "any person who has a physical or mental disability as defined in these rules as 'physical or mental disability' and 'physical or mental handicap'," and "serious medical condition" as a "serious health-related impairment other than a disability, which **substantially limits one or more of an individual's major life activities**, as 'major life activities' is defined within these rules, and which is verifiable by medical diagnosis." See NMAC § 9.1.1.7. (Emphasis added.)

Here, Appellant's alleged nerve damage and assertions that the COVID-19 vaccine could pose some future harm cannot bring him within the protected class of disabilities/serious medical conditions covered by the NMHRA.

### i.    Appellant's Reliance On Post Hoc Allegations Do Not Excuse His Failure To Allege A Disability/Serious Medical Condition As Defined By The NMHRA

Appellant, largely without any citations to the record, seeks to introduce a litany of new factual allegations not pled in his Amended Complaint.  Not only is this Court not required to comb through the record to verify Appellant's uncited allegations, but Appellant also cannot assert, nor can this Court consider, new factual allegations or arguments offered for the first time on appeal.

 "In order to preserve the integrity of the appellate structure, [the Tenth Circuit] should not be considered a 'second-shot' forum, a forum where secondary, back-up theories may be mounted for the first time." Tele-Commc'ns., Inc. v. Comm'r. of Internal Revenue, 104 F.3d 1229, 1232-33 (10th Cir. 1997) (quoting Anshutz Land and Livestock Co., Inc. v. Union Pac. R.R. Co., 820 F.2d 338, 344 n.5 (10th Cir. 1987)).  "Thus, an issue must be 'presented to, considered [and] decided by the trial court' before it can be raised on appeal." Id. (citing Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721 (10th Cir. 1993).  In the Tenth Circuit, "arguments raised for the first time on appeal are waived." Little v. Budd Co., Inc.,

955 F.3d 816, 821 (10th Cir. 2020) (citing McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 999 (10th Cir. 2002)).

The Court should also not consider new allegations raised on the first time on appeal.  See Cohon ex. rel. Bass v. New Mexico Dept. of Health, 646 F.3d 717, 730 (10th Cir. 2011) (rejecting an appellant's attempt to inject new allegations not made in complaint); see also Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995) ("It is well-established ... that in determining whether to grant a motion to dismiss, the district court, and consequently this court, are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. Therefore, extraneous arguments in an appellate brief may not be relied upon to circumvent pleading defects.") (citations omitted); Kearney v. Dimanna, 195 F. App'x 717, 721 n.2 (10th Cir. 2006) (declining to consider modified claims raised on appeal not pled in complaint).

Appellant's new allegations include: (1) "Spinelli suffers from permanent paralysis" despite only previously alleging that he suffers from permanent nerve damage, that he "regained partial mobility approximately a month" later, and "is no longer paralyzed" (App. Br. at 12, 43); (2) that he has trigeminal neuralgia despite only previously alleging that he has "trigeminal nerve problems" (Id.); (3) Appellant has a "permanently deformed hand" which "has rendered his left hand useless in the operation of a vehicle" – an allegation that he raises for the first time

and provides no cite to the record; (4) that Appellant cannot operate parts of his face and hand as that of an average person – which again he provides no cite to the record because he cannot; (5) has difficulties chewing and brushing his teeth on the left side of his face – also no cite to the record; and (6) that he has burned himself when cooking and did not realize it until he saw redness and blistering. (Id. at 24). In adjudicating this appeal, the Court is limited to evaluating the sufficiency of the allegations in the Amended Complaint and cannot consider new, unpled allegations offered for the first time on appeal.

### ii. Appellant Confirms That The Amended Complaint Contains *No Allegations* That Appellant Has A NMHRA Covered Disability/Serious Medical Condition That Substantially Limits A Major Life Activity

Stripping away the improper new allegations, what's left are the allegations Appellant actually included in the Amended Complaint – all of which fail to meet his pleading burden. While Appellant summarily alleges that he is "disabled" and suffers from nerve damage stemming from a reaction several years ago to a chickenpox vaccine, he fails to set forth (because they are nonexistent) any facts in the Amended Complaint in which he alleges that his disability/serious medical condition substantially limits one or more major life activities as required by the NMHRA. (Id. at 20-22). The record simply consists of speculation, conjecture, and hypotheticals that do not suggest that even if Appellant took the vaccine it

would result in a qualifying disability.  This is fatal to Appellant's request of this Court to revisit the District Court's dismissal of this claim.

Appellant concedes that he "elaborated on his disability in Response to the Motion to Dismiss," – in other words confirming such allegations were not included in the Amended Complaint.  (Id. at 12).  The District Court then correctly rejected these improper new "facts" Appellant raised for the first time in opposition to Appellee's Motion to Dismiss and dismissed this claim.  (App. at 171).  See Kearney v. Dimanna, 195 F. App'x 717, 721 n.2 (10th Cir. 2006) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.")

As Appellant put forth no argument to contradict that the Amended Complaint is devoid of allegations to support how his medical condition substantially limited a major life activity, dismissal of Appellant's NMHRA disability/serious medical condition must be affirmed.

### iii.    The District Court Could Not Have Inferred A Substantially Limiting Disability/Serious Medical Condition Based On The Amended Complaint

Appellant also incorrectly asserts that the District Court should have inferred that he had a disability/serious medical condition that substantially limits a major life activity.  (App. Br. at 23).  Relying on Allen v. SouthCrest Hosp., 455 F. App'x 827, 832, n. 5 (10th Cir. 2011), Appellant argues that he was not required to provide a precise description of the major life activity allegedly affected by his disability.  (Id. at 23).  However, not requiring a precise description is entirely different from *no description at all* – the latter category which Appellant falls in. See Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2012) ("While "[s]pecific facts are not necessary," see [Erickson v. Pardus, 551 U.S. 89, 93 (2007)], some facts are.") (first alteration in original).  Notably, Appellant did not even reference the words "major life activity or "substantially limiting" in the Amended Complaint, nor does he describe any current symptoms or conditions that he suffers from that would qualify as such.  (See generally App. at 33).  The Amended Complaint does not have any allegations to draw a reasonable inference from, and the law does not require the Court to embark on a fruitless search to find them.  See Khalif, supra; Anderson v. Textron Aviation, Inc., No. 22-CV-01145-JAR-KGG, 2022 WL 15427625, at *2 (D. Kan. Oct. 27, 2022) ("plaintiff is 'not required to provide a precise description of the major life activity allegedly

affected by [the plaintiff's] disability' at the pleading stage, but the plaintiff does need to make more than a conclusory allegation that the condition substantially limited him in a major life activity "as compared to most people in the general population.")

Even when considering the allegations Appellant relies on in support of his disability/serious medical condition claim, namely, that he had **_previous_** reaction to a Varicella vaccine in 2015 and has permanent nerve damage and trigeminal nerve problems, along with threadbare recitals that he is "a member of a protected class pursuant to applicable law, namely Plaintiff is a person with a serious medical condition,"  (App. at 33,  ¶¶ 29, 31, 58, 62) – they are vague and still do not provide any basis for the Court to draw a reasonable inference that Appellant has a disability/serious medical condition that substantially limits a major life activity. See Sutton v. New Mexico Dep't. of Child., Youth & Fams., 922 F. Supp. 516, 518 (D.N.M. 1996) (dismissing disability discrimination claims even where the plaintiff alleged facts "by inference" that her disability _affected_ her major life activities but failed to allege, even by inference, that her impairment _substantially limits_ the major life activities and included no allegations regarding the severity, significant duration, or permanence of her condition.)

The only arguable reference to a limitation in the Amended Complaint is Appellant's allegations that "he has a serious medical condition or disability,

preventing him from taking the COVID-19 vaccine" and/or that the COVID-19 vaccine presents a "risk of [his] condition becoming serious and exacerbated." (App. at 33, ¶ 64). However, such allegations have been routinely rejected as not qualifying as a disability/serious medical condition that substantially limits a major life activity. The Fifth Circuit recently affirmed a Rule 12(b)(6) dismissal where plaintiffs alleged they were disabled because preexisting health conditions prevented them from receiving the COVID-19 vaccine. See Hughes v. Terminix Pest Control, Inc., No. 23-30617, 2024 WL 3440465, at *1 (5th Cir. July 17, 2024). The 5th Circuit held that the plaintiffs did not qualify as disabled under the ADA and found that such "alleged indirect limitations on a major life activity" are "too attenuated." Id.; see also Hale v. Harrison Cnty. Bd. of Supervisors, 8 F.4th 399, 404 n.1 (5th Cir. 2021) (finding that the "ADA does not cover fear of future impairment"); Norman v. NYU Langone Health Sys., 492 F. Supp. 3d 154, 160, 164-65 (S.D.N.Y. 2020), aff'd., No. 20-3624, 2021 WL 5986999 (2d Cir. Dec. 17, 2021) (finding that a plaintiff who had previously experienced allergic reaction to flu vaccination, and was contraindicated from receiving flu vaccine on that basis, had failed to show that she had a protected disability under the ADA); Mercer v. ViacomCBS/Paramount, No. 22 CIV. 6322 (LGS), 2024 WL 3553133, at *5 (S.D.N.Y. July 26, 2024) ("An alleged medical contraindication to a vaccine, even if predicated on prior adverse reactions to a vaccination, is insufficient to allege a

protected disability if it does not result in 'a substantial limitation of a major life activity.'"). Accordingly, Appellant's theory that he has a disability/serious medical condition that substantially limits a major life activity based solely on his speculative belief about a potential future reaction to a vaccine does not meet the threshold for disability/serious medical condition under the NMHRA.

Plaintiff's new record of impairment theory based on his doctor's note stating that he had a medical condition preventing him from taking the COVID-19 vaccine, fares no better. (App. at 101). First, this argument cannot be considered because it was never advanced before the District Court. See Point I(C)(i), above. Second, to have a record of a disability/serious medical condition under the NMHRA, Appellant must show he "has a history or recorded classification of having a serious medical condition that **substantially limits one or more major life activities**." NMAC § 9.1.1.7(GG)(2); (emphasis added); Zwygart v. Bd. of Cnty. Comm'r. of Jefferson Cnty., Kan., 483 F.3d 1086, 1091 (10th Cir. 2007); Neri v. Bd. of Educ. for Albuquerque Pub. Sch., No. CIV 19-8 JCH/SCY, 2022 WL 3998643, at *13 (D.N.M. Sept. 1, 2022), report and recommendation adopted, No. CV 19-8 JCH/SCY, 2022 WL 4546250 (D.N.M. Sept. 29, 2022) ("Attaching medical records without accompanying explanation or argument is not sufficient to raise the issue" where a plaintiff argued she attached medical records in response to a motion to show record of impairment). Thus, for the same reasons above

noting that Appellant never alleged a disability/serious medical condition that substantially limits one or major life activities, he cannot have had a record of such a condition.

### iv.    Appellant Is Not A Qualified Person With A Disability/Serious Medical Condition

The District Court's dismissal of Appellant's NMHRA disability/serious medical condition claims should also be affirmed because even if Appellant did sufficiently plead that he had a condition that substantially limited a major life activity, he would still not be a qualified person.

Appellant admitted that he could not fulfill an essential function of his job – in-person work.  (App. Br. at 45-46).  Rather, Appellant preferred to continue to perform his job remotely into the future because he, like many people all over the world were forced to do so during the time of an unprecedented and historic pandemic.  Simply put, Appellant could not perform his job as an Oncology Account Manager without being vaccinated against COVID-19 because he was required to meet *in-person* with medical professionals who treat highly immunocompromised patients.  Working remotely at all times in lieu of being vaccinated against this novel virus is not a reasonable accommodation for an Account Manager specializing in the field of Oncology.

Indeed <u>Duffee v. T-Mobile USA Inc.,</u> 2023 WL 6391376, at *5 (D.N.M. Oct. 2, 2023), <u>appeal dismissed,</u> 2024 WL 1885567, relying on <u>Punt v. Kelly</u>

Servs., 862 F.3d 1040, 1050-51 (10th Cir. 2017) reached this exact conclusion.  In

Duffee, the plaintiff alleged that she had a "Factor II mutation" which impacted her

immune system and limited her ability to perform daily tasks, her employer knew

of her condition, and her employee required employees to receive the COVID-19

vaccine as a condition to return to work.  Duffee, supra at 5.  Like Appellant, the

plaintiff in Duffee submitted a request to be exempt from the vaccine policy based

on her medical provider's purported concerns that she would be at risk of serious

side effects.  Id.  The employer then reviewed and denied plaintiff's request and

terminated her employment for not being vaccinated in accordance with the policy.

Id. at 2.  The court then held that plaintiff could not plausibly allege facts

supporting her conclusory assertion that she was terminated *because* of her

disability.  Id. at 3-4.  Instead, plaintiff expressly claimed that she was fired for

being unvaccinated, a claim which is identical to the facts of this case.  Id.  The

court also denied plaintiff's failure to accommodate his request to work from

home, because such accommodation is unreasonable as a matter of law if it

violates an employer's in-person physical attendance policies.  Id.; Punt, 862 F.3d

at 1050-51.

### v.      Appellant's Reliance On Inapposite Case Law Cannot Revive His Claims

Appellant also cannot overcome the deficiencies with his Amended

Complaint by relying on distinguishable case law – Allen v. SouthCrest Hosp., 455

F. App'x 827 (10th Cir. 2011) – to mischaracterize Appellee's arguments before the District Court.

In _Allen_, the Tenth Circuit affirmed the district court's order granting summary judgment dismissing ADA disability discrimination claims where the plaintiff insufficiently argued that her migraines substantially limited one or more major life activity including activities such as work, her ability to care for herself, and sleeping. Id. Other than relying on a footnote in this opinion (FN 5), which Appellee addresses in section B(iii), above, Appellant provides no colorable basis for how _Allen_ is applicable to his case. Rather, Appellant inaccurately argues that Appellee focuses on Appellant's ability to work and the speculative nature of the harm the COVID-19 vaccine could cause him which he appears to claim to be inconsistent with _Allen_'s holding that consideration of the "the major life activity of working…only as a last resort." This argument is not accurate and off-base. Appellee at all times argued that Appellant never alleged in the Amended Complaint any major life activities that are substantially limited by his alleged disability/serious medical condition – not even his ability to work.

Because Appellant cannot rely on new "facts" and arguments, concedes that there are no allegations in the Amended Complaint regarding a substantially limited disability/serious medical condition, and fails to plausibly allege

discrimination, this Court should uphold the District Court's dismissal of Appellant's disability/serious medical condition claim.

### D.    The District Court Correctly Dismissed Appellant's NMHRA Retaliation Claim

As the District Court correctly determined, Appellant's NMHRA retaliation claim failed to state a claim for relief because Appellant did not plausibly plead that there is a causal connection between his exemption request and his termination. (App. at 174). By Appellant's own admission, Coherus implemented policies and procedures to mitigate against the spread of COVID-19 rather than to target him for retaliatory reasons. (App. Br. at 4).

To establish a *prima facie* case of retaliation under the NMHRA, Appellant must allege: (i) he engaged in protected conduct; (ii) was thereafter subjected to an adverse employment action; and (iii) there is a causal connection between the protected conduct and the materially adverse action. Ulibarri v. State Corr. Acadm., 131 P.3d 43, 50 (N.M. 2006); Ruby v. Sandia Corp., 699 F.Supp.2d 1247, 1279 (D.N.M. 2010). To establish causation, Appellant must show that "but for" his protected activity, he would not have suffered an adverse employment action. Laul v. Los Alamos Nat'l. Labs, 309 F. Supp. 3d 1119, 1152 (D.N.M. 2016), aff'd., 714 F. App'x 832 (10th Cir. 2017). Evidence of causation must be more than "mere speculation, conjecture, or surmise." See Ward v. Jewell, 772 F.3d 1199,

1203 (10th Cir. 2014).  Here, Appellant cannot meet the third element of his *prima facie* burden.

### i.     An Employer Enforcing A Facially Neutral COVID-19 Vaccine Policy Cannot Form The Basis Of A NMHRA Retaliation Claim

As the District Court correctly held, Appellant's enforcement of its facially neutral Vaccine Policy cannot establish causation for purposes of a NMHRA retaliation claim.  (App. at 174).  On June 14, 2021, Coherus announced its Vaccine Policy requiring employees to show proof of vaccination by July 19, 2021.  (Id. at 26).  Coherus's facially neutral Vaccine Policy provided that "[a]ll employees must receive at least one dose of the Moderna or Pfizer COVID-19 vaccine, or the single shot of the J&J vaccine, by July 19, 2021 to **maintain their employment at Coherus**."  (Id. at 86) (emphasis added).  Appellant was therefore put on notice well ***before*** he submitted an exemption request or engaged in any alleged protected activity that vaccination was required for continued employment with Coherus.  Thus, Appellant's exemption requests on July 19 and July 30, 2021 cannot be used to manufacture a retaliatory reason for his discharge.  Appellant knew that absent compliance with the vaccination requirement, his employment would be terminated.  Therefore, termination was a foregone conclusion once Appellant submitted and was denied the requested exemptions.  His termination was not undertaken in retaliation for his application for a vaccine exemption—it

instead resulted as a matter of declared policy from the denial of that request. Because Appellant fails to plead a causal connection between his termination and any protected activity, the NMHRA retaliation claims must be dismissed.  See Nixon v. City & Cnty. of Denver, 784 F.3d 1364, 1370 (10th Cir. 2015) ("As the Supreme Court has said, employers need not refrain from previously planned actions upon learning that an individual has engaged in protected activity and "their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.")

While Duffee v. T-Mobile USA Inc., is an unpublished case, it also provides persuasive authority on the issue of COVID-19 vaccine retaliation cases, as properly recognized by the District Court in applying the case to the matter herein. In analyzing the decision in Duffee, which was also decided on a Rule 12(b)(6) motion, the District Court determined that plaintiff was not fired because of his disability which prevented him from taking the COVID-19 vaccine, but instead because of the failure to adhere to the mandatory COVID-19 vaccine policy.  (App. at 174).  This ruling is in line with nearly every federal court across the country that has ruled on this issue.  See, e.g., Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 171 (2d Cir. 2024) (finding the plaintiff failed to plausibly plead a causal connection between his opposition to his employer's COVID-19 policy and his termination because "the allegations in the Complaint make clear that he was

fired because of his failure to comply with the company-wide vaccine policy" and "the policy applied to all employees regardless of whether they had engaged in protected activity"); <u>West v. Scott Lab'ys., Inc.</u>, No. 22-CV-07649-CRB, 2023 WL 2632210, at *6 (N.D. Cal. Mar. 24, 2023), <u>aff'd.</u>, No. 23-15502, 2023 WL 6172009 (9th Cir. Sept. 22, 2023) (finding it unreasonable to infer causal connection between plaintiff's criticism of employer's COVID-19 policy and his termination when he was terminated for refusing to comply with the policy); <u>Jorgenson v. Conduent Transp. Sols., Inc.</u>, No. CV SAG-22-01648, 2023 WL 1472022, at *6 (D. Md. Feb. 2, 2023), <u>aff'd.</u>, No. 23-1198, 2023 WL 4105705 (4th Cir. June 21, 2023) ("Courts regularly dismiss retaliation complaints in these circumstances, because the consequences for non-compliance with the policy were established before any alleged protected activity occurred.") (collecting cases).

> **ii.    Appellant's Waived Arguments As To Temporal Proximity Cannot Be Considered Nor Do They Establish Causation**

Plaintiff devotes an entire section of his Opening Brief, including a bulleted timeline, to the temporal proximity argument – one he critically ignored and did not even address before the District Court.  (App. Br. at 28-31).  Indeed, in its Reply in further support of its Motion to Dismiss, Appellee argued that Appellant "ignored (and thus waives any arguments on this issue) the lack of temporal proximity between his alleged protected activity and his termination."  (App. at

155).   Accordingly, Appellant's belated arguments on temporal proximity are waived.  See <u>Little</u>, 955 F.3d at 821.

Putting aside Appellant's improper attempt to advance waived arguments, Appellant's timeline still fails to meet the burden for causation.  Appellant's sole argument in support of his NMHRA retaliation claim is that he submitted exemption requests and was subsequently terminated.  The Amended Complaint is without any facts establishing close temporal proximity or any other facts that plausibly connect his termination to any alleged protected activity.  See <u>Keenan-Coniglio v. Cumbre & Toltec Scenic Operating Comm.</u>, -- F. Supp. 3d --, 2025 WL 684320, at *12-13 (D.N.M. Mar. 4, 2025) (dismissing retaliation claim on a Rule 12(b)(6) motion because plaintiff was unable to show a connection to any protected activity and could not avail himself of the temporal proximity rule because three months elapsed between plaintiff's complaint and his for cause firing.); <u>Haskew v. Sw. Airlines Co.</u>, No. CV 19-732 JAP/LF, 2020 WL 6781754, at *5 (D.N.M. Nov. 18, 2020) (dismissing NMHRA retaliation claim on a Rule 12(b)(6) motion where the court found there was no temporal proximity and rejected plaintiff's scant allegations of causation which failed to draw any connection between protected activity and the adverse action nor established a pattern of retaliatory conduct.); <u>see also</u> <u>Long v. E. New Mexico Univ. Bd. or Regents</u>, No. CV 13-380 RB/SMV, 2015 WL 13667230, at *5 (D.N.M. Jan. 26,

33

2015) (dismissing retaliation claim on a Rule 12(b)(6) due to lack of temporal proximity or causation connecting protected activity to termination.)

Appellant's focus on the procedural status of <u>Meiners v. Univ. of Kan.</u>, 359 F.3d 1222, 1231 (10th Cir. 2004) also fails. Courts in the District of New Mexico and Tenth Circuit employ the standards flowing from <u>Meiner</u> at the motion to dismiss phase for the general premise that even two months and one week is not sufficient temporal proximity or sufficient to establish causation. <u>See</u>, <u>e.g.</u>, <u>Haskew</u>, 2020 WL 6781754, at *6; <u>Long</u>, 2015 WL 13667230, at *5. Appellant's argument here is thus misplaced and the District Court correctly disposed of the NMHRA retaliation claim on a Rule 12(b)(6) motion for lack of causation.

### E.    **The District Court Correctly Dismissed Appellant's Common Law Retaliation Claim**

The District Court dismissed Appellant's common law retaliation claim because Appellant failed to set forth a public policy that his termination violated and did not engage in conduct in furtherance of public policy where he made a personal choice to refuse to take the COVID-19 vaccine. (App. at 182). Here, Appellant provides no basis to undermine this conclusion.

To establish a claim for common law retaliatory discharge, an employee must 1) "identify a specific expression of public policy which the discharge violated; 2) demonstrate that he acted in furtherance of the clearly mandated public policy; and 3) show that he was terminated as a result of those acts." <u>Sherill v.</u>

Farmers Ins. Exchange, 2016-NMCA-056, ¶ 9, 374 P.3d 723, 727. Appellant is required to prove that their actions were not "merely private or proprietary," but rather were undertaken to "further the public good." Gutierrez v. Sundancer Indian Jewelry, Inc., 1993-NMCA-156, ¶ 22, 117 N.M. 41, 48, 868 P.2d 1266, 1273 (citation omitted).

Appellant previously relied on the following as the basis of his public policies: (1) "a workplace free from religious discrimination, medical discrimination, and discrimination based upon other protected class distinctions is of vital interest to the public at large"; and (2) "maintaining personal bodily integrity and medical choice is necessary for the preservation of individual liberty guaranteed by both State and Federal Constitutions." (App. at 43). Appellant appears to have abandoned these theories as the latest rendition of his common law retaliation claim centers on the NMHRA as the public policy. This repackaged claim should be rejected outright. Appellant concedes that he never even identified the NMHRA as the public policy he was relying on. (App. Br. at 35). Even accepting the NMHRA as the basis of Appellant's public policy claims, it merely mirrors his dismissed and meritless NMHRA claims, which is grounds to affirm dismissal. See Chavez v. Qwest, Inc., 483 F. Supp. 2d 1103, 1112 (D.N.M. 2007) ("A wrongful termination claim based on a violation of public policy fails, however, if the termination does not also violate the NMHRA."); Trujillo v.

Northern Rio Arriba Elec. Co-op, Inc*., 2002–NMSC–004 ¶ 20, 131 N.M. 607, 41 P.3d 333 (same).

Appellant also fails to advance any argument as to the District Court's dismissal of his common law retaliation claim because by refusing to take the COVID-19 vaccine, he did not engage in conduct in furtherance of public policy. The failure to address this key prong of the common law retaliation analysis is fatal to Appellant's claims and warrants dismissal being affirmed.  See, e.g., Sullivan v. Am. Online, Inc., No. CV 04-864 JH/DJS, 2005 WL 8163599, at *2 (D.N.M. Aug. 23, 2005), aff'd., 219 F. App'x 720 (10th Cir. 2007) (unpub.) (dismissing retaliatory discharge claim where the complaint contained no allegations to support the inference that plaintiff was discharged because she performed an act that public policy authorized or would encourage to further the public good); Chatterton v. Summit Food Servs., LLC, No. CV 12-0082 JCH/WPL, 2013 WL 12328899, at *7 (D.N.M. Aug. 9, 2013), report and recommendation adopted, No. CV 12-0082 JCH/WPL, 2013 WL 12328900 (D.N.M. Sept. 3, 2013) (unpub.) (dismissing claim of common law retaliatory discharge for failure to "draw a link between [plaintiff's] factual allegations and this claim"); Calero v. Core Civic of Tennessee, LLC., No. 1:20-CV-01015-KWR-KK, 2021 WL 1663711, at *3-4 (D.N.M. Apr. 28, 2021) (unpub.) (dismissing retaliatory discharge claim where the court found no

termination on the basis of public policy where plaintiff objected to employer's COVID-19 safety practices).

Appellant also cannot overcome the weight of authority from courts within the Tenth Circuit and around the country that have consistently endorsed COVID-19 vaccine policies as being in furtherance of public policy, facially neutral and generally applicable, and lawful grounds for termination where an employee fails to comply with such policy. See, e.g., Valdez v. Grisham, 559 F. Supp. 3d 1161, 1173 (D.N.M. 2021) ("[F]ederal courts have consistently held that vaccine mandates do not implicate a fundamental right."); Bridges v. Houston Methodist Hospital, 543 F. Supp. 3d 525, 528 (S.D. Tex. 2021), aff'd., No. 21-20311, 2022 WL 2116213, at *3 (5th Cir. June 12, 2022) (granting motion to dismiss finding that terminating an employee for failing to comply with mandatory vaccine policy did not violate public policy and recognized that the plaintiff was not coerced and could "freely choose to accept or refuse a COVID-19 vaccine; however, if she refuses, she will simply need to work somewhere else."); Beckerich v. St. Elizabeth Medical Ctr., 563 F. Supp.3d 633, 644 (E.D. Ky. 2021) (reconsideration denied, No. 21-CV-105, 2021 WL 4722915 (E.D. Ky. Sept. 30, 2021)) (a private employer's implementation of vaccination policies is not an infringement on an employee's individual liberties with respect to their personal choices. As the Court noted, "no Plaintiff in this case is being forcibly vaccinated. . . . Rather, the

Plaintiff [] [is] choosing whether to comply with a condition of employment, or to deal with the potential consequences of that choice.") (collecting cases). Accordingly, Plaintiff's refusal to get a vaccine reflects a personal choice and is not a basis for a retaliation claim based on public policy.  Id.

Because Appellant failed to plausibly allege a public policy and that he engaged in conduct in furtherance of the public, the District Court correctly dismissed it with prejudice.  That decision should be affirmed.

## II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING APPELLANT'S MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(E) AND REQUEST FOR LEAVE TO AMEND

### A.    The Standard Of Review For The District Court's Denial Of Rule 59(E) Motion To Alter Or Amend Is Abuse Of Discretion

The Tenth Circuit reviews a district court's denial of a Rule 59(e) motion for an abuse of discretion.  James v. Platte River Steel Co., 113 F. App'x 864, 868 (10th Cir. 2004) (citing Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997). "A district court abuses its discretion on a Rule 59(e) motion if its decision is based on an erroneous legal conclusion."  Nelson v. City of Albuquerque, 921 F.3d 925, 929 (10th Cir. 2019).  Otherwise, this Court will defer to a district court's decision so long as it falls within the range of possible outcomes that the facts and law at issue fairly can support.  Pueblo of Jemez v. United States, 63 F.4th 881, 889 (10th Cir. 2023); United States v. McComb, 519 F.3d 1049, 1053 (10th Cir. 2007).  The

Court will also not disturb a ruling on a Rule 59(e) motion unless the district court applied the wrong legal standard or its decision was arbitrary, capricious, whimsical, or manifestly unreasonable.  <u>Pueblo of Jemez</u>, 63 F.4th at 889; <u>Sprint Nextel Corp. v. Middle Man, Inc.</u>, 822 F.3d 524, 528 (10th Cir. 2016).

The Tenth Circuit has made clear that a motion under Rule 59(e) is an extraordinary remedy and not an appropriate vehicle to revisit arguments already raised or those that could have been raised initially that were not.  <u>Servants of Paraclete v. Does</u>, 204 F.3d 1005, 1012 (10th Cir. 2000).  Rather, relief under Rule 59(e) may only be granted sparingly in three limited circumstances: (1) an intervening change in controlling law; (2) availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.  <u>Id.</u>  A district court has considerable discretion in ruling on a motion.  <u>See</u> <u>Phelps v. Hamilton</u>, 122 F.3d 1309, 1324 (10th Cir. 1997).  Here, the District Court properly determined that Appellant failed to satisfy his burden in demonstrating that the District Court's dismissal of his Amended Complaint should be altered or amended.  Therefore, the District Court's decision should be affirmed.

### B.    <u>The District Court Did Not Abuse Its Discretion In Denying Appellant's Rule 59(E) Motion To Alter Or Amend</u>

Appellant appeals the District Court's denial of his Rule 59(e) motion as to Counts I (disability discrimination and retaliation under the NMHRA) and IV (common law retaliation) of the Amended Complaint.  In denying the motion

under Rule 59(e), the District Court correctly held that Appellant failed to identify any intervening change in the law, previously unavailable evidence or clear error to prevent manifest injustice in the District Court's Motion to Dismiss Order dismissing his claims. As set forth below, because Appellant does not present any basis on appeal to disturb the District Court's considerable discretion in denying Appellant's Rule 59(e) Motion, the District Court's Alter or Amend Order should be sustained.

### i.    The District Court Properly Denied Reconsideration Of Appellant's Disability Discrimination And Retaliation Claims In Count I Of The Amended Complaint

Appellant argues that the District Court abused its discretion in denying reconsideration of his disability discrimination and retaliation claims in Count I by concluding he did not allege sufficient facts to plausibly demonstrate he was disabled under the NMHRA. In doing so, Appellant still does not identify any intervening change of law or new facts that were not available at the time he filed his Amended Complaint. Appellant instead rehashes his challenges to the Court's determination regarding the sufficiency of pleading a disability under the NMHRA and claims that it amounted to clear error and manifest injustice.

Resubmitting the same arguments considered and properly rejected by the District Court in response to Appellee's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss is not a basis for extraordinary relief under Rule 59(e). See Servants of Paraclete,

204 F.3d at 1012.  Clear error exists only when the record convincingly shows that the court made a mistake.  See United States v. Rico, 3 F.4th 1236, 1238 (10th Cir. 2021), cert. denied, 142 S. Ct. 302 (2021).  As set forth in Point I (c) above, the District Court fully considered the allegations in Appellant's Amended Complaint in the light most favorable to him, including Appellant's allegation that he experienced nerve damage from a prior reaction to Varicella vaccine that could potentially be exacerbated by the COVID-19 vaccine, and properly held that Appellant still failed to plead any facts to show that his disability substantially limited a daily life activity.  Similarly, with respect to Appellant's NMHRA retaliation claim in Count I, the Court considered the allegations in the light most favorable to him, and properly found he did not plead facts to demonstrate causation because Appellant was discharged for failing to comply with Appellee's neutral vaccination policy that applied to all employees as a condition of their continued employment that was issued *prior* to when Appellant sought any exemption from the policy.   There was no mistake of law as the District Court correctly concluded these were essential elements of Appellant's claims and necessary to survive Appellee's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss. (App. at 182).

Nor did the District Court apply a summary judgment standard in dismissing Appellant's disability and retaliation claims as Appellant incorrectly claims.  The

District Court applied the correct standard under Fed. R. Civ. P. 12(b)(6) by recognizing that, although an employee asserting a disability discrimination or retaliation claim under the NMHRA does not have to submit evidence to establish a *prima facie* case of discrimination to survive a motion to dismiss, he must plead sufficient facts on all the ultimate elements of the claim to make his case plausible. (Id. at 171). Appellant failed to do this. Simply because the District Court cited cases in the summary judgment context such as White v. York Int'l. Corp., 45 F.3d 357, 360 (10th Cir. 1995) to cite the elements of a *prima facie* case of discrimination does not mean it applied a summary judgment standard in ruling on the Motion to Dismiss.

Further, Appellant's argument that the District Court abused its discretion in refusing to consider stale facts Appellant improperly submitted in Opposition to Appellee's Motion to Dismiss also fails. These were not "newly" discovered facts, but facts Appellant was fully aware of before filing his initial Complaint, and certainly by the time he filed his Amended Complaint. Appellant also did not include these allegations in a proposed amended pleading pursuant to Fed. R. Civ. P. 15 or D.N.M.L.R.-Civ. 15.1 as he was required to do. In short, these were facts already known to the Appellant that should have been included in his first two (2) pleadings and the District Court's refusal to consider them in an improper Opposition to Appellee's Motion to Dismiss was not clear error or an abuse of

discretion. Accordingly, this Court should sustain the District Court's denial of Appellant's Rule 59(e) Motion as to Count I of the Amended Complaint.

### ii.     The District Court Properly Denied Reconsideration Of Appellant's Common Law Retaliation Claim In Count IV Of The Amended Complaint

Appellant likewise presents no basis to support that the District Court abused its discretion in refusing to reconsider Appellant's common law retaliation claim in Count IV of the Amended Complaint. As the District Court precisely observed in denying Appellant's Rule 59(e) Motion as to Count IV, "this Court discussed in its Memorandum Opinion and Order that Plaintiff's argument that he was retaliated against for refusing the COVID-19 vaccine is not a clearly articulated expression of public policy" and "Plaintiff may not use this Motion to reargue an issue previously addressed by this Court." (App. at 18) (citing <u>Servants of Paraclete</u>, 204 F.3d at 1012). Yet on appeal, Appellant again regurgitates the same arguments for a third time that have been squarely considered and correctly rejected consistent with well-established case law. <u>See</u> <u>Sharikov</u>, 103 F.4th 159 at 171; <u>supra</u> at p. 33. Because the District Court did not commit an error of law or abuse its discretion, this Court should sustain the District Court's denial of Appellant's Rule 59(e) Motion as to Count IV of the Amended Complaint.

**C.**    **The District Court Correctly Denied Appellant's Request for Leave to Amend the Amended Complaint**

**i.**    **Appellant's Failure To Meet His Burden Under Rule 59(E) Is Fatal To His Request For Leave To Amend**

Fed. R. Civ. P. 15(a) provides that a party has a right to amend a pleading one time without seeking leave of court as long as the amendment occurs *before* a responsive pleading is served. Fed. R. Civ. P. 15(a); Calderon v. Kansas Dept. of Social & Rehabilitation Servs., 181 F.3d 1180, 1185 (10th Cir. 1999) citing Glenn v. First Nat'l. Bank, 868 F.2d 368, 370 (10th Cir. 1989).   After a responsive pleading is served, a party must seek leave of court to amend by filing a motion. Id.   However, if a party seeks to amend a pleading following the court's grant of a motion to dismiss, the party must first move to reopen the case under Fed. R. Civ. P. 59(e) or 60(b) and then file a motion under Rule 15 for leave to amend.   Id. at 1186.   Thus, a party must succeed on a Rule 59(e) motion before seeking leave to amend following the dismissal of a complaint.   Castanon v. Cathey, 976 F.3d 1136, 1145 (10th Cir. 2020).   See also Seymour v. Thornton, 79 F.3d 980, 987 (10th Cir. 1996) ("[O]nce judgment is entered, the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or Rule 60(b)") (citations omitted).

As a threshold matter, because Appellant did not meet his burden to alter or amend the District Court's judgment under Rule 59(e), Appellant could not amend

his Amended Complaint under Rule 15. Although Appellant amended his Complaint in response to Appellee's initial Motion to Dismiss, Appellant did not make any request to amend his Amended Complaint until after the District Court properly dismissed it. Appellant then filed his request to amend the Amended Complaint in conjunction with his Rule 59(e) motion – before his case was even reopened and the Rule 59(e) motion was decided by the District Court. Since Appellant did not meet his burden under Rule 59(e), his request for leave to amend was improper, and this Court need not determine if the District Court abused its discretion in denying Appellant's improper request for leave to amend the Complaint. See Laufer v. Looper, No. 20-CV-02475-NYW, 2021 WL 5299585, at *3 (D. Col. Jan. 27, 2021) (observing that plaintiff's failure to demonstrate relief under Rule 59(e) alone is a sufficient basis to deny plaintiff's request for leave to amend).

### ii.    Even If Appellant Met His Burden Under Rule 59(E) And His Request For Leave Was Proper, The District Court Correctly Denied Leave Because Amendment Would Be Futile

Setting aside that no basis exists for allowing Appellant to amend his complaint for a second time, such an amendment would be futile, as the District Court held, because Appellant repeatedly demonstrated his inability to allege actionable discrimination or retaliation claims against Appellee. See Armour v. Universal Protection Servs., 724 F. App'x 63, 65 (10th Cir. 2018) (affirming

dismissal with prejudice of complaint where amendment would be futile).  When a district court denies a motion for leave to amend a complaint because amendment would be futile, the appellate court's review for abuse of discretion includes *de novo* review of the legal basis for the finding of futility.  <u>Castanon</u>, 976 F.3d 1136 at 1144.  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." <u>Full Life Hospice, LLC v. Sebelius</u>, 709 F.3d 1012, 1018 (10th Cir. 2013).  Here, the District Court properly held that it would be futile to amend Appellant's NMHRA disability and retaliation claims in Count I and common law retaliation claim in Count IV since they would not survive a Motion to Dismiss.

Even considering the improper allegations in Appellant's affidavit submitted with his Opposition to Appellee's Motion to Dismiss, the District Court correctly observed that its analogous decision in <u>Duffee v. T-Mobile USA, Inc.</u> forecloses Appellant's NMHRA disability discrimination and retaliation claims in Count I of the Amended Complaint.  As set forth in Section I (C) (iv) above, the District Court relied on <u>Duffee</u> with nearly identical facts and held that plaintiff still could not plausibly allege facts supporting his conclusory assertion that he was terminated *because* of his disability because Appellee's vaccination policy was issued prior to Appellant's request for an accommodation and therefore negates the necessary causation to plead his disability discrimination and retaliation claims.  <u>Id.</u>  The

District Court also found persuasive the holding in <u>Duffee</u> that plaintiff's request for an accommodation is unreasonable as a matter of law if it violates an employer's in-person physical attendance policies.  Thus, since Appellant offered no additional facts, he could plead in a second amended complaint to cure these deficiencies and survive a motion to dismiss, the District Court properly concluded it would be futile to grant Appellant leave to amend his discrimination and retaliation claims in Count I of the Amended Complaint.

The District Court also correctly denied Appellant's request for leave to amend his common law retaliation claim in Count IV of his Amended Complaint. Appellant did not present *any* new allegations to support a request for leave to amend this claim, but instead attempted to relitigate his claim that his individual choice to abstain from vaccination is not conduct in furtherance of public policy. For the reasons set forth in Section I (E) above, the Court properly considered and rejected this legal argument in dismissing the Amended Complaint and correctly found that any further amendment based on the same defective legal argument would be futile.  Therefore, the District Court's denial of Appellant's request for leave to amend Count IV of his Amended Complaint should be sustained.

## **CONCLUSION**

Spinelli's Amended Complaint failed to state a claim that could plausibly entitle him to relief on his NMHRA discrimination and NMRHA and common law retaliation claims, and the District Court correctly arrived at this conclusion. Spinelli also failed to demonstrate that the District Court abused its discretion in denying his Motion to Alter or Amend Judgment or erred in denying his request for leave to amend his already Amended Complaint. Accordingly, Coherus respectfully requests that this Court affirm the District Court's Orders granting Coherus's Motion to Dismiss and denying Spinelli's Motion to Alter or Amend Judgment.

## **STATEMENT REGARDING ORAL ARGUMENT**

Appellee has no objection to Appellant's request for oral argument.  While Appellee believes the issues involved in the District Court's Order at issue on appeal are fully developed in the record on appeal and in the briefs of the parties, oral argument may aid the Court in resolving the substantial issues presented by this appeal.

Dated: April 23, 2025                          Respectfully submitted,

                                                                 /s/ Ryan S. Carlson
                                                                Ryan S. Carlson
                                                                *Attorney for Appellee,*
                                                                *Coherus Biosciences, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 11,107 words total, including the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Version 2304 (Build 16731.20264) of Microsoft Office Word in Times New Roman 14-point type.

Dated: April 23, 2025                          Respectfully submitted,

                                                      /s/ Ryan S. Carlson
                                                     Ryan S. Carlson
                                                     *Attorney for Appellee,*
                                                     *Coherus Biosciences, Inc.*

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

Anderson v. Textron Aviation, Inc.,
    No. 22-CV-01145-JAR-KGG, 2022 WL 15427625
    (D. Kan. Oct. 27, 2022) .........................................................................ADD-1

Beckerich v. St. Elizabeth Medical Center,
    No. 21-105-DLB-EBA, 2021 WL 4722915 (E.D. Ky. 2021)...............ADD-7

Bridges v. Houston Methodist Hospital,
    543 F. Supp. 3d 525 (S.D. Tex. 2021), aff'd.,
    No. 21-20311, 2022 WL 2116213 (5th Cir. June 12, 2022) .................ADD-9

Calero v. Core Civic of Tennessee, LLC.,
    No. 1:20-CV-01015-KWR-KK, 2021 WL 1663711
    (D.N.M. Apr. 28, 2021) .......................................................................ADD-12

Chatterton v. Summit Food Servs., LLC,
    No. CV 12-0082 JCH/WPL, 2013 WL 12328899
    (D.N.M. Aug. 9, 2013) ........................................................................ADD-19

Chatterton v. Summit Food Services, LLC,
    No. CV 12-0082 JCH/WPL, 2013 WL 12328900
    (D.N.M. Sept. 3, 2013) ........................................................................ADD-26

Duffee V. T-Mobile USA Inc.,
    No. 1:23-CV-00536-MIS-LF, 2023 WL 6391376
    (D.N.M. Oct. 2, 2023) .........................................................................ADD-27

Duffee V. T-Mobile USA, Inc.,
    No. 23-2176, 2024 WL 1885567 (10th Cir. Jan. 5, 2024) .................ADD-32

Fallon v. CTSC, LLC,
    No. CIV. 13-00176 MV/ACT, 2013 WL 9853376
    (D.N.M. Sept. 26, 2013) ......................................................................ADD-33

Haskew v. Sw. Airlines Co.,
    No. CV 19-732 JAP/LF, 2020 WL 6781754
    (D.N.M. Nov. 18, 2020) ......................................................................ADD-44

Hughes v. Terminix Pest Control, Inc.,
    No. 23-30617, 2024 WL 3440465
    (5th Cir. July 17, 2024).......................................................................ADD-51

Jorgenson v. Conduent Transport Solutions, Inc.,
    No. CV SAG-22-01648, 2023 WL 1472022
    (D. Md. Feb. 2, 2023) ...........................................................................ADD-53

Jorgenson v. Conduent Transport Solutions, Inc.,
    No. 23-1198, 2023 WL 4105705 (4th Cir. June 21, 2023) .................ADD-58

Keenan-Coniglio v. Cumbre & Toltec Scenic Operating Comm.,
    -- F. Supp. 3d --, 2025 WL 684320 (D.N.M. Mar. 4, 2025) ...............ADD-59

Laufer v. Looper,
    No. 20-CV-0, 2475-NYW, 2021 WL 5299585
    (D. Col. Jan. 27, 2021)..........................................................................ADD-91

Long v. E. New Mexico Univ. Bd. or Regents,
    No. CV 13-380 RB/SMV, 2015 WL 13667230
    (D.N.M. Jan. 26, 2015).........................................................................ADD-97

Mercer v. ViacomCBS/Paramount,
    No. 22 CIV. 6322 (LGS), 2024 WL 3553133
    (S.D.N.Y. July 26, 2024)....................................................................ADD-108

Neri v. Board of Education for Albuquerque Public Schools,
    No. CIV 19-8 JCH/SCY, 2022 WL 3998643
    (D.N.M. Sept. 1, 2022) ......................................................................ADD-116

Neri v. Board of Education for Albuquerque Public Schools,
    No. CV 19-8 JCH/SCY, 2022 WL 4546250
    (D.N.M. Sept. 29, 2022) ....................................................................ADD-147

Norman v. NYU Langone Health Sys.,
    492 F. Supp. 3d 154 (S.D.N.Y. 2020), aff'd,
    No. 20-3624, 2021 WL 5986999 (2d Cir. Dec. 17, 2021) ...............ADD-154

Sullivan v. Am. Online, Inc.,
    No. CV 04-864 JH/DJS, 2005 WL 8163599
    (D.N.M. Aug. 23, 2005), aff'd., 219 F. App'x 720
    (10th Cir. 2007) .................................................................................ADD-160

West v. Scott Laboratories, Inc.,
      No. 22-CV-07649-CRB, 2023 WL 2632210
      (N.D. Cal. Mar. 24, 2023)..................................................................ADD-166

West v. Scott Laboratories, Inc.,
      No. 23-15502, 2023 WL 6172009 (9th Cir. Sept. 22, 2023).............ADD-172

Anderson v. Textron Aviation, Inc., Not Reported in Fed. Supp. (2022)

2022 WL 15427625, 66 NDLR P 59

2022 WL 15427625
United States District Court, D. Kansas.

Terry L. ANDERSON, Plaintiff,
v.
TEXTRON AVIATION, INC. d/b/a Cessna, Defendant.

Case No. 22-CV-01145-JAR-KGG
|
Signed October 27, 2022

**Attorneys and Law Firms**

Larry G. Michel, Kennedy Berkley, Salina, KS, for Plaintiff.

Christina J. Hansen, Stephanie N. Scheck, Stinson, LLP, Wichita, KS, for Defendant.

**MEMORANDUM AND ORDER**

JULIE A. ROBINSON, UNITED STATES DISTRICT JUDGE

**\*1** Plaintiff Terry L. Anderson brought this action against Defendant Textron Aviation, Inc. d/b/a Cessna ("Textron Aviation"), alleging claims of discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"). This matter is before the Court on Defendant's Motion to Dismiss (Doc. 7). Defendant argues that Plaintiff has not satisfied the requirements of *Twombly/ Iqbal* in setting forth his ADA discrimination and retaliation claims. Specifically, Defendant argues that Plaintiff has not sufficiently alleged that he is disabled within the meaning of the ADA or that he engaged in an activity protected by the ADA. Plaintiff argues that he has satisfied the pleading requirements for each claim. In the alternative, Plaintiff requests leave to amend his Complaint to cure any deficiencies (Doc. 10). The matter is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court grants Defendant's motion with leave to amend.

**I. Factual Background**

Plaintiff Terry Anderson was employed by Defendant Textron Aviation from approximately August 1995 until his termination on April 9, 2021. Plaintiff worked in Defendant's paint department and satisfactorily met Defendant's job expectations. Plaintiff has diabetes, which heightens his risks from COVID-19 exposure. He has missed work due to cellulitis in his legs from his condition. On March 3, 2021, Plaintiff expressed concerns with Defendant's Human Resources Department that Defendant did not comply with COVID-19 protocols by failing to promptly notify Plaintiff of a possible COVID-19 exposure. Plaintiff's wife, Twyla, participated in the meeting, where she expressed that Defendant "was not complying with the law and perhaps they needed to retain legal counsel."[1] On April 9, 2021, Defendant terminated Plaintiff "in connection with a non-injury fall on March 17, 2021."[2]

**II. Legal Standard**

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[3] and must include "enough facts to state a claim for relief that is plausible on its face."[4] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[5] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[6] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[7] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[8]

**\*2** The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.' "[9] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[10] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]

ADD-1

Anderson v. Textron Aviation, Inc., Not Reported in Fed. Supp. (2022)

2022 WL 15427625, 66 NDLR P 59

In *Khalik v. United Air Lines*,[13] the Tenth Circuit provided an extensive analysis of the pleading standard for employment discrimination and retaliation claims under *Twombly*.[14] The court was careful to note that under *Twombly*, the plaintiff is not required to "set forth a prima facie case for each element" to successfully plead a claim of discrimination.[15] Instead, he is only required to "set forth plausible claims."[16] Nevertheless, "the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim."[17] The *Khalik* court provided a list of facts an employment discrimination plaintiff could reasonably be expected to know and allege to satisfy the plausibility requirement of *Twombly*.[18] Such facts could include the inconsistencies given for the adverse employment decision, when the complaint at issue was filed, the context of the employment decision, or any other reasons the plaintiff believes discrimination or retaliation formed the basis of the decision.[19]

### III. Discussion

#### A. ADA Discrimination

Defendant argues that Plaintiff has not "plausibly alleged that he is disabled within the meaning of the [ADA]."[20] The ADA prohibits employers from discriminating on the basis of disability.[21] The elements of a *prima facie* case of ADA discrimination are: (1) plaintiff is disabled as defined by the ADA; (2) plaintiff is qualified, with or without reasonable accommodation, to perform the essential functions of the job; and (3) plaintiff's employer discriminated against him because of his disability.[22]

First, Defendant argues that Plaintiff "has not even made a conclusory allegation that his diabetes or cellulitis substantially limits a major life activity."[23] The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[24] Major life activities include such functions as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[25] A plaintiff is "not required to provide a precise description of the major life activity allegedly affected

by [the plaintiff's] disability"[26] at the pleading stage, but the plaintiff does need to make more than a conclusory allegation that the condition substantially limited him in a major life activity "as compared to most people in the general population."[27] For example, in *Burger v. Wolf Creek Nuclear Operating Corp.*, the plaintiff's allegation that "her disabling conditions substantially impair her sleeping, concentration and wakefulness" depended upon mere labels or conclusions to state a disability under the ADA.[28] The court pointed out that additional facts, which "should be in plaintiff's power to observe," were necessary to allege a plausible claim.[29]

**\*3** Here, Plaintiff's pleading closely resembles the insufficient pleading in *Burger*. While diabetes likely constitutes a recognized impairment under the ADA[30], Plaintiff relies on legal conclusions to allege any substantial impairment on a major life activity. Plaintiff alleges that his cellulitis caused him to miss work, but he does not include facts suggesting that his ability to work was substantially impaired as compared to the general public. In fact, Plaintiff alleges that his absences did not result in any meaningful discipline at work. If Plaintiff relies on an actual disability to show that he is disabled under the ADA, his Complaint does not state a plausible claim.

Plaintiff also claims that Defendant regarded him as disabled under 42 U.S.C. § 12102(1)(C), which does not require a showing that the condition substantially impaired one or more major life activities. Rather, "the employer need only regard the employee as being impaired, whether or not the employer also believed that the impairment prevented the employee from being able to perform a major life activity."[31] Under this standard, an impairment cannot be "transitory or minor."[32] A transitory impairment is an impairment that has an actual or expected duration of 6 months or less.[33]

Here, Plaintiff alleges that "his health issues were known by his supervisors at Textron,"[34] but he does not allege whether his supervisors knew about his diabetes or if they merely knew about the cellulitis in his legs. If his employer only knew about the cellulitis in his legs, Plaintiff does not allege any facts that suggest whether the condition had an actual or expected duration of 6 months or less. Additionally, Plaintiff alleges that his "underlying health conditions, including [his] diabetes" were discussed in his meeting with Human Resources.[35] He does not, however, allege who fired him and whether or not they had knowledge of his condition. As they

ADD-2

Anderson v. Textron Aviation, Inc., Not Reported in Fed. Supp. (2022)

2022 WL 15427625, 66 NDLR P 59

stand, Plaintiff's allegations of a regarded-as disability do not raise a right to relief against Defendant above the speculative level. Thus, Plaintiff's Complaint does not state a plausible claim that Plaintiff was disabled under the ADA.

**B. ADA Retaliation**

Defendant also argues that Plaintiff did not plead sufficient facts that, along with the reasonable inferences to be drawn from those facts, support a plausible claim that he participated in activity protected by the ADA. The ADA provides "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter." [36]

> To establish a prima facie case of ADA retaliation, a plaintiff must prove that (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action. [37]

"To establish a causal connection, [a plaintiff] must present evidence of circumstances that justify an inference of *retaliatory motive*." [38] "The Supreme Court has likened this burden to a showing of 'but-for causation.' " [39] "The evidence of but-for causation must be based on more than mere speculation, conjecture, or surmise." [40]

**\*4** To allege protected activity or protected opposition under the ADA, the plaintiff must show that he conveyed to his employer his concern that the employer engaged in a practice made unlawful by the statute. [41] Protected opposition to discrimination "can range from filing formal charges to complaining informally to supervisors." [42] A plaintiff need only show that when he engaged in protected opposition, he had a reasonable good-faith belief that the

opposed behavior was discriminatory. [43] Although no "magic words" are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the statute. [44] Vague references to discrimination without indicating that it was motivated by disability does not support a retaliation claim. [45] Additionally, the mere discussion of an ADA-protected condition does not automatically convert the conversation into protected activity under the ADA. [46]

The Complaint alleges that Plaintiff and his wife met with Human Resources to discuss Plaintiff's concerns. However, Plaintiff must also allege that he conveyed to his employer his concern that the employer during this meeting engaged in a practice made unlawful by the statute. In order to succeed at trial, Plaintiff ultimately will need to show that his employer knew he was engaging in protected opposition. The allegations in the Complaint do not demonstrate that Plaintiff held an objectively reasonable belief that a violation of the ADA had occurred, nor do they suggest that Plaintiff told Defendant that its alleged failure to comply with its COVID-19 protocols violated the ADA. Further, Plaintiff does not allege that his wife's comments involved allegations of discrimination based on his disability. Thus, Plaintiff's Complaint does not state a plausible claim that he engaged in a protected activity under the ADA.

**IV. Conclusion**

Based on the findings discussed above, the Court grants Defendant's motion to dismiss Plaintiff's claims without prejudice. Given the nature of the deficiencies, however, the Court grants Plaintiff's leave to file an amended complaint that clearly and specifically remedies the issues addressed in this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's Motion to Dismiss (Doc. 7) is **granted** with leave to amend. If Plaintiff fails to file an Amended Complaint by Nov. 17, 2022, this case shall be dismissed with prejudice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 15427625, 66 NDLR P 59

ADD-3

Anderson v. Textron Aviation, Inc., Not Reported in Fed. Supp. (2022)

2022 WL 15427625, 66 NDLR P 59

---

## Footnotes

1   Doc. 1 ¶ 10.

2   *Id.* ¶ 11.

3   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

4   *Id.* at 570.

5   *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

6   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

7   *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

8   *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

9   *Id.* (quoting *Twombly*, 550 U.S. at 555).

10  *Id.* at 678–79.

11  *Id.* at 679.

12  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

13  671 F.3d 1188 (10th Cir. 2012).

14  *Id.* at 1193–94.

15  *Id.* at 1194.

16  *Id.*

17  *Id.* at 1192.

18  *Id.*

19  *Id.*

20  Doc. 12 at 1.

21  42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.").

22  *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020).

ADD-4

Anderson v. Textron Aviation, Inc., Not Reported in Fed. Supp. (2022)

2022 WL 15427625, 66 NDLR P 59

23    Doc. 12 at 5.

24    42 U.S.C. § 12102(1).

25    42 U.S.C. § 12102(2)(A).

26    🚩 *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 836 n.5 (10th Cir. 2011).

27    *Castro v. Dot's Pretzels, LLC*, No. 20-2579-JWB, 2021 WL 3674739, at *6 (D. Kan. Aug. 19, 2021).

28    *Burger v. Wolf Creek Nuclear Operating Corp.*, No. 11-4158-RDR, 2012 WL 3655295, at *3 (D. Kan. Aug. 27, 2012).

29    *Id.*

30    *See* 🚩 29 C.F.R. § 1630.2(h)(1).

31    🚩 *Adair v. City of Muskogee*, 823 F.3d 1297, 1305–06 (10th Cir. 2016).

32    *Id.*

33    *Id.*

34    Doc. 1 ¶ 7.

35    *Id.*

36    🚩 42 U.S.C. § 12203(a).

37    🚩 *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (citing 🚩 *Anderson*, 181 F.3d at 1178).

38    🚩 *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018) (citing 🚩 *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)).

39    *Id.* (quoting 🚩 *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

40    *Id.* (quoting 🚩 *Nassar*, 570 U.S. at 360).

41    *Cerda v. Cillessen & Sons, Inc.*, No. 19-1111-JWB, 2020 WL 416979, at *3 (D. Kan. Jan. 27, 2020).

42    🚩 ⚠ *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1135–36 (10th Cir. 2005).

43    🚩 *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015–16 (10th Cir. 2004).

44    *Cerda*, 2020 WL 416979, at *3.

45    🚩 *Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x. 912, 916 (10th Cir. 2004).

46    *Grear v. Miller & Newberg, Inc.*, No. 15-7458-JAR, 2016 WL 4095429, at *8 (D. Kan. Aug. 2, 2016).

ADD-5

**Anderson v. Textron Aviation, Inc., Not Reported in Fed. Supp. (2022)**

2022 WL 15427625, 66 NDLR P 59

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-6

Beckerich v. St. Elizabeth Medical Center, Not Reported in Fed. Supp. (2021)

2021 WL 4722915
Only the Westlaw citation is currently available.
United States District Court, E.D. Kentucky,
Northern Division.
at Covington.

Christy BECKERICH, et al., Plaintiffs

v.

ST. ELIZABETH MEDICAL
CENTER, et al., Defendants

CIVIL CASE NO. 21-105-DLB-EBA
|
Signed 09/30/2021

**Attorneys and Law Firms**

Anthony Dominick Romeo, Deters Law Firm, Independence, KY, Alan J. Statman, Statman, Harris & Eyrich, LLC, Cincinnati, OH, for Plaintiffs.

Christopher B. Markus, Mark D. Guilfoyle, Michael Joseph Enzweiler, Nicholas Charles Birkenhauer, Dressman Benzinger LaVelle P.S.C., Crestview Hills, KY, for Defendants.

**ORDER**

David L. Bunning, United States District Judge

**\*1** This matter is before the Court on Plaintiffs' Motion for Reconsideration (Doc. # 36) of the Court's September 24, 2021 Order (Doc. # 34) denying Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction. (Doc. # 7). Within their motion, Plaintiffs notify the Court that they plan to appeal to the Sixth Circuit on several issues but seek reconsideration and clarification [1] by this Court before they do so. For the brief reasons stated below, the Court finds no legal bases to do so, and therefore **denies** the motion.

Plaintiffs first take issue with the Court's finding that St. Elizabeth is not a state actor for purposes of analyzing their constitutional claims, pointing to President Biden's recent directive that all businesses with 100 or more employees must have a vaccine mandate, as well as the large amount of PPP and Cares Act funds St. Elizabeth has received in federal funding. The fact that the executive branch has made

a statement that certain companies must implement a vaccine mandate in exchange for receipt of federal reimbursement dollars doesn't convert St. Elizabeth into a state actor. Nor does the receipt of government funding. *See* Doc. # 34 at p. 5-6.

Plaintiffs also ask the Court to ignore the Supreme Court's *Jacobson* decision, equating it to the *Dred Scott* decision, and arguing that it is not judicial activism to change a law via judicial decision when circumstances mandate the Court do so. At pages 17 and 18 of its Order, the Court explained why *Jacobson* was controlling, and more importantly, why it dictated denial of Plaintiffs' request for injunctive relief.

Plaintiffs next lament that the Court adopted the "political left position" when it called the COVID-19 situation an "unprecedented global pandemic." The Court's Order did nothing of the sort and took great pains to not wade into politics in any way. The Order speaks for itself. Whether called an unprecedented global pandemic or a less ominous description, the COVID-19 situation has been, by any objective measure, something that everyone, including the hospital and its employees, has been dealing with for more than eighteen months. Calling it unprecedented isn't political at all. Rather, it is merely a recognition of its extraordinary nature.

As an overall complaint in the motion, Plaintiffs allege that the Court agreed with the legal positions of Defendants to their detriment and should have allowed Plaintiffs to present evidence and testimony in support of their claims. The Court heard more than two hours of oral argument on the motion and did not take additional evidence during that hearing. Rather, it ruled on the record that was pending at the time, including numerous affidavits filed by both sides. [2] Fed.R.Civ.P. 65, which governs preliminary injunctions, does not explicitly require an evidentiary hearing. In the Court's view, because Plaintiffs' claims clearly did not merit injunctive relief, an evidentiary hearing was not warranted. As for agreeing with the legal position of the Defendants, once again, the prior Order speaks for itself.

**\*2** Accordingly, **IT IS ORDERED** that Plaintiffs' Motion for Reconsideration (Doc. # 36) is **DENIED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4722915

ADD-7

Beckerich v. St. Elizabeth Medical Center, Not Reported in Fed. Supp. (2021)

### Footnotes

1       In its haste to enter its ruling promptly, the Court overlooked an error on page 19 of its Order. The final
        sentence of last paragraph on that page should read as follows: Unfortunately for Plaintiffs, they have not
        stated a viable legal theory in support of injunctive relief, as each of the factors required to be considered,
        individually and collectively, weigh against the *granting* of injunctive relief (emphasis added).

2       In fact, the Court accommodated Plaintiffs by considering numerous affidavits that Plaintiffs submitted after
        a deadline previously set by Court order. (*See* Docs. # 27, 29 & 30).

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-8

Bridges v. Methodist Hospital, Not Reported in Fed. Rptr. (2022)

2022 WL 2116213, Med & Med GD (CCH) P 307,390

2022 WL 2116213
United States Court of Appeals, Fifth Circuit.

Jennifer BRIDGES; Bob Nevens; Maria Trevino; Ricardo
Zelante; Latricia Blank; et al., Plaintiffs—Appellants,

v.

The METHODIST HOSPITAL, doing business
as Houston Methodist; Methodist Health Centers,
doing business as Houston Methodist the
Woodlands Hospital, Defendants—Appellees.

No. 21-20311
|
FILED June 13, 2022

Appeal from the United States District Court for the Southern
District of Texas, USDC 4:21-CV-1774, Lynn N. Hughes,
U.S. District Judge

**Attorneys and Law Firms**

Jared Ryker Woodfill, V, Attorney, Woodfill Law Firm,
Houston, TX, Jill Schumacher, Daniels & Tredennick,
P.L.L.C., Houston, TX, for Plaintiffs—Appellants.

Constance Hankins Pfeiffer, Esq., Grant Bellows Martinez,
Christian J. Ward, Attorney, Yetter Coleman, L.L.P., Houston,
TX, Daniel F. Patton, Esq., Houston, TX, Michael W.
Twomey, Kane Russell Coleman & Logan, P.C., Houston,
TX, for Defendant—Appellee Methodist Hospital.

Constance Hankins Pfeiffer, Esq., Yetter Coleman, L.L.P.,
Houston, TX, Michael W. Twomey, Kane Russell Coleman
& Logan, P.C., Houston, TX, Daniel F. Patton, Esq., Houston,
TX, for Defendant—Appellee Methodist Health Centers.

Before Jolly, Elrod, and Haynes [*], Circuit Judges.

**Opinion**

Per Curiam: [**]

**\*1** Houston Methodist (HM) hospitals imposed a mandatory
COVID-19 vaccination policy on its employees. Plaintiffs,
former employees of HM, allege that they were fired
or were going to be fired for refusing to receive the
COVID-19 vaccine, as required by the policy. They sued
HM for violations of federal law and regulations and for
wrongful discharge under Texas law. The district court
granted HM's motion to dismiss under Rule 12(b)(6), and

plaintiffs appealed. Because plaintiffs do not demonstrate any
error in the district court's judgment on the arguments made
in that court but instead make an entirely new argument on
appeal, we AFFIRM the district court's dismissal of plaintiffs'
complaint.

On April 1, 2021, Defendant Houston Methodist [1] announced
a mandatory vaccination policy for its employees. The policy
was rolled out in two phases, the first applying only to
management employees and the second applying to everyone
else. Under the policy, HM required employees to either
be fully vaccinated (pursuant to either a one-or two-dose
vaccine), within a certain period of time, or else apply for
exemptions based on medical condition or sincerely held
religious belief. Employees who failed to comply with the
policy by a certain date—namely, by being vaccinated or
qualifying for an exemption—were placed on a two-week,
unpaid suspension. Failure to comply with the policy by the
end of the two-week suspension would result in immediate
dismissal.

Plaintiffs filed suit on May 28, 2021, in Texas state court. HM
removed the case to federal court and filed a Rule 12(b)(6)
motion to dismiss. In response, plaintiffs filed an amended
complaint, the operative complaint here. The complaint set
forth three claims: (1) wrongful discharge under Sabine-
Pilot Service, Inc. v. Hauck, 687 S.W.2d 733 (Tex. 1985), for
violating public policy by forcing plaintiffs to engage in an
illegal act; (2) wrongful discharge for violating public policy
by forcing plaintiffs to receive an experimental vaccine; and
(3) violations of federal law and regulations, including 21
U.S.C. § 360bbb-3, 41 C.F.R. 46.101, 46.102, and 46.116,
for failure to advise plaintiffs of the risks and benefits of
the vaccine and to provide an option to accept or refuse
the vaccine. HM filed another Rule 12(b)(6) motion to
dismiss, which the district court granted. Plaintiffs appeal that
decision. [2]

**\*2** This court reviews dismissals under Rule 12(b)(6) de
novo. Cicalese v. Univ. of Tex. Med. Branch, 924 F.3d
762, 765 (5th Cir. 2019). "To survive a motion to dismiss, a
complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its face.'
" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
A claim for relief may be foreclosed "on the basis of a

ADD-9

Bridges v. Methodist Hospital, Not Reported in Fed. Rptr. (2022)

2022 WL 2116213, Med & Med GD (CCH) P 307,390

dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

Plaintiffs appeal only the district court's dismissal of their second claim. They argue that firing an employee for her refusal to receive an experimental COVID-19 vaccine violates public policy and merits an exception to Texas's general rule of at-will employment. [3] Pointing to the Supreme Court of Texas's decision in *Sabine Pilot*, 687 S.W.2d at 735, plaintiffs ask this court to hold that they have stated a claim for wrongful discharge under Texas law.

In *Sabine Pilot*, the Supreme Court of Texas recognized an exception to the general employment-at-will doctrine. *Id.* At issue was whether "an allegation by an employee that he was discharged for refusing to perform an illegal act states a cause of action" for wrongful discharge. *Id.* at 734. The court held that "public policy, as expressed in the laws of this state and the United States which carry criminal penalties, requires a very narrow exception" to at-will employment. *Id.* at 735. This narrow exception "covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act." *Id.*

Plaintiffs argue that the logic underlying *Sabine Pilot*'s exception for refusals to perform an illegal act should also apply to refusals to receive the (at that time) experimental COVID-19 vaccines.

However, we agree with the district court that plaintiffs' alleged violations of federal law are insufficient to show any violation of public policy for purposes of an at-will-employment exception. Indeed, plaintiffs hardly protest on appeal. Instead of reasserting their reliance on alleged violations of federal law and regulations, plaintiffs have pivoted to alleged violations of Texas law and executive orders, and now even equivocate on whether federal law supports their claim. [4] Federal law does not, and the district court did not err in dismissing plaintiffs' claim.

We also decline plaintiffs' invitation to certify this question to the Supreme Court of Texas, as plaintiffs did not raise in district court an issue worthy of certification. This court's respect for federal–state comity makes it "chary about certifying questions of law absent a compelling reason to do so," *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1247 (5th Cir. 1997), and there is no compelling reason to do so here.

\* \* \*

**\*3** For these reasons, we AFFIRM.

**All Citations**

Not Reported in Fed. Rptr., 2022 WL 2116213, Med & Med GD (CCH) P 307,390

---

**Footnotes**

* Judge Haynes concurs in the judgment only.

** Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

1 Houston Methodist is a hospital system composed of, among other entities, defendant-appellee The Methodist Hospital, *doing business as* Houston Methodist, and defendant-appellee Methodist Health Centers, *doing business as* Houston Methodist The Woodlands Hospital. For convenience, we refer to the defendant-appellees in this case as Houston Methodist (HM).

2 HM removed this case to federal court on the basis of federal-question jurisdiction, 28 U.S.C. § 1331, which was implicated by the plaintiffs' claim that HM violated federal law and regulations. *See* 28 U.S.C. § 1441. We have jurisdiction over this final decision of the district court under 28 U.S.C. § 1291.

ADD-10

3    "The long standing rule in Texas is that employment for an indefinite term may be terminated at will and without cause." 🚩 *Winters v. Hous. Chron. Pub. Co.*, 795 S.W.2d 723, 723 (Tex. 1990); *see also Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 659 (Tex. 2012).

4    We need not reach plaintiffs' new contentions that Texas law and executive orders are the source of a public-policy exception. In light of the principles of federalism that chaperone our interpretation of Texas law, hazarding a first guess, on appeal, on the meaning of state law is ill-advised.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-11

Calero v. CoreCivic of Tennessee, LLC., Not Reported in Fed. Supp. (2021)

2021 WL 1663711
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Mark CALERO, Plaintiff,
v.
CORECIVIC OF TENNESSEE, LLC., Defendant.

No. 1:20-cv-01015-KWR-KK
|
Filed 04/28/2021

**Attorneys and Law Firms**

A. Blair Dunn, Jared Robert Vander Dussen, Western Agriculture, Resource and Business Advocates, LLP, Albuquerque, NM, for Plaintiff.

Peter C. Prynkiewicz, Pro Hac Vice, Robert Shawn Oller, Littler Mendelson, P.C., Phoenix, AZ, for Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS**

KEA W. RIGGS, UNITED STATES DISTRICT JUDGE

**\*1 THIS MATTER** comes before the Court upon Defendant CoreCivic of Tennessee's Motion to Dismiss for Failure to State a Claim [1], filed on October 12, 2020. **Doc. 7**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is well-taken and therefore is **GRANTED**.

**BACKGROUND**

This case arises from Plaintiff's alleged wrongful termination by Defendant from his position as a Detention Officer at Defendant's Torrance County Detention Facility.

Plaintiff was hired by Defendant as a detention officer on August 26, 2019. **Compl., ¶ 7**. The Complaint alleges that as of his last competency rating on March 9, 2019, Defendant stated that Plaintiff was meeting all expectations of his job and indicated that he "should seek promotion when eligible." *Id.*, **¶¶ 8-9**.

The Complaint alleges that, "on behalf of himself and others employed by [Defendant]," [Plaintiff] began calling and leaving voicemails with HR at the facility, requesting information as to how Defendant intended to respond to and protect its employees from the dangers of COVID-19. *Id.*, ¶ 10. On May 15, 2020, Plaintiff called in sick to work with allegedly COVID-like symptoms. *Id.*, ¶ 11. Plaintiff took a COVID test, which came back negative on May 26, 2020. *Id.*, ¶ 12. The Complaint alleges that, although Plaintiff had not been to the detention facility since calling in sick and was personally unaware of the number of positive COVID cases within the facility for either officers or inmates, he was informed by several fellow officers that COVID numbers were high. *Id.*, ¶ 13. Plaintiff alleges that on that day, and others thereafter, he attempted multiple times to contact HR by phone and email regarding the facility's COVID safety protocols and plans, leaving "at least" five voicemails. *Id.*, ¶¶ 14-15.

On June 1, Plaintiff received a telephone call from a supervisor questioning whether he intended to return to work. *Id.*, ¶ 16. Plaintiff informed his supervisor of his COVID-related inquiries to HR and was purportedly informed that his supervisor was present with HR and that someone would get back to him shortly. *Id.*, ¶ 17. The Complaint alleges that no one returned his calls or emails. *Id.*, ¶ 18.

**Events Leading to Plaintiff's Termination**

Plaintiff is a member of the New Mexico Civil Guard, "a private group supporting the rule of law and the 2nd Amendment." *Id.*, ¶ 19. On June 1st, 2020, Plaintiff attended a protest event in Albuquerque, New Mexico with members of the New Mexico Civil Guard. *Id.*, ¶ 20. The members, including Plaintiff, openly carried firearms at the protest. *Id.*, ¶ 21. Plaintiff was photographed carrying a gun by a local news outlet, which published the photograph online in a news article, allegedly without Plaintiff's permission. *Id.*, ¶¶ 23-24, 32.

**\*2** On June 4th, 2020, Plaintiff was issued a "Facility Employee Problem Solving Notice," when a supervisor saw the article and photograph of Plaintiff. *Id.*, ¶ 25. The Notice provided the following:

> On 6/3/2020, while reviewing social media, Shift Supervisor [redacted] Cole, discovered a new story on www.kunm.org, regarding a group of armed militia who were present at a protest occurring on 6/1/2020 in

ADD-12

Albuquerque, NM. A photograph of you holding an assault rifle is attached to this story and demonstrates your presence and participation with a group calling themselves the New Mexico Civil Guard.

Your active engagement with an organization that promotes the use of deadly force by private citizens against those engaged in peaceful protest undermines our confidence in your commitment to follow policy and procedure and in your ability to conduct yourself appropriately and with necessary restraint in the performance of your duties giving appropriate deference to the rights and interests of the detainees to which you are responsible for overseeing: For these reasons your employment with CoreCivic is terminated.

**Doc. 1-1, Ex. 3.**

Plaintiff alleges that neither he nor any members of the New Mexico Civil Guard threatened anyone at the protest and that he was not provided an opportunity to discuss or explain the photograph and the circumstances of his attendance to a supervisor. **Compl., ¶¶ 22, 28, 30**. The Complaint asserts, among other things, that Plaintiff was wrongfully terminated by Defendant without the opportunity to seek redress, for behavior assumed to be against company policy but without a proper investigation by his supervisors. *Id*, ¶ 33. Plaintiff alleges that his wrongful termination was in fact in retaliation for his efforts to identify what COVID-19 safety measures would be enacted for his and others' safety. *Id.*, ¶ 34.

Plaintiff filed this case asserting the following claims against Defendant: wrongful termination in violation of public policy (Count I); breach of contract (Count II); breach of the covenant of good faith and fair dealing (Count III); and "malicious interference with employment/prima facie tort" (Count IV). Defendant moves for dismissal of all counts. **Doc. 7.**

### Legal Standard

**Rule 12(b)(6) Motion to Dismiss**

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." *Fed.R.Civ.P. 12(b)(6)*. To survive a motion to dismiss, the Complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As such, a plaintiff's

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

**\*3** A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556); see also *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). The degree of specificity "depends on context". *Id.* "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### DISCUSSION

Defendant argues that Plaintiff failed to assert sufficient factual allegations on all counts. The Court agrees.

ADD-13

Calero v. CoreCivic of Tennessee, LLC., Not Reported in Fed. Supp. (2021)

## I. <u>Wrongful Termination in Violation of Public Policy (Count I)</u>.

Plaintiff alleges that he was wrongfully terminated in retaliation "...for his continued attempts to identify what actions would be taken by [Defendant] with regard to his health and safety, as well as the health and safety of others during the COVIC-19 pandemic." **Compl., ¶¶ 34, 37.** Defendant has stated, and Plaintiff has not contested, that he was at-will employee. Thus, for the purposes of the motion, the Court considers Plaintiff an at-will employee.

### <u>The Law Regarding At-Will Termination</u>

In New Mexico, "Generally, either an employee or an employer may terminate an at-will employment contract at any time, for any reason, without liability." *Melnick v. State Farm Mut. Auto. Ins. Co.*, 1988-NMSC-012, ¶ 14, 106 N.M. 726, 730, 749 P.2d 1105, 1109. New Mexico recognizes two exceptions to this general rule: "(1) wrongful discharge in violation of public policy (retaliatory discharge); [and] (2) implied contract that restricts the employer's power to discharge..." *Id.* at ¶ 14, 106 N.M. at 730, 749 P.2d at 1109. The tort of wrongful discharge is "a narrow exception to the rule that an at-will employee may be discharged with or without cause." *Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 24, 115 N.M. 293, 303, 850 P.2d 996, 1006. Here, the Complaint claims that Plaintiff's discharge was against public policy in New Mexico, thereby invoking that exception to the rule. *Id.*, ¶ 39.

Defendant argues that Plaintiff failed to allege facts supporting an exception to the general rule of employment at-will because he failed to identify a public policy that Defendant allegedly violated in terminating his employment, instead asserting that he was dismissed in retaliation for his questioning of Defendant's COVID-19 safety procedures. **Doc. 7 at 8.**

Plaintiff contends that the "public policy exception [to terminable at-will employment] is broader than Defendants [sic]" imply, and that such public policies may be evinced in "legislative or judicial statements." **Doc. 13 at 4.** Citing case law on how courts evaluate whether a public policy exists, case law which also conforms to Defendant's interpretation of the law, Plaintiff's Response states that he was wrongfully discharged against public interest in two respects: (1) For "blowing the whistle regarding measures taken or not taken by the Defendant to protect employees against COVID-19..."

and (2) based upon the United States' "long standing" support of peaceful protests and the right to participate without being retaliated against by an employer. *Id.* at 5.

The Court notes, however, that Plaintiff made no such allegation in his Complaint. Rather, Plaintiff specified that it was his questioning of Defendant's COVID-19 safety practices and his armed attendance at a protest event which led to his purportedly wrongful termination. **Compl., ¶¶ 33-34; Doc. 13 at 5** ("Defendant retaliated against the Plaintiff through termination for his involvement in a protest outside of his work hours and in no way connected to his employment."). Fatal to Plaintiff's claim, he has not identified, in either his Complaint or in his Response in Opposition to the Motion to Dismiss, a specific public policy that prohibits Defendant from terminating his employment under the facts as alleged in the Complaint. *Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 25-26, 115 N.M. 293, 303-04, 850 P.2d 996, 1006-07. ("The linchpin of a cause of action for retaliatory discharge is whether by discharging the complaining employee the employer violated a "clear mandate of public policy... '[U]nless an employee at will identifies a specific expression of public policy, he may be discharged with or without cause.' ") (internal citation omitted).

**\*4** Plaintiff's own citation to case law stands against his position. Plaintiff proffers *Sherrill v. Farmers Ins. Exch.* (2016-NMCA-056, ¶ 18, 374 P.3d 723, 729) for the rules relating to assess "whether a public policy exists to pursue a wrongful discharge." **Doc. 13 at 5.** A careful reading of *Sherrill*, however, provides further support for dismissal of Plaintiff's case:

> In the absence of a clearly mandated public policy, the employer retains the right to terminate workers at will. The Illinois Supreme Court discussed the importance of requiring retaliatory discharge claims to rest on well-recognized and clear public policies:
>
> Any effort to evaluate the public policy exception with generalized concepts of fairness and justice will result in an elimination of the at-will doctrine itself. Further, generalized expressions of public policy fail to provide essential notice to employers. The phrase 'clearly mandated public policy' implies that the policy will be recognizable simply because it is clear. An employer should not be exposed to liability where a public policy

ADD-14

standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations....

Similarly, in New Mexico, when an employee is discharged, contrary to a clear mandate of public policy, that employee has a cause of action for retaliatory discharge.

*Sherrill v. Farmers Ins. Exch.*, 2016-NMCA-056, ¶ 16, 374 P.3d 723, 728–29 (internal citation omitted).

Accordingly, even accepting Plaintiff's allegations in the Complaint as true, the Court agrees with Defendant that Plaintiff has not identified any specific New Mexico public policy that Defendant has purportedly violated, nor cited to applicable statutory or legislative sources creating an exception to the at-will termination rule that would prevent dismissal of his claim. The Court finds Plaintiff's public policy arguments unconvincing. **Doc. 13 at 3-4.** Therefore, the Court dismisses Plaintiff's claim for wrongful termination (Count I).

## II. Breach of Contract (Count II) and Breach of Covenant of Good Faith and Fair Dealing (Count III).[2]

Plaintiff's Complaint asserts a breach of an implied contract claim and a breach of the covenant of good faith and fair dealing "...in its employment contract with Plaintiff when they discharged him for reasons other than his performance or conduct, and for reasons contrary to public policy." **Compl., ¶¶ 43, 48.** Defendant moves to dismiss these claims on the basis that Plaintiff failed to "allege any facts from which the Court could reasonably infer that [Defendant] made any representations or engaged in any conduct that could have created a reasonable expectation on Plaintiff's part that [Defendant] could only fire him for cause" and because New Mexico has declined to recognize a cause of action for breach of implied covenant of good faith and fair dealing in at-will employment arrangements. **Doc. 7 at 10-12.**

### The Law Regarding Breach of an Implied Contract

In *Hartbarger v. Frank Paxton Co.* (1993-NMSC-029, 115 N.M. 665, 857 P.2d 776), the Supreme Court of New Mexico outlined the requirements for demonstrating creation of an implied contract in an at-will employment relationship, such that an employee could reasonably expect to be terminated only for cause:

**\*5** *To create an implied contract, the offer or promise must be sufficiently explicit to give rise to reasonable expectations.* The at-will presumption that the employee has no reasonable expectation of continued employment applies only to a single term of an employment relationship—that of the employer's unabridged right to terminate the employee. The right to terminate is the only provision of an employment relationship that is challenged in a case such as the one at bar, where the employee claims that the employer promised that the employee would be discharged only for good cause. In recognizing the so-called "implied employment contract," we actually have recognized only that an implied-in-fact contract term limiting the employer's right to terminate at will may modify the underlying employment relationship. In examining implied employment contract cases, we always have required that the *promise* that is claimed to have altered the presumed at-will term *be sufficiently explicit* to give rise to reasonable expectations of termination for good cause only...An employer creates expectations by establishing policies or making promises. An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon.

*Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶¶ 13-14, 115 N.M. 665, 672, 857 P.2d 776, 783 (emphasis in original) (internal citations omitted).

ADD-15

*Calero v. CoreCivic of Tennessee, LLC., Not Reported in Fed. Supp. (2021)*

Defendant argues that Plaintiff's Complaint merely asserts that he received a good evaluation and was encouraged to seek promotion when eligible, and that this is insufficient basis to demonstrate creation of an implied contract and reasonable expectation that Plaintiff would only be fired for cause. **Doc. 7 at 11;** *See Garrity v. Overland Sheepskin Co. of Taos, 1996-NMSC-032, ¶ 10, 121 N.M. 710, 713, 917 P.2d 1382, 1385* (internal citation and quotations omitted) ("... [A] vague impression or general feeling of continued employment is not sufficient to create an employment contract...Courts have allowed an exception to the at-will employment rule when there is an implied contract arising out of an employer's promise not to fire an employee except for just cause. However, we will not find an implied contract for cases in which the alleged promise by the employer [is] not sufficiently explicit.").

Plaintiff's Response, which focuses almost exclusively on its allegations under breach of covenant of good faith and fair dealing, does not dispute Defendants arguments or the law. Plaintiff cites case law for the proposition that "Essentially, the implied covenant of good faith and fair dealing helps ensure that both parties receive the benefit of their respective bargains. The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." **Doc. 13 at 5.** Plaintiff suggest that he has sufficiently demonstrated "genuine issues of material fact" relating to his wrongful termination such that dismissal must be denied. *Id.* at 6. Plaintiff then recites "several exceptions" to the general rule that at-will employees may be dismissed at any time. *Id.* In making his argument, Plaintiff quotes the New Mexico Supreme Court in *Melnick* for the exceptions to the general rule, *including those that New Mexico does not recognize a cause of action for contractual breach of an implied covenant of good faith and fair dealing. Melnick v. State Farm Mut. Auto. Ins. Co., 1988-NMSC-012, ¶ 14, 106 N.M. 726, 730, 749 P.2d 1105, 1109.* The Court rejects Plaintiff's arguments as vague and conclusory at best. Accepting the factual allegations in the Complaint as true, the Court cannot construe that Defendant made any promises or created a reasonable expectation that Plaintiff could only be fired for cause. Certainly, the fact that he was allegedly employed for ten months and received a positive evaluation is not demonstrative of an exception to the general rule permitting termination of at-will employment at any time. **Compl., ¶ 42.** Accordingly, the Court dismisses Plaintiff's claims for breach of contract (Count II) and breach of the covenant of good faith and fair dealing (Count III).

### IV. "Malicious Interference with Employment/Prima Facie Tort" (Count IV).

**\*6** Plaintiff's fourth and final claim for "malicious interference with employment/prima facie tort" which repeats that Plaintiff was removed purportedly to "hide Defendant's bad acts and lack of proper COVID safety measures" is similarly without merit[3]. **Compl., ¶¶ 52-53.** Defendant argues that Plaintiff failed to plead the requisite elements of a prima facie tort claim. **Doc. 7 at 12-13.** The Court agrees.

#### Plaintiff Fails to Plead the Requisite Elements of a Prima Facie Tort

"The theory underlying prima facie tort is that a party that intends to cause injury to another should be liable for that injury, if the conduct is generally culpable and not justifiable under the circumstances." *Schmitz v. Smentowski, 1990-NMSC-002, ¶ 37, 109 N.M. 386, 394, 785 P.2d 726, 734.* The elements of a prima facie tort are: (1) An intentional, lawful act by defendant; (2) An intent to injure the plaintiff; (3) Injury to plaintiff, and (4) The absence of justification or insufficient justification for the defendant's acts. *Id.* New Mexico courts apply a balancing test to determine liability under a prima facie tort claim. *Hagebak v. Stone, 2003-NMCA-007, ¶ 25, 133 N.M. 75, 82–83, 61 P.3d 201, 208–09.* ("The activity complained of must be balanced against its justification and the severity of the injury, weighing: (1) the injury; (2) the culpable character of the conduct; and (3) whether the conduct is unjustifiable under the circumstances.") (internal citation omitted).

Defendant argues that Plaintiff's Complaint fails to allege that Defendant terminated his employment or took other action against him with the intent to injure him. **Doc. 7 at 14.** In his Response, Plaintiff recites the elements of a prima facie tort; argues that, "While a tort-feasor must act with the intent to cause injury, and without justification or sufficient justification, it 'need not be shown that the act was solely intended to injure plaintiff' "; and asserts generally that, "The Complaint more than satisfies the pleading standard for New Mexico..." **Doc. 13 at 7-8.**

With respect to the element of intent, the New Mexico Supreme Court specified that "Plaintiffs bear a heavy burden to establish the intent to injure. *Lexington Ins. Co. v. Runmel,*

ADD-16

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 84

Calero v. CoreCivic of Tennessee, LLC., Not Reported in Fed. Supp. (2021)

1997-NMSC-043, ¶ 12, 123 N.M. 774, 123, 945 P.2d 992, 995. The Court explained that "Intent to injure is distinct from intent to commit the act which results in injury...The plaintiff must produce more than a showing that injury is a natural and foreseeable consequence of the act.) *Id.*, ¶ 14, 123 N.M. at 123, 945 P.2d at 995. Moreover, the New Mexico Supreme Court limited the scope of application of the tort:

> In recognizing prima facie tort, this Court emphasized the importance of limiting the cause of action. Prima facie tort was not intended to provide a remedy for every intentionally caused harm. Rather, the cause of action provides a remedy for acts committed with an intent to injure the plaintiff and without justification. Therefore, balancing the malicious intent of the defendant against both the justifications for the injurious act offered by the defendant and the severity of the injury is a necessary step in assessing whether a prima facie tort has been committed. *Where there is no evidence of intent to injure, there is no need to proceed with the balancing test.*

**\*7** *Id.* (internal citation omitted) (emphasis added).

Here, the Court concludes that Plaintiff has not adequately alleged the requisite elements of a prima facie tort. Plaintiff's general statement that he "stand[s] ready and willing to amend their [sic] Complaint to provide a pleading that lays out the claim more conclusively for the Defendant" is incorrect procedure to seek the Court's permission to amend the Complaint. **Doc. 13 at 3;** *See Brooks v. Mentor Worldwide LLC,* 985 F.3d 1272, 1283 (10th Cir. 2021) ("We have long held that bare requests for leave to amend do not rise to the status of a motion and do not put the issue before the district court."). Accordingly, the Court dismisses Plaintiff's claim for "malicious interference with employment/prima facie tort" (Count IV).

CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED.**

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss (**Doc. 7**) is hereby **GRANTED** for the reasons described in this Memorandum Opinion and Order.

A separate judgment will be entered.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1663711

---

**Footnotes**

1    Plaintiff's Complaint originally identifies CoreCivic, Inc. as the Defendant. The parties filed a stipulation to dismiss and substitute that defendant with Defendant CoreCivic of Tennessee, LLC as the appropriate defendant and Plaintiff's employer. **Doc. 30.** Accordingly, the Court refers to CoreCivic of Tennessee, LLC in this motion to dismiss.

2    Plaintiff combines his arguments for these two Counts in his Response to the Motion to Dismiss. The Court therefore addresses them together.

3    In its Motion to Dismiss, Defendant is uncertain as to what exactly Plaintiff's claim is and, therefore, addresses both intentional interference with contract and prima facie tort. In its Response, Plaintiff only discusses prima facie tort. The Court therefore limits its discussion to prima facie tort.

---

**Calero v. CoreCivic of Tennessee, LLC., Not Reported in Fed. Supp. (2021)**

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-18

Chatterton v. Summit Food Services, LLC, Not Reported in Fed. Supp. (2013)

2013 WL 12328899
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Chris CHATTERTON, Plaintiff,
v.
SUMMIT FOOD SERVICES, LLC,
and A'viands, LLC, Defendants.

CV 12-0082 JCH/WPL
|
Filed 08/09/2013

**Attorneys and Law Firms**

Brett Duke, Brett Duke, P.C., Daniela Labinoti, Law Firm of
Daniela Labinoti PC, El Paso, TX, for Plaintiff.

Victor P. Montoya, Jackson Lewis LLP, Albuquerque, NM,
for Defendants.

**PROPOSED FINDINGS AND
RECOMMENDED DISPOSITION**

William P. Lynch, United States Magistrate Judge

**\*1** This matter is before me on Defendants Summit
Food Services, LLC, and A'viands, LLC's Second Amended
Motion to Dismiss Complaint (Doc. 18; *see also* Doc. 22
(reply)), in which Defendants argue that Plaintiff Chris
Chatterton's amended complaint (Doc. 17) was untimely
served and failed to sufficiently state any claims for
relief. Chatterton disputes both arguments, asserting that her
amended complaint was timely and that she has alleged
sufficient facts to support her claims. (Doc. 21.) The Court
has referred the instant motion to me to propose factual
findings and to recommend an ultimate disposition. (Doc.
27.) Having considered the parties' filings, the pleadings, and
the relevant law, and otherwise being fully advised in the
matter, I conclude that while Chatterton has failed to state
sufficient grounds to support one of her claims, the remainder
of her amended complaint comports with the requirements of
Federal Rule of Civil Procedure 8. I also conclude that her
amended complaint was timely filed and served. Therefore, I
recommend that Defendants' motion be granted with respect
to Chatterton's common law claim for retaliatory discharge
and denied in all other respects.

**FACTUAL BACKGROUND**

The following well-pleaded facts are accepted as true for
purposes of this motion. Chatterton worked as a food service
director for Defendants at several state correctional facilities
starting in August 2005. (Doc. 17 at 2.) Until the events
in question occurred, Chatterton never received any official
reprimands or complaints, her employee reviews had been
favorable, and she was considered to be in good standing.
(*Id.* at 2-3.) On November 3, 2010, a twenty-pound ham fell
from a shelf and fractured Chatterton's right food as she was
pulling a box off of a shelf. (*Id.* at 3.) Chatterton immediately
filed a workers' compensation claim, and her doctor ordered
her not to work until November 10, 2010. (*Id.*) Chatterton
was to return to work after that date, though certain physical
restrictions were to be imposed through November 25, 2010.
(*Id.*)

While Chatterton was still on leave, her district manager
issued a written warning to her for alleged personal-conduct
infractions occurring on July 23, August 24, and November
5, 2010. (*Id.*) Although the warning was issued on November
9, 2010, Chatterton says that she did not receive it until
November 16, 2010, at which time her district manager
told her that she would have to change her conduct or face
termination. (*Id.*) The district manager issued Chatterton
another written reprimand six days later, this time for
kitchen sanitation; this notice stated that it was a "final
warning" for Chatterton. (*Id.* at 4.) Eleven days later, the
district manager issued another "final" written reprimand to
Chatterton for both personal conduct and kitchen sanitation.
(*Id.*) Defendants terminated Chatterton on December 15,
2010, allegedly for bribing inmates with soft drinks if they
would agree not to file grievances. (*Id.*) Chatterton claims that
none of the allegations against her were ever proven. (*Id.* at 5.)

**PROCEDURAL BACKGROUND**

**\*2** Chatterton filed the original complaint in this action,
in which she broadly set forth the facts recited above, in
January 2012. (*See* Doc. 1 at 2-5.) At no point in
this pleading did Chatterton state how any of the facts
in her complaint supported any claims against Defendants
(*see* Doc. 15 at 10); instead, she simply asserted that the
facts alleged "constitute[d] unlawful retaliation ... under the
[New Mexico] Workers' Compensation Act" and "unlawful
discrimination ... in violation of Title I of the Americans with

ADD-19

Disabilities Act of 1990" (Doc. 1 at 5). Chatterton also did not separately set forth her claims under these or any statutes, and as the Court later recognized, it was unclear whether Chatterton's threadbare citations to these statutes constituted "an exhaustive list of Plaintiff's claims." (Doc. 15 at 10.) In short, Chatterton's complaint did not clearly specify the claims she was bringing or the relationship between such claims and the facts alleged. (*See id.*) To compound matters, Chatterton failed to properly serve Defendants as required under Rule 4. (*See, e.g., id.* at 2-5, 7-8.)

After service was eventually effected on all parties, Defendants moved to dismiss Chatterton's original complaint. (Doc. 7.) The Court granted the motion and dismissed Chatterton's claims without prejudice, premising the dismissal on both (i) Chatterton's failure to either properly serve Defendants or adequately explain why she had failed to do so, and (ii) Chatterton's failure to properly state a claim under Rule 12(b)(6). (*See* Doc. 15 at 7-13.) However, because Defendants had given no reason why Chatterton should be denied leave to amend her complaint, and because the Court was reluctant to punish Chatterton for her attorney's errors, the Court permitted her to amend the complaint "in a timely manner" pursuant to Rule 15(a)(2) and to, "this time, properly effect service under Rule 4(m)." (*Id.* at 12-13.)

When, after thirty-eight days, Chatterton failed to file any amended pleading, Defendants again moved for dismissal. (Doc. 16.)[1] Four days later, Chatterton filed her amended complaint. (Doc. 17.) In this pleading, Chatterton largely sets forth the same facts found in the original complaint, albeit in somewhat greater detail. (*Id.* at 2-5.) In contrast to the original pleading, however, Chatterton goes on to state two specific causes of action: violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and violation of New Mexico's statute prohibiting retaliation against employees seeking workers' compensation benefits, N.M. STAT. ANN. § 52-1-28.2. (*Id.* at 5-7.)

In her Title I claim, Chatterton quotes the relevant ADA statute in alleging that Defendants discriminated against her "on the basis of disability in regard to job ... advancement, or discharge of employees, ... and other terms, conditions, and privileges of employment." (*Id.* at 6 (quoting 42 U.S.C. § 12112(a)).) She goes on to say that "Defendants' unlawful employment practices ... deprive[d] Plaintiff of equal employment opportunities, and ... otherwise adversely affect[ed] her employment status as an employee because of her work-related injury/disability and her filing of a worker's

compensation claim." (*Id.*) With respect to her claim under the state statute, Chatterton says among other things that "Plaintiff sustained an on-the-job work[-]related injury, and as a consequence of her filing such a claim seeking worker's compensation benefits, Defendants acted in violation of [the state statute] by terminating Plaintiff's employment." (*Id.* at 5.) Curiously, Chatterton also asserts an independent common law claim for retaliatory discharge under the same heading as the statutory retaliation claim.

Defendants responded to the amended complaint with the instant motion. (Doc. 18.) Procedurally, Defendants assert that Chatterton failed to obey the Court's instruction that it serve the amended complaint "in a timely manner." (*See id.* at 2.) Substantively, Defendants argue that Chatterton's amended complaint suffers from the same pleading deficiencies that led to the dismissal of her original complaint. (*See id.* at 3-6.) Chatterton responds that her amended complaint was not untimely under the circumstances and that Defendants were not harmed by any delay in filing or service. (*See* Doc. 21 at 1-5.) She also proceeds to summarize at length the facts alleged in the amended complaint (*see id.* at 5-11) in a second "attempt[ ] to guide the Court through her Complaint to an understanding of her claims" (Doc. 15 at 9). In reply, Defendants repeat their earlier criticism and argue that Chatterton failed to properly allege jurisdiction over her state law claims. (Doc. 22.)

## STANDARD OF REVIEW

**\*3** Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. Without weighing the evidence, the court looks within the four corners of the complaint, accepts all well-pleaded factual allegations as true, and determines if the plaintiff is plausibly (not merely possibly) entitled to relief, drawing all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008); *Heyward v. Credit Union Times*, 913 F. Supp. 2d 1165, 1184 (D.N.M. 2012) (citations omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that

ADD-20

Chatterton v. Summit Food Services, LLC, Not Reported in Fed. Supp. (2013)

the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

A complaint need not include detailed factual allegations, *Twombly*, 550 U.S. at 555 (citations omitted), or "allege every element of [the] action in specific detail," *Hall v. Bellmon*, 935 F.2d 1106, 1113 (10th Cir. 1991). Still, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 (citations omitted),[2] and must suffice to "inform the defendants of the actual grounds of the claim against them," *Robbins*, 519 F.3d at 1248. The necessary degree of specificity is dictated by the nature of the complaint. *See Twombly*, 550 U.S. at 556 n.3; *Robbins*, 519 F.3d at 1248 (citations omitted); *see also* Fed. R. Civ. P. 8(a). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**DISCUSSION**

The Court previously dismissed Chatterton's original complaint on both procedural and substantive grounds. (Doc. 15.) Defendants argue that both grounds support dismissal of Chatterton's amended complaint as well. (Doc. 18.) I consider these challenges in turn.

**I. Timeliness of Filing and Service of Amended Complaint**

To begin with, I note that although Defendants expressly challenge only the timeliness of *service* of the amended complaint, Defendants are also apparently taking issue with the timeliness of the *filing* of that document. In the strictest sense, Defendants only refer to a "fail[ure] to timely serve" the amended pleading. (*See* Doc. 18 at 2.) Nonetheless, substantial portions of both Chatterton's response brief (Doc. 21 at 1-4) and Defendants' reply (Doc. 22 at 1-2) are devoted to the argument that the amended complaint was or was not timely filed. Based on the parties' understandings, and in the interests of justice, I will consider the timeliness of both the filing and the service of the amended complaint.

A. Filing

With respect to the filing of the amended complaint, I first observe that the Court instructed Chatterton to amend her complaint under Rule 15(a)(2)[3] "in a timely manner." (Doc. 15 at 12-13.) The Court did not provide a specific time frame for such filing to occur. Although Defendants refer to a twenty-one-day time limit for amending pleadings (*see* Doc. 18 at 2), this time limit only applies to amendments under Rule 15(a)(1). Defendants cite to no legal authority for the proposition that this limitation also applies to amendments under Rule 15(a)(2), and I am aware of none.

**\*4** Defendants argue that the filing of the amended complaint, done six weeks after the Court's Memorandum Opinion and Order (Doc. 15), constitutes "dilatory conduct" that has prejudiced them by "preventing them from preparing not only a defense to the claims, but an answer to the Amended Complaint" (Doc. 22 at 2). Undue delay and prejudice to the opposing party are factors that may persuade a Court to refuse a party leave to file an amended pleading. *See* Foman v. Davis, 371 U.S. 178, 182 (1962). Of course, in this instance the Court had already granted Chatterton leave to amend. Still, I believe that the caselaw on these factors provides a useful guidepost for determining whether Chatterton's amended pleading was timely here.

The Tenth Circuit commands courts to "focus[ ] primarily on the reasons for [any] delay," noting that leave to amend should only be denied when the party seeking to amend "has no adequate explanation for the delay." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (citations omitted). Here, plaintiff's counsel avers that she was involved in preparation for a complex trial, a settlement conference, and the Thanksgiving holiday, and she again notes that the Court did not set forth a specific time frame for filing the amended complaint. (Doc. 21 at 3-4.) While these reasons might be considered relatively weak if leave to amend had not already been granted, I nonetheless observe that Chatterton apparently has not sought to make the complaint "a moving target," to suggest new theories of recovery, to present "theories seriatim" to avoid dismissal, or to delay proceedings until the "eve of trial." *See* Minter, 451 F.3d at 1206 (citations omitted). Further, although Chatterton probably did not need six weeks to prepare her amended complaint, this time frame does not strike me as overly excessive in light of the case's procedural posture. Finally, I do not believe

ADD-21

Defendants were unduly prejudiced by the delay, considering the lack of pretrial deadlines and trial dates in this case. These factors, along with the Court's earlier grant of leave to amend, convince me that Chatterton should be allowed to proceed with her amended complaint.

### B. Service

I also conclude that Chatterton's service of her amended complaint to Defendants was not untimely. In granting Chatterton leave to amend, the Court directed her to "properly effect service under Rule 4(m)." Even if the Court were to start the clock on the date that the Memorandum Opinion and Order was filed, Chatterton's service of the amended complaint was well within Rule 4(m)'s 120-day time limit. Moreover, though Rule 5(a)(1)(B) requires that any pleadings filed after the original complaint must be served on every party, Local Rule 5.1 provides that "[e]lectronic filing constitutes service for purposes of [Rule] 5." D.N.M.LR-Civ. 5.1(a). Accordingly, Chatterton had properly effected service of her amended complaint on the parties as of December 4, 2012, the day that she electronically filed her amended pleading with the Court. As such, I recommend that the Court find that Chatterton's amended complaint was timely served and that Defendants' motion to dismiss the pleading pursuant to Rule 41(b) be denied.

### II. Failure to State a Claim

Defendants next argue that Chatterton's federal and state claims are each deficient under Rule 8, *Twombly*, and Tenth Circuit caselaw. (*See* Doc. 18 at 4.) Chatterton counters that the allegations in her amended complaint raise each right to relief above the speculative level. (*See* Doc. 21 at 11.)

### A. ADA Claim

Chatterton brings her ADA claim under 42 U.S.C. § 12112, the statute governing discrimination claims. The relevant provision reads as follows:

> **\*5** No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement,

or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). Thus, a claim under this provision will succeed if a plaintiff shows that (i) a covered entity (ii) discriminated against a qualified individual on the basis of disability (iii) in regards to the employee's discharge or other terms, conditions, and privileges of employment. *See id.* The statute goes on to provide that the second element is satisfied when a covered entity "classif[ies] a[n] ... employee in a way that adversely affects the opportunities or status of such ... employee because of [her] disability." *Id.* § 12112(b)(1). Further, an individual is considered "disabled" for ADA purposes if she is regarded as having a physical impairment that limits one or more major life activities, whether or not such impairment actually exists. *Id.* § 12102(1)(C), (3).

It is a close call, but Chatterton has stated sufficient grounds for an ADA claim. Chatterton alleges that she was regarded by Defendants as having a disability as a result of her injury (*see* Doc. 17 at 5), and her brief allegation regarding Defendants' status as a "covered entity" and "employer" (*id.*) meets the definition of those terms under 42 U.S.C. § 12111. She also alleges that she was never officially reprimanded and was unaware of any work-related problems prior to her injury (Doc. 17 at 3); that, following her injury and the filing of her workers' compensation claim, she was subjected to inappropriate corrective action for unproven claims and ultimately terminated (*id.* at 3-5); that her employment status was "adversely affect[ed]" because of her injury and her claim (*id.* at 6); and that these actions by Defendants constituted discrimination under § 12112(a) (*id.*). While Chatterton never expressly connects her reprimands and termination with the claimed "adverse effect" on her employment status, the Court may reasonable infer from the facts alleged that she is making this connection. *See, e.g., Heyward*, 913 F. Supp. 2d at 1184 (citations omitted).

Chatterton's ADA claim requires much dot-connecting to reach these conclusions. It is far from a model of clear compliance with Rule 8. Nevertheless, the amended complaint contains "direct or inferential allegations respecting all the material elements" of a claim under § 12112(a). *See Bryson v. Gonzales*, 534 F.3d 1282, 1286

ADD-22

(10th Cir. 2008) (citation omitted). Chatterton's allegations thus provide Defendant with both fair notice of the nature of this claim and the grounds upon which the claim rests, *see* ⚑ *Twombly,* 550 U.S. at 556 n.3, and therefore the claim should not be dismissed. Accordingly, I recommend denial of Defendants' motion with respect to Chatterton's ADA claim.

### B. Statutory Claim for Retaliation

Defendants also challenge the sufficiency of Chatterton's statutory state law claim. Before I address the substance of their argument, however, I must first consider Defendants' allegations regarding the sufficiency of Chatterton's statement of jurisdiction over this claim. *See* ⚑ *Montoya v. Chao,* 296 F.3d 952, 955 (10th Cir. 2002) ("Jurisdiction is a threshold question that a federal court must address before reaching the merits of a statutory question, even if the merits question is more easily resolved...."). Chatterton alleges in her amended complaint that this Court has jurisdiction over her claims "pursuant to 28 U.S.C. Sections 1331 and 1343." (Doc. 17 at 2.) The cited provisions respectively provide for federal jurisdiction over civil actions arising under the Constitution, laws, and treaties of the United States, 28 U.S.C. § 1331, and over certain civil rights cases, *id.* § 1343. Defendants, correctly noting that these statutes do not provide jurisdiction over state law claims, argue that Chatterton's claim under § 52-1-28.2 is defective and must be dismissed. (*See* Doc. 22 at 2.)[4]

\*6  Rule 8(a) requires "a short and plain statement of the grounds for the court's jurisdiction." FED. R. CIV. P. 8(a)(1). If the pleading states sufficient facts that allow this court to exercise jurisdiction, the failure to cite to the precise statute conferring such jurisdiction is not fatal. *See* ⚑ *K2 Am. Corp. v. Roland Oil & Gas, LLC,* 653 F.3d 1024, 1027 (9th Cir. 2011) (citations omitted); ⚑ *Provident L.fe & Accident Ins. Co. v. Waller,* 906 F.2d 985, 988 (4th Cir. 1990) (citations omitted); ⚑ *N.Y. State Waterways Ass'n, Inc. v. Diamond,* 469 F.2d 419, 421 (2d Cir. 1972) (citation omitted). Because courts presume that jurisdiction over claims is lacking without affirmative and distinct allegations to the contrary, the jurisdiction of the Court "is not to be established argumentatively or by mere inference." *See* ⚑ *Dalton v. City cf Las Vegas,* 282 Fed.Appx. 652, 655 (10th Cir. 2008) (unpublished) (quoting ⚑ *Thomas v. Bd. cf Trs. cf Ohio*

*State Univ.,* 195 U.S. 207 (1904)). However, "Rule 8(a)(1) is satisfied if the complaint say[s] enough about jurisdiction to create some reasonable likelihood that the court is not about to hear a case that it is not supposed to have the power to hear." *Id.* (citations omitted); *see also* ⚑ *Walden v. Bartlett,* 840 F.2d 771, 775 (10th Cir. 1988) ("[Rule 8(a)(1) ] does not require that a litigant cite the statute section conferring jurisdiction, as long as facts sufficient to invoke the court's jurisdiction are alleged." (citation omitted)).

Chatterton's claim under the state statute relies on the same facts, actions, and narrative as her ADA claim; there is no distinction between the facts underlying the two claims. Further, Chatterton properly invoked the jurisdiction of this Court over her ADA claim pursuant to 28 U.S.C. § 1331. (Doc. 17 at 2.) As such, Chatterton's statutory retaliation claim is so closely related to a claim within this Court's original jurisdiction as to form part of the same case or controversy. *See* ⚑ 28 U.S.C. § 1367(a). Consequently, even though Chatterton failed to state a clear and correct basis for jurisdiction over her § 52-1-28.2 claim, I conclude that her amended complaint alleges sufficient facts to create a reasonable likelihood that the Court may exercise jurisdiction over the claim. I will therefore proceed to consider Defendants' argument on the merits.

As with the ADA claim, Defendants argue that Chatterton has failed to state the grounds on which her state law claim rests. Section 52-1-28.2(A) provides that "[a]n employer shall not discharge, threaten to discharge or otherwise retaliate in the terms or conditions of employment against a worker who seeks workers' compensation benefits for the sole reason that that employee seeks workers' compensation benefits." In her complaint, Chatterton plainly alleges that she sought workers' compensation and that Defendants terminated her employment as a consequence. (Doc. 17 at 5.) Although Chatterton does not explicitly state that her workers' compensation claim was the "sole reason" for her termination, she does claim that the allegations purportedly justifying her termination were never proven (*id.*) and that all employee reviews prior to her injury "were considered good" (*id.* at 2). These statements, accepted as true, allow for the reasonable inference that the reprimands purportedly underlying Chatterton's termination were pretextual and that Chatterton was actually terminated as a consequence of seeking benefits. Although Chatterton will have to provide evidence at trial that her benefits claim constituted the sole reason for her termination, I find that she has sufficiently

ADD-23

Chatterton v. Summit Food Services, LLC, Not Reported in Fed. Supp. (2013)

stated a claim under § 52-1-28.2 for purposes of review under Rule 12(b)(6). I therefore recommend that Defendants' motion be denied with respect to Chatterton's statutory state law claim.

C. Common Law Claim for Retaliatory Discharge

After discussing her statutory claim for retaliation, and under the same heading ("Cause of Action for Violation of NMSA 1978 § 52-1-28.2 (2004)"), Chatterton includes the following sentence: "Plaintiff is asserting a retaliation discharge [sic] claim independently and in view of the policy set out by NMSA § 52-1-28.2 and against New Mexico's public policy." Chatterton makes no further mention of any claim of retaliatory discharge in her amended complaint.

**\*7** As Defendants correctly observe (Doc. 18 at 4), a common law claim of retaliatory discharge is distinct from a claim under § 52-1-28.2, see 🚩 Michaels v. Anglo American Auto Auctions, Inc., 869 P.2d 279, 280-82 (N.M. 1994). The elements of each claim are different, and success in properly pleading the latter does not necessarily mean that a plaintiff has properly pleaded the former. Compare N.M. STAT. ANN. § 52-1-28.2(A) (stating elements of the statutory claim), with 🚩 Michaels, 869 P.2d at 280 (quoting 🚩 Chavez v. Manville Prods. Corp., 777 P.2d 371, 375 (N.M. 1989)) (describing elements of a retaliatory discharge claim). Defendants argue that the common law claim should be dismissed, as Chatterton has not separately delineated this claim, stated any of the claim's elements, or connected these elements to her factual allegations. (See Doc. 18 at 4.) Chatterton does not address Defendants' challenge to the common law claim in her response.

Having reviewed both the original and amended complaints in full, I conclude that Chatterton's common law retaliatory discharge claim suffers from the same problems that plagued her original complaint. To wit, Chatterton's mention of this claim is fleeting and perfunctory, essentially hidden within a paragraph alleging a different claim; she has not investigated the elements of the cause of action; and she has failed to draw a link between her factual allegations and this claim. (See Doc. 15 at 10.) In no way do Chatterton's allegations "make it plain to the reader how they provide plausible support" for a retaliatory discharge claim. (See id. at 11.) In short, Chatterton has failed to provide either fair notice of her claim or the grounds on which the claim rests. See 🚩 Twombly, 550 U.S. at 556 n.3. Therefore, I recommend that Chatterton's common law retaliatory discharge claim be dismissed with prejudice pursuant to Rule 12(b)(6).

CONCLUSION

"Rule 8 does not demand perfection—just notice." Ross Bros. Const. Co., Inc. v. Int'l Steel Servs., Inc., 283 F.3d 867, 873 (7th Cir. 2002). Chatterton is fortunate in this regard. Although her amended complaint may not have perfectly resolved the shortcomings that the Court previously brought to her attention, her efforts have largely sufficed. Accordingly, while I recommend that Defendants' motion to dismiss be granted with respect to Chatterton's common law retaliatory discharge claim and that this claim be dismissed with prejudice, I recommend that Defendants' motion be denied in all other respects.

**All Citations**

Not Reported in Fed. Supp., 2013 WL 12328899

---

**Footnotes**

1    The Court dismissed that motion as moot after the instant motion was filed. (Doc. 26.)

2    Although Chatterton quotes from outdated caselaw to assert that dismissal is only warranted if "no possible construction of the alleged facts" would entitle her to relief (Doc. 21 at 9 (citation omitted)), the Supreme Court famously "retire[d]" the no-set-of-facts standard in 🚩 Twombly, 550 U.S. at 562-63.

3    In its Memorandum Opinion and Order, the Court stated that it was allowing Chatterton a chance "to amend her original Complaint as a matter of course under Rule 15(a)(2)." (Doc. 15 at 12 (emphasis added).)

ADD-24

Chatterton v. Summit Food Services, LLC, Not Reported in Fed. Supp. (2013)

Amendments as a matter of course are authorized under Rule 15(a)(1), which allows such amendment only within twenty-one days of either service of the original pleading or service of a responsive pleading or certain Rule 12 motions. Given that neither of the conditions listed in Rule 15(a)(1) were present at the time the Court filed its original Memorandum Opinion and Order, and given that the Court specified that the amendment was to be made under Rule 15(a)(2), I will consider the law applicable to amendments under the latter provision.

4       Defendants first brought this argument in their reply brief. As a matter of fairness, courts will generally refuse to consider issues raised for the first time in a reply brief. *See, e.g.,* 🚩*Boone v. Carlsbad Bancorporation, Inc.,* 972 F.2d 1545, 1554 n.6 (10th Cir. 1992). However, courts will also depart from the general rule in order to remove uncertainty as to their jurisdiction over a matter. *See* 🚩*Sadeghi v. Immigration & Naturalization Servs.,* 40 F.3d 1139, 1143 (10th Cir. 1994) (citing *Murphy v. Derwinski,* 900 F.2d 540, 543 n.8 (10th Cir. 1993)). Because I hold that Chatterton has met her obligations under Rule 8(a)(1), I have not requested a surreply on the question.

End of Document                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-25

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 93

Chatterton v. Summit Food Services, LLC, Not Reported in Fed. Supp. (2013)

2013 WL 12328900
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Chris CHATTERTON, Plaintiff,

v.

SUMMIT FOOD SERVICES, LLC,

and A'viands, LLC, Defendants.

CV 12-0082 JCH/WPL

|

Filed 09/03/2013

### Attorneys and Law Firms

Brett Duke, Brett Duke, P.C., Daniela Labinoti, Law Firm of
Daniela Labinoti PC, El Paso, TX, for Plaintiff.

Victor P. Montoya, Jackson Lewis LLP, Albuquerque, NM,
for Defendants.

### ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

JUDITH C. HERRERA, UNITED STATES DISTRICT
JUDGE

*1  This matter is before the Court on the Magistrate Judge's
Proposed Findings and Recommended Disposition (PFRD),
filed August 9, 2013. (Doc. 28) The parties were notified that
objections were due within fourteen days of service of the
PFRD and that if no objections were filed, no appellate review
would be allowed. To this date, no objections have been filed.

IT IS THEREFORE ORDERED that Defendants' motion to
dismiss (Doc. 18) is GRANTED with respect to Plaintiff's
common law retaliatory discharge claim, and that claim
is hereby dismissed with prejudice. Defendants' motion is
DENIED in all other respects.

### All Citations

Not Reported in Fed. Supp., 2013 WL 12328900

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-26

2023 WL 6391376
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Sharon DUFFEE, Plaintiff,
v.
T-MOBILE USA INC., Defendant.

No. 1:23-cv-00536-MIS-LF
|
Filed October 2, 2023

**Attorneys and Law Firms**

Christopher T. Saucedo, Daniel C. Apodaca, Saucedo Chavez, PC, Albuquerque, NM, for Plaintiff.

Danny W. Jarrett, Melina Valladares, Jackson Lewis P.C., Albuquerque, NM, Patricia Anderson Pryor, Pro Hac Vice, Jackson Lewis P.C., Cincinnati, OH, Stephanie Leigh Adler-Paindiris, Pro Hac Vice, Jackson Lewis PC, Orlando, FL, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

MARGARET STRICKLAND, UNITED STATES DISTRICT JUDGE

**\*1 THIS MATTER** is before the Court on Defendant T-Mobile USA Inc.'s Motion to Dismiss Plaintiff Sharon Duffee's Complaint, ECF No. 9, and Brief in Support thereof, ECF No. 10, filed on June 29, 2023. Plaintiff filed a Response on July 10, 2023, ECF No. 15, to which Defendant filed a Reply on July 21, 2023, ECF No. 18. Upon due consideration of the parties' submissions, the record, and the relevant law, the Court will **GRANT** the motion.

## I. BACKGROUND [1]

Plaintiff's Complaint alleges the following: Plaintiff was employed by Defendant at Defendant's call center in Albuquerque, New Mexico for approximately 15 years before being terminated in June of 2022.[2] ECF No. 1-2, Ex. B ("Complaint") ¶ 17. Plaintiff suffers from a "Factor II mutation," which impacts her immune system and normal cell

growth and limits her ability to perform daily tasks. Id. ¶ 18. Defendant knew of Plaintiff's condition. Id. ¶ 19.

In late 2021, Defendant informed its employees that they would be required to "return"[3] to the call center at least one day per week beginning in 2022. Id. ¶ 20. As a condition of returning to work, employees were required to receive the COVID-19 vaccine. Id.

Plaintiff had previously asked her primary care physician, Dr. Gina Cardona, about the possibility of receiving the COVID-19 vaccine given her medical condition. Id. ¶ 21. Dr. Cardona expressed concerns that Plaintiff would be at risk of serious side effects, to include death, were she to receive the vaccine. Id.

Plaintiff submitted a COVID-19 Vaccination Exemption Request Questionnaire to Defendant on March 25, 2022. Id. ¶ 23. On that Questionnaire, Dr. Cardona indicated that Plaintiff did not suffer from an impairment limiting a major life activity. Id. ¶ 24. On the same date, Plaintiff e-mailed Defendant, through counsel, that she was unable to receive the vaccine, and requested that T-Mobile engage in an interactive process to establish accommodations for Plaintiff. Id. ¶¶ 27-28.

Defendant denied Plaintiff's exemption request. Id. ¶ 25. Plaintiff then visited with Dr. Cardona, who updated Plaintiff's Questionnaire to now note that Plaintiff did suffer from a condition impairing a major life activity. Id. ¶ 26.

**\*2** On April 1, 2022, Defendant responded to Plaintiff's e-mail, noting that Plaintiff's updated Questionnaire was under review and requesting that an independent physician be allowed to speak with Dr. Cardona. Id. ¶¶ 30-31. The independent physician and Dr. Cardona spoke on April 21, 2022, and Dr. Cardona told the independent physician that she did not believe Plaintiff should receive the vaccine. Id. ¶ 32. The independent physician told Defendant that Plaintiff did not meet various guidelines for receiving a vaccine exemption. Id. ¶ 33.

On April 28, 2022, Defendant sent an e-mail informing Plaintiff that her request was being denied and that she had to comply with Defendant's vaccine requirements. Id. ¶ 34. When Plaintiff reported to work on June 1, 2022, she was terminated for having not been vaccinated in accordance with Defendant's policy. Id. ¶ 38.

ADD-27

Duffee v. T-Mobile USA Inc., Not Reported in Fed. Supp. (2023)

On June 22, 2022, Plaintiff submitted a formal Charge of Discrimination to both the Equal Employment Opportunity Commission (EEOC) and the New Mexico Department of Workforce Solutions, relaying the allegations that serve as the basis of this Complaint. *Id.* ¶ 8. On March 6, 2023, the State of New Mexico Human Rights Bureau issued a Determination of No Probable Cause on Plaintiff's Charge of Discrimination. *Id.* ¶ 10. On March 22, 2023, the EEOC issued a Determination and Notice of Rights on Plaintiff's Charge of Discrimination. [4] *Id.* ¶ 11.

On May 11, 2023, Plaintiff filed the underlying Complaint in New Mexico state court, alleging Defendant violated both the New Mexico Human Rights Act and the federal Americans with Disabilities Act. *See id.* at 1. Defendant timely removed the Complaint to federal court on June 22, 2023, pursuant to 28 U.S.C. §§ 1331, 1332, and 1441(a) and (c). ECF No. 1 at 1.

## II. JURISDICTION

This court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. Plaintiff's state law claims also arise from the same set of facts as do the federal claims and form part of the same case or controversy. Supplemental jurisdiction over Plaintiff's state law claims is thus proper under 28 U.S.C. § 1367(a).

The Court also has original jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332(a). Although Plaintiff's Complaint confusingly identifies Defendant as both a "foreign corporation" and one with its "principal place of business in New Mexico." *id.* ¶¶ 2-3, Defendant's uncontroverted Affidavit identifies Defendant as "a Delaware corporation with its principal place of business in Bellevue, Washington." ECF No. 1-2, Ex. C at 1. Plaintiff is a citizen of New Mexico. ECF No. 1 ¶ 10. Therefore, the Court finds that the parties are diverse.

As to the amount in controversy, New Mexico state law provides that complaints for damages "shall not contain ... any specific monetary amount" unless such amount is a necessary element of the claim. N.M. R. Civ. P. 1-008(A)(3) (2007). Plaintiff's Complaint, however, seeks a bevy of damages from Defendant, to include loss of earnings, damages for emotional distress, statutory damages, attorney's fees, and punitive damages. Taken in sum, the Court finds the amount

in controversy exceeds the $75,000 threshold required to establish diversity jurisdiction.

## III. STANDARD OF REVIEW

Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 10 at 1. To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is facially plausible when the pleaded facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While reviewing courts "must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal allegation couched as a factual allegation." *Id.*

**\*3** The Court's review is also limited by the scope of the pleadings before it: "[t]he nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

## IV. DISCUSSION

Here, Plaintiff alleges both (1) discrimination and (2) failure to accommodate under both the New Mexico Human Rights Act (NMHRA) [5] and Americans with Disabilities Act (ADA). Compl. ¶¶ 40-84. All of Plaintiff's claims arise from the same operative set of allegations recited above. Defendant argues that Plaintiff (1) fails to allege a qualifying disability for the purposes of the ADA or NMHRA and (2) fails to state cognizable claims of disability discrimination. ECF No. 10 at 2-6.

### A. Plaintiff Does Not Adequately Plead a Plausible Discrimination Claim

ADD-28

In Counts I and III, Plaintiff appears to claim that her termination was the result of disability-based discrimination. Compl. ¶¶ 40-48, 60-72. The ADA prohibits discrimination against a "qualified individual on the basis of disability in regard to ... [the] discharge of employees ...." 🚩 42 U.S.C. § 12112(a). To state a claim for discrimination under the ADA, a plaintiff must plausibly allege that they (1) are disabled within the meaning of the ADA, (2) are qualified for the job at issue, and (3) were discriminated against because of their disability. See Kilcrease v. Domenico Transp. Co., 828 F.3d 1214, 1218-19 (10th Cir. 2016).

To satisfy the first element of an ADA discrimination claim, a plaintiff must allege that they are disabled within the meaning of the ADA. The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The statute further defines "major life activities" to include "walking, standing, and lifting," and, most relevant for Plaintiff's purposes, "the operation of a major bodily function, including ... functions of the immune system" and "normal cell growth ...." 42 U.S.C. § 12102(2)(B).

Plaintiff's Complaint plausibly alleges that she is disabled within the meaning of the ADA. Plaintiff claims, with notable specificity, that her Factor II mutation "impacts her immune system and normal cell growth." Compl. ¶ 18. This Court is cognizant of Twombly's caution against pleadings advancing a mere "formulaic recitation of the elements of a cause of action." 🚩 Twombly, 550 U.S. at 555. However, the Court also acknowledges the difficulty of pleading facts regarding events occurring at the microscopic level, such as cellular function (or lack thereof). Construing Plaintiff's Complaint in the light most favorable to her, the Court thus finds that Plaintiff's Complaint sufficiently alleges that she suffers from a disability under the ADA.

*4 The second element of a discrimination claim requires a plaintiff to plausibly allege that they are qualified for the job at issue. See Kilcrease, 828 F.3d at 1218-19. Plaintiff's Complaint meets this burden. Indeed, the Complaint notes that Plaintiff had worked at Defendant's call center for more than a decade prior to her refusal to get vaccinated. Compl. ¶ 17.

The third element required for a discrimination claim to advance is tautological: a plaintiff must plausibly allege that they were discriminated against because of their disability. See Kilcrease, 828 F.3d at 1218-19. To satisfy this element, a plaintiff must plausibly allege that their disability was a determining factor in a defendant's decision to take adverse action against them. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323-24 (10th Cir. 1997).

Here, Plaintiff's Complaint fails. Even read in the light most favorable to Plaintiff, the Complaint does not allege any facts supporting Plaintiff's conclusory assertion that she "was discriminated against by T-Mobile because of her disability." Compl. ¶ 68. Plaintiff does note that her disability was "well-documented," and that Defendant had received evidence of her disability. Id. ¶ 19. But Plaintiff never connects Defendant's knowledge of Plaintiff's disability to her eventual termination. On the contrary: Plaintiff expressly claims that she was fired for being unvaccinated "as per T-Mobile's policies," id. ¶ 38, policies which the Complaint notes applied to all employees regardless of disability status, see id. ¶ 20 ("In late 2021, T-Mobile informed [Plaintiff], as well as all other employees within the [call center], that in 2022 employees would start to return to the call center at least one day per week. In order to return to the call center, employees were mandated to receive the COVID-19 vaccine.") (emphasis added).

Devoid of factual support, Plaintiff's claims regarding Defendant's discriminatory behavior are exactly the kind of "allegations that, because they are mere conclusions, are not entitled to the assumption of truth." 🚩 Iqbal, 556 U.S. at 664. Having alleged no facts that could plausibly support a finding that Plaintiff's firing was the result of disability discrimination, Counts I and III of Plaintiff's Complaint must be dismissed.

### B. Plaintiff Does Not Plead a Plausible Failure to Accommodate Claim

In Counts II and IV, Plaintiff alleges failure-to-accommodate claims under the NMHRA and ADA, respectively. Compl. ¶¶ 49-59, 73-84. Claims for failure-to-accommodate under the ADA are a subset of discrimination claims. 🚩 42 U.S.C. § 12112(b)(5)(A) (defining "discrimination," in relevant part, as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ...."). Unlike claims for intentional

ADD-29

discrimination, plaintiffs advancing failure-to-accommodate claims need not establish discriminatory intent to show that an action was taken on the basis of disability, because any failure to provide reasonable accommodations for a disability is necessarily because of disability. 🚩 *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018).

To state a claim for failure to accommodate under the ADA, a plaintiff must allege that (1) they are disabled, (2) they are otherwise qualified, and (3) that they requested a plausibly reasonable accommodation. 🚩 *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 674 (10th Cir. 2021). As discussed *supra* in Section IV(A), Plaintiff has plausibly alleged she is both disabled within the meaning of the ADA and qualified for the relevant position. Having satisfied the first two elements for stating a failure-to-accommodate claim, Plaintiff must then allege that she made a reasonable request to accommodate her disability.

**\*5** Typically, "[w]hether an accommodation is reasonable under the ADA is a mixed question of law and fact ....". 🚩 *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050-51 (10th Cir. 2017). However, the Tenth Circuit has firmly established that requests to work remotely are not, as a matter of law, reasonable accommodations:

> [A]n employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation. Physical attendance in the workplace is itself an essential function of most jobs, and an employee's request to work from home is, as a matter of law, unreasonable if the employer has decided that physical presence at the workplace is an essential function of the position.

*Id.* at 1051 (cleaned up).

As Plaintiff's Complaint makes clear, she "specifically requested that T-Mobile allow her a reasonable accommodation in the form of allowing her to continue to work from home ...". Compl. ¶ 79. That request was denied. *Id.* ¶ 80. As a matter of law, however, requests to work from home that run counter to an employer's physical attendance policies do not constitute reasonable accommodations. *See* 🚩 *Punt*, 862 F.3d at 1051. Defendant's denial of Plaintiff's request thus did not constitute a prohibited failure to accommodate and Counts II and IV must be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 9, is **GRANTED**. It is **HEREBY ORDERED** that all claims against Defendant are **DISMISSED WITH PREJUDICE**.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 6391376

---

**Footnotes**

1    The Court accepts as true all well-pleaded factual allegations in Plaintiff's Complaint and draws all reasonable inferences in Plaintiff's favor for the purposes of this Motion.

2    Plaintiff's Complaint identifies the period of Plaintiff's employment only as "the last 15 years." ECF No. 1-2, Ex. B ("Complaint") ¶ 17. As Plaintiff was terminated by Defendant in June of 2022 and the Complaint was filed in May of 2023, Plaintiff's exact dates of employment are impossible to determine from the pleadings.

3    Despite using the word "return," the Complaint provides no background information regarding Defendant's shift to a remote work policy or the timing of that shift. This Court, however, notes the occurrence of the

COVID-19 pandemic in 2020 and the concurrent, widespread movement to allow remote work during the early stages of the pandemic.

4    Plaintiff's Complaint does not identify the nature of the EEOC's Determination or Notice of Rights with specificity. Construed in the light most favorable to Plaintiff, Plaintiff appears to have received Notice of the Right to Sue. Compl. at ¶¶ 21-22.

5    In interpreting cases under the NMHRA, New Mexico looks to federal law. *See* *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.,* 41 P.3d 333, 338 (N.M. 2001). As such, the Court omits an explicit analysis of Plaintiff's NMHRA claims with the understanding that any such analysis would parallel the Court's disposition of Plaintiff's ADA claims. As Plaintiff fails to plausibly allege either discrimination or failure to accommodate under the ADA, so, too, do Plaintiff's NMHRA claims fail.

---

**End of Document**                                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-31

**Duffee v. T-Mobile USA, Inc., Not Reported in Fed. Rptr. (2024)**

2024 WL 1885567
Only the Westlaw citation is currently available.
United States Court of Appeals, Tenth Circuit.

Sharon DUFFEE, Plaintiff - Appellant,

v.

T-MOBILE USA, INC., Defendant - Appellee.

No. 23-2176
|
FILED January 5, 2024

(D.C. No. 1:23-CV-00536-MIS-LF) (D. New Mexico)

**Attorneys and Law Firms**

Daniel C. Apodaca, Christopher T. Saucedo, SaucedoChavez, Albuquerque, NM, for Plaintiff - Appellant.

Stephanie Leigh Adler-Paindiris, Jackson Lewis, Orlando, FL, Danny W. Jarrett, Melina Valladares, Jackson Lewis, Albuquerque, NM, for Defendant - Appellee.

**ORDER**

**\*1** In accordance with 10th Cir. R. 33.1 and upon consideration of the stipulation of the parties to voluntarily dismiss the captioned appeal, this appeal is dismissed. *See* Fed. R. App. P. 42(b)(1).

Each party will bear their own costs on appeal. A copy of this order will stand as the mandate of the court.

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 1885567

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-32

2013 WL 9853376
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

James FALLON, Plaintiff,

v.

CTSC, LLC, a foreign corporation, Defendant.

Civ. No. 13–00176 MV/ACT.

|

Signed Sept. 26, 2013.

**Attorneys and Law Firms**

Donald G. Gilpin, The Gilpin Law Firm, LLC, Albuquerque, NM, for Plaintiff.

Danny W. Jarrett, Andrea K. Robeda, Jackson Lewis, LLC, Albuquerque, NM, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

MARTHA VAZQUEZ, District Judge.

**\*1  THIS MATTER** comes before the Court on defendant CTSC, LLC's Motion to Dismiss Plaintiff's Complaint [Doc. 7]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the motion to dismiss is well taken in part and will be granted in part.

### *BACKGROUND*

On October 10, 2012, plaintiff James Fallon filed his Complaint for Employment Discrimination on the Basis of Age, Disability, Serious Medical Condition and Retaliation, in the Second Judicial District Court, State of New Mexico. *See* Notice of Removal, Exh. B. ("Compl."). On February 22, 2013, defendant removed the case to this Court on the ground of diversity of citizenship jurisdiction. *See id.* ¶ 13.

In his complaint, plaintiff alleges that defendant violated the New Mexico Human Rights Act ("NMHRA"), 📙 N.M. Stat. Ann. § 28–1–7(A), by (1) discriminating against plaintiff in the terms and conditions of his employment on the basis of age; (2) discriminating against plaintiff in the terms and conditions of his employment on the basis of disability; and

(3) retaliating against plaintiff in the terms and conditions of employment. *See* Compl. ¶¶ 26, 29–31, 35. The complaint contains the following allegations in support of these claims.

Plaintiff began working for defendant in 2007. *See id.* ¶ 6. In May 2010, plaintiff was given a positive evaluation. *See id.* ¶ 8. Plaintiff's previous evaluations had been average or above average. *See id.* In Fall 2010, plaintiff was demoted without any warning or notice. *See id.* ¶ 9. At the time of his demotion, plaintiff was 63 years old, which was the oldest age of any employee in defendant's Albuquerque office. *See id.* ¶ 7. Plaintiff was replaced by a younger male, identified in the complaint as Mr. Keefner ("Keefner"), who was in his early forties. *See id.* ¶ 10.

In November 2010, Keefner began accusing plaintiff of having a body odor problem. *See id.* ¶ 12. Keefner placed plaintiff on probationary status and threatened to terminate plaintiff over this perceived body odor issue. *See id.* Plaintiff's coworkers indicted that they did not notice that plaintiff had a body odor problem. *See id.* ¶ 13. Plaintiff's physician provided plaintiff with medical documentation indicating that plaintiff did not have a body odor issue. *See id.* Notwithstanding the foregoing, plaintiff began bringing extra clothes to work and showering mid-day. *See id.* ¶ 14. Keefner nonetheless continued to harass plaintiff about body odor by saying Keefner smelled something "rank" whenever plaintiff was present. *See id.*

Plaintiff reported Keefner's conduct to defendant's human resources department and notified the department that Keefner was subjecting plaintiff to a hostile work environment. *See id.* ¶ 15. The human resources department informed plaintiff that his claims were unsubstantiated and told plaintiff that he was "paranoid." *See id.* Keefner continued to harass plaintiff, isolate plaintiff from plaintiff's subordinates, and interfere with plaintiff's duties. *See id.* ¶ 16.

**\*2**  In April 2011, "Plaintiff was written up for not attending a meeting that was for employees who had signed up for defendant's health insurance plan. Plaintiff came to the meeting[,] but since Plaintiff did not have [CTSC's] health insurance, Plaintiff left with several other employees." *Id.* ¶ 17.

As a result of the alleged hostile work environment, plaintiff began suffering from depression and anxiety. *See id.* ¶ 18. Plaintiff sought medical treatment for his depression. *See id.*

ADD-33

Fallon v. CTSC, LLC, Not Reported in F.Supp.2d (2013)

On May 6, 2011, plaintiff requested an accommodation for his depression. *See id.* ¶ 19.

Less than one month after requesting the accommodation, plaintiff was given a final warning for allegedly failing to follow Keefner's instructions. *See id.* ¶ 20. Just one week earlier, however, Keefner had told plaintiff that plaintiff was doing a "good job." *Id.* On June 10, 2011, plaintiff was terminated for allegedly missing a meeting. *See id.* ¶ 21. Plaintiff denies that he missed any meetings. *See id.*

Plaintiff timely filed a charge of discrimination with the New Mexico Human Rights Commission. *See id.* ¶ 5. Prior to filing this lawsuit, plaintiff received a Notice of Right to Sue letter from the New Mexico Human Rights Commission. *See id.*

### STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir.1994) (citation omitted). When considering a 12(b)(6) motion, the Court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Smith v. United States,* 561 F.3d 1090, 1097–98 (10th Cir.2009), *cert. denied,* 558 U.S. 1148 (2010).

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). A plaintiff must "nudge [ his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. *Twombly,* 550 U.S. at 570.

The Supreme Court has identified two principles underlying the Rule 12(b)(6) standard: (1) when legal conclusions are involved in the complaint "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions," *Iqbal,* 556 U.S. at 678; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," *id.* at 679. Thus, mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly,* 550 U.S. at 555 (citation omitted). Accordingly, a district court must disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable. *See Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir.2012).

**\*3** The Tenth Circuit has explained that plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' " *Robbins v. Okla.,* 519 F.3d 1242, 1247 (10th Cir.2008) (quoting *Twombly,* 550 U.S. at 570); *accord Khalik,* 671 F.3d at 1191. The plausibility standard is "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions ..., which the Court stated will not do." *Robbins,* 519 F.3d at 1247 (internal quotation marks and citations omitted); *accord Khalik,* 671 F.3d at 1191. Therefore, while the plausibility standard does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In the context of employment discrimination cases, the Tenth Circuit has suggested that plausibility may require less specific pleadings, "because in [these] cases where the employers are large corporations, the employee may not know who actually fired [him] or for what reason." *Khalik,* 671 F.3d at 1190; *see also Hunt v. Central Consolidated Sch. Dist.,* No. 11–CV–1144 JB/WDS, 2013 WL 3214928, at \* 28 (D.N.M. June 12, 2013).

ADD-34

Fallon v. CTSC, LLC, Not Reported in F.Supp.2d (2013)

*DISCUSSION*

In support of its motion to dismiss, defendant contends that plaintiff fails to state claims under the NMHRA for age discrimination, discrimination based upon disability, and retaliation. The Court will address each of these arguments in turn.

**I. *NMHRA Age Discrimination Claim.***

The Tenth Circuit has explained that "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim" under *Rule 12(b)(6)*. *Khalik, 671 F.3d at 1192* (citing *Swierkiewicz v. Sorema NA, 534 U.S. 506, 515 (2002)*; *Twombly, 550 U.S. at 570*). Thus, the Court begins its analysis of defendant's motion to dismiss the age discrimination claim by discussing the elements of a prima facie case. *Cf. id.* Under the NMHRA, it is unlawful for "an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of ... age." *N.M. Stat. Ann. § 28–1–7(A).* The New Mexico Supreme Court has applied the evidentiary burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)*, to NMHRA employment discrimination claims based upon indirect evidence of discriminatory intent. *See Smith v. FDC Corp., 787 P.2d 433, 436 (N.M.1990).* Under *McDonnell Douglas*, a plaintiff may establish a prima facie case of wrongful termination by proving that (1) the plaintiff is a member of a protected group, which, in the context of an age discrimination claim includes persons over forty years of age; (2) the plaintiff was qualified to continue in his position; (3) the employer removed the plaintiff from his position; and (4) the plaintiff's position was filled by someone not a member of the protected class. *See Cates v. Regents of the N.M. Institute of Mining & Tech., 954 P.2d 65, 70 (N.M.1998).*[1]

**\*4** Having established the prima facie elements that guide the Court's evaluation of the motion to dismiss, the Court next determines whether the complaint states a plausible claim for relief on the basis of age discrimination under the NMHRA. *Cf. Khalik, 671 F.3d at 1192.* "While ... the

elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim," "the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint" in order to withstand dismissal. *Khalik, 671 F.3d at 1192* (citing *Swierkiewicz, 534 U.S. at 515*; *Twombly, 550 U.S. at 570*). Indeed, the Supreme Court has explained that to withstand a *Rule 12(b)(6)* motion to dismiss a plaintiff need not allege all of the facts that would be necessary to support his claim at the trial stage, but rather need only allege "enough facts to state a claim to relief that is plausible on its face." *Twombly, 550 U.S. at 555* (citation omitted); *Khalik, 671 F.3d at 1193.*

Defendant argues that plaintiff's age discrimination claim must fail because "Plaintiff's allegations are the type of 'conclusory and formulaic recitations' [that must be] disregarded." Mem. in Support of Mot. to Dismiss ("Mem.") at 5. Defendant also contends that plaintiff "merely refers to the factual allegations contained in the prior twenty-four paragraphs of his [general allegations in the] Complaint," and "[plaintiff] makes absolutely no attempt to show which [of these] facts support his age discrimination claim or how they support it." *Id.* Furthermore, defendant maintains that "Plaintiff failed to allege each and every element of his 'cause of action for age discrimination[ and] seems to base his age discrimination claim solely on the fact that he is 63 years old and that his employment was terminated." *Id.* at 5–6.

The Supreme Court has held that mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice to withstand a *Rule 12(b)(6)* motion to dismiss. *Twombly, 550 U.S. at 555.* In support of his first count for age discrimination, plaintiff alleges that "Defendant has discriminated against Plaintiff in the terms and conditions of his employment on the basis of his age in violation of the NMHRA." Compl. ¶ 26. This allegation is conclusory and not entitled to consideration. *Cf. Twombly, 550 U.S. at 555.* Plaintiff further alleges, however, that "Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 of this Complaint with the same force and effect as if set forth herein." Compl. ¶ 25. By virtue of this incorporation of the preceding paragraphs into the first count, plaintiff also alleges the following non-conclusory facts: (1) at the time of his termination, plaintiff was 63 years old, which made him the oldest employee in the Albuquerque office of CTSC, *see id.* ¶ 7; (2) in May 2010, plaintiff was given a positive evaluation and plaintiff's

ADD-35

Fallon v. CTSC, LLC, Not Reported in F.Supp.2d (2013)

previous evaluations had been average or above average, *see id.* ¶ 8; (3) in Fall 2010, plaintiff was demoted without any warning or notice, *see id.* ¶ 9; and (4) plaintiff was replaced by a younger male, Keefner, who was in his early forties, *see id.* ¶ 10. These allegations, if taken as true, are sufficient to "nudge[ Plaintiff's] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570. Thus, the Court concludes that plaintiff has alleged facts sufficient to render his age discrimination claim plausible on its face, and the Court therefore denies defendant's motion to dismiss the claim pursuant to Rule 12(b)(6). *Cf. Fields v. Dep't of Public Safety,* 911 F.Supp.2d 373, 384–85 (M.D.La.2012) (denying motion to dismiss for failure to state a claim where the plaintiff contended that she was subject to racial discrimination because the plaintiff alleged that her request for a transfer from a stressful cell block assignment was denied while the request of a Caucasian female was granted).

**\*5** The Court is not persuaded by the defendant's argument that plaintiff's general reference to the allegations contained in paragraphs one to twenty-four is fatal to his claim. Defendant complains that plaintiff "makes absolutely no attempt to show which of [these] facts support his age discrimination claim or how they support it." Mem. at 5. Defendant argues that in a Memorandum Opinion and Order entered in *Chatterton v. Summit Food Services, LLC,* No. 12–CV–00082 (D.N.M. Oct. 23, 2012) (Doc. 15) (Herrera, J.), "[the] Court previously held that style of pleading [of merely referring to previous paragraphs in the complaint without demonstrating which facts support a particular count] was insufficient to state a claim under the [plausibility] standard." Reply at 2.

In *Chatterton,* the district court granted the defendant's motion to dismiss on the ground the complaint "[did] not clearly set forth an exhaustive list of Plaintiff's claims, including the elements of each of her causes of action, let alone delineate which factual allegations support which of [the Plaintiff's] claims." *Chatterton,* slip op. at 11. Rather, the *Chatterton* complaint only "cite[d] one or more statutes and separate[ly] set forth several pages[ ] worth of factual allegations, without any attempt to show how the latter purport[ed] to support the former." *Id.*

*Chatterton,* however, is distinguishable. In *Chatterton,* the plaintiff both (1) failed to set forth an exhaustive list of the plaintiff's claims and (2) neglected to identify which factual allegations supported the plaintiff's claims. *See id.* In contrast, the complaint here sets forth an exhaustive list of the plaintiff's causes of action. Furthermore, although the

plaintiff here incorporates the factual allegations contained in the first twenty-four paragraphs of the complaint into his first count, without identifying the specific factual allegations that support the count, the Court concludes that plaintiff's general reference to those twenty-four paragraphs—when paired with a specific list of plaintiff's claims—is sufficient to put defendant on notice of the claims. *Cf. Hunt v. Central Consol. Sch. Dist.,* No. 11–CV–1144 JB/WDS, 2013 WL 3214928, at \*66 (D.N.M. June 12, 2013) (recognizing "how difficult the incorporation of the Complaint's preceding 105 paragraphs [into the count alleging retaliation] makes determining what the alleged retaliatory action is," but nonetheless sifting through the allegations to determine "the reasonable possibilities"). Furthermore, with respect to the plaintiff's age discrimination claim, the Court readily is able to glean which specific factual allegations in the first twenty-four paragraphs of the complaint support the claim. Thus, the Court concludes that the complaint provided defendant with notice of the age discrimination claim, and that defendant's argument to the contrary is not persuasive. [2]

### II. *NMHRA Disability Discrimination Claim.*

**\*6** The court begins its analysis of defendant's motion to dismiss the disability discrimination claim by discussing the elements that plaintiff may prove to establish a prima facie case. *Cf. Khalik,* 671 F.3d at 1192 ("the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim") (citations omitted). Under the NMHRA, it is unlawful for "an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of ... physical or mental handicap or serious medical condition." N.M. Stat. Ann. § 28–1–7(A).

A plaintiff may bring a NMHRA disability claim based upon a wrongful discharge, failure to accommodate, or hostile work environment theory. The New Mexico Supreme Court has relied upon the Tenth Circuit's articulation of the elements of a prima facie unlawful termination case under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213 (1994), a federal statute prohibiting discrimination against persons with a disability, and applied those same elements to a NMHRA disability claim. *See Trujillo v. N. Rio Arriba Elec. Co-op, Inc.,* 41 P.3d 333, 338 (N.M.2001) (citation

ADD-36

omitted). [3] Under this standard, a plaintiff must demonstrate " '(1) that he [or she] is a disabled person within the meaning of the [statute]; (2) that he [or she] is qualified ...; and (3) that the employer terminated him [or her] because of the disability.' " *Id.* (quoting *White v. York Int'l Corp., 45 F.3d 357, 360–61 (10th Cir.1995)*) (additional citation omitted). The Tenth Circuit also has held that a plaintiff who is "disabled" [4] may state a disability discrimination claim under a hostile work environment theory by alleging "that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, [which was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry v. Fed. Home Loan cf Tcpeka, 155 F.3d 1257, 1261 (10th Cir.1998)*, cert. denied, *526 U.S. 1039 (1999)*; *see also Lanman v. Johnson Co., 393 F.3d 1151, 1155 (10th Cir.2004)*. A plaintiff meeting the definition of "physical or mental handicap" under the NMHRA may also bring a failure to accommodate claim, because under the Act it is "an unlawful discriminatory practice for an employer 'to refuse or fail to accommodate to an individual's physical or mental handicap or medical condition, unless such accommodation is unreasonable or an undue hardship.' " *Trujillo v. N. Rio Arriba Elec. Co-op, Inc., 41 P.3d 333, 339–40 (N.M.2001)* (quoting *N.M. Stat. Ann. § 28–1–7(J)*).

Having established the elements of a prima facie unlawful discharge, hostile work environment, and failure to accommodate claim, the Court next determines—using the elements as guidance—whether the complaint states a plausible disability-based discrimination claim. *Cf. Khalik, 671 F.3d at 1192*. The exact nature of plaintiff's disability claim is not readily apparent on the face of the complaint. It is unclear whether plaintiff brings a disability claim based upon actual physical or mental impairment, whether his claim is based upon being regarded as having an impairment, or whether plaintiff brings claims under both theories. Plaintiff alleges in his complaint that he is a "qualified individual with a disability/serious medical condition under the NMHRA," Compl. ¶ 30, but elsewhere in the complaint indicates that his physician documented that he did not have a body odor issue, *see id.* ¶ 13, and that defendant "discriminated against [him] by perceiving him as having a disability (body odor issue)," *id.* ¶ 31; *see also* Mem. at 2. Plaintiff also alleges that he developed an actual disability

—depression and anxiety—as a result of his hostile work environment. *See* Compl. ¶¶ 18, 19, 31.

**\*7** In addition, it is unclear whether plaintiff's perceived disability claim is premised upon defendant taking adverse employment actions against plaintiff or upon defendant creating a hostile work environment for plaintiff. Plaintiff alleges that Keefner placed plaintiff on probationary status and threatened to terminate plaintiff over his perceived body odor issue, *see id.* ¶ 12, but plaintiff also alleges that he notified defendant's human resources department that Keefner was subjecting him to a hostile work environment, *see id.* ¶15.

Consistent with its obligation to view the allegations in the complaint in the light most favorable to plaintiff, *see Smith v. United States, 561 F.3d 1090, 1097 (10th Cir.2009)*, cert. denied, *558 U.S. 1148 (2010)*, the Court interprets the complaint broadly and assumes that plaintiff asserts two disability-based claims: (1) a claim that defendant regarded plaintiff as having a physical handicap as a result of plaintiff's perceived body odor issue, and (2) a claim that defendant failed to reasonably accommodate plaintiff's actual mental handicap of depression. The Court also assumes that plaintiff brings his perceived disability claim pursuant to both a disparate treatment theory and a hostile work environment theory.

Regardless of the type of disability claim plaintiff alleges or the theory upon which plaintiff relies, plaintiff must establish, as a threshold matter, that he has a "physical or mental handicap" within the meaning of the NMHRA. *See Keller v. Bd. cf Educ., 182 F.Supp.2d 1148, 1154–55 (D.N.M.2001)* ("To establish a *prima facie* case of disability discrimination under the ADA or NMHRA, plaintiff must show that she is disabled") (citations omitted); *Trujillo, 41 P.3d at 338* (looking to federal law for guidance in interpreting a NMHRA claim and indicating that the first element of a prima facie case under the ADA requires a plaintiff to establish that he or she is a disabled person within the meaning of the ADA) (citation omitted); *Steel v. Thiokol, 241 F.3d 1248, 1254 (10th Cir.2001)* ("In order to make out a claim under the [ADA], a plaintiff must demonstrate as a threshold matter that he is a 'qualified individual with a disability' ") (citing *42 U.S.C. § 12112(a)*); *compare Selenke v. Med. Imaging, 248 F.3d 1249, 1264 (10th Cir.2001)* ("a disability is not a prerequisite to an ADA-retaliation claim"). The Court first

ADD-37

determines whether plaintiff has stated a plausible claim that he is an individual with a "handicap" on the basis of being regarded as having a body odor issue, and next determines whether plaintiff has stated a plausible claim that he is a member of a protected group on the basis of defendant's failure to accommodate his actual disability of depression and anxiety.

The NMHRA defines "physical or mental handicap" as "a physical or mental impairment that substantially limits one or more of a person's major life activities." N.M. Stat. Ann. § 28–1–2(M). The NMHRA further provides that a "person is also considered to be physically or mentally handicapped if the person ... is regarded as having a physical or mental handicap." Id. To state a NMHRA claim based upon a perceived disability, a plaintiff must allege plausible facts showing that the defendant " 'mistakenly believe[d] that [the plaintiff] ha[d] a physical impairment that substantially limit[ed] one or more major life activities.' " Keller, 182 F.Supp.2d at 1156 (applying the standard of perceived disability to the plaintiff's NMHRA and ADA discrimination claims) (quoting Doyal v. Okla. Heart, Inc., 213 F.3d 492, 499 (10th Cir.2000) (citations omitted); see also N.M. Stat. Ann. § 28–1–2(M).

**\*8** In support of his perceived disability claim, plaintiff makes the following conclusory allegations that he has a disability within the meaning of the NMHRA: (1) "Plaintiff is a qualified individual with a disability/serious medical condition under the NMHRA"; and (2) "Defendant discriminated against Plaintiff by perceiving him as having a disability (body odor issue)." Compl. ¶¶ 30, 31. Because labels, conclusions, and a formulaic recitation of the elements of a cause of action are not sufficient to withstand a motion to dismiss, see Twombly, 550 U.S. at 555, the Court disregards these allegations. The Court is left with the following factual allegations relevant to plaintiff's perceived disability claim, which the Court takes as true for purposes of deciding the motion to dismiss: (1) "In November of 2010, Keefner began accusing Plaintiff of having a body odor problem," Compl. ¶ 12; (2) "Keefner put Plaintiff on a probationary status and threatened to terminate Plaintiff over the body odor issue," id.; (3) "Nobody told Plaintiff he had a body odor issue[,] and "Plaintiff's doctor provided Plaintiff with medical documentation that Plaintiff did not have a body odor issue," id. ¶ 13; and (4) "Plaintiff began bringing in extra clothes to work and showering mid day," but

"Keefner continued to harass Plaintiff about the body issue," "isolate [plaintiff] from his subordinates," and "interfere with [plaintiff's] duties," id. ¶¶ 14, 16.

Missing from the complaint, however, is any allegation that Keefner believed the perceived body odor issue impacted one or more of plaintiff's "major life activities." See N.M. Stat. Ann. § 28–1–2(M) (defining a "physical or mental handicap" as an "impairment that substantially limits one or more of a person's major life activities"). The NMHRA defines "major life activities" to include "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." Id. § 28–1–2(N). None of the allegations suggest that Keefner believed the perceived body odor problem affected plaintiff's abilities in these areas.

Furthermore, the complaint does not contain any allegations indicating that Keefner believed that the perceived body odor problem was "substantially limit[ing]" within the meaning of the NMHRA. "Not every impairment that affects an individual's major life activities is a substantially limiting impairment." Ellenberg v. N.M. Military Inst., 572 F.3d 815, 821 (10th Cir.), cert. denied, 558 U.S. 1091 (2009). Federal authorities construing the ADA, see supra note 3, indicate that an impairment is substantially limiting if a person is (1) " '[u]nable to perform a major life activity that the average person in the general population can perform' "; or (2) " '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.' " Steel, 241 F.3d at 1254 (quoting 29 C.F.R. § 1630.2(j)(1)). Courts also consider the "nature and severity of the impairment," "[t]he duration or expected duration of the impairment," and "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Id. (citing 29 C.F.R. § 1630.2(j)(2)). The complaint, however, does not contain any allegation that Keefner believed plaintiff was unable to perform a major life activity that the average person could perform or that plaintiff was significantly restricted in his ability to perform a major life activity. See Steel, 241 F.3d at 1254 (citing 29 C.F.R. § 1630.2(j)(1)). The complaint is also silent regarding Keenfer's belief as to the nature and severity, duration, and long-term impact of the perceived disability. See id. (citing 29 C.F.R. § 1630.2(j)(2)).

Fallon v. CTSC, LLC, Not Reported in F.Supp.2d (2013)

**\*9** Having reviewed the allegations in the complaint, the Court concludes that plaintiff has not nudged the claim that Keefner regarded plaintiff as having a body odor issue that substantially impacted a major life activity across the line from possible to plausible. *Cf.* 🚩 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, the Court concludes that plaintiff's complaint fails to state a plausible claim that plaintiff is a member of a protected group on the basis of being regarded as having a physical or mental handicap.

The Court next determines whether plaintiff states a plausible claim that he is a member of a protected group on the basis of having an actual physical or mental handicap. Plaintiff alleges that as a result of his hostile work environment he developed depression and anxiety. *See* Compl. ¶ 18. Plaintiff further alleges that he requested an accommodation for his depression. *See id.* ¶ 19. As discussed, it is an unlawful discriminatory practice for an employer to fail to accommodate to an individual's mental handicap, unless such accommodation is unreasonable or an undue hardship. *See* 🚩 *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 41 P.3d 333, 339–40 (N.M.2001) (quoting 🚩 N.M. Stat. Ann. § 28–1–7(J)). To state a failure to accommodate claim, a plaintiff must allege plausible facts indicating that he has a "mental handicap" within the meaning of the NMHRA. *See id.* (holding that "the failure to accommodate claim must fail because[ plaintiff] failed to demonstrate that he had a medical condition which is a necessary predicate for an accommodation request"). As discussed, the NMHRA defines a mental handicap as an impairment that "substantially limits one or more of a person's major life activities." 🚩 N.M. Stat. Ann. § 28–1–2(M). Unless the complaint plausibly alleges that plaintiff's depression and anxiety substantially limited one or more of his major life activities, plaintiff cannot establish that he is a person with a handicap within the meaning of the NMHRA, which is a threshold requirement of a failure to accommodate claim. *Cf.* 🚩 *Trujillo*, 41 P.3d at 339–40.

The complaint contains only three factual allegations in support of plaintiff's failure to accommodate claim: (1) "As a result of the hostile work environment, Plaintiff began suffering from depression and anxiety," Compl. ¶ 18; (2) "[o]n May 6, 2011, Plaintiff requested an accommodation for his depression," *id.* ¶ 19; and (3) "Defendant ... den[ied]

his requested accommodation (depression/anxiety)," *id.* ¶ 31. Missing from the complaint, however, is any allegation that plaintiff's depression or anxiety "substantially limited" one or more of plaintiff's "major life activities." 🚩 N.M. Stat. Ann. § 28–1–2(N) (" '[m]ajor life activities' means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working"). Also missing from the complaint is any allegation that, assuming plaintiff's depression impacted a major life activity, that the impact was "substantially limit[ing]." *See* 🚩 *Ellenberg*, 572 F.3d at 821 ("Not every impairment that affects an individual's major life activities is a substantially limiting impairment.").

**\*10** Plaintiff does not allege, for example, that his depression or anxiety impacted his ability to care for himself or work, *see* 🚩 N.M. Stat. Ann. § 28–1–2(N), or that he was unable to perform or was significantly restricted in his ability to perform a major life activity that the average person in the general population could perform, *see* 🚩 *Steel*, 241 F.3d at 1254 (🚩 29 C.F.R. § 1630.2(j)(1)). The complaint also does not contain any allegations regarding the nature and severity of plaintiff's depression or anxiety, the duration or expected duration of his depression or anxiety, or the permanent or long term impact of his impairment. *Cf. id.* (citing 🚩 29 C.F.R. § 1630.2(j)(2)). Given these omissions, the Court concludes that plaintiff has failed to nudge his claim that he had a mental handicap across the line from possible to plausible. *Cf.* 🚩 *Trujillo*, 41 P.3d at 340 (dismissing failure to accommodate claim because plaintiff did not demonstrate that he had a medical condition).

For the foregoing reasons, the Court concludes that the allegations in plaintiff's complaint, even when taken as true and construed in plaintiff's favor, do not plausibly state a NMHRA discrimination claim based upon either a perceived body odor disability or a failure to accommodate an actual disability of depression or anxiety. The Court therefore grants defendant's motion to dismiss plaintiff's NMHRA disability claims without prejudice. [5]

III. *NMHRA Retaliation Claim.*
The court begins its analysis of the motion to dismiss the retaliation claim by discussing the elements that plaintiff may prove to establish a prima facie case. *Cf.* 🚩 *Khalik*, 671 F.3d

at 1192 ("the elements of each alleged cause of action help to determine whether plaintiff has set forth a plausible claim"). Under the NMHRA, it is unlawful for an employer to "engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the Human Rights Act." N.M. Stat. Ann. § 28–1–7(I)(2). To establish a prima facie case, a plaintiff asserting a NMHRA retaliation claim must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two events. *See Ocana v. Am. Furniture Co., 91 P.3d 58, 72 (N.M.2004)* (citation omitted).

Having established the elements of a prima facie NMHRA retaliation case that guide the Court's consideration of the motion to dismiss, the Court next determines whether the complaint states a plausible claim. *Cf. Khalik, 671 F.3d at 1192.* With respect to the first element of a prima facie case, the Court concludes that plaintiff plausibly alleges that he engaged in two protected activities: (1) plaintiff reported Keefner's conduct to the human resources department and informed the department that Keefner was subjecting him to a hostile work environment, *see* Compl. ¶ 15; and (2) "[o]n May 6, 2011, Plaintiff requested an accommodation for his depression," *id.* ¶ 19. Reporting discriminatory conduct and requesting an accommodation for a physical or mental handicap are protected activities. *See Ocana, 91 P.3d at 72* (protected activities include formal complaints as well "informal protests of discriminatory employment practices, including making complaints to management"); *Otero v. N.M. Corrections Dep't, 640 F.Supp.2d 1346, 1356 (D.N.M.2009)* ("a request for accommodation in and of itself can be a protected activity under the ADA") (citing *Coleman v. BCBS, 487 F.Supp.2d 1225 (D.Kan.2007)*). [6] Thus, plaintiff has stated a plausible claim that he engaged in protected activities.

**\*11** With respect to the second element of a prima facie case, plaintiff also alleges plausible facts indicating that he suffered at least one adverse employment action. Plaintiff alleges that "[o]n June 10, 2011, Plaintiff was terminated for allegedly missing a meeting." Compl. ¶ 21. "An adverse employment action occurs when an employer imposes a tangible, significant, harmful change in the conditions of employment." *Ulibarri v. State of N.M. Corr. Academy,*

*131 P.3d 43, 50 (N.M.2006)* (citation omitted). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *See Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998)*, *cited in Ulibarri, 131 P.3d at 50.* Termination expressly falls within this definition. *See id.* Thus, the Court concludes that plaintiff has stated a plausible claim that satisfies the second element of a prima facie case.

Plaintiff also alleges that "[i]n April 2011, Plaintiff was written up for not attending a meeting," Compl. ¶ 17, and "[i]n less than one month of requesting the accommodation, Plaintiff was given a final warning for allegedly failing to follow his supervisor Keefner's instructions," *id.* ¶ 20. Although warning letters and reprimands can constitute adverse employment actions if they adversely affect the terms and conditions of a plaintiff's employment, *see Roberts v. Roadway Express, Inc., 149 F.3d 1098, 1104 (10th Cir.1998)*; *see also Medina v. Income Support Div., 413 F.3d 1131, 1137 (10th Cir.2005)*, a plaintiff must allege plausible facts showing how the reprimand or warning had an adverse effect on his or her employment. A reprimand may adversely affect the terms and conditions of employment if, for example, it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities. *See id.* (citing *Roberts, 149 F.3d at 1104*); *accord Tapia v. City of Albuquerque, No. 05–2028, 2006 WL 308267, \*4 (10th Cir. Feb. 10, 2006).* The complaint here, however, does not contain any factual allegations showing that the reprimand or warning increased the likelihood that plaintiff would be terminated, undermined his current position, or affected his future employment opportunities. Thus, the Court concludes that plaintiff has not stated a plausible claim that he suffered an adverse employment action on the basis of the written reprimand or final warning.

The third element of a prima facie retaliation case requires a plaintiff to establish that there is a causal connection between the protected activity and the adverse employment action. *See Ocana, 91 P.3d at 72.* The allegations in plaintiff's complaint are sparse on the question of a causal connection between a protected activity and an adverse employment action. Plaintiff alleges two protected activities: (1) reporting Keefner's alleged discriminatory conduct to

ADD-40

the human resources department, *see* Compl. ¶ 15; and (2) requesting an accommodation for his depression, *see id.* ¶ 19. Plaintiff alleges three possible adverse employment actions: (1) the April 2011 written reprimand for not attending a meeting, *see id.* ¶ 17; (2) the final warning for allegedly failing to follow Keefner's instructions, *see id.* ¶ 20; and (3) the June 10, 2011, termination, *see id.* ¶ 21.[7] The Court first determines whether the allegations are sufficient to state a plausible causal connection between any of the alleged adverse employment actions and plaintiff's protected activity of reporting of Keefner's conduct and next determines whether the allegations are sufficient to state a plausible claim between the employment actions and the protected activity of requesting an accommodation.

**\*12** Although plaintiff alleges that he engaged in the protected activity of reporting Keefner's conduct to the human resource department, plaintiff does not indicate when he made this report. *See id.* ¶ 15. Thus, at least with respect the April 2011 written reprimand for not attending a meeting and the final warning for allegedly failing to follow Keefner's instructions, *see id.* ¶¶ 17, 20, it is not possible to discern whether the protected activity preceded the alleged adverse action such that the activity could have resulted in the adverse action. Thus, the complaint does not allege facts sufficient to state a plausible causal connection between the protected activity and the employment action. *Cf.* [Hunt v. Central Consol. School Dist., 2013 WL 3214928 (D.N.M. June 12, 2013)](plaintiffs' complaint did not state a plausible claim that a causal connection existed between the protected activity and the materially adverse action because plaintiffs engaged in the protected activity *after* the alleged retaliatory actions).

Even if the Court were to assume that plaintiff reported Keefner's conduct to the human resources department prior to the written reprimand and final warning, the Court nonetheless concludes that the allegations in the complaint are not sufficient to state a plausible claim that reporting the hostile work environment was causally connected to the subsequent adverse actions. To withstand a [Rule 12(b)(6)] motion to dismiss, a plaintiff need not allege all of the facts that would be necessary to support his claim at the trial stage, but rather need only allege "enough facts to state a claim to relief that is plausible on its face." [Twombly, 550 U.S. at 555] (citation omitted); [Khalik, 671 F.3d at 1193]. Plaintiff has not satisfied this standard.

Absent from the complaint are any allegations suggesting that defendant acted with a retaliatory motive when it reprimanded and terminated plaintiff. Although a retaliatory motive may be inferred when an adverse action closely follows a protected activity, *see* [Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir.1999)] (citations omitted),[8] because plaintiff does not allege *when* he complained to the human resources department, the Court cannot determine whether the protected activity occurred in sufficiently close temporal proximity to the adverse action to infer a causal connection between the two events. *Cf. id.* Thus, because the complaint contains no allegations from which the Court could infer a retaliatory motive, the Court concludes that the complaint does not state a claim for retaliation based upon plaintiff's protected activity of reporting Keefner's conduct. The Court therefore grants defendant's motion to dismiss the retaliation claim to the extent that claim is premised on the protected activity of reporting Keefner's conduct to the human resources department.

In contrast, plaintiff identifies precisely when—namely, on May 6, 2011–he engaged in the protected activity of requesting an accommodation. *See* Compl. ¶ 19. Plaintiff also alleges that "[i]n less than one month of requesting the accommodation, Plaintiff was given a final warning for allegedly failing to follow his supervisor Keefner's instructions," and that "[o]n June 10, 2011, Plaintiff was terminated for allegedly missing a meeting," *id.* ¶¶ 20, 21. Thus, it is clear from the allegations in the complaint that the protected activity of requesting an accommodation predated the alleged adverse actions.

**\*13** Plaintiff also alleges that the subsequent adverse actions occurred in close proximity to the protected activity. Specifically, plaintiff alleges that the protected activity occurred within four and one-half weeks of the final warning and the ultimate termination. *See id.* ¶¶ 19–21. As discussed, a plaintiff may meet his prima facie burden of establishing a causal connection between a protected activity and a materially adverse employment action through evidence establishing temporal proximity. *See* [Xia v. Salazar, No. 12–4034, 2012 WL 5909096, at \*2 (10th Cir. Nov. 27, 2012)]; [Anderson, 181 F.3d at 1179] (a retaliatory motive may be inferred when an adverse action closely follows protected activity) (citations omitted). The Tenth Circuit has concluded that "[a] six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation." [Meiners v. Univ. of Kan., 359 F.3d 1222,]

ADD-41

Fallon v. CTSC, LLC, Not Reported in F.Supp.2d (2013)

1231 (10th Cir.2004). Because the complaint alleges that the adverse employment actions occurred within four and one-half weeks of the protected activity of requesting an accommodation, the Court concludes—based upon temporal proximity alone—that the complaint states a plausible claim that a causal connection exists between the adverse action and protected activity.

The Court is not persuaded to find otherwise by defendant's argument that plaintiff fails to allege facts indicating a nexus between the person taking the adverse action of firing plaintiff and the person to whom plaintiff made the request for an accommodation. *See* Mem. at 8 ("While in the body of the Complaint, plaintiff states that he complained that 'he was being subjected to a hostile work environment,' there is no nexus between the person(s) to whom he complained and the person who fired him."). In the context of employment discrimination cases, the Tenth Circuit has suggested that plausibility may require less specific pleadings, "because in [these] cases where the employers are large corporations, the employee may not know who actually fired [him] or for what reason." 🚩*Khalik*, 671 F.3d at 1190; *see also* 🚩*Hunt v. Central Consolidated Sch. Dist.*, No. 11–CV–1144 JB/WDS, 2013 WL 3214928, at *28 (D.N.M. June 12, 2013). Thus, plaintiff's failure to specify to whom he requested an accommodation or by whom he was fired does not in and of itself render plaintiff's claim implausible. Rather, to withstand a Rule 12(b)(6) motion, plaintiff need only allege enough facts to state a plausible claim. *See* 🚩*Twombly*, 550 U.S. at 555 (a plaintiff need not allege all of the facts that would be necessary to support his claim at the trial stage, but rather need only allege "enough facts to state a claim to relief that is plausible on its face") (citation omitted). Plaintiff has satisfied this standard.

Moreover, the Court rejects defendant's characterization that "nothing other than sheer speculation ... link[s] the ]complaint[ ] and [plaintiff's] termination to a discriminatory or retaliatory motive." Mem. at 8. Plaintiff alleges that his termination occurred within four and one-half weeks of his protected activity of requesting an accommodation for his depression. *See* Compl. ¶¶ 19–21. As discussed, the Court can infer retaliatory motive from the temporal proximity of a protected activity and a subsequent adverse employment action. *See* 🚩*Anderson*, 181 F.3d at 1179.

**\*14** The Court likewise is not persuaded by defendant's argument that plaintiff's retaliation claim must fail because plaintiff provides no information regarding the type of accommodation requested, why the accommodation was requested, or to whom the request was made. *See* Mem. at 7. Admittedly plaintiff provides few details about his request for accommodation. However, for purposes of stating a retaliation claim based upon the protected activity of requesting an accommodation—as opposed to stating a discrimination claim based upon a failure to accommodate, *see supra* p. 11—the details defendant seeks are not essential to state a plausible claim. Plaintiff has alleged facts indicating that he requested an accommodation, that he thereafter was terminated, and that his request for accommodation and termination were causally connected. *See* Compl. ¶¶ 19, 21. These facts are legally sufficient to satisfy the 12(b)(6) standard in the context of a retaliation claim. Therefore, the Court denies defendant's motion to dismiss the retaliation claim to the extent the claim is premised on the protected activity of requesting an accommodation.

## CONCLUSION

For the foregoing reasons, IT THEREFORE IS ORDERED that defendant CTSC, LLC's Motion to Dismiss Plaintiff's Complaint [Doc. 7] is hereby GRANTED IN PART and DENIED IN PART as follows:

(1) Defendant's motion to dismiss plaintiff's age-based discrimination claim under the NMHRA is DENIED;

(1) Defendant's motion to dismiss plaintiff's disability-based discrimination claim under the NMHRA is GRANTED; and

(3) Defendant's motion to dismiss plaintiff's retaliation claim under the NMHRA is GRANTED to the extent the claim is premised on the protected activity of reporting Keefner's conduct to the human resources department and DENIED to the extent the claim is premised on the protected activity of requesting an accommodation.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 9853376

ADD-42

Fallon v. CTSC, LLC, Not Reported in F.Supp.2d (2013)

---

## Footnotes

1       "[The *McDonnell Douglas* ] framework[ ] ... is not a required method of proof; it is only a tool to focus the issues and to reach the ultimate issue of whether the employer's actions were motivated by impermissible discrimination." ⚑ *Smith*, 787 P.2d at 437. "A prima facie case may also be made out through other means." *Id.*

2       For the same reasons, the Court also rejects defendant's argument that the incorporation of facts from preceding paragraphs into the second and third counts is fatal to Plaintiff's claim. *See* Mem. at 6–7, 8.

3       The New Mexico Supreme Court has previously indicated that it is appropriate to rely upon federal authorities for guidance in analyzing a claim under the NMHRA, with the following reservation: "Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own. Our analysis of this claim is based on the New Mexico statute and our interpretation of our legislature's intent, and, by this opinion, we are not binding New Mexico law to interpretations made by the federal courts of the federal statute." ⚑ *Smith v. FDC Corp.*, 787 P.2d 433, 436 (N.M.1990); *accord* ⚑ *Trujillo*, 41 P.3d at 338 (citation omitted).

4       *Chan v. Sprint Corp.*, 351 F.Supp.2d 1197, 1209 (D.Kan.2005) ( "[i]n order to present a viable hostile work environment claim, ... Plaintiff must be disabled under the ADA") (citing ⚑ *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir.2003))

5       Because the Court grants the motion to dismiss on the dispositive ground that Plaintiff has failed to state a plausible claim that he was a member of a protected group under the NMHRA, the Court need not decide whether Plaintiff has failed to state a plausible claim with respect to any of the other elements of a disability-based discrimination claim. *See supra* pp. 10–11 (describing the elements of unlawful termination, hostile work environment, and failure to accommodate claims).

6       As the Court has previously stated, a district court may look to federal civil rights adjudication for guidance in interpreting the NMHRA. *See supra* note 3.

7       The Court already has held that Plaintiff's termination constitutes an adverse employment action within the meaning of the NMHRA, but that on the facts as alleged in the complaint Plaintiff has not stated a plausible claim that the written reprimand or final warning constitute adverse employment actions. *See supra* pp. 19, 20. For purposes of deciding the question whether Plaintiff has alleged a plausible claim that a causal connection exists between his protected activities and the reprimands only, the Court assumes that the reprimands constitute adverse employment actions and therefore reaches the question whether plaintiff has alleged plausible facts indicating that the reprimand and warning were causally connected to the protected activities.

8       Federal authorities may inform the Court's analysis of Plaintiff's NMHRA claim. *See supra* note 3.

---

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-43

Haskew v. Southwest Airlines Co., Not Reported in Fed. Supp. (2020)

2020 WL 6781754

2020 WL 6781754
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Krisanne HASKEW, Plaintiff,

v.

SOUTHWEST AIRLINES CO. and IAM Air
Transport District 142, a/k/a District Lodge 142
of the International Association of Machinists
and Aerospace Workers AFL-CIO, Defendants.

Civ. No. 19-732 JAP/LF
|
Filed 11/18/2020

**Attorneys and Law Firms**

McKenzie A. St. Denis, Legal Solutions of New Mexico,
LLC, Albuquerque, NM, Jamison Barkley, Law Office of
Jamison Barkley, LLC, Santa Fe, NM, for Plaintiff.

Krisanne Haskew, Albuquerque, NM, pro se.

Misty Leslie, Pro Hac Vice, Robert Shawn Oller, Littler
Mendelson, P.C., Phoenix, AZ, for Defendants.

**MEMORANDUM OPINION AND ORDER**

JAMES A. PARKER, SENIOR UNITED STATES
DISTRICT JUDGE

**\*1** On September 29, 2020, Defendant Southwest Airlines
Co.[1] filed DEFENDANT SOUTHWEST AIRLINES CO.'S
MOTION TO DISMISS (Doc. 75) ("Motion").[2] Defendant
moves to dismiss PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR VIOLATIONS OF THE AMERICANS
WITH DISABILITIES ACT, VIOLATIONS OF THE
NEW MEXICO HUMAN RIGHTS ACT, BREACH OF
THE DUTY OF FAIR REPRESENTATION, AND FOR
INJUNCTIVE RELIEF (Doc. 28) ("FAC"). Specifically,
Defendant moves to dismiss with prejudice Plaintiff's claims
of retaliation under the Americans with Disabilities Act, 42
U.S.C. 12101 et seq., ("ADA") and the New Mexico Human
Rights Act, NMSA 28-1-7(A), ("NMHRA").[3] After careful
consideration of the pertinent law and the parties' briefing,
the Court will grant the Motion.

**I. FACTUAL BACKGROUND**[4]
In February 1993, Defendant hired Plaintiff to work as
a customer service representative at its Albuquerque call
center. FAC ¶ 13. In 2002, Plaintiff suffered a left shoulder
injury, and in 2010, this injury was classified as an on-
the-job injury. Id. ¶¶ 17–18. On September 17, 2015, after
undergoing three shoulder surgeries and upon a doctor's
recommendation, Plaintiff completed a Southwest Airlines
ADA Medical Information Form, in which she requested an
accommodation that she be assigned a maximum of eight
hours of work per day with no overtime. Id. ¶¶ 20–25. Plaintiff
submitted a doctor's note in support of this request. Id.

On October 16, 2015, Defendant denied Plaintiff's
accommodation request and informed her that working
overtime for extended periods during peak workloads is
an essential function of the customer service representative
position. Id. at ¶ 26. However, Defendant also apprised
Plaintiff that, in order to avoid working more than eight
hours, she could trade shifts or give away shifts in accordance
with her Collective Bargaining Agreement ("CBA"), or
alternatively, she could request a leave of absence. Id. ¶ 28.
Plaintiff then began trading shifts, giving away shifts, and
using vacation leave to avoid working overtime. Id. ¶ 29.

**\*2** On March 24, 2016, Defendant notified all customer
service representatives that worked in its Albuquerque call
center that they could be scheduled to work mandatory
overtime five or more days a week. Id. ¶ 30. Shortly
after, on March 28, 2020, Plaintiff filed a Charge of
Discrimination with the Equal Employment Opportunity
Commission ("EEOC"), accusing Defendant of disability
discrimination for denying her accommodation request. Id. ¶
31.

On August 19, 2016, Defendant informed Plaintiff that it was
placing her on unpaid leave because she could not work more
than eight hours a day. Id. ¶ 33. At this time, Defendant also
directed Plaintiff to return her employee badge. Id. ¶ 34. In
response, Plaintiff emphasized that she did not want to be
placed on leave but rather preferred to continue working as
long as she was scheduled for only eight hour shifts with no
overtime. Id. ¶ 36. Plaintiff also informed her supervisors that
she wanted to continue to work. Id. ¶ 38 Defendant did not
respond to Plaintiff. Id. ¶ 39.

On August 25, 2016, Plaintiff filed a second EEOC Charge
of Discrimination against Defendant, asserting that Defendant

ADD-44

Haskew v. Southwest Airlines Co., Not Reported in Fed. Supp. (2020)

2020 WL 6781754

placed her on leave in retaliation for filing her first EEOC Charge. *Id.* ¶ 43. On September 2, 2016, Defendant advised Plaintiff to provide a doctor's note for each medical appointment that she attended, and Plaintiff complied. *Id.* ¶ 44. Also during September 2016, Plaintiff (1) resigned from her post as Defendant's representative on the Board of Directors for the Ronald McDonald House and (2) underwent a fourth surgery on her left shoulder. *Id.* ¶¶ 45–46.

On October 5, 2016, Defendant began paying Plaintiff out of her accrued sick leave until it was exhausted. *Id.* ¶ 47. Then, in November 2016, Defendant advised Plaintiff that it would no longer cover her under its insurance plan. *Id.* ¶ 48. Defendant also notified Plaintiff in November 2016 that it was considering her a no-show for that month because she had failed to submit a doctor's note excusing her from work. *Id.* ¶ 49. Plaintiff alleges that she submitted the doctor's note at the beginning of the month, but nonetheless resubmitted it a second time. *Id.* ¶ 50.

On April 6, 2017, Plaintiff filed her third Charge of Discrimination with the EEOC, alleging continued disability discrimination and retaliation. *Id.* ¶ 51. Later that year, on August 16, 2017, Plaintiff underwent her fifth shoulder surgery. *Id.* ¶ 54. Approximately a year later, in August 2018, Defendant advised Plaintiff that she had accumulated "no contact no shows" and issued her written discipline, despite Plaintiff's continued submission of doctor's notes. *Id.* ¶ 55.

In November 2018, the EEOC determined that reasonable cause existed that Defendant retaliated against Plaintiff for engaging in protected activity. *Id.* ¶ 59. On May 14, 2019, the EEOC issued a Notice of Right to Sue. *Id.* ¶ 60.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). In doing so, courts must "accept as true all well-pleaded factual allegations in a complaint and view [those] allegations in the light most favorable to the [non-moving party]." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "state a claim to relief that is plausible on its face." *Id.* (quoting *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). "The claim is plausible only if it contains sufficient factual allegations to allow the court to reasonably infer liability." *Moya v. Garcia*, 895 F.3d 1229, 1232 (10th Cir. 2018) (citing *Iqbal*, 556 U.S. 662, 678 (2009)). The term "plausible" does not mean "likely to be

true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The factual allegations must "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555—i.e., "that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). A mere "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III. ANALYSIS

**\*3** At the outset, the Court declines at this juncture to consider evidence outside of the FAC, which both parties attach to their briefing. Defendant appends to its Motion a declaration executed by Amy Reeg, Workers Compensation Program Lead at Southwest Airlines. *See* Mot., Ex. A. Plaintiff supports her Response with 96 exhibits, including email correspondence, workplace awards, and medical records. *See* Resp. at 16–214. Generally, on a 12(b) motion the Court cannot consider matters outside of the complaint. *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991) ("the district court must examine only the plaintiff's complaint."). Three limited exceptions exist for: (1) documents that the complaint incorporates by reference, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); (2) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); and (3) "matters of which a court may take judicial notice," *Tellabs, Inc.*, 551 U.S. at 322. None of the attached exhibits fall under these three exceptions nor would they assist the Court in its analysis of Plaintiff's claim. Therefore, the Court will not consider the parties' proffered evidence here.

### A. ADA and NMHRA Retaliation

To begin, the FAC alleges that Plaintiff engaged in protected activity by "filing charges of discrimination with the EEOC and complaining of discrimination." FAC ¶ 76. The FAC further asserts that Defendant retaliated against Plaintiff when it "plac[ed] her on unpaid leave, subject[ed] her to a hostile work environment, and discipline[d] her." *Id.* ¶ 77.

To establish a claim of retaliation under the ADA and NMHRA, Plaintiff "must prove that (1) [s]he 'engaged in a

ADD-45

2020 WL 6781754

protected activity'; (2) [s]he was 'subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity'; and (3) there was 'a causal connection between the protected activity and the adverse employment action.' " *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (bracket in original) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999)); *see also Juneau v. Intel Corp.*, 127 P.3d 548, 552 (N.M. 2006) (same).

### B. Parties' Arguments

Defendant argues that Plaintiff's "retaliation claim fails because the facts pled in the FAC do not raise the question of causation above the speculative level." Mot. at 4. Defendant asserts that the retaliation claim "is based solely on the fact [Plaintiff] complained to the EEOC, and she was placed on leave," which occurred "five months after she filed the EEOC charge." *Id.* at 5. Defendant maintains that this five-month gap "between protected activity and [ ] adverse employment action is insufficient temporal proximity to adequately establish causation." *Id.* Therefore, according to Defendant, to survive its Motion the FAC must assert "additional evidence beyond temporal proximity to establish causation." *Id.* (internal quotations and citation omitted). Defendant believes that the FAC "contains no such allegations of fact." *Id.* Among other things, Defendant relies on *Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) for this proposition. *Id.*

For her part, Plaintiff attempts to alter her alleged theory of retaliation under the ADA and NMHRA. Plaintiff now argues that her "retaliation claim is not based on the fact that she complained to the EEOC and then she was placed on leave. But rather her claim is based on the fact that the Plaintiff was following the CBA to 'give away mandatory overtime' and that [Defendant] used that protected activity against her by blocking and condemning her allowable options outlined in the CBA." Resp. 11. Although Plaintiff is now proceeding *pro se*,[5] the Court is puzzled by this about-face because this new argument would foreclose her claim of retaliation under the ADA and NMHRA. Under the circumstances of this case, Plaintiff exercising her rights in accordance with the CBA is not protected activity.[6] But even if it were, on a 12(b)(6) motion the Court is confined to considering only the allegations in the FAC, which here explicitly alleges that Defendant retaliated against Plaintiff for "engag[ing] in protected activity under the ADA including but not limited to filing charges of discrimination with the EEOC and

complaining of discrimination." FAC ¶ 76. Consequently, the Court will address only the theory explicitly alleged in the FAC.

### C. Plaintiff Fails to Plead a Plausible Claim of Retaliation

*4 At bottom, the FAC alleges that (1) as of 2010, Plaintiff had an injury that was classified as on-the-job; (2) on September 17, 2015, Plaintiff made an accommodation request that she be assigned a maximum of eight hours of work per day with no overtime and included a doctor's note in support; (3) on October 16, 2015, Defendant denied Plaintiff's accommodation request; (4) on March 24, 2016, Defendant notified all customer service representatives in its Albuquerque call that they could be scheduled for significant mandatory overtime; (5) on March 28, 2016, Plaintiff filed her first Charge of Discrimination based on her September 2015 accommodation request; (6) on August 19, 2016, Defendant placed Plaintiff on unpaid leave; (7) on August 25, 2016, Plaintiff filed a second Charge of Discrimination, alleging that she was placed on unpaid leave as retaliation for filing her first EEOC charge; (8) on April 6, 2017, Plaintiff filed a third Charge of Discrimination; and (9) in August 2018, despite Plaintiff's continued submission of doctor's notes, Defendant advised Plaintiff that she had accumulated "no contact no shows" and issued her written discipline.

Beginning with protected conduct, an adequate request for an accommodation and filing an EEOC charge both individually qualify. *Foster*, 830 F.3d at 1187 (discussing requests for accommodation); *see also Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1207 (10th Cir. 2007) (EEOC complaints are protected activity). Likewise, being placed on unpaid leave is an adverse employment action. *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998) (discussing adverse employment action). However, as Defendant rightfully argues, the FAC includes insufficient factual assertions that make it plausible that Defendant placed Plaintiff on unpaid leave in retaliation for either requesting an accommodation or filing an EEOC charge.

A claim of retaliation requires "that a causal connection existed between the protected activity and the materially adverse action." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008). "A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002)

Haskew v. Southwest Airlines Co., Not Reported in Fed. Supp. (2020)

2020 WL 6781754

(internal quotations omitted). Without "very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001); *see also* *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (ruling that a three month period, standing alone, is insufficient to establish causation on a retaliation claim). "[O]ther evidence in the record could establish an adverse employment action taken after a lengthy period of time was still in response to the earlier, protected activity." *Piercy v. Maketa*, 480 F.3d 1192, 1199 (10th Cir. 2007).

Here, the FAC does not include allegations that establish a very close temporal proximity. Tellingly, Plaintiff made the request for accommodation *eleven months* before being placed on unpaid leave. In turn, Plaintiff filed the EEOC charge approximately *five months* before Defendant placed her on unpaid leave. Simply put, a five-month temporal gap is insufficient to establish causation, let alone an eleven-month period. *Anderson, 181 F.3d at 1179* ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.") (internal citation omitted); *see also See Hall v. Interstate Brands Corp.*, 395 F. App'x 519, 522 (10th Cir. 2010) (unpublished) (three-month gap insufficient to establish causation) (citing cases). Thus, the FAC must allege additional factual assertions to establish a plausible causal connection.

On this front, Defendant relies on *Khalik* to demonstrates that the FAC omits the requisite fact assertions necessary to infer causation.[7] In *Khalik*, the plaintiff brought a claim for retaliation under Title VII. 671 F.3d at 1193. The court took the following facts as true:

> **\*5**  (1) Plaintiff is an Arab–American who was born in Kuwait; (2) Plaintiff's religion is Islam; (3) Plaintiff performed her job well; (4) Plaintiff was grabbed by the arm in the office; (5) Plaintiff complained internally about discrimination; (6) Plaintiff also complained internally about being denied FMLA leave; (7) Plaintiff complained about an email that described a criminal act; and

> (8) Defendant terminated Plaintiff's employment position.

*Id.* The court concluded that these allegations did not "sufficiently allege discrimination or retaliation" because, among other things, "there is no nexus between the person(s) to whom she complained and the person who fired her," "there is nothing other than sheer speculation to link the arm-grabbing and/or termination to a discriminatory or retaliatory motive," and the plaintiff alleged "nothing that would link her request for FMLA leave, which she provides no details about, to her termination. *Id.* at 1194. In sum, the court determined that the plaintiff's claims "were based solely on the fact that she is Muslim and Arab-American, that she complained about discrimination, that she complained about the denial of FMLA leave, and that Defendant terminated her." *Id.*

With this guidance, it is plain that Plaintiff does not establish a causal connection between the accommodation request or EEOC charge and being placed on unpaid leave. In all, the FAC merely alleges two elements (1) protected activity (the accommodation request and the EEOC charge) and (2) adverse employer action (Defendant placed Plaintiff on unpaid leave five or eleven months later, depending on the protected conduct). The FAC does not allege, however, any conduct that occurred in the interim nor does it include assertions that connect the individuals with knowledge of Plaintiff's accommodation request or EEOC charge to the decisionmaker(s) that placed her on unpaid leave, both of which could establish a plausible nexus. Like *Khalik*, Plaintiff's retaliation claim is based solely on the fact that she engaged in protected conduct and was placed on leave.

Furthermore, even if the Court expands Plaintiff's theory and considers additional allegations of protected conduct and adverse employment action that occurred after Defendant placed Plaintiff on unpaid leave, a plausible causal connection still cannot be established.[8] To be sure, on August 25, 2016, Plaintiff made her second Charge of Discrimination against Defendant, in which she identified being place on leave as retaliation for filing the first charge. The only allegations of Defendant's conduct that occurred after the second EEOC charge include: (1) on September 2, 2016, Defendant told Plaintiff to provide a doctor's note for each medical appointment she attended; (2) on October 5, 2016, Defendant began paying Plaintiff out of her accrued sick leave; (3) on November 4, 2016, Defendant notified Plaintiff

ADD-47

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 115

Haskew v. Southwest Airlines Co., Not Reported in Fed. Supp. (2020)
2020 WL 6781754

that she would no longer be covered under its insurance plan; and (4) on November 30, 2016, Defendant left a message advising Plaintiff that she had not submitted a doctor's note for November 2016. When viewing these allegations in totality, it is implausible that Defendant retaliated against Plaintiff for filing the second EEOC Charge or that any of these actions individually qualify as adverse employment action, especially when Plaintiff had already been placed on unpaid leave.

**\*6** For example, Defendant informed Plaintiff that it would not cover her under its insurance—i.e., the only allegation that could even be considered adverse—approximately *three months after* Plaintiff was both placed on unpaid leave and filed her second EEOC Charge. Given that this three-month gap standing alone cannot establish causation, *Anderson, 181 F.3d at 1179*, Plaintiff now needs to make additional non-conclusory allegations to support a nexus between the second EEOC charge and Plaintiff losing her insurance. But as stated above, the FAC does not include these additional supporting facts. The Court is simply left to guess how the two are connected.

The same holds true for Plaintiff's third Charge of Discrimination, which she made on April 6, 2017. Approximately *sixteen months* later, in August 2018, Defendant advised Plaintiff that she had accumulated "no contact no shows" and issued her written discipline despite Plaintiff's continued submittal of doctor's notes. Even assuming that Defendant's conduct constituted an adverse employment action, which it likely was not,[9] a sixteen-month interval without additional fact assertions makes any causal connection implausible. And Plaintiff again fails to cure the infirmity by alleging additional facts.

Lastly, Plaintiff also cannot demonstrate a plausible inference of causation through a pattern of retaliatory conduct. In total, Plaintiff (1) made an accommodation request, (2) filed on EEOC charge, (3) was placed on unpaid leave five months after the charge, (4) filed a second EEOC charge while on unpaid leave, (5) lost insurance benefits three months later after being placed on unpaid leave, (6) filed a third EEOC charge, and (7) sixteen months later received written discipline for failing to submit doctor's notes. These alleged adversarial blips, even when viewed collectively and accepted by this Court as adverse employment action under the ADA and NMHRA, are far too attenuated to lead to an inference of retaliation. *See Meiners v. Univ. of Kansas, 359 F.3d 1222, 1232 (10th Cir. 2004)* ("Two instances, one of which is not even an independently adverse action, that occur four months apart do not constitute a particularly impressive 'pattern of retaliatory conduct.' In addition, the pattern did not begin soon after Dr. Meiners engaged in protected activity, as almost four months elapsed between the filing of the KHRC complaint and the denial of graduate faculty status. This so-called "pattern" therefore does not support an inference of a causal connection.").

**IV. CONCLUSION**

IT IS ORDERED that DEFENDANT SOUTHWEST AIRLINES CO.'S MOTION TO DISMISS (Doc. 75) is GRANTED and Plaintiff's First Amended Complaint (Doc. 28) is DISMISSED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 6781754

---

**Footnotes**

1      Defendant Southwest is the sole remaining Defendant in this civil action. *See* Doc. 53 ("Plaintiff Krisanne Haskew and IAM Air Transport District 142, a/k/a District Lodge 142 of the International Association of Machinists and Aerospace Workers AFL-CIO ... stipulate to the dismissal of all Plaintiff's claims against IAM in the above-styled civil action with prejudice.").

2      The Motion is fully briefed. *See* PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (Doc. 76); DEFENDANT SOUTHWEST AIRLINES CO.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS (Doc. 81).

ADD-48

Haskew v. Southwest Airlines Co., Not Reported in Fed. Supp. (2020)

2020 WL 6781754

3    Plaintiff's retaliation claim against Defendant Southwest is the only remaining claim in this case. *See* Doc. 53 (stipulation of dismissal of all claims against Defendant IAM Air Transport District 142), Doc. 56 (stipulation of dismissal of all claims under the ADA and the NMHRA except for Plaintiff's retaliation and discrete act claims), Doc. 57 (May 22, 2020, Memorandum Opinion and Order dismissing Plaintiff's claims of disability discrimination under the ADA and NMHRA).

4    The Court accepts as true the factual allegations in the FAC for the purposes of deciding a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court does not, however, accept as true any legal conclusions within the FAC. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

5    On July 10, 2020, The Court granted Plaintiff's attorneys' OPPOSED MOTION TO WITHDRAW (Doc. 61). The Court found that a fundamental disagreement existed between Plaintiff and her attorneys. *Id.*

6    *See Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016) ("The ADA's retaliation statute provides that '[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.'" (quoting 42 U.S.C. § 12203(a))). Upon this Court's review of the statute and case precedent, trading shifts under a collective bargaining agreement falls short of protected conduct and does not constitute specifically engaging in an activity to oppose an employer's discriminatory practices. This especially holds true when it was Defendant who "advised Plaintiff that, when she was scheduled to work more than eight hours, she should could trade shifts or give away her shifts pursuant to her respective Collective Bargaining Agreement, or request a leave of absence." FAC ¶ 28. Furthermore, there are simply no fact assertions that support a plausible nexus between Plaintiff exercising her rights under the CBA and Defendant placing her on unpaid leave. In sum, the FAC only establishes that on October 16, 2015, Defendant reminded Plaintiff of her rights under the CBA and approximately *ten months later* Plaintiff was placed on leave. Anything more is pure conjecture.

7    In its discussion of *Khalik* and causation, Defendant references the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As recently explained by the Supreme Court, that test is inapplicable to a 12(b)(6) motion. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) ("For its part, *McDonnell Douglas* sought only to supply a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination ... So *McDonnell Douglas* can provide no basis for allowing a complaint to survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim.").

8    To be clear, Plaintiff narrowed her retaliation claim against Defendant to one of retaliation for being placed on unpaid leave. *See* Doc. 56 (Plaintiff dismissed "[a]ll claims under the ADA and the NMHRA EXCEPT FOR Plaintiff's retaliation [ ] claim[ ] for being placed on unpaid leave in August 2016").

9    When addressing adverse action in the disciplinary context, the Tenth Circuit has noted:

> Disciplinary proceedings, such as warning letters and reprimands, can constitute an adverse employment action. A reprimand, however, *will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment* -- for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities

ADD-49

Haskew v. Southwest Airlines Co., Not Reported in Fed. Supp. (2020)

2020 WL 6781754

*Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005) (emphasis added) (citations omitted). Here, Plaintiff merely alleges that she received written discipline but does not assert that it would adversely affect the terms and conditions of her employment.

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-50

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 118

Hughes v. Terminix Pest Control, Incorporated, Not Reported in Fed. Rptr. (2024)

2024 WL 3440465
Only the Westlaw citation is currently available.
United States Court of Appeals, Fifth Circuit.

Jennifer HUGHES, Plaintiff—Appellant,

v.

TERMINIX PEST CONTROL,
INCORPORATED, Defendant—Appellee,
consolidated with

Dean Chauvin, Plaintiff—Appellant,

v.

Terminix Pest Control,
Incorporated, Defendant—Appellee,
consolidated with

Kellie Picou, Plaintiff—Appellant,

v.

Terminix Pest Control,
Incorporated, Defendant—Appellee.

No. 23-30617, No. 23-30846, No. 23-30856
|
FILED July 17, 2024

Appeals from the United States District Court for the Eastern District of Louisiana, USDC Nos. 2:22-CV-3676, 2:22-CV-3673, 2:22-CV-3700

**Attorneys and Law Firms**

David Joseph Schexnaydre (argued), Schexnaydre Law Firm, L.L.C., Mandeville, LA, for Plaintiff—Appellant.

Ravi Kishan Sangisetty, Esq., Attorney, Amanda Olmsted (argued), Esq., Sangisetty Law Firm, L.L.C., New Orleans, LA, for Defendant—Appellee.

Before Southwick, Haynes, and Graves, Circuit Judges.

**Opinion**

Per Curiam: *

 **\*1**  The district court's judgment is AFFIRMED for the following reasons.

To plead a cause of action under the Americans with Disabilities Act, a plaintiff must first plausibly allege he is disabled within the meaning of that Act. That requires alleging an "impairment" that "substantially limits" a "major

life activit[y]." 42 U.S.C. § 12102(1)(A). The employees here argue they are disabled because their preexisting health conditions prevent them from safely receiving the COVID-19 vaccine, which in turn prevents them from working the class of jobs that mandates those vaccines. In cases where this court has found a plaintiff disabled, however, the disability itself directly limited the life activity at issue. See, e.g., Mueck v. La Grange Acquisitions, LP, 75 F.4th 469, 469 (5th Cir. 2023) (employee's binge drinking substantially impacted the "major life activities of thinking, concentrating, and caring for" oneself). The district court here did not err in rejecting these alleged indirect limitations on a major life activity as being too attenuated under this court's caselaw.

The Public Readiness and Emergency Preparedness ("PREP") Act does not completely preempt Louisiana's at-will employment doctrine. See 42 U.S.C. §§ 247d-6d, 247d-6e. To cause complete preemption, a federal statute must "contain[ ] a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law." Mitchell v. Advanced HCS, LLC, 28 F.4th 580, 585 (5th Cir. 2022) (citation omitted). The PREP Act instead grants immunity to certain entities involved in responding to public health emergencies. See 42 U.S.C. § 247d-6d(a)(1). The PREP Act then provides an exception to this immunity by creating a cause of action for willful misconduct. § 247d-6d(d)(1). That exception is both substantively and procedurally narrow, and thus provides no basis for concluding the PREP Act replaces and protects the Louisiana at-will employment doctrine. Although the PREP Act also contains a preemption provision, § 247d-6d(b)(8), the district court correctly concluded the PREP Act is at its core an immunity statute. The willful misconduct exception limits the scope of the granted immunity, and the preemption provision displaces state law that would otherwise conflict with the granted immunity.

The PREP Act likewise does not displace Louisiana's at-will employment doctrine under ordinary preemption rules. See Altria Grp., Inc. v. Good, 555 U.S. 70, 77 (2008). References to voluntariness in the PREP Act and the Emergency Use Authorization provision, 21 U.S.C. § 360bbb-3, do not vest employees with a right against private employers. The provisions at issue only oblige the Secretary of Health and Human Services to ensure potential participants are informed of the voluntary nature of the government

ADD-51

Hughes v. Terminix Pest Control, Incorporated, Not Reported in Fed. Rptr. (2024)

programs. 🚩42 U.S.C. § 247d-6e(c); 🚩21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III). This informational obligation on the Secretary falls short of expressing a clear congressional intent to supersede state regulation of private employment. *See* 🚩*Good*, 555 U.S. at 76–77.

\*2  AFFIRMED.

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 3440465

---

### Footnotes

\*        This opinion is not designated for publication. See 5th Cir. R. 47.5.4.

---

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-52

Jorgenson v. Conduent Transport Solutions, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 1472022

2023 WL 1472022
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

Tony JORGENSON, Plaintiff,

v.

CONDUENT TRANSPORT
SOLUTIONS, INC., Defendant.

Civil No. SAG-22-01648

|

Signed February 2, 2023

**Attorneys and Law Firms**

Tony Jorgenson, Columbia, MD, Pro Se.

Lauren M. Upton, Bowie & Jensen, Towson, MD, Stephen Lee Scott, Pro Hac Vice, The Kullman Firm, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION

Stephanie A. Gallagher, United States District Judge

**\*1** Plaintiff Tony Jorgenson ("Plaintiff"), who is self-represented, filed an Amended Complaint against his employer, Conduent Transport Solutions, Inc. ("Conduent"), alleging discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"). ECF 6. Conduent has filed a Motion to Dismiss for failure to state a claim. ECF 11. Plaintiff filed an opposition, ECF 17, and Conduent filed a reply, ECF 18. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, this Court will grant Conduent's Motion to Dismiss.

### I. FACTUAL BACKGROUND

The facts contained herein are derived from Plaintiff's Amended Complaint and taken in the light most favorable to Plaintiff as the non-moving party. Plaintiff worked as an engineer for Conduent from April 16, 2018, through March 7, 2022. ECF 6 ¶ 30. In 2021, Conduent adopted a COVID-19 policy applicable to all of its workers. *Id.* ¶¶ 8,10. In relevant part, Conduent's policy required each employee to certify the employee's vaccination status on an online portal. *Id.* ¶ 31.

On August 31, 2021, Conduent's Chief Human Resources ("HR") Officer, Chris Kujawa, emailed Plaintiff to state that if he did not certify his vaccination status, he would be subject to a masking requirement and might be subject to quarantine. *Id.* ¶ 32. The Conduent workplace also contained signs reading, "Mask Required If Not Vaccinated." *Id.* ¶ 33. On January 13, 2022, Conduent's Managing Director, John Fischer, emailed Plaintiff to instruct him that he must wear a mask, wash his hands frequently, and remain six feet away from other workers, or be subject to disciplinary action or termination. *Id.* ¶ 34.

On February 3, 2022, Plaintiff had a meeting with his supervisor and the Senior Director of HR to discuss the vaccination attestation policy. *Id.* ¶ 35. Although Plaintiff explained his opposition to the policy and stated that he felt it was discriminatory, Conduent informed him that he would be fired if he failed to attest to his vaccination status by February 10, 2022. *Id.* On February 17, 2022, Plaintiff emailed Conduent's company management and legal department to state that he believed the vaccination attestation and other Covid-related requirements violated the ADA. *Id.* ¶ 38.

On February 21, 2022, HR informed Plaintiff that he would receive a written warning for his failure to comply with the vaccination attestation policy. *Id.* ¶ 39. On February 28, 2022, Plaintiff sent a "Notice of Discrimination Based Upon Disability" to Conduent's HR Department, invoking the protection of the ADA. *Id.* ¶ 40. On the same date, the Vice President of Technology emailed Plaintiff a "Final Warning" to state that he would be terminated if he did not record his vaccination status by March 4, 2022. *Id.* ¶ 41. On March 1, 2022, Plaintiff met with HR regarding his ADA complaint. *Id.* ¶ 42. And the next day, on March 2, 2022, Plaintiff responded in writing to the final warning notice, arguing that the attestation requirement was not an essential function of his job. ECF 1 ¶ 43. On March 7, 2022, however, Conduent terminated Plaintiff's employment. *Id.* ¶ 46. Plaintiff filed a charge with the EEOC on March 16, 2002, and received a right to sue letter on April 5, 2022. *Id.* ¶ 47. This lawsuit ensued.

### II. LEGAL STANDARD

**\*2** Under Federal Rule of Civil Procedure 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *a̲f̲f̲'d sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d

ADD-53

231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal,* 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon,* 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2), *Twombly,* 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby,* 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly,* 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown,* 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly,* 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if … [the] actual proof of those facts is improbable and … recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.,* 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.,* 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak,* 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied,* 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions

drawn from the facts. *See Papasan v. Allain,* 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia,* 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied,* 566 U.S. 937 (2012).

**\*3** Here, Plaintiff attached one hundred pages of documents to his Amended Complaint, including the relevant Conduent policies and his email exchanges with Conduent management. ECF 6-4. Federal courts may consider documents incorporated into a complaint by reference without converting a 12(b)(6) motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007).

Finally, because Plaintiff is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quotations omitted). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP,* 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd,* 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.,* No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd* 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll,* 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985); *see also M.D. v. Sch. Bd.,* 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

### III. ANALYSIS

Plaintiff's Amended Complaint can be read to contain claims of discrimination and retaliation under the ADA. Initially, this

2023 WL 1472022

Court must address a threshold issue: Does Plaintiff qualify for the ADA's protections?

The ADA protects qualified individuals with a disability. "An individual is disabled under the ADA ... if he or she: (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Davis v. University of North Carolina,* 263 F.3d 95, 99 (4th Cir. 2001) (citations omitted); *see also* 42 U.S.C. § 12102(1)(A). "An impairment is a disability ... if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(l)(ii). Examples of "major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." *Id.* § 1630.2(i)(1)(i). Ultimately, "[t]he determination of whether a person is disabled is an individualized inquiry, particular to the facts of each case." *E.E.O.C. v. Sara Lee Corp.,* 237 F.3d 349, 352 (4th Cir. 2001) (citations omitted).

Plaintiff concedes that he has not been diagnosed with any disabling condition. ECF 6 ¶ 51. Instead, he argues that he is "regarded as" having a disabling condition by Conduent in that Conduent is trying to impose "medical treatments" on him, or that he is viewed as having a "record of" a disabling condition. *Id.* ¶¶ 51, 57.

**\*4** Plaintiff's position is unavailing. Initially, he has not alleged facts showing a "record of" a disabling condition. "An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(l); *Reynolds v. Am. Nat. Red Cross,* 701 F.3d 143, 153 (4th Cir. 2012). Plaintiff does not allege any history of impairment. Instead, he argues that Conduent "mis-classified" him as unvaccinated "and made a record of impairment by imposing its [attestation] policy upon plaintiff." ECF 6 ¶ 129. But Plaintiff has alleged no facts indicating that Conduent classified him as having any impairment that limits a major life activity. In fact, Conduent's records could not contain anything about his vaccination or other medical status, since he never provided that information to the company. Moreover, the exchanges attached to his Amended Complaint, including the written "Performance Improvement

Plan" warning provided to Plaintiff, document Conduent's position that Plaintiff simply needed to comply with the attestation policy by giving a yes/no answer on the portal. ECF 6-4 at 42, 60-61. Merely requiring Plaintiff to follow a COVID-19 safety policy applicable to all employees does not support the inference that Conduent classified Plaintiff as disabled under ADA. *See Speaks v. Health Systems Management, Inc.,* No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649, at \*5 (W.D.N.C. Aug. 17, 2022) (rejecting claim that defendant classified plaintiff as impaired under the ADA by requiring her to comply with a mandatory COVID-19 vaccination policy, because plaintiff's position "would mean that [defendant] considered all its employees to have an 'impairment,' which is of course not a plausible inference").

Moreover, Plaintiff has not pleaded facts plausibly suggesting that Conduent "regarded him" as having a disabling condition. To meet the "regarded as having a disability" prong, a plaintiff must plausibly allege "that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); *see also Miller v. Maryland Dep't of Nat. Res.,* 813 F. App'x 869, 876 (4th Cir. 2020).

Plaintiff's attempt to rely on that provision tries to fit a square peg into a round hole. There is simply no perceived disabling impairment alleged in this case. Not knowing a person's vaccination status is not the same as believing that person has a physical or mental impairment. That person, masked or unmasked, can perform all of his or her job duties as an engineer. And vaccination status is likewise not an impairment or an impediment to work-related tasks. Conduent's decision to protect its workplace by requiring its employees to attest to their vaccination status—and in some cases, to wear masks—does not plausibly reflect a determination or belief that any of its employees are disabled or impaired. *See Speaks,* 2022 WL 3448649, at \*5 (explaining that "[r]efusing to get a vaccine required by an employer is not itself an 'impairment' of any sort[,]" but instead "reflects a personal choice [that] cannot be considered an impairment under the ADA").

Moreover, as evidenced by the documentation attached to Plaintiff's Amended Complaint, Conduent's policies applied universally to all U.S.-based employees. ECF 6-4 at 16-17. Plaintiff was not singled out and asked to attest to his

vaccination status. All employees had to comply. And all unvaccinated employees, or those who had not disclosed their vaccination status, had to be masked. *Id.* at 17. The policies did not hinge on any assessment of disability or perceived impairment. Thus, Plaintiff has not plausibly alleged that he is disabled within the meaning of the ADA.

The other ADA provisions Plaintiff references in his Amended Complaint are equally unavailing. For example, 29 C.F.R. § 1630.9(d) states that an employee is not required to accept a reasonable accommodation for a disability. As described above, Plaintiff has not alleged that he had a "disability" within the meaning of the ADA, and he conceded in his correspondence with Conduent that he did not request any accommodation. ECF 6-4 at 48. Nor can any of Conduent's policies, such as the attestation or masking requirements, be described as accommodations, since they are not designed to assist an employee in performing his or her job tasks. Part 1630.9(d) is therefore inapplicable.

**\*5** Another subsection Plaintiff cites, Part 1630.13(b), states that an employer cannot require a medical examination or "make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability." Neither of those prongs is at issue here, since Conduent's attestation requirement did not constitute a medical examination or an inquiry about a disability or disabling condition. Both vaccinated and unvaccinated people are able to perform their work and engage in major life activities without impairment or limitation. Part 1630.13(b), then, is also inapposite.[1]

Even if Plaintiff had sufficiently alleged that he was a qualified individual with a disability, which he has not, he has failed to plausibly allege that he was terminated *because of* his alleged disability. To demonstrate discrimination under the ADA, Plaintiff must meet the "but for" standard of causation. *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 235 (4th Cir. 2016). The record here, as attached by Plaintiff to his Amended Complaint, reflects Conduent's persistent efforts to procure his compliance with the attestation policy, and its eventual ultimatum that he would be terminated if he refused to comply. Put simply, then, Plaintiff has not plausibly alleged that Conduent possessed some discriminatory animus linked to Plaintiff's unknown medical condition. He was simply terminated for failing to adhere to company policy. Given the distinct lack of allegations linking Plaintiff's termination to any actual or perceived disability, "but for"

causation has not been plausibly alleged. Plaintiff's ADA discrimination claim will be dismissed.

Plaintiff's other claim alleges that Conduent retaliated against him by imposing "punitive measures" and terminating him after he asserted his ADA-protected rights. ECF 6 ¶¶ 153-86. As summarized by the Fourth Circuit, the ADA retaliation standard is as follows:

> Under 42 U.S.C. § 12203, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice *made unlawful by this chapter* or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." (emphasis added). In order to establish a prima facie case of retaliation, a plaintiff must allege (1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action. *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001). In reviewing retaliation claims, courts recognize the need to balance the desire to encourage employees to oppose unlawful discrimination, with "an employer's interest in maintaining a harmonious, productive and loyal workforce." *Fitch v. Solisys Corp.*, 94 F. Supp. 2d 670, 678 (D. Md. 2000).

*Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002). Significantly, the ADA does not require proof of disability to mount a retaliation claim, so the Court's conclusion that Plaintiff has failed to demonstrate a disability as a matter of law is not controlling. *Rhoads*, 257 F.3d at 380. Indeed, Plaintiff does not even have to "prove the conduct he opposed was actually an ADA violation. Rather, he must show he had a 'good faith belief' the conduct violated the ADA." *Reynolds*, 701 F.3d at 154.

**\*6** Plaintiff's simple assertion that he "was regarded as having a disability and that he was a qualified individual with a disability," ECF 6 ¶ 155, though, does not establish a "good faith belief." *See Lundstrom v. Contra Costa Health Servs.*, Civ. No. 22-cv-06227-CRB, 2022 WL 17330842, at \*6 n.7 (N.D. Cal. Nov. 29, 2022) (granting employer's motion to dismiss an ADA retaliation claim where the plaintiff failed to plausibly allege that her employer's COVID-19 policies "violated the ADA, or that her unwillingness to abide by them was a request for an ADA remedy, as she was not disabled"). Conduent informed Plaintiff that the fact that he opposed the attestation requirement did not render it

ADD-56

Jorgenson v. Conduent Transport Solutions, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 1472022

discriminatory. ECF 6-4 at 69. And Plaintiff otherwise fails to explain how his refusal to comply with a company-wide health and safety requirement could reasonably constitute protected activity under the ADA. Accordingly, Plaintiff's simple assertion that he was opposing discrimination under the ADA does not amount to a good faith belief that he was engaged in was protected activity, absent some reasonable basis to believe there was a viable claim of disability discrimination. A contrary ruling would permit any plaintiff to set up a retaliation claim simply by using the term "ADA discrimination" and later claiming a good faith belief, however patently unfounded, that his conduct was protected.

Even if he had been able to demonstrate a good faith belief, though, Plaintiff cannot establish a retaliation claim because the mandatory attestation policy was put in place before he expressed opposition or refused to comply with it. Employees were originally asked (in a non-mandatory fashion) to attest their vaccination status by August 27, 2021. ECF 6-4 at 16-17. On January 12, 2022, it converted to a mandatory requirement for all employees. *Id.* at 22. Employees were advised that failure to comply could lead to termination. *Id.* at 29. Plaintiff's employment was not terminated until March 7, 2022, but all of his complaints invoking the ADA occurred between the implementation of the mandatory policy in January, 2022, and his eventual termination two months later. Courts regularly dismiss retaliation complaints

in these circumstances, because the consequences for non-compliance with the policy were established before any alleged protected activity occurred. *See, e.g.*, *Speaks, 2022 WL 3448649, at \*6* (dismissing retaliation claim where mandatory vaccination policy was enacted before the plaintiff spoke up in opposition to it); *Lundstrom, 2022 WL 17330842, at \*6* (granting employer's motion to dismiss a retaliation claim where COVID policies existed before plaintiff opposed them); *Shklyar v. Carboline Co., Civ. No. 4:22 CV 391 RWS, 2022 WL 2867073, at \*5-6 (E.D. Mo. July 21, 2022)* (same). The allegations in Plaintiff's Amended Complaint demonstrate conclusively that there was no causal link between Plaintiff's allegations of ADA discrimination and his eventual termination, due to the fact that the mandatory attestation policy came into effect before Plaintiff opposed it. For that alternative reason, then, Plaintiff's retaliation count is also subject to dismissal. [2]

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss, ECF 11, will be GRANTED and this case will be CLOSED. A separate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 1472022

---

### Footnotes

[1]    Plaintiff also argues a violation of Part 1630.14(c), but that subsection simply explains the circumstances under which the medical examinations and disability-related inquiries generally prohibited by Part 1630.13 are permitted. Because, as described above, the request for attestation is not barred by Part 1630.13, Conduent need not establish that it falls within the exceptions in Part 1630.14.

[2]    In the Amended Complaint, Plaintiff alludes to the fact that this Court has adopted its own COVID-19 mitigation policies and questions whether the Court can be "impartial" in this case. ECF 6 ¶ 29. Initially, this Court notes that it is Plaintiff who chose to file this case in this United States District Court, rather than some other forum. More importantly, Plaintiff does not even attempt to provide an explanation, beyond his conclusory statement, as to why this Court is not suited to adjudicate this dispute. Ultimately, this Court is bound to apply the law governing Plaintiff's ADA claims, and it has done so faithfully in this case.

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-57

2023 WL 4105705
Only the Westlaw citation is currently available.
United States Court of Appeals, Fourth Circuit.

Tony JORGENSON, Plaintiff - Appellant,

v.

CONDUENT TRANSPORT
SOLUTIONS, INC., Defendant - Appellee.

No. 23-1198
|
Submitted: June 15, 2023
|
Decided: June 21, 2023

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge. (1:22-cv-01648-SAG)

**Attorneys and Law Firms**

Tony Jorgenson, Appellant Pro Se. Stephen Lee Scott, KULLMAN FIRM, Birmingham, Alabama, for Appellee.

Before DIAZ, RICHARDSON, and HEYTENS, Circuit Judges.

**Opinion**

Affirmed by unpublished per curiam opinion.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

 **\*1** Tony Jorgenson appeals the district court's order dismissing his action brought under the Americans with Disabilities Act. We have reviewed the record and discern no reversible error. Accordingly, we affirm the district court's order. *Jorgenson v. Conduent Transp. Sols., Inc.*, No. 1:22-cv-01648-SAG (D. Md. Feb. 2, 2023). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 4105705

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-58

2025 WL 684320
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Laurel KEENAN-CONIGLIO, Chase Bond,
Austin Goodwin and Dylan Hutson, Plaintiffs,

v.

CUMBRES & TOLTEC SCENIC OPERATING
COMMISSION, Cumbres & Toltec Operating,
LLC and Marvin Casias, Max Casias, Glenn
Avery, and Scott Gibbs, individually, Defendants.

No. 1:23-cv-01051-WJ-KK
|
Filed March 4, 2025

**Synopsis**
**Background:** White male and female former employees
of scenic railroad operator brought action against Railroad
Commission, which was interstate agency, against operator,
which was a wholly-owned subsidiary of Commission,
and against individual supervisors and Commissioner,
collectively, for race and sex/gender discrimination, hostile
work environment, and retaliation under Title VII, violations
of New Mexico Whistleblower Protection Act (NMWPA),
and § 1983 violations. Commission and operator moved to
dismiss certain claims, and Commissioner and individual
supervisors moved to dismiss § 1983 claim.

**Holdings:** The District Court, William P. Johnson, Senior
Judge, held that:

[1] employees timely filed their charges under 300-
day limitations period, and thus, satisfied Title VII's
administrative exhaustion requirement;

[2] employees failed to state claims for gender discrimination
and reverse gender discrimination under Title VII;

[3] employees failed to state claims for reverse race
discrimination under Title VII;

[4] employees failed to allege sufficiently severe and
pervasive conduct to support a race-based hostile work
environment claim under Title VII;

[5] male employees failed to state claim for sexual harassment
under Title VII;

[6] female employee alleged sufficiently severe and pervasive
sexual harassment to state a claim for hostile work
environment under Title VII; and

[7] employees failed to state retaliation claims under Title VII.

Motions granted in part and denied in part.

**Procedural Posture(s):** Motion to Dismiss; Motion to
Dismiss for Failure to State a Claim; Motion to Dismiss for
Lack of Subject Matter Jurisdiction.

West Headnotes (88)

[1]     **Federal Courts** 🔑 Evidence; Affidavits
        When ruling on a motion to dismiss for lack
        of subject matter jurisdiction, a district court
        has broad discretion to consider affidavits,
        an administrative record, or other documents
        necessary to resolve disputed jurisdictional facts.
        Fed. R. Civ. P. 12(b)(1).

[2]     **Federal Courts** 🔑 Objections, proceedings,
        and determination
        A motion to dismiss based on sovereign
        immunity is treated as a motion to dismiss for
        lack of subject matter jurisdiction. Fed. R. Civ.
        P. 12(b)(1).

[3]     **Federal Courts** 🔑 Suits Against States;
         Eleventh Amendment and Sovereign Immunity
        Eleventh Amendment immunity is a
        fundamental aspect of the sovereignty that the
        many States enjoy. U.S. Const. Amend. 11.

[4]     **Federal Courts** 🔑 Suits Against States;
         Eleventh Amendment and Sovereign Immunity
        Sovereign immunity precludes federal court
        jurisdiction.

ADD-59

**[5]    Federal Courts** 🔑 **Agencies, officers, and public employees**

Absent a waiver of sovereign immunity, the Eleventh Amendment shields states and state officials. U.S. Const. Amend. 11.

**[6]    Evidence** 🔑 **Disputed or undisputed facts**

**Federal Civil Procedure** 🔑 **Matters considered in general**

On a motion to dismiss for failure to state claim, a district court may take judicial notice of public information that is not reasonably subject to dispute. Fed. R. Civ. P. 12(b)(6).

**[7]    Evidence** 🔑 **Public or government websites**

**Federal Civil Procedure** 🔑 **Matters considered in general**

District court would take judicial notice of website of interstate Railroad Commission and website of scenic railroad operated by a wholly-owned subsidiary of the Commission, in considering their motion to dismiss action brought by former employees for alleged discrimination, retaliation, and harassment under Title VII. Civil Rights Act of 1964 § 701, 42 U.S.C.A. § 2000e et seq.; Fed. R. Civ. P. 12(b)(6).

**[8]    Federal Civil Procedure** 🔑 **Matters considered in general**

On a motion to dismiss for failure to state a claim, district court may consider any document incorporated by reference when no party disputes its authenticity. Fed. R. Civ. P. 12(b)(6).

**[9]    Federal Civil Procedure** 🔑 **Construction of pleadings**

When assessing plausibility of a claim on motion to dismiss, a plaintiff's allegations are read in the context of the entire complaint. Fed. R. Civ. P. 12(b)(6).

**[10]    Federal Civil Procedure** 🔑 **Nonjoinder in general**

When evaluating a motion to dismiss for failure to join a required party, a district court must first determine if the absent party is required to be joined under the rule governing joinder of parties. Fed. R. Civ. P. 12(b)(7), 19.

**[11]    Federal Civil Procedure** 🔑 **Who are indispensable parties**

If a district court cannot feasibly join an otherwise required party because the party is not subject to service of process or because joinder would destroy subject-matter jurisdiction, the court must then decide if the party is indispensable. Fed. R. Civ. P. 19(b).

**[12]    Federal Civil Procedure** 🔑 **Motion and proceedings thereon**

The proponent of a motion to dismiss for failure to join indispensable party has the burden of producing evidence showing the nature of the interest possessed by an absent party and that protection of that interest will be impaired by the party's absence. Fed. R. Civ. P. 12(b)(7), 19.

**[13]    Federal Civil Procedure** 🔑 **Matters considered in general**

**Federal Civil Procedure** 🔑 **Affidavits**

On a motion to dismiss for failure to join indispensable party, a movant's burden to show the nature of absent party's interest and impairment of that interest by the party's absence can be satisfied by providing affidavits of persons having knowledge of the interests as well as other relevant extra-pleading evidence. Fed. R. Civ. P. 12(b)(7), 19.

**[14]    Constitutional Law** 🔑 **Applicability to governmental or private action; state action**

When a litigant seeks to hold a private actor accountable as state actor for deprivation

ADD-60

of constitutional rights, the Tenth Circuit scrutinizes the closeness of private actor's entanglement with government under myriad analytical frameworks, including following four tests: (1) nexus test, (2) joint action test, (3) public function test, and (4) symbiotic relationship test.

[15]    **Constitutional Law**  👉  Applicability to governmental or private action;  state action

When a litigant seeks to hold a private actor accountable as a state actor for deprivation of constitutional rights, the requisite nexus exists only when a state has exercised coercive power over the challenged activity.

[16]    **Constitutional Law**  👉  Applicability to governmental or private action;  state action

Under the nexus test, which is used to determine whether a private actor may be held accountable as a state actor for deprivation of constitutional rights, a substantial entanglement with state rules and state funding does not mean state action; the question is whether a challenged activity results from the State's exercise of coercive power.

[17]    **Constitutional Law**  👉  Applicability to governmental or private action;  state action

For purposes of determining whether a private actor may be held accountable as a state actor for deprivation of constitutional rights, the "joint action test" asks whether state officials and the private party acted in concert in effectuating a particular deprivation of constitutional rights.

[18]    **Constitutional Law**  👉  Applicability to governmental or private action;  state action

Under the joint action test, which is used to determine whether private actor may be held accountable as a state actor for deprivation of constitutional rights, acquiescence or silence by the state is not enough; instead, the State and private entity must share a specific goal of violating a plaintiff's constitutional rights.

[19]    **Constitutional Law**  👉  Applicability to governmental or private action;  state action

For purposes of determining whether a private actor may be held accountable as a state actor for deprivation of constitutional rights, the "public function test" examines whether a challenged action is a traditional and exclusive function of the state; the test is very difficult to satisfy because very few functions are exclusively reserved to the State.

[20]    **Constitutional Law**  👉  Applicability to governmental or private action;  state action

Under the "symbiotic relationship test" which is used in determining whether a private actor may be held accountable as a state actor for deprivation of constitutional rights, a court must decide if the state insinuated itself into a position of interdependence with a private party such that it must be recognized as a joint participant in the challenged activity; there is no "bright-line rule" for making this determination.

[21]    **Constitutional Law**  👉  Applicability to governmental or private action;  state action

For purposes of symbiotic relationship test which is used to determine whether a private actor may be held accountable as a state actor for deprivation of constitutional rights, extensive state regulation, receipt of substantial state funds, and performance of important public functions do not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action.

[22]    **Federal Civil Procedure**  👉  Construction of pleadings

Even though district court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of a plaintiff on a motion to dismiss, if there is a conflict between the allegations in complaint and the content of

ADD-61

attached exhibit, the exhibit controls. Fed. R. Civ. P. 12(b)(6).

[23]  **Civil Rights**  👉  **Excuses; waiver and estoppel; futility**

A failure to timely exhaust a Title VII claim is no longer a jurisdictional requirement; it is simply subject to waiver, estoppel, and equitable tolling. Civil Rights Act of 1964 § 701, 42 U.S.C.A. § 2000e et seq.

[24]  **Civil Rights**  👉  **Exhaustion of Administrative Remedies Before Resort to Courts**

Even though administrative exhaustion is not jurisdictional in a Title VII action, it is still mandatory. Civil Rights Act of 1964 § 701, 42 U.S.C.A. § 2000e et seq.

[25]  **Civil Rights**  👉  **Exhaustion of Administrative Remedies Before Resort to Courts**

Because exhaustion of administrative remedies is a mandatory rule in a Title VII action, a district court must enforce the exhaustion requirement if properly raised. Civil Rights Act of 1964 § 701, 42 U.S.C.A. § 2000e et seq.

[26]  **Civil Rights**  👉  **Exhaustion of Administrative Remedies Before Resort to Courts**

No matter how much empathy a court has for a particular litigant, procedural requirements established by Congress in relation to Title VII's administrative exhaustion requirement are not to be disregarded. Civil Rights Act of 1964 § 701, 42 U.S.C.A. § 2000e et seq.

[27]  **Civil Rights**  👉  **Deferral to state agencies; time**

Limitations period of 300 days, rather than 180 days, governed former railroad employees' time limit for filing administrative charges under Title VII's exhaustion requirement, in action against alleged employers, a limited liability company

(LLC) and interstate Railroad Commission, for race and sex-based discrimination, harassment, and retaliation, where railroad was operated under interstate compact between New Mexico and Colorado, each State had Fair Employment Practices (FEP) agency, each State was therefore a deferral state in which Equal Employment Opportunity Commission would defer to enforcement actions of the state agencies, and as the direct employer, LLC was subject to state and federal labor laws and regulations according to its operating agreement. Civil Rights Act of 1964 § 701, 42 U.S.C.A. § 2000e et seq.; Colo. Rev. Stat. Ann. § 24-60-1902; 29 C.F.R. § 1601.13(a)(1)-(2).

[28]  **Civil Rights**  👉  **Deferral to state agencies; time**

Under Title VII, a "deferral state" is one where the Equal Employment Opportunity Commission (EEOC) defers to the enforcement efforts of a state agency empowered to undertake employment discrimination investigations for purposes of filed administrative charges. Civil Rights Act of 1964 § 701, 42 U.S.C.A. § 2000e et seq.; 29 C.F.R. § 1601.13(a)(1)-(2).

[29]  **Federal Civil Procedure**  👉  **Insufficiency in general**

While standard on motion to dismiss for failure to state a claim does not require that a plaintiff establish a prima facie case in his complaint, elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim. Fed. R. Civ. P. 12(b)(6).

[30]  **Civil Rights**  👉  **Effect of prima facie case; shifting burden**

Claims of discrimination under Title VII are subject to the three-part burden-shifting framework established in *McDonnell Douglas*. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

ADD-62

**[31]    Civil Rights    ⬅ Effect of prima facie case; shifting burden**

Under the *McDonnell Douglas* burden-shifting framework applicable to Title VII discrimination claims, first, a plaintiff must establish a prima facie case; second, if a plaintiff carries their initial burden by establishing a prima facie claim, burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the challenged workplace decision; third, if defendant carries this burden, then plaintiff has an opportunity to prove that legitimate reasons the defendant offered were merely a pretext for discrimination. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

**[32]    Civil Rights    ⬅ Practices prohibited or required in general; elements**

In addition to discrimination, Title VII also prohibits employer retaliation on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination. Civil Rights Act of 1964 §§ 703, 704, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).

**[33]    Civil Rights    ⬅ Causal connection; temporal proximity**

Claims of retaliation under Title VII require proof that a desire to retaliate was the but-for cause of challenged employment action. Civil Rights Act of 1964 § 704, 42 U.S.C. § 2000e-3(a).

**[34]    Civil Rights    ⬅ Effect of prima facie case; shifting burden**

**Civil Rights    ⬅ Retaliation claims**

Like discrimination, claims of retaliation and claims of hostile work environment under Title VII are subject to the three-part burden-shifting framework in *McDonnell Douglas*. Civil Rights Act of 1964 §§ 703, 704, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).

**[35]    Civil Rights    ⬅ Practices prohibited or required in general; elements**

Generally, a Title VII discrimination claim must plausibly allege membership in a protected class, adverse employment action, and circumstances giving rise to an inference of discrimination. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

**[36]    Civil Rights    ⬅ Reverse Discrimination**

A prima facie case of reverse discrimination under Title VII requires a stronger showing; in lieu of showing that they belong to a protected group, such plaintiffs must establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

**[37]    Federal Civil Procedure    ⬅ Insufficiency in general**

**Federal Civil Procedure    ⬅ Matters deemed admitted; acceptance as true of allegations in complaint**

On a motion to dismiss, burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief. Fed. R. Civ. P. 12(b)(6).

**[38]    Civil Rights    ⬅ Pleading**

Former male and female employees of interstate railroad failed to allege sufficient facts to give rise to inference of discrimination, and thus, failed to state prima facie claims for gender discrimination and reverse gender discrimination under Title VII against alleged employers, a railroad operator and interstate Railroad Commission, where complaint did not specify genders of each plaintiff and each alleged biased actor, it did not allege facts about comparators who were similarly situated, its allegations that discrimination occurred because of gender were conclusory, and the allegation that coworker threatened to "beat" or "kick" employees' "ass"

ADD-63

did not describe gender discrimination, but at best, showed rude behavior directed at male and female employees indiscriminately. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

**[39]** **Civil Rights** ☞ Presumptions, Inferences, and Burden of Proof

Group of white/Caucasian former employees did not plausibly allege background circumstances supporting inference that their alleged employers were unusual kind of employer that discriminated against majority group, nor plausibly alleged facts to show that, "but for" their race, employees' employment would not have been terminated, and thus, failed to state prima facie claims for reverse race discrimination against employers under Title VII; employees did not show employers acted in way that was harmful to point of dissuading them from making charge of discrimination, and two employees were terminated for cause for alleged timecard fraud while offering no facts to support conclusion that such proffered reason was pretextual. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

**[40]** **Civil Rights** ☞ Adverse actions in general

For purposes of Title VII discrimination claim, an adverse employment action could be any number of consequences, including hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

**[41]** **Civil Rights** ☞ Hostile environment; severity, pervasiveness, and frequency

Title VII prohibits discriminatory conduct that is sufficiently severe or pervasive to create a hostile work environment. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

**[42]** **Civil Rights** ☞ Hostile environment; severity, pervasiveness, and frequency

Mere utterance of an epithet which engenders offensive feelings does not implicate Title VII, in context of hostile work environment claim. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

**[43]** **Civil Rights** ☞ Hostile environment; severity, pervasiveness, and frequency

In determining whether discriminatory conduct is sufficiently severe or pervasive to create a hostile work environment under Title VII, a court must look at all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

**[44]** **Civil Rights** ☞ Hostile environment; severity, pervasiveness, and frequency

Sporadic discriminatory comments are insufficient to demonstrate a hostile work environment under Title VII. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

**[45]** **Civil Rights** ☞ Hostile environment; severity, pervasiveness, and frequency

To establish a prima facie claim of hostile work environment based upon race under Title VII, a plaintiff must allege: (1) membership in a protected class, (2) he was subjected to unwelcome harassment, (3) harassment was due to race, and (4) harassment was so severe or pervasive that it altered term, condition, or privilege of his employment and created abusive environment. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

**[46]** **Civil Rights** ☞ Pleading

ADD-64

Allegations of non-Hispanic former employees that they were subjected to racial slurs, including being called "white boy" and "guero," were sufficient to put their alleged employers, which were a scenic railroad operator and interstate Railroad Commission, on notice of employees' purported membership in a protected class, for purposes of claims for racially hostile work environment under Title VII, even though complaint did not explicitly allege employees' race, or explicitly allege employees' membership in a protected class. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

[47]  **Civil Rights**  ⟵ Hostile environment; severity, pervasiveness, and frequency

Even if statements are offensive, not all offensive conduct is actionable as unlawful harassment under Title VII; run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1).

[48]  **Civil Rights**  ⟵ Practices prohibited or required in general; elements

Title VII does not establish general civility code for American workplace. Civil Rights Act of 1964 § 701, 42 U.S.C.A. § 2000e et seq.

[49]  **Civil Rights**  ⟵ Race, color, ethnicity, or national origin

Race-based remarks allegedly made by supervisors and coworkers of non-Hispanic former employees of interstate railroad, including comments that employee was "Anglo woman" and "not welcome in the workplace," that "there are too many white people," and that others were "white boy," "gringo," and "guero," were not sufficiently severe and pervasive to amount to race-based hostile work environment harassment under Title VII, in action against alleged employers, a railroad operator and interstate Railroad Commission, even assuming

that remarks were objectively harassing, where there were six specific remarks made to four different plaintiffs over a five-year period, and this was equivalent of sporadic or isolated incidents in the workplace. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

[50]  **Civil Rights**  ⟵ Hostile environment; severity, pervasiveness, and frequency

To establish a sex-based hostile work environment claim under Title VII, a plaintiff must prove: (1) membership in a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was due to sex; and (4) the harassment was so severe or pervasive that it altered a term, condition, or privilege of his employment and created an abusive environment. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

[51]  **Civil Rights**  ⟵ Harassment of men

Male former employee of scenic railroad had no cognizable injury, and thus, failed to state a Title VII claim for hostile work environment sexual harassment against alleged employers, a railroad operator and interstate Railroad Commission, to the extent of his allegations that coworkers made sexually explicit comments about his girlfriend, who was not an employee, even though alleged conduct was offensive, since the target of purported abuse was a third-party, and there were no allegations of management neglecting or failing to intervene in harassing behavior. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

[52]  **Civil Rights**  ⟵ Harassment of men

Allegations that male former employees of scenic railroad were called "faggots" or "white boy faggots" by coworkers, that female employee was called a "dyke" in front of them, that sexual jokes and comments regularly occurred at workplace, and that, in one instance, a coworker stuck his finger between male employee's buttocks, collectively, did

ADD-65

not state claim for hostile work environment sexual harassment under Title VII against their purported employers, a railroad operator and interstate Railroad Commission, since employees reported widely varying experience, which indicated that alleged harassment was not based on their being men. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

**[53]**    **Civil Rights** ⬅➡ Hostile environment; severity, pervasiveness, and frequency

Allegations of female former railroad employee that she experienced frequent unwanted comments and touching, that coworker asked her out on dates and hugged her, that she was called "Anglo woman" and "princess," that male coworkers referred to each other as "pussy," that she heard that "any woman on Fire Patrol" had to be "ugly or married," that she witnessed a male worker ask a female worker "what sex acts" could be performed with "tongue ring," and that she was informed coworkers were talking about her in sexual manner, were sufficient to constitute severe and pervasive sexual harassment, as required to state claim for hostile work environment against her alleged employers, a railroad operator and interstate Railroad Commission, under Title VII. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a).

**[54]**    **Civil Rights** ⬅➡ Practices prohibited or required in general; elements

To survive a motion to dismiss, a plaintiff asserting a Title VII retaliation claim must plausibly allege (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and materially adverse action. Civil Rights Act of 1964 § 704, 42 U.S.C. § 2000e-3(a); Fed. R. Civ. P. 12.

**[55]**    **Civil Rights** ⬅➡ Causal connection; temporal proximity

**Public Employment** ⬅➡ Causal connection; temporal proximity

**States** ⬅➡ Exercise of rights; retaliation

Former employee of scenic railroad failed to plausibly allege retaliation claim under Title VII against her alleged employers, which were a railroad operator and interstate Railroad Commission, even though employee was placed on administrative leave, where her employment was seasonal, seasonal work had ended, work ending did not constitute a materially adverse employment action, nor was it causally connected to any protected activity, employee did not allege whether administrative leave was paid or unpaid and did not allege that she ever sought reemployment or continued employment. Civil Rights Act of 1964 § 704, 42 U.S.C. § 2000e-3(a).

**[56]**    **Civil Rights** ⬅➡ Causal connection; temporal proximity

**Public Employment** ⬅➡ Causal connection; temporal proximity

**States** ⬅➡ Exercise of rights; retaliation

White male former employee of scenic railroad failed to plausibly allege Title VII retaliation claim against his alleged employers, a railroad operator and interstate Railroad Commission, where three months elapsed between employee's act of filing of administrative complaint and his termination for cause on basis of alleged timecard fraud, the temporal-proximity rule did not apply to this length of time, and employee failed to adequately allege pretext. Civil Rights Act of 1964 § 704, 42 U.S.C. § 2000e-3(a).

**[57]**    **Civil Rights** ⬅➡ Constructive discharge

Male former employee of scenic railroad failed to plausibly allege retaliation claim under Title VII against his alleged employers, a railroad operator and interstate Railroad Commission, where employee was not actually or constructively discharged, but rather, of his

ADD-66

own volition, he failed to return to work, and there were no allegations that he applied for promotion to support claim premised on denial of a promotion. Civil Rights Act of 1964 § 704, 42 U.S.C. § 2000e-3(a).

[58]    **Civil Rights**  ☛  Causal connection; temporal proximity

**Public Employment**  ☛  Causal connection; temporal proximity

**States**  ☛  Exercise of rights; retaliation

White male former employee of scenic railroad failed to plausibly allege retaliation claim under Title VII against his alleged employers, a railroad operator and interstate Railroad Commission, where more than three months elapsed between alleged protected activity of his participation in a workplace race-based harassment investigation, and his termination for cause for alleged timecard fraud, such that temporal-proximity rule would not apply, and employee offered no evidence to establish causation for his claim of pretext. Civil Rights Act of 1964 § 704, 42 U.S.C. § 2000e-3(a).

[59]    **Estoppel**  ☛  Claim inconsistent with previous claim or position in general

The prohibition against approbation and reprobation, which derives from Scottish law, forces a litigant to elect a particular position and confines the litigant to that first-adopted position; presently, this concept is known as judicial estoppel.

[60]    **Estoppel**  ☛  Claim inconsistent with previous claim or position in general

Doctrine of judicial estoppel is a powerful weapon and there are often lesser weapons that can keep alleged inconsistent statements in check.

[61]    **Estoppel**  ☛  Claim inconsistent with previous claim or position in general

Position advanced by interstate Railroad Commission, which was created by interstate compact between states of New Mexico and Colorado, and by its wholly-owned subsidiary, operator of a scenic railroad between the states, that neither one of them was a public employer subject to New Mexico's Whistleblower Protection Act (NMWPA), in action brought by former railroad employees arising from their alleged employment terminations, was not a position barred by the prohibition against approbation and reprobation, also known as judicial estoppel, since argument of defendants was that differences between the laws of those states precluded application of the New Mexico law's protections, and the position was not inconsistent with any position defendants previously advanced. N.M. Stat. Ann. § 10-16C-1 et seq.

[62]    **Public Employment**  ☛  Who is employer; multiple entities or agencies

**Public Employment**  ☛  Reporting or Opposing Wrongdoing; Whistleblowing

**States**  ☛  Nature and existence of state government employment

**States**  ☛  Reporting or opposing wrongdoing; whistleblowing

Under New Mexico law, former railroad workers were employees of non-profit limited liability company (LLC) that operated railroad, rather than employees of interstate Railroad Commission, which was established by compact between New Mexico and Colorado, and thus, workers failed to state a claim against either LLC or the Commission for violations of New Mexico's Whistleblower Protection Act (NMWPA), arising from termination of their employment, since, for purposes of workers' allegations against Commission, the railroad's website made clear that railroad was operated by the LLC, and employment applications found on website listed the employer as the LLC, and with respect to claims against LLC, the NMWPA protected public employees, but a limited liability company was not a public

ADD-67

employer. N.M. Stat. Ann. §§ 10-16C-2(B),
10-16C-2(C)(1)-(4), 10-16C-3, 16-5-3.

[63]    **Public Employment** 👈 Who is employer;
multiple entities or agencies

**Public Employment** Reporting or
Opposing Wrongdoing; Whistleblowing

**States** Nature and existence of state
government employment

**States** Reporting or opposing wrongdoing;
whistleblowing

Under New Mexico and Colorado law,
Railroad Commission created by interstate
compact between those two states was not
subject to liability under New Mexico's
Whistleblower Protection Act, which protected
public employees from retaliation, in action
brought by former workers of scenic interstate
railroad that was operated by Commission's
subsidiary, a nonprofit entity, where, under
Colorado law, the Commission's members and
staff were not employees of either of the two
states and Commission was thus exempt from
Colorado's whistleblower statute, expanding the
Commission's potential liability in New Mexico,
but not Colorado, would undermine contractual
bargain between states, and it would run afoul
of principles of state sovereignty and federal
Constitution's Compact Clause. U.S. Const. art.
1, § 10, cl. iii; U.S. Const. Amend. 11; Colo. Rev.
Stat. Ann. § 24-60-1902; Colo. Rev. Stat. Ann. §
24-50.5-101 et seq.; N.M. Stat. Ann. § 10-16C-1
et seq.; N.M. Stat. Ann. § 16-5-3.

[64]    **Public Employment** 👈 Reporting or
Opposing Wrongdoing; Whistleblowing

**States** Reporting or opposing wrongdoing;
whistleblowing

Colorado's whistle-blower statute protects state
employees. Colo. Rev. Stat. Ann. § 24-50.5-101
et seq.

[65]    **States** 👈 Congressional approval in general

Consistent with Constitution's Compact Clause,
an interstate compact, or compact between
States, constitutes not just a contract, but also a
federal statute enacted by Congress. U.S. Const.
art. 1, § 10, cl. iii

[66]    **Constitutional Law** 👈 Bills of Attainder;
Bills of Pains and Penalties

**Constitutional Law** Penal laws in general

Bills of attainder and ex post facto laws apply to
laws of a criminal character; a criminal defendant
cannot be punished retroactively for conduct that
was then-legal. U.S. Const. art. 1, § 9, cl. 3.

[67]    **Constitutional Law** 👈 Retroactivity in
general

Retrospective laws are forbidden in the civil
context when they impair the obligation of
contracts.

[68]    **Constitutional Law** 👈 Retroactivity in
general

A State's power to pass laws can have no effect
on contracts made before enactment of such
laws. U.S. Const. art. 1, § 10, cl. 1.

[69]    **Public Employment** 👈 Who is employer;
multiple entities or agencies

**Public Employment** Reporting or
Opposing Wrongdoing; Whistleblowing

**States** Nature and existence of state
government employment

**States** Reporting or opposing wrongdoing;
whistleblowing

Under New Mexico law as predicted by the
district court, a non-profit limited liability
company (LLC) that operated scenic railroad as
subsidiary of interstate Railroad Commission,
which was established by compact between New
Mexico and Colorado, was not a state actor
within purview of New Mexico's Whistleblower
Protection Act (NMWPA), in action brought
by former employees stemming from alleged

ADD-68

termination of their employment, under factors borrowed from jurisprudence on New Mexico's Inspection of Public Records Act (IPRA), where, among other things, the level of public funding for LLC was surpassed by its ticket revenues, LLC was not a decision-maker in any state policies, and LLC did not perform a governmental function or function that a public agency would otherwise perform. N.M. Stat. Ann. §§ 10-16C-2(B), 10-16C-2(C)(1)-(4), 10-16C-3, 16-5-3; N.M. Stat. Ann. § 14-2-1 et seq.

[70]  **Records**  👉  **Parties performing government functions in general**

Under New Mexico law, nine non-exclusive factors apply in determining whether activities constitute state action, for purposes of the public's right to access governmental records under Inspection of Public Records Act (IPRA), including: (1) the level of public funding; (2) commingling of funds; (3) whether the activity was conducted on publicly owned property; (4) whether the services contracted for are an integral part of a public agency's chosen decision-making process; (5) whether a private entity is performing a governmental function or a function which the public agency otherwise would perform; (6) the extent of the public agency's involvement with, regulation of, or control over the private entity; (7) whether the private entity was created by the public agency; (8) whether the public agency has a substantial financial interest in the private entity; and (9) for whose benefit the private entity is functioning. N.M. Stat. Ann. § 14-2-1 et seq.

[71]  **Federal Courts**  👉  **Diversity jurisdiction in general**

**Federal Courts**  👉  **Anticipating or predicting state decision**

A federal court sitting in diversity must apply state law, and if the courts of the state have not spoken, a federal court must endeavor to predict the interpretation the state court would adopt.

[72]  **Public Employment**  👉  **Who is employer; multiple entities or agencies**

**Public Employment**  👉  **Reporting or Opposing Wrongdoing; Whistleblowing**

**States**  👉  **Nature and existence of state government employment**

**States**  👉  **Reporting or opposing wrongdoing; whistleblowing**

Former employees of a scenic railroad failed to allege sufficient facts to establish they were public employees within meaning of New Mexico's Whistleblower Protection Act (NMWPA), and thus, failed to state a claim against purported employers, a non-profit limited liability company (LLC) that operated railroad and its parent entity, Railroad Commission established by interstate compact, where employees merely alleged, in conclusory manner, that both Commission and LLC met the NMWPA's definition of public employers. N.M. Stat. Ann. §§ 10-16C-2(B), 10-16C-2(C)(1)-(4), 10-16C-3.

[73]  **Civil Rights**  👉  **Governmental Ordinance, Policy, Practice, or Custom**

**Civil Rights**  👉  **Complaint in general**

When alleging a *Monell* claim for municipal liability under § 1983, a plaintiff must do more than recite conclusory statements; instead, municipal liability attaches where, and only where, a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. 42 U.S.C.A. § 1983.

[74]  **Civil Rights**  👉  **Governmental Ordinance, Policy, Practice, or Custom**

To survive a motion to dismiss, a *Monell* claim for municipal liability under § 1983 must sufficiently allege that an informal municipal custom amounted to a widespread, permanent, and well-settled practice. 42 U.S.C.A. § 1983.

[75]    **Civil Rights** 🔑 Employment practices

Former employees of railroad operator failed to sufficiently allege existence of municipal policy or custom, and causal connection to violation of their constitutional rights, and thus, failed to state *Monell* claim against Railroad Commission for municipal liability under § 1983, in action arising from alleged termination of their employment following alleged complaints to officials about safety issues; employees did not identify any widespread custom or policy, the described actions of a named official were poor listening, which did not amount to constitutional violation, and assuming the official prohibited one employee from disciplining Hispanic workers, as was claimed, there was no allegation that the official was supervisor who should have been involved in such matter. 42 U.S.C.A. § 1983.

[76]    **Civil Rights** 🔑 Governmental Ordinance, Policy, Practice, or Custom

Fact that a particular government official, even a policymaking official, has discretion in the exercise of particular functions does not, without more, give rise to municipal liability under § 1983 based on an exercise of that discretion. 42 U.S.C.A. § 1983.

[77]    **Civil Rights** 🔑 Employment practices

Former railroad employees failed to allege a sufficient nexus between the termination of their employment as undertaken by employer, a nonprofit limited liability company (LLC) operating scenic railroad, and interstate Railroad Commission, which was an interstate agency, and thus, LLC's decision to terminate the employment did not amount to state action under nexus test, for purposes of employees' § 1983 claim against Commission, alleging that Commission violated their constitutional rights, where employees did not allege any state-mandated administrative requirements that LLC was required to follow before the terminations, and complaint offered only

conclusory allegations that LLC was state actor in conjunction with Commission. 42 U.S.C.A. § 1983.

[78]    **Civil Rights** 🔑 Private Persons or Corporations, in General

In context of holding private actor accountable as a state actor for alleged violation of constitutional rights under § 1983, finding state action requires a sufficiently close nexus between State and the challenged action of regulated entity so that action of the latter may be fairly treated as that of the State itself. 42 U.S.C.A. § 1983.

[79]    **Civil Rights** 🔑 Employment practices

Former employees failed to allege sufficient facts to demonstrate that employer, a limited liability company (LLC) which operated interstate railroad, worked in concert with Railroad Commission, which was interstate agency, in terminating their employment, and thus, decision made by LLC to terminate them did not qualify as state action under joint action test, for purposes of employees' § 1983 claim against Commission, alleging that Commission violated their constitutional rights; employees did not allege that the States involved knew of their termination, and if the States were unaware, then they could not have acquiesced to the terminations, or acted jointly with the LLC to deprive employees of constitutional rights. 42 U.S.C.A. § 1983.

[80]    **Civil Rights** 🔑 Color of law; state action

A private non-profit limited liability company (LLC), which operated a scenic railroad as a subsidiary of interstate Railroad Commission established by States of New Mexico and Colorado, was not engaged in state action under the public functions test when it allegedly terminated the employment of four former employees, for purposes of their § 1983 claim against the Commission, alleging that Commission violated their constitutional

ADD-70

rights, since terminating employment was not traditionally exclusive function of the State, the allegations regarding LLC's connection to the Commission and Commission's connection to the States were too attenuated to describe state action, and hiring and firing decisions at LLC were different in nature than the States' actions in establishing the Commission. 42 U.S.C.A. § 1983.

**[81]** Civil Rights 🖉 Employment practices

A private non-profit limited liability company (LLC), which operated a scenic railroad as a subsidiary of interstate Railroad Commission, which was established by compact between New Mexico and Colorado, was not engaged in state action under symbiotic relationship test when it allegedly terminated the employment of four employees, for purposes of their § 1983 claim against Commission, alleging that Commission violated their constitutional rights, since there was nothing to show the States were engaged in hiring and firing of employees at the railroad, States appointed the Commissioners to the interstate agency, which did not equate to participation in the operations of LLC running the railroad. 42 U.S.C.A. § 1983.

**[82]** Federal Courts 🖉 Arms of the state in general

"Arm of the state doctrine" bestows Eleventh Amendment immunity on entities created by state governments that operate as alter egos or instrumentalities of the states. U.S. Const. Amend. 11.

**[83]** Federal Courts 🖉 Arms of the state in general

A two-step framework is applied in determining whether an entity is an arm of the state, entitled to Eleventh Amendment immunity: (1) first, a court assesses four subfactors, which are the character ascribed to the entity under state law, autonomy accorded the entity under state law, the finances, and whether the entity is concerned

primarily with local or state affairs based upon its function, composition, and purpose; and if those factors do not point in the same direction, then (2) the court moves onto the second step, which considers the reasons underlying Eleventh Amendment, including avoiding state liability for any judgment against the entity. U.S. Const. Amend. 11.

**[84]** Federal Courts 🖉 Other particular entities and individuals

Under New Mexico and Colorado law, factors including character of the entity, its autonomy, its finances, and its primary concern with state rather than local affairs, each generally weighed in favor of finding that Railroad Commission, created by interstate compact between New Mexico and Colorado, was an arm of state, and thus, properly accorded Eleventh Amendment immunity, in action brought by terminated employees, under § 1983, alleging constitutional violations, where laws of each State expressly identified Commission as interstate agency, Commissioners were appointed by each State's governor, it was funded by the States which restricted and audited Commission's finances, and scenic interstate railroad established by the compact was designed to fulfill a State, not local, purpose. U.S. Const. Amend. 11; 42 U.S.C.A. § 1983; N.M. Stat. Ann. §§ 16-5-3, 16-5-4, 16-5-5, 16-5-9; Colo. Rev. Stat. Ann. §§ 24-60-1902, 24-60-1903, 24-60-1904, 24-60-1906.

**[85]** Federal Courts 🖉 Other particular entities and individuals

Fact that New Mexico and Colorado each agreed to bear liabilities of interstate Railroad Commission, which was established by interstate compact between them, and agreed to have their State treasuries pay any judgments incurred by Commission, was a dispositive factor that supported finding that Commission was arm of the state, and thus, was entitled to Eleventh Amendment immunity, in action brought by former employees for alleged violation of their constitutional rights, arising out of termination

of their employment, under § 1983, since main reason for sovereign immunity was to avoid state liability for judgments, and employees' suit involved a thinly-capitalized railroad that depended on a state-provided financial safety net for its existence. U.S. Const. Amend. 11; 42 U.S.C.A. § 1983.

[86]     **Federal Courts** 🔑 Suits Against States; Eleventh Amendment and Sovereign Immunity

The most important reason for sovereign immunity under the Eleventh Amendment is avoiding state liability for any judgment against a state governmental entity. U.S. Const. Amend. 11.

[87]     **Civil Rights** 🔑 Private Persons or Corporations, in General

Private conduct that is not fairly attributable to the State is simply not actionable under § 1983. 42 U.S.C.A. § 1983.

[88]     **Civil Rights** 🔑 Employment practices

Individuals who were sued by former railroad employees, including a Railroad Commissioner and individual supervisors of limited liability company (LLC) that operated railroad, were not state actors under § 1983, and thus, were not liable on employees' § 1983 claims alleging violation of their constitutional rights, arising from termination of their employment, where Commissioners and supervisors did not represent the state in any capacity. 42 U.S.C.A. § 1983.

**Attorneys and Law Firms**

Trevor Moore, Albuquerque, NM, Jerry Todd Wertheim, Jones, Snead, Wertheim & Wentworth PA, Santa Fe, NM, Linda G. Hemphill, The Hemphill Firm, P.C., Santa Fe, NM, for Plaintiffs.

Christopher Ryan Jones, Hannah Engle, Gordon & Rees Scully Mansukhani, LLP, Denver, CO, for Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART and DENYING IN PART ENTITY DEFENDANTS' MOTION TO DISMISS and GRANTING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS**

WILLIAM P. JOHNSON, SENIOR UNITED STATES DISTRICT JUDGE

**\*1 THIS MATTER** is before the Court on Defendants' Cumbres & Toltec Railroad Commission and Cumbres Toltec Operating, LLC ("Cumbres Defendants")[1] Motion to Dismiss (**Doc. 15**) as well as the individual Defendants' Motion to Dismiss (**Doc. 16**). Having reviewed the parties' pleadings (as well as the additional briefing)[2] and considered the applicable law, the Court **GRANTS in part** and **DENIES in part** the Cumbres Defendants' Motion (**Doc. 15**). The Court also **GRANTS** the individual Defendants' Motion to Dismiss (**Doc. 16**), as to Count V.

Specifically, as for the Cumbres Defendants' Motion to Dismiss (**Doc. 15**), the Court dismisses Plaintiffs' claims in Counts I, IV, and VI. The Court also dismisses Counts II–III with respect to Plaintiffs Bond, Goodwin, and Hutson. Plaintiff Keenan-Coniglio's Title VII claims based on race are, likewise, dismissed. Her gender/sex-based harassment and hostile work environment claim in Count II, however, may proceed.

**BACKGROUND**

On November 22, 2023, Plaintiffs Laurel Keenan-Coniglio, Chase Bond, Austin Butler, and Dylan Hutson ("Plaintiffs"), filed a Complaint (**Doc. 1**) alleging violations under Title VII, the New Mexico Whistleblower Protection Act ("NMWPA"), and 42 U.S.C. § 1983. According to Plaintiffs' Complaint, the Cumbres Defendants fostered a sexist and racist workplace.

Plaintiffs then filed a First Amended Complaint ("FAC") on December 14, 2023 (**Doc. 5**). Count I alleges discrimination under Title VII; Count II alleges hostile work environment harassment under Title VII; Count III alleges retaliation under Title VII; Count IV alleges a violation of the NMWPA; and Counts V and VI allege causes of action under § 1983. Counts I–IV and VI are levied against the Cumbres Defendants;

ADD-72

whereas Count V alleges a violation of § 1983 by the individually named Defendants. *Id.* at 28–29.

* * *

Some additional background about the parties is helpful.

The scenic railroad operates through a limited liability company ("LLC"), known as the Cumbres Toltec Operating, LLC. This LLC is a wholly owned subsidiary of the Cumbres & Toltec Railroad Commission. The Commission is an interstate agency—established by Compact between New Mexico and Colorado (with Congressional consent). *See* Pub. L. No. 93-467, 88 Stat. 1421 (1974). The Commission is the LLC's governing body.

 *2   The four Plaintiffs are former employees of the scenic railroad. *Compare* **Doc. 5 at ¶ 1**, *with* **Doc. 15 at 5**. Each was paid by and worked for the LLC (**Doc. 5 at ¶ 7**), and none were members of the Commission (**Doc. 43-1 at 4**).

### LEGAL STANDARDS

The Cumbres Defendants seek dismissal under Fed. R. Civ. P. 12(b)(1), (6), and (7). *See* **Doc. 15 at 1**. As such, the Court first outlines the legal standards for: (1) lack of subject-matter jurisdiction, (2) failure to state a claim upon which relief can be granted, and (3) failure to join a party. The Court then outlines the state action doctrine (and its applicable tests). After establishing the appropriate legal framework, the Court moves to its analysis.

### I. Motion to Dismiss Legal Standards

#### A. Rule 12(b)(1) Standard

 [1]   Rule 12(b)(1) empowers a court to dismiss a complaint for lack of jurisdiction over the subject matter. When ruling on a Rule 12(b)(1) motion, a court has broad discretion to consider affidavits, an administrative record, or other documents necessary to resolve disputed jurisdictional facts. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

 [2]   Here, the Cumbres Defendants allege the Court does not have subject matter jurisdiction over Count VI—alleging a violation of § 1983 against the Commission—because of sovereign immunity (**Doc. 15 at 16–20**). A motion to dismiss based on sovereign immunity "is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule

12(b)(1)." *Neiberger v. Hawkins*, 150 F. Supp. 2d 1118, 1120 (D. Colo. 2001); *see Gaines v. Pearson*, 516 F. App'x 724 (10th Cir. 2013) (unpublished) (reviewing a district court's Rule 12(b)(1) dismissal for lack of jurisdiction based on Eleventh Amendment immunity).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.

 [3]   [4]   [5]   Eleventh Amendment immunity is "a fundamental aspect of the sovereignty" which the many States enjoy. *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). No doubt, "[s]overeign immunity precludes federal court jurisdiction." *Garling v. EIA*, 849 F.3d 1289, 1294 (10th Cir. 2017) (citing *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). Defendants argue they are an arm of the States—meaning the real parties in interest are the States (**Doc. 15 at 16–21**). *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (extending sovereign immunity to state agencies functioning as an arm of the state); *see also Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006). Absent a waiver of sovereign immunity, the Eleventh Amendment shields States (and State officials). *Ross. v. Bd. of Regents of Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 1998).

There is no doubt that Colorado and New Mexico are immune from suit here under the Eleventh Amendment. *See Schrader v. New Mexico*, 361 F. App'x 971, 974 (10th Cir. 2010) (unpublished) ("In enacting § 1983, Congress did not abrogate New Mexico's sovereign immunity."); *Murray v. Colorado*, 149 F. App'x 772, 774 (10th Cir. 2005) (unpublished) ("We therefore hold that the State of Colorado is immune from suit under the Eleventh Amendment."). But New Mexico and Colorado are not parties in this case, so the question here is: Are the Cumbres Defendants an arm of the States such that they are immune from suit under the Eleventh Amendment?

#### B. Rule 12(b)(6) Standard [3]

 *3   [6]   [7]   [8]   [9]   To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible when the complaint contains

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "When assessing plausibility, a plaintiff's allegations are 'read in the context of the entire complaint.' " *Chilcoat v. San Juan Cnty., Utah*, 41 F.4th 1196, 1207 (10th Cir. 2022) (citation omitted). Under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). However, the Court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### C. *Rule 12(b)(7)* Standard

[10] Rule 12(b)(7) allows a court to dismiss a claim for failure to join a party—and cites to Rule 19. Thus, when evaluating a motion under Rule 12(b)(7), the Court must first determine if the absent party is required to be joined under Rule 19(a)(1). Rule 19(a)(1) states: A party "who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party" if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

[11] If the Court cannot feasibly join an otherwise required party because the party is not subject to service of process or because joinder would destroy subject-matter jurisdiction, the Court must then decide if the party is indispensable. To do this, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). In making this determination, the Court considers the following factors:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

[12] [13] As the proponent of the 12(b)(7) motion, the Cumbres Defendants have "the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994) (internal citation omitted). Defendants' burden can be satisfied by providing "affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Id.*

## II. State Actor Tests

[14] [15] [16] [17] [18] [19] [20] [21] When a litigant seeks to hold a private actor accountable as a state actor, the Tenth Circuit scrutinizes the closeness of the private actor's entanglement with the government under myriad analytical frameworks. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) ("The Court has taken a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case."). The four tests are: (1) the nexus test, (2) the joint action test, (3) the public function test, and (4) the symbiotic relationship test. *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013) (listing the four tests). In a nutshell, these tests stand for the following:

*4 1. "A nexus exists only when a state has exercised coercive power over the challenged activity." *Wittner*, 720 F.3d at 775 (10th Cir. 2013); *see also Blum v. Yaretsky*, 457 U.S. 991, 1007–08 [, 102 S.Ct. 2777, 73 L.Ed.2d 534] (1982). Even so, substantial entanglement with state rules and state funding does not mean state action. The question is "whether the challenged activity results from the State's exercise of coercive power." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 [, 121 S.Ct. 924, 148 L.Ed.2d 807] (2001).

2. The joint action test asks: Did state officials and the private party act in concert in effectuating the particular deprivation of constitutional rights? *Gross v. Samudio*, 630 F. App'x 772, 779 (10th Cir. 2015) (unpublished). Acquiescence or silence by the State is not enough. *Wittner*, 720 F.3d at 777. Instead, the State and private entity must share a specific goal of violating

ADD-74

the Plaintiffs' constitutional rights. *Gallagher*, 49 F.3d at 1455.

3. The public function test looks to see if the challenged action is a traditional and exclusive function of the state. *Gallagher*, 49 F.3d at 1447. This test is "difficult to satisfy," *id.* at 1456, because very few functions are exclusively reserved to the State.

4. Finally, in the symbiotic relationship test, a court must decide if the state insinuated itself into a position of interdependence with a private party such that it must be recognized as a joint participant in the challenged activity. *Wittner*, 720 F.3d at 778. There is no "bright-line rule" for making this determination. *Gallagher*, 49 F.3d at 1452. Extensive state regulation, the receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action. *Id.* at 1451 (citing *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 547 n.29 [, 107 S.Ct. 2971, 97 L.Ed.2d 427] (1987)).

**DISCUSSION**

Having laid out the appropriate legal standards above, the Court will now explain why Plaintiffs' FAC must be dismissed, in part.

 **[22]** Even though a court accepts "all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff, if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017); *see Farrell-Cooper Mining Co. v. U.S. Dep't of Interior*, 728 F.3d 1229, 1237 n.6 (10th Cir. 2013) ("Factual allegations that contradict a properly considered document are not well-pleaded facts that the court must accept as true." (cleaned up)). Here, dismissal is required because the Plaintiffs worked for a private company. The FAC alleges the Plaintiffs all worked for "C & T SRR." **Doc. 5 at ¶¶ 2–5.** But, as the websites[4] make clear, the LLC hires, pays, and controls employees on the railroad. *See supra* n.3. Conclusory allegations that Plaintiffs were employed by the Commission need not be accepted (**Doc. 5 at ¶¶ 11, 95–100, 108–12**). *See Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062,

1067 (10th Cir. 2022). In fact, Plaintiffs' filings include a roster of the Commission's commissioners (**Doc. 43-1**) which unequivocally shows Plaintiffs were not members of the Commission. Rather, the Plaintiffs were the employees of the LLC. *See* **Doc. 15 at 5** (citing **Doc. 5 at ¶ 1**); *see also* **Doc. 44 at 1**.

 **\*5** The above legal conclusion informs the Court's analysis in Counts IV–VI.

\* \* \*

Beginning with Count I, though, the Court now explains why the Title VII allegations must be largely dismissed.

**I. Title VII — Counts I–III**

   *A. Timeliness and exhaustion*

 **[23]**    **[24]**    **[25]**    **[26]** Formerly, exhaustion was a jurisdictional prerequisite. *See Payan v. UPS*, 905 F.3d 1162, 1169 (10th Cir. 2018). But no longer. *See Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 550, 139 S.Ct. 1843, 204 L.Ed.2d 116 (2019) ("Title VII's charge-filing requirement is not of jurisdictional cast."); *Lincoln v. BNSF Ry., Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018). Now, a failure to timely exhaust a Title VII claim is simply "subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans. World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Even though administrative exhaustion is not jurisdictional, it is still "mandatory." *Fort Bend Cnty.*, 587 U.S. at 552, 139 S.Ct. 1843. So, because exhaustion is a mandatory rule, this Court "must enforce this exhaustion requirement if ... properly raise[d]." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020). No matter how much empathy a court has for a particular litigant, these procedural requirements established by Congress are "not to be disregarded." *Id.* (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam)).

For Plaintiffs' claim under Title VII to be timely, they must have filed an administrative charge within 180 or 300 days of the challenged employment action and have filed suit in federal court within 90 days of receiving the agency's right-to-sue letter. *Proctor v. UPS*, 502 F.3d 1200, 1206 (10th Cir. 2007). The 180-day timeline applies to jurisdictions: (1) "having no FEP[5] agency," or (2) "having a FEP agency without jurisdiction over the statutory basis alleged in the charge." 29 C.F.R. § 1601.13(a)(1)–(2).

ADD-75

Keenan-Coniglio v. Cumbres & Toltec Scenic Operating..., --- F.Supp.3d ---- (2025)

2025 WL 684320

**[27]** Here, the Cumbres Defendants raise the defense of exhaustion. *See* **Doc. 15 at 9 n.2 & 23–24**. From their perspective, Plaintiffs' claims are time-barred (*id.* at 23–24). But the Court thinks otherwise.

- Plaintiff Keenan-Coniglio filed her Charge of Discrimination on January 6, 2023;

- Plaintiff Bond filed his Charge of Discrimination on April 14, 2023;

- Plaintiff Goodwin filed his Charge of Discrimination on June 9, 2023; and

- Plaintiff Hutson filed his Charge of Discrimination on June 26, 2023.

**[28]** The Cumbres Defendants overlook the fact that the LLC's Operating Agreement (**Doc. 28-1 at 29–30**) states their employment practices "are subject to state and federal labor laws and regulations." The Cumbres Defendants also overlook the 300-day timeline in 29 C.F.R. § 1601.13—arguing instead for an application of the 180-day timeline. But both Colorado and New Mexico are deferral [6] States (**Doc. 28 at 26**). *See, e.g., Mascheroni v. Bd. of Regents of the Univ. of Cal.*, 28 F.3d 1554, 1557 (10th Cir. 1994) ("New Mexico is a deferral state."); *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1225 n.2 (10th Cir. 2001) ("The 300-day limitations period applies to 'deferral states,' like Colorado.").

*6 In sum, the Court concludes that the Plaintiffs timely filed charges and received right-to-sue letters (**Doc. 5 at ¶ 15**), as required. Thus, the Cumbres Defendants' Motion to Dismiss (**Doc. 15**) Counts I–III as time-barred is **DENIED**.

### B. Title VII framework

**[29]** The Court now summarizes the plausibility standard applicable to Plaintiffs' Title VII claims. *See* **Doc. 15 at 24; Doc. 28 at 31–33**. The Tenth Circuit has held that prima facie standards are appropriate for a court to consider at the motion to dismiss stage. "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192. Applying the *Twombly*/*Iqbal* pleading standard to the case at hand, the Court examines the elements of discrimination and reverse discrimination under Title VII.

**[30]** Title VII makes it unlawful for an employer to discriminate against any individual with respect to an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Claims of discrimination are subject to the three-part burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**[31]** First, Plaintiffs must establish a prima facie case. *Notari v. Denver Water Dept.*, 971 F.2d 585, 587 (10th Cir. 1992). Second, if Plaintiffs carries their initial burden by establishing a prima facie claim, the burden shifts to the Defendants to "articulate some legitimate nondiscriminatory reason" for the challenged workplace decision. *Id.* Third, if Defendants carries this burden, then Plaintiffs have an opportunity to prove that the legitimate reasons the defendant offered were merely a pretext for discrimination. *Id.*

**[32]   [33]   [34]**   In addition to discrimination, Title VII also prohibits "employer retaliation on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013) (citing 42 U.S.C. § 2000e-3(a)). Such claims "require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* at 352, 133 S.Ct. 2517. Like discrimination, claims of retaliation are subject to the three-part burden-shifting framework in *McDonnell Douglas*. *See Stover v. Martinez*, 382 F.3d 1064, 1070–71 (10th Cir. 2004). The same is true for hostile work environment claims. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998).

### C. Plausibility of Title VII claims

The Court now examines each claim in Plaintiffs' FAC purporting to allege Title VII violations (Counts I–III).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). Under this standard, the Court must "accept the well-pleaded facts alleged as true and view them in the light most favorable to the plaintiff." *Clinton*, 63 F.4th at 1275.

As explained below, the record here is replete with "general claims" but minimal specifics. *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1191 (10th Cir. 2002). Conclusory allegations

ADD-76

will not sustain a plaintiff's pleading burden under Rule 8. *See Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998) (on a motion to dismiss, the court only accepts as true well-pleaded facts, not conclusory allegations).

**\*7** If a complaint does not contain plausible factual content that allows the court to draw a reasonable inference that the Defendant is liable, then a motion to dismiss is proper. *Brokers' Choice of Am., Inc.*, 861 F.3d at 1100. In other words, dismissal under Rule 12(b)(6) is appropriate if the complaint is legally insufficient. *See Peterson v. Grisham*, 594 F.3d 723, 272 (10th Cir. 2010).

### 1. Discrimination

**[35]** Title VII prohibits employment discrimination based on race and sex (among other protected classes). *Tracy v. Vail Resorts, Inc.*, 2022 WL 16557393, at \*3–4, 2022 U.S. App. LEXIS 30247, at \*8 (10th Cir. Nov. 1, 2022) (unpublished). Although "articulated ... differently from case to case," *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1139 (10th Cir. 2024), generally, a Title VII discrimination claim must plausibly allege: (1) membership in a protected class, (2) adverse employment action, and (3) circumstances giving rise to an inference of discrimination. *See Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1200 (10th Cir. 2021).

#### *a. Gender discrimination and reverse gender discrimination*

The FAC alleges the Cumbres Defendants discriminated against Plaintiffs "because of gender or race, or both." **Doc. 5 at ¶¶ 85, 88, 93**. Three Plaintiffs are male, and one is female. This provides an added wrinkle.

**[36]** Aside from the female Plaintiff, the other three Plaintiffs have majority status. Their allegations, then, are for "reverse discrimination." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006). Reverse discrimination requires "a stronger showing." *Id.* In lieu of showing that they belong to a protected group, Plaintiffs must establish "background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Id.*

**[37]** "Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013). Naturally, the burden is on the plaintiff

to "frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted).

**[38]** Here, the FAC contains insufficient allegations from which a reasonable fact finder could find—or infer—plausibly that "but for" the Plaintiffs' gender, the Cumbres Defendants would have continued employing them. For one, the FAC does not specifically identify the alleged genders of individual actors with any alleged biases (or the genders of the Plaintiffs—except by way of he/she pronouns). Nor does it contain any comparators who are similarly situated. *See Lucero v. Sandia Corp.*, 495 F. App'x 903, 909 (10th Cir. 2012) (unpublished). To the extent various employees discriminated against the Plaintiffs, all the FAC alleges is that this discrimination was because of their "gender."[7] But Plaintiffs' allegations of gender bias make no sense here. The Plaintiffs—comprising both genders—cannot all be targeted for their genders. At best, Plaintiffs' evidence shows Defendants were "equal opportunity jerks[s], to both male and female." *Acosta v. Hilton Grand Vacations, Co., LLC*, No. 15-495, 2017 WL 2964007 at \*8–9, 2017 U.S. Dist. LEXIS 49494 at \*27 (D.S.C. Jan. 23, 2017).

**\*8** To be sure, the FAC alleges one employee made a discriminatory statement against women. *See* **Doc. 5 at ¶ 21**. But no specific allegations directed at the male Plaintiffs are pleaded. Simply saying "I was discriminated against" does not give rise to an inference of discrimination. Even if the Court agrees that it is inappropriate for a coworker to threaten to "beat" another coworker, *see id.* at ¶ 38, that is not gender discrimination. Neither is it discrimination when one coworker expresses a desire to "kick [Plaintiff's] ass." *Id.* at ¶ 59. Plainly, the FAC doesn't allege Defendants discriminated against men—instead, Defendants were just equal opportunity jerks.

In sum, Plaintiffs have not plausibly alleged facts to show they were treated differently from their fellow employees because they are men (or a woman). *Cf. Ibrahim*, 994 F.3d at 1201. By all accounts, the Cumbres Defendants hired plenty of men and women.[8] And there is no evidence that either gender/sex suffered adverse treatment as a class in the workplace. The Court grants Defendants' Motion to Dismiss (**Doc. 15**) as to the gender/sex discrimination and reverse gender discrimination claims.

ADD-77

#### b. Reverse race discrimination

Next, Plaintiffs argue they experienced hostility—and were discharged—because of their "race." **Doc. 5 at ¶¶ 1 & 85**. But Plaintiffs are "all White/Caucasian/Anglo." **Doc. 15 at 1**; *see also* **Doc. 5 at ¶¶ 30, 35, 45, 53**. Accordingly, the "but for" standard applies to Plaintiffs when establishing a prima facie case of reverse racial discrimination. *Gerovic v. City & Cnty. of Denver*, 2023 WL 2293518, at \*7–8, 2023 U.S. App. LEXIS 4935, at \*18 (10th Cir. Mar. 1, 2023) (unpublished).

**[39]    [40]** An adverse employment action could be any number of consequences, including "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). As pleaded in the FAC, Plaintiffs did not demonstrate the Cumbres Defendants' actions were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Payan*, 905 F.3d at 1172.

The Cumbres Defendants point to a legitimate and non-discriminatory reason that each Plaintiff's employment ended. Plaintiffs Bond and Hutson were terminated for cause,[9] whereas Plaintiffs Keenan-Coniglio and Goodwin were not subjected to any adverse employment action. Aside from saying these actions were "pretext," Plaintiffs offer no facts to support this conclusion. *See* **Doc. 5 at ¶¶ 66 & 76**. Accordingly, Defendants argue that not all Plaintiffs sufficiently allege an adverse employment action (**Doc. 15 at 24–25**).

Ultimately, the Court grants Defendants' Motion to Dismiss the Title VII claim in Count I, with respect to racial discrimination. Plaintiffs have failed to plausibly allege: (1) "background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority," *Notari*, 971 F.2d at 589, or (2) "indirect evidence sufficient to support a reasonable probability that but for the plaintiff[s'] status" they would not have suffered the challenged employment decision, *id.* at 590.

#### 2. Hostile Work Environment

**\*9    [41]    [42]    [43]    [44]** Title VII also prohibits discriminatory conduct that is "sufficiently severe or pervasive" to create a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). But the "mere utterance of an epithet

which engenders offensive feelings" does not implicate Title VII. *Harris v. Forkl,ft Sys.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (cleaned up). More is required. This Court must look at "all of the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Id.* at 23, 114 S.Ct. 367. In the Tenth Circuit—as well as several other courts [10] of appeals—sporadic discriminatory comments are insufficient under Title VII. *See, e.g., Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) ("Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments."); *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (Holmes, J.).

**[45]** To establish a prima facie hostile-work-environment claim under Title VII, a plaintiff must allege: "(1) membership in a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was due to race; and (4) the harassment was so severe or pervasive that it altered a term, condition, or privilege of his employment and created an abusive environment." *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024).

#### a. Race-based harassment

**[46]** Here, Count II alleges a hostile work environment by way of "sexual and racial harassment." **Doc. 5 at ¶ 89**. Upon review, the FAC asserts that: (1) Bond faced discrimination that included being called "white boy," **Doc. 5 at ¶ 38**; (2) Goodwin and non-Hispanic workers often heard slurs such as "white boy," on a regular basis, *id.* at ¶ 45; and (3) Hutson was subjected to racial slurs including "white boy" and "guero," *id.* at ¶ 70. Only Plaintiff Keenan-Coniglio specifically alleges her race in the FAC (**Doc. 5 at ¶¶ 24 & 30**). But none of the Plaintiffs explicitly allege membership in a protected class (*i.e.*, Caucasians, Anglos, or white people). The Court is not convinced the Plaintiffs properly pleaded protected membership. Nevertheless, the Court concludes the FAC put the Cumbres Defendants on notice. But this is an exceptionally close call.

What about elements two and three? Did the Plaintiffs allege "unwelcome harassment" that was "due to race"?

**[47]    [48]** Even if the statements are offensive—not all offensive conduct is actionable as illegal harassment. In fact, "run-of-the-mill boorish, juvenile, or annoying behavior that

ADD-78

Keenan-Coniglio v. Cumbres & Toltec Scenic Operating..., --- F.Supp.3d ---- (2025)

2025 WL 684320

is not uncommon in American workplaces ... is not the stuff of a Title VII hostile work environment claim." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012). Title VII does not establish a "general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

**\*10** The Court now summarizes the race-based comments:

- Plaintiff Keenan-Coniglio "heard employees and supervisors make remarks suggesting that she, as an Anglo woman, was not welcome in the workplace." **Doc. 5 at ¶ 24.**

- Plaintiff Bond heard an employee say, "there are too many white people." *Id.* **at ¶ 35.** Bond was even called "white boy." *Id.* **at ¶ 38.**

- Likewise, Plaintiff Goodwin was called "white boy," "gringo," and "guero." *Id.* **at ¶ 45.**

- Similarly, Plaintiff Hutson was called "white boy," and "guero." *Id.* **at ¶ 70.**

\* \* \*

Here, Plaintiffs' subjective beliefs regarding the alleged harassment are not objectively reasonable.

For one, the word "gringo" is a term "mainly used in Spanish-speaking countries to refer to an English-speaking foreigner, especially an American person." *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 550 (11th ed. 2003) (defining "gringo" as "a foreigner in Spain or Latin America esp. when of English or American origin; broadly: a non-Hispanic person"). Additionally, use of "guero" is not objectively offensive. It simply means "a person with light skin and/or blond hair." *Guero*, WIKTIONARY: THE FREE DICTIONARY, https://en.wiktionary.org/wiki/güero (last visited Oct. 11, 2024). The Court also looks to the "Urban Dictionary" for support (this is not a trailblazing move).[11] According to that platform's definition, guero isn't racialized. Rather, "[i]t is a descriptive term used to refer to anyone with a lighter skin complexion. It is NOT exclusive to any one racial or ethnic group." *Guero*, URBANDICTIONARY, https://www.urbandictionary.com/define.php?term=Guero (last visited October 11, 2024). With these definitions in mind, the Court finds it farfetched to conclude the words "gringo" or "guero" constitute

harassment. Even so, the Court gives Plaintiffs the benefit of the doubt.

**\*11** **[49]** This leaves the severity and pervasiveness prong. "Whether an environment is illegally hostile or abusive 'can be determined only by looking at all the circumstances, and factors may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the use and enjoyment of the premises].' " *Jackson v. Park Place Condos. Ass'n, Inc.*, 619 F. App'x 699, 704 (10th Cir. 2015) (quoting *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996)). Here, the Plaintiffs worked for the Cumbres Defendants from approximately May 2017 to November 2022.[12] Six specific comments over a five-year period to four different employees is not severe or pervasive. These are, quite obviously, "a few isolated incidents." *Bolden*, 43 F.3d at 551.[13] The rhetoric about white boys, guero, and gringo did not "permeate[ ] with discriminatory intimidation, ridicule, and insult." *Young*, 94 F.4th at 1249. Thus, "it is not enough that [these] particular plaintiff[s] deem[ ] the work environment hostile," because the comments are not "of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances." *Lounds*, 812 F.3d at 1222.

Plaintiffs failed to provide enough factual allegations with sufficient specificity to plead a race-based hostile work environment claim. Dismissal is appropriate with respect to the alleged hostile work environment premised upon "racial harassment." **Doc. 5 at ¶ 89.**

### b. Sexual harassment

**[50]** The Court now undertakes the same analysis, but with respect to "sexual harassment." Plaintiffs must, again, prove: "(1) membership in a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was due to [sex]; and (4) the harassment was so severe or pervasive that it altered a term, condition, or privilege of his employment and created an abusive environment." *Young*, 94 F.4th at 1249.

**[51]** The FAC lists the following factual allegations (which, again, the Court accepts as true):

- Plaintiff Keenan-Coniglio states that she was "subjected to unwanted physical attention" from one employee who "asked her out on dates [and] hugged her." **Doc. 5 at ¶ 19.** Keenan-Coniglio was also called "

ADD-79

'princess' a couple of times." *Id.* at ¶ 23. Additionally, Plaintiff Keenan-Coniglio alleges she heard employees and supervisors make remarks "suggesting that she, as an Anglo woman, was not welcome in the workplace." *Id.* at ¶ 24. She also alleges that male employees called one another "pussy." *Id.* at ¶ 26.

• In addition to these acts directed at her, Keenan-Coniglio alleges the following:

• She heard (but was not told) that any "woman on Fire Patrol" would have to be "ugly or married." *Id.* at ¶ 21.

• She also witnessed a male employee sexually harassing a different female employee by asking "what sex acts" can she perform with her "tongue ring." *Id.* at ¶ 21.

*12 • She was told that coworkers "were talking about her in a sexual manner." *Id.* at ¶ 26.

• Plaintiff Bond claims that in October 2021, he, Goodwin, and Hutson were collectively "referred to as 'faggots.' " *Id.* at ¶ 35. Bond was also on the receiving end of sexually explicit comments about his girlfriend.[14] *Id.* at ¶ 42. Additionally, on one occasion, an employee stuck "his finger between Bond's buttocks." *Id.*

• Bond heard coworkers refer to Plaintiff Keenan-Coniglio as a "dyke." *Id.* at ¶ 39.

• Plaintiff Goodwin was called "white boy faggot." *Id.* at ¶ 45. He also alleges "sexual jokes," and "sexual comments" were made regularly. *Id.* at ¶ 47.

• Plaintiff Hutson alleges no gender or sexual harassment allegations.

[52] The three males report widely varying experiences. Thus, it cannot be said they sufficiently pleaded a hostile work environment claim based on being men.

[53] Plaintiff Keenan-Coniglio is different. She, the only female, was subjected to frequent unwanted comments and touching. The conduct, as pleaded, was so severe and pervasive that the male Plaintiffs even heard these comments. *See Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1232 (10th Cir. 2022) (noting that "evidence directed at others ... is relevant" in the hostile work environment analysis). So, even

though the facts alleged by the males do not support their claim, the FAC support hers.

Dismissal is appropriate with respect to the male Plaintiffs' allegations of a hostile work environment premised upon gender or sex, **Doc. 5 at ¶¶ 88 & 89**, but Plaintiff Keenan-Coniglio's claim survives the motion to dismiss.

### 3. Retaliation

[54] To survive a motion to dismiss, a plaintiff asserting a Title VII retaliation claim must plausibly allege: "(1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021).

*13 The Cumbres Defendants argue Plaintiffs do not allege plausible retaliation claims for the following reasons.

[55] First, Plaintiff Keenan-Coniglio's seasonal employment ending is not causally connected to any protected activity (**Doc. 15 at 26**). Although she was placed on administrative leave, the FAC does not specify whether this was paid or unpaid (*id.*). Additionally, Keenan-Coniglio does not allege she ever sought continued employment or re-employment. The end of seasonal employment "is not a materially adverse action." *Id.*

[56] Next, three months elapsed between Plaintiff Bond's complaint and his firing for cause. *Id.*; *see Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (explaining that a "three-month period, standing alone, is insufficient to establish causation"). Thus, he cannot avail himself of the temporal-proximity rule—nor does he adequately plead pretext.

[57] Third, Plaintiff Goodwin did not return to work of his own volition. *Id.* at 7–8. Clearly, he cannot claim (at least with a straight face) that he was "actually or constructively" discharged. **Doc. 5 at ¶ 92**. His only basis for the retaliation claim, then, involves an allegation about being denied a promotion—but again, the FAC does not allege Plaintiff Goodwin applied for any promotion. *See* **Doc. 15 at 8** (citing **Doc. 5 at ¶ 49**).

[58] Finally, Plaintiff Hutson claims he was retaliated against for participating in a race-based harassment investigation

ADD-80

**(Doc. 5 at ¶ 82)**. But once again, more than three months elapsed between this protected act and his termination. Hutson claims pretext but offers no additional evidence to establish causation.

For these reasons, the Court dismisses Plaintiffs' retaliation claims in Count III.

**II. New Mexico Whistleblower Protection Act — Count IV**

In the FAC, Plaintiffs allege "Defendants Commission and LLC are thus public employers within the meaning of the Whistleblower Protection Act." **Doc. 5 at ¶ 96**. They further allege that "Defendants Commission and LLC retaliated against Plaintiffs." *Id.* **at ¶ 99**.

The Court now unpacks these assertions—starting with the statutory language.

For starters, the NMWPA forbids public employers from "tak[ing] any retaliatory action against a public employee because the public employee" engages in protected conduct. NMSA 1978 § 10-16C-3. A public employee is "a person who works for or contracts with a public employer. NMSA 1978 § 10-16C-2(B). And a public employer means:

(1) any department, agency, office, institution, board, commission, committee, branch or district of state government;

(2) any political subdivision of the state, created under either general or special act, that receives or expends public money from whatever source derived;

(3) any entity or instrumentality of the state specifically provided for by law; and

(4) every office or officer of any entity listed in Paragraphs (1) through (3) of this subsection.

NMSA 1978 § 10-16C-2(C)(1)–(4). In light of these definitions, the Cumbres Defendants assert they are not subject to the NMWPA.

**[59]    [60]    [61]** Plaintiffs push back. They argue the Commission is subject to the NMWPA because the statute is in approbation and not in reprobation [15] of the Compact **(Doc. 28 at 33)**. In essence, because Colorado also has a whistleblower statute that means the Cumbres Defendants can

be sued under the NMWPA. *See id.* **at 33–36**. In so doing, Plaintiffs cite to various nonprecedential cases. [16]

**\*14** The Court finds the NMWPA claim is insufficiently plead for a few reasons.

**[62]** For one, Cumbres Toltec Operating, LLC, is—by its name and nature—an LLC. The Plaintiffs were employed by the LLC. [17] And an LLC is not a public employer under the NMWPA. *See Janet v. Marshall,* 2013-NMCA-037, at ¶¶ 18–20, 296 P.3d 1253 (N.M. Ct. App. 2012). Therefore, the LLC does not fall into the purview of NMWPA.

**[63]** Next, the Court turns to Plaintiffs' approbation argument **(Doc. 28 at 33–36)** and finds it to be without merit.

**[64]** Colorado's "whistle-blower statute ... protects state employees." *Ward v. Indus. Comm'n,* 699 P.2d 960, 962 (Colo. 1985). But Colorado law makes clear the Commission's "members and employees are not officers and employees of either of the states." C.R.S. § 24-60-1902. Colorado's whistleblower statute also requires a complainant to file an internal complaint prior to suing. C.R.S. §§ 24-50.5-104 & 105. So, to the extent Plaintiffs argue the States have similar whistleblower statutes, that argument is not persuasive. The Commission is statutorily exempt from Colorado's whistleblower statute. And there is no intimation that an LLC could be sued under the Colorado law. The remaining question, then, is whether the Commission can be sued under the NMWPA?

Answering this question is difficult.

**[65]** The Commission was created by Compact, and a Compact constitutes "not just a contract," but also "a federal statute enacted by Congress." *New York v. New Jersey,* 598 U.S. 218, 224, 143 S.Ct. 918, 215 L.Ed.2d 208 (2023). Expanding the Commission's liability beyond the terms of the Compact—and the Amendment—runs afoul of the Compact Clause and state sovereignty. *See* U.S. Const. art. I, § 10, cl. iii; U.S. Const. amend. XI.

**[66]    [67]    [68]** An analogy (of sorts) may prove helpful. Bills of attainder and ex post facto laws apply "to laws of a criminal." *Ogden v. Saunders,* 25 U.S. 12 (12 Wheat.) 267, 6 L.Ed. 606 (1827). A criminal defendant cannot be punished retroactively for conduct that was then-legal. In much the same way, retrospective laws are forbidden in the civil context when, as here, they impair the obligation of contracts. *See*

ADD-81

*Carpenter v. Pennsylvania*, 58 U.S. (17 How.) 456, 15 L.Ed. 127 (1854) (citing *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798)). At its core, this means a State's power to pass laws can "have no effect on contracts made before their enactment." *Cook v. Moffat & Curtis*, 46 U.S. 5 How. 295 (5 How.) 308, 12 L.Ed. 159 (1847).

**\*15** All that to say, the NMWPA's potential expansion of liability against the Commission in New Mexico—but not Colorado—undermines the States' contractually bargained-for agreement. The 1970 Compact (as well as its 1977 Amendment) and the 2010 NMWPA are like oil and water—they do not mix.

**[69]** **[70]** **[71]** The Court also finds support for this conclusion in New Mexico state jurisprudence. Like the federal judiciary, the New Mexico courts have also adopted the state action doctrine. *See State ex rel. Toomey v. City of Truth or Consequences*, 2012-NMCA-104, ¶ 13, 287 P.3d 364 (N.M. 2012). In so doing, New Mexico precedent—at least in the realm of Inspection of Public Records Act ("IPRA")[18]—applies a nonexclusive nine-factor test. *See Pacheco v. Hudson*, 2018-NMSC-022, ¶ 29, 415 P.3d 505 (N.M. 2018) (citation omitted). Those factors are:

> (1) the level of public funding; (2) commingling of funds; (3) whether the activity was conducted on publicly owned property; (4) whether the services contracted for are an integral part of the public agency's chosen decision-making process; (5) whether the private entity is performing a governmental function or a function which the public agency otherwise would perform; (6) the extent of the public agency's involvement with, regulation of, or control over the private entity; (7) whether the private entity was created by the public agency; (8) whether the public agency has a substantial financial interest in the private entity; and (9) for whose benefit the private entity is functioning.

*Id.* (cleaned up). The Court reasons that factors two, seven, and eight weigh in Plaintiffs' favor. The remaining factors, however, do not. The level of public funding is surpassed by ticket revenue (**Doc. 15-4**). The FAC does not allege the jurisdictional question in factor three. In factor four, the LLC was not a decision-maker in any policies. Factor five and six also favor Defendants. On balance, then, the Court concludes the factors weigh against finding the LLC falls within the NMWPA's purview.[19] *See Duran v. N.M. Monitored Treatment Program*, 2000-NMCA-023, ¶¶ 20–27, 128 N.M. 659, 996 P.2d 922 (N.M. Ct. App. 2000) (finding no state action for a § 1983 cause of action in a hospital employment setting); *cf. State v. Santiago*, 2009-NMSC-045, ¶¶ 29–37, 147 N.M. 76, 217 P.3d 89 (N.M. 2009) (concluding private security guards were not state actors). At the same time, though, this analysis may be giving Plaintiffs' pleading more credit than is due. Perhaps the fact there are no New Mexico cases expanding the NMWPA in a manner similar to IPRA is the end of the road.

**\*16** **[72]** Finally, the FAC does not plead sufficient facts for a plausible NMWPA claim by a public employer as to a public employee. On this point, all the FAC alleges is: (1) "Defendant Commission alone or in conjunction with its operating arm, the LLC met the definition of ... a public employer under the NMWPA," **Doc. 5 at ¶ 11**, and (2) "The Commission is a public commission of the State of New Mexico, created by the Cumbres and Toltec Scenic Railroad Act. Defendants Commission and LLC are thus public employers within the meaning of the Whistleblower Protection Act," *id.* **at ¶ 96**. But these are legal conclusions—which the Court must disregard. *See Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 712 (10th Cir. 2021); *see also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." (cleaned up)). Thus, Plaintiffs have not alleged sufficient facts to support a finding that they[20] are "public employees" as defined by the NMWPA. *See Gardner v. N.M. Health Ins. Exh.*, 2023 WL 2181234, at \*2-3, 2023 N.M. App. Unpub. LEXIS 81, at \*5–6 (N.M. Ct. App. Feb. 23, 2023) (unpublished) (finding a "nonprofit public corporation" is not a "public employer for purposes of the [NM]WPA"); *Castro v. Univ. of N.M. Med. Grp.*, 2023 WL 8480813, at \*1, 2023 N.M. App. Unpub. LEXIS 421, at \*11–13 (N.M. Ct. App. Dec. 7, 2023) (unpublished) (concluding a nonprofit corporation

ADD-82

created under the "University Research Park and Economic Development Act" is not subject to the NMWPA).

For these reasons, the Court concludes Count IV is dismissed.

### III. Section 1983 — Count VI

The final claim the Cumbres Defendants seek dismissal of is Count VI—alleging a violation of § 1983 based upon municipal liability against the Commission. *See* **Doc. 5 at 30**; *see also* **Doc. 28 at 22–26**. Resolution of this issue requires the Court to answer a few questions. Specifically, what is the character of the Cumbres Defendants? First, was the LLC (the Plaintiffs' employer) engaged in state action? And second, irrespective of this finding, is the Commission an arm of the States? *See generally Good v. U.S. Dep't of Educ.*, 121 F.4th 772 (10th Cir. 2024) (Holmes, C.J.).

#### A. Municipal liability

**[73]** The FAC alleges the Commission deprived Plaintiffs of their rights pursuant to: (1) a well-established custom or practice, and (2) "because [Defendant] Gibbs acted as [the railroad's] final decision maker." **Doc. 5 at ¶ 109**. Count VI, then, is a claim for municipal liability under *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See* **Doc. 28 at 23**. When alleging a *Monell* claim for municipal liability under § 1983, a plaintiff must do more than recite conclusory statements. Instead, "municipal liability ... attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188–89 (10th Cir. 2010).

Plaintiffs allege the Commission violated their rights through: (1) custom or informal policy, (2) deliberate indifference, and (3) actions and inactions of the final decisionmaker. *See* **Doc. 5 at ¶ 109**; *see also* **Doc. 28 at 24**. The Court addresses these theories.

**[74]** **[75]** First, the Court looks to the "informal custom or policy" aspect. The Cumbres Defendants argue that Plaintiffs failed to sufficiently plead a policy or custom and a causal connection to the alleged constitutional violation (**Doc. 40 at 15–18**). The Court agrees. To survive dismissal, the FAC must sufficiently allege the custom amounted to "a widespread, permanent, and well-settled practice." *N.E.L. v. Douglas Cnty., Colo.*, 740 F. App'x 920, 933 (10th Cir. 2018)

(unpublished). Upon reviewing the FAC, the Court identifies only a few factual allegations that could possibly support the informal custom allegation. *See* **Doc. 5 at ¶¶ 39, 46, 52**. Plaintiffs' Response relies on conclusory legal statements. *See* **Doc. 28 at 24–25** (citing **Doc. 5 at ¶ 109**). But even so, a few acts by various employees do not rise to the level of widespread. Nor are there any facts alleging this policy or custom was "the moving force behind the constitutional deprivation." *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). As far as the Court can tell, the deliberate indifference "state of mind" requirement isn't pleaded at all. All Plaintiffs allege is that "The Commission acted in a deliberately indifferent manner towards Plaintiffs because it had actual or constructive notice that its actions or failures to act were substantially certain to result in a constitutional violation and consciously chose to disregard the risk of harm." **Doc. 5 at ¶ 110**. This isn't enough. *Cf.* **Doc. 40 at 18** ("Nothing in Plaintiffs' response identifies factual allegations whereby the Commission became aware of any alleged discriminatory practices."). At best, Plaintiffs' allegations show it's possible that the Commission's failure to act led to their injuries—but the pleading standard requires plausibility. *N.E.L.*, 740 F. App'x at 934 (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

**\*17** **[76]** Based upon the language in the FAC, Count VI asserts an official capacity/municipal liability claim by alleging Gibbs was an official decision maker (the allegation needed to maintain an individual capacity claim); but, at the same time, the Response argues Gibbs was a final policy maker (an allegation needed to maintain an official capacity claim). *Compare* **Doc. 5 at ¶ 109**, *with* **Doc. 28 at 23–26**. But just because Gibbs is a policy maker does not necessarily make him a decisionmaker on hiring/firing decisions. "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). As best as the Court can tell, the actions taken by Defendant Gibbs that are "fairly attributable to the municipality" are nothing more than listening.[21] *Simmons v. Uintah Health Care Special Serv. Dist.*, 506 F.3d 1281, 1287 (10th Cir. 2007). But even if Gibbs prohibited Goodwin from punishing Hispanic employees, that is not a constitutional violation on its face. The FAC does not allege that Goodwin was a supervisor who should be punishing employees. Although constitutional implications are possible, they are not plausible. Thus, the Court holds that Plaintiffs have failed to allege facts in support of the bare

ADD-83

assertion that a custom or policy existed or that the violation of his constitutional rights was pursuant to a decision by a policy maker. This means Count VI must be dismissed.

### B. State action

[**77**]     [**78**]  The LLC's decision to terminate [22] Plaintiffs cannot amount to state action under the nexus test. Finding state action requires "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004, 102 S.Ct. 2777. Unlike *Blum*, where the completion of a patient assessment form was a state mandate, the FAC does not allege the LLC had to satisfy state-mandated administrative requirements prior to termination. Indeed, all the FAC alleges as to state action is that: (1) "Defendant Commission alone or in conjunction with its operating arm, the LLC ... fell within the definition of a state actor pursuant to 42 U.S.C. Section 1983," **Doc. 5 at ¶ 11**, and (2) "the Commission and LLC ... terminate[d], constructively discharge[d], harass[ed] and den[ied] promotion to Plaintiffs," *id.* at ¶ 109. Accordingly, the Court finds the FAC fails to allege a nexus between the LLC and the state.

[**79**]  Next, the LLC's decision to terminate Plaintiffs was not state action under the joint action test because there is no indication the LLC and the state worked together to cause the alleged deprivation. *Gallagher*, 49 F. 3d at 1453. To demonstrate state officials and private parties acted together, Plaintiffs cannot merely establish that the state acquiesced in the private conduct. To be clear, the FAC does not even allege the State (technically, States) even knew of Plaintiffs' termination. If the States were unaware of Plaintiffs' termination, it follows that the States could not have acquiesced to it—let alone have acted jointly with the LLC to deprive them of any constitutional right. Accordingly, the Court finds that the FAC does not allege facts sufficient to show the States and the LLC acted together.

**\*18**  [**80**]  Next, the LLC's decision to terminate Plaintiffs is not state action under the public function test because terminating employment is not "power[ ] traditionally exclusively reserved to the State." [23] *Gallagher*, 49 F.3d at 1456. As stated earlier, a private entity's conduct is not converted to state action simply because the state regulates the entity or provides significant financial support. Outside of conclusory allegations (**Doc. 5 at ¶¶ 11 & 109**), Plaintiffs do not allege that the LLC is connected to the States. Instead,

Plaintiffs argue the Commission is connected to the States—and because the LLC runs the day-to-day operations, that means the LLC is connected to the Commission which is connected to the States. But this is too attenuated. Hiring and firing decisions at the LLC are different in kind from the States' actions of establishing and funding the Commission.

[**81**]  Lastly, the Cumbres Defendants' decision to terminate Plaintiffs is also not state action under the symbiotic relationship test. Again, there is no indication the States were involved in the hiring and firing decisions at the railroad—outside of the four Commissioners appointed to the Commission. And this involvement at the Commission does not equate to joint participation in operating the LLC. But even extensive state regulation, the receipt of substantial state funds, and the performance of important public functions do not establish a symbiotic relationship. *Gallagher*, 49 F.3d at 1451. Accordingly, the Court concludes the FAC fails to demonstrate state action—providing another justification for dismissal of Count VI.

\* \* \*

In summary, the FAC does not sufficiently plead state action on the part of the Cumbres Defendants. Thus, Count VI must be dismissed under Rule 12(b)(6).

### C. Arm of the state and immunity analysis

[**82**]  Dismissal is also appropriate under Rule 12(b)(1), though—under the arm of the state doctrine. This doctrine "bestows immunity on entities created by state governments that operate as alter egos or instrumentalities of the states." *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996). If the LLC is an alter ego of the Commission, as alleged by Plaintiffs (**Doc. 43 at 1**), then both entities are arms of the States.

[**83**]  The Court now turns to the two-step arm of the state framework. *See Hennessey v. Univ. of Kan. Hosp. Auth.*, 53 F.4th 516, 528 (10th Cir. 2022) (applying a two-step process for "assessing whether an entity is an arm of the state"). Step one has four subfactors, which are analyzed below. *See id.* (citing *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007)).

[**84**]  First, the Court assesses the character ascribed to the entity under state law. Cumbres Toltec Operating, LLC, is a wholly owned subsidiary of the Cumbres & Toltec Railroad Commission. And the Commission as an interstate

ADD-84

agency. [24] Thus, both States' laws expressly identify the railroad Commission as an agency.

**\*19** Second, the Court considers the autonomy accorded the entity under state law. The Commissioners are appointed by the States' Governors. C.R.S. § 24-60-1903. And they "serve for the [States]." NMSA 1978 §§ 16-5-3 & 16-5-4. That being said, the Commission's "employees are not officers and employees of either of the states." C.R.S. § 24-60-1902. (New Mexico law is silent on this point).

Third, the Court studies the finances. Here, the Commission is funded by the States. The "expenses and compensation" are paid "out of funds appropriated by the general assembly." C.R.S. § 24-60-1904; NMSA 1978 § 16-5-5. Both States also place restrictions on the Commission's handling of finances. C.R.S. § 24-60-1906; NMSA 1978 § 16-5-9. And the States provide significant appropriations. *See* **Doc. 15-4**; *see also* **Doc. 43-1**. The Commission is subject to various auditing and reporting requirements. *See* **Doc. 15 at 2** (citing **Doc. 15-4**); **Doc. 43 at 5–6** (citing **Doc. 43-1**).

Fourth, this Court asks whether the entity in question is concerned primarily with local or state affairs. This requires an examination of the agency's function, composition, and purpose. Colorado and New Mexico—by and through Congress—entered into this compact to establish a "scenic railroad running between those States, as a living museum." **Doc. 24-2.** The railroad's geographical [25] scope, in tandem with its conservation function, suggests the agency was designed to fulfill a State (not local) purpose. The Commission's composition also indicates that it is an arm of the States—giving its political appointment process. To be candid, though, the fact employees are not statutorily designated as state employees cuts against an arm of the state finding.

**[85]** **[86]** Each of these factors generally "point in the same direction." *Good*, 121 F.4th at 792. Thus, the analysis could end with a finding that the Commission is an agency of the States. *Id.* Out of an abundance of caution (and in light of the lacking employee designation), the Court moves onto *Hennessey*'s second step. Here, the Court considers "the 'twin reasons' underlying the Eleventh Amendment." *Hennessey*, 53 F.4th at 528. The most important reason for sovereign immunity is, of course, "avoiding state liability for any judgment against the entity." *Good*, 121 F.4th at 793 (quoting *id.* (quoting *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 718 (10th Cir. 2006))).

Here, the States agree to bear responsibility for liabilities incurred by the Commission. *See* **Doc. 16-1 at 10–11, Art. VI.** The States agreed to share liability—and their respective treasuries would pay the judgment. This is dispositive. *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 49, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). This case involves a "thinly capitalized railroad that depends for its existence on a state-provided 'financial safety net ....' " *Id.* (first citing *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378 (9th Cir. 1993) and then citing *Morris v. Wash. Metro. Area Transit Auth.*, 781 F.2d 218 (D.C. Cir. 1986)).

Therefore, after reviewing the factors as they apply to the Commission, the Court finds this bi-state agency should be characterized as a branch of the States, rather than as a local or municipal agency. In so concluding, the Court finds significant the amount of control which the States wield over the composition of the Commission (**Doc. 16-1 at 13–14**), the fact they jointly hold title to all railroad property (*id.* **at 5**), and profit/loss sharing (*id.* **at 6, 11, 12**). As such, Eleventh Amendment immunity is properly accorded to this arm of the States.

\* \* \*

**\*20** Alternatively, the Cumbres Defendants are not "persons" to whom § 1983 applies (**Doc. 15 at 21**). *See Hartman v. Kickapoo Tribe Gaming Comm'n*, 319 F.3d 1230, 1234 (10th Cir. 2003) ("[N]either a state nor a state agency is a 'person' for purposes of § 1983."); *see also Thomas v. Knutson*, 2024 WL 2076315, at *3, 2024 U.S. App. LEXIS 11298, at *8 (10th Cir. May 9, 2024) (unpublished) ("It has long been established states, state agencies, and state officials acting in their official capacities are not 'persons' under § 1983."). This means neither the Commission nor LLC may be sued under § 1983. *See Harper v. Colo. State Bd. of Land Comm'rs*, 248 F. App'x 4, 9 (10th Cir. 2007) (unpublished); *Smith v. Birdsall*, 68 F. App'x 176, 177 (10th Cir. 2003) (unpublished) (affirming district court's dismissal of § 1983 complaint against "state agencies" and "interstate compacts"); *see also James v. Wash. Metro. Area Transit Auth.*, 649 F. Supp. 2d 424, 429 (D. Md. 2009) (determining "an interstate compact agency ... shares in the Eleventh Amendment sovereign immunity of its signatory states" (citing *Lizzi v. Alexander*, 255 F.3d 128, 132 (4th Cir. 2001))).

Such a finding also supports dismissal of Count VI.

ADD-85

Keenan-Coniglio v. Cumbres & Toltec Scenic Operating..., --- F.Supp.3d ---- (2025)

2025 WL 684320

## IV. [Section 1983](#) (Individual Defendants) — Count V

[87] [88] Finally, given the above conclusions of law, it should come as little surprise that the Court also dismisses Count V. Plaintiffs sued three supervisors at the LLC and one Commissioner, in their individual capacities, under [§ 1983](#). [26] *See* **Doc. 5 at ¶¶ 9, 10, 101–07**. But these people were not state actors. [27] They did not "represent [the state] in some capacity." *[Gallagher, 49 F.3d at 1447](#)*. And "private conduct that is not 'fairly attributable' to the State is simply not actionable under [§ 1983](#)." *[Jojola v. Chavez, 55 F.3d 488, 492 (10th Cir. 1995)](#)*.

### CONCLUSION

As explained above, the Cumbres Defendants' Motion to Dismiss (**Doc. 15**) is **GRANTED in part** and **DENIED**

in part. Specifically, Plaintiffs' claims in Count I, III, IV, and VI are **DISMISSED with prejudice**. The Court also **DISMISSES** Count II—with respect to Plaintiffs Bond, Goodwin, and Hutson—**with prejudice**. Plaintiff Keenan-Coniglio's Title VII claim in Count II based on race is, likewise, **DISMISSED with prejudice**, but her gender/sex-based harassment and hostile work environment claim in Count II survives.

The Individual Defendants' Motion to Dismiss (**Doc. 16**) is also **GRANTED**, and Count V is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2025 WL 684320

---

### Footnotes

1     The Court uses the entities' correct names here—but leaves the caption as stylized on the case management electronic filing system.

     According to the Cumbres Defendants, the Commission is "incorrectly named as 'Cumbres & Toltec Scenic Operating Commission.' " **Doc. 15 at 1**. At times, Plaintiffs abbreviate the Commission as "C&TSRR." *See* **Doc. 5, *passim***. Likewise, the LLC is "Cumbres Toltec Operating, LLC," not "Cumbres & Toltec Operating, LLC." **Doc. 15 at 1**.

2     On October 17, 2024, the Court filed an Order requiring the parties to brief a few overlooked points. *See* **Doc. 34**. Both parties responded, as required (**Docs. 43 & 44**). The Court considered those filings, as well as the original Responses (**Docs. 25 & 28**) and Replies (**Docs. 40 & 41**) to the motions to dismiss.

3     When ruling on a 12(b)(6) motion, this Court considers only the four corners of the complaint. There are, of course, exceptions to this rule. *See [Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)](#)*. One such exception is that a court may take "judicial notice of public information that is not reasonably subject to dispute." *[Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting, 127 F.4th 178, 183 (10th Cir. 2025)](#)* (unpublished).

     Of particular relevance here are the websites. Plaintiffs cite to the Commission's website. *See* **Doc. 5 at ¶ 6** (citing www.commission.ctsrr[.com]/about). The Court takes judicial notice of this website as well as the railroad's more general website at https://cumbrestoltec.com.

     Another exception is any "document incorporated by reference ... when no party disputes its authenticity." *[Clinton v. Sec. Ben. Life. Ins. Co., 63 F.4th 1264, 1275 (10th Cir. 2023)](#)* (cleaned up). Here, the parties incorporated several documents by reference—which the Court also considers.

ADD-86

4    In fact, the railroad's website contains a hyperlink to an employment application. *See* https://cumbrestoltec.com/wp-content/uploads/2024/03/CTSRR-Employment-Application-.pdf. Upon review, the application makes clear the potential employee is applying to work at "Cumbres Toltec Operating, LLC." *Id.*

5    "FEP" stands for "Fair Employment Practices."

6    A deferral state is one where the EEOC defers to the enforcement efforts of a state agency empowered to undertake employment discrimination investigations. *See EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 110–12, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988). The New Mexico Human Rights Division is such an agency. *See Hix v. SKS Dev. LLC*, No. 24-cv-175, 2024 WL 3489138, at *2, 2024 U.S. Dist. LEXIS 128114, at *4–5 (D.N.M. July 19, 2024) (Riggs, J.) (citing *Mitchell-Carr v. McLendon*, 1999-NMSC-025, at ¶ 14, 127 N.M. 282, 980 P.2d 65 (1999)).

7    The words: "men" (pleaded zero times), "man" (also pleaded zero times), and "male" (mentioned three times, but not as a suspect class) are noticeably lacking. Here, the FAC only alleges general claims. For example, the FAC alleges: (1) "Plaintiffs ... w[ere] discriminated against ... based on their gender"; (2) the Commission and LLC had "sexist ... discriminatory intent"; (3) other employees "discriminated on a regular basis against ... women"; and (4) Defendants "discriminated against Plaintiffs ... because of gender." **Doc. 5 at ¶¶ 1, 31, 67, 85**.

8    Based on Plaintiffs' FAC, the Court knows that several other women worked on the railroad. The FAC mentions: (1) "a female employee, Lainey Zook," **Doc. 5 at ¶ 21**; (2) "Kim Smith-Casford," *id.* at ¶ 22; and (3) other "women" employees. *Id.* at ¶ 67.

Regarding Smith-Casford, and consistent with the logic explained earlier, *see supra* n.3, Kim is a woman. http://commission.ctsrr.com/commissioners/kim-smith-casford/.

9    Plaintiffs Bond and Hutson were terminated for timecard fraud. *See* **Doc. 5 at ¶¶ 43 & 68**.

10    In candor, there is a circuit split on the issue of whether a singular use of a racial epithet is sufficient under Title VII. *See Collier v. Dallas Cnty. Hosp. Dist.*, 827 F. App'x 373, 377 (5th Cir. 2020) (unpublished), *petition for cert. filed* (U.S. Jan. 15, 2021) (No. 20-1004). The Fifth, Sixth, Seventh, Eighth, and Tenth Circuits have all held sporadic or single uses of racial epithets are not severe enough to establish a hostile work environment. *See id.* (Cert. Pet.) at 12–16. Even though the Supreme Court denied certiorari, *see* ⸺ U.S. ⸺, 141 S. Ct. 2657, 209 L.Ed.2d 771 (2021), the petition is a useful summary of the issue. The pending case of *Ames v. Ohio Dep't of Youth Servs.*, 87 F.4th 822 (6th Cir. 2023), *cert. granted*, ⸺ U.S. ⸺, 145 S. Ct. 118, ⸺ L.Ed.2d ⸺ (2024) presents a similar question—but until such time as the Supreme Court rules on that case, Tenth Circuit law controls.

11    Three different judges within the Tenth Circuit have authored opinions citing to Urban Dictionary. *See Bickford v. Hensley*, 832 F. App'x 549, 554 n.3 (10th Cir. 2020) (unpublished) (Carson, J.); *United States v. Bindues*, No. 22-cr-466, 2023 WL 3230795, at *2, nn.1 & 2, 2023 U.S. Dist. LEXIS 77001, at *4–5, nn.1 & 2 (D.N.M. May 3, 2023) (Browning, J.); *Dailey v. Hecht*, No. 16-cv-581, 2017 WL 1243024, at *3 n.4, 2017 U.S. Dist. LEXIS 2755, at *9 n.4 (D. Colo. Jan. 6, 2017) (Jackson, J.).

This is not terribly surprising. As Eleventh Circuit Judge Kevin Newsom opined, "[a]s occasionally happens, the dictionaries le[ave] a little something to be desired." *Snell v. United Specialty Ins. Co.*, 102 F.4th 1208, 1223 (11th Cir. 2024) (Newsom, J., concurring). Here, instead of relying solely on the dictionary definition —the Court has looked to Wikipedia and Urban Dictionary. These resources have value, too. Especially in determining the contemporary meaning and usage.

For example, back in 1933, the Utah Supreme Court used the term "muggle" to describe "marihuana." *State v. Navaro*, 83 Utah 6, 15, 26 P.2d 955 (1933). This was, no doubt, cutting edge in a pre-Harry Potter era.

ADD-87

These non-traditional sources confirm this usage—while traditional dictionaries do not. *See, e.g., Weed Muggle*, URBANDICTIONARY, https://www.urbandictionary.com/define.php?term=Weed% 20Muggle (last visited Oct. 11, 2024); *List of Slang Names for Cannabis*, WIKIPEDIA: THE FREE ENCYCLOPEDIA, https:// en.wikipedia.org/wiki/List_of_slang_names_for_cannabis (last visited Oct. 11, 2024).

12      Plaintiff Hutson's employment with the railroad began in May 2017, whereas Plaintiff Bond was hired in March 2018; Plaintiff Goodwin was hired in May 2018; and Plaintiff Keenan-Coniglio was employed during the 2021 and 2022 seasons.

13      Consistent with *supra* n.9, the Court now highlights a few of the cases where other courts have come to the same result. *See, e.g., Jackson v. Quanex Corp.*, 191 F.3d 647, 662 (6th Cir. 1999) (explaining that "simple teasing, offhand comments, and isolated incidents" do not amount to discrimination under Title VII); *Dandy v. UPS Inc.*, 388 F.3d 263, 271 (7th Cir. 2004) ("[O]ffhand comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim."); *Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 844 (8th Cir. 2002) ("Sporadic racially-motivated misconduct by coworkers is neither severe nor pervasive enough to create a hostile work environment."); *see also Stepheny v. Brooklyn Hebrew Sch. for Special Child.*, 356 F. Supp. 2d 248, 264 (E.D.N.Y. 2005) (concluding the utterance of "white bitch" five times over a five month period fails under Title VII).

14      To be sure, third-party hostile-work-environment claims have been recognized in this Circuit. *See Durand v. Shull*, 2022 WL 1184041, at *2 n.3, 2022 U.S. App. LEXIS 10776, at *6 n.3 (10th Cir. Apr. 21, 2022) (unpublished); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072–74 (10th Cir. 1998). But these cases deal with management not stepping in when lower-level employees are the hostile actors. This Court found no case where a non-employee third-party is the target of abuse and an employee then subsumes that malintent as a basis for suing.

To be sure, these allegations fall into the "jerk" category. But Plaintiff Bond does not have any cognizable injury based on the harassment of a third-party non-employee. *See, e.g., Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1180 (7th Cir. 1998) (white employees lacked standing to allege injury on behalf of black applicants who were discriminated against); *Childress v. City of Richmond*, 134 F.3d 1205, 1209 (4th Cir. 1998) (en banc) (Luttig, J., concurring); *Patee v. Pac. Nw. Bell Tel.*, 803 F.2d 476, 478 (9th Cir. 1986) ("[M]ale workers cannot assert the right of their female co-workers to be free from discrimination based on their sex."); *see also Moore v. Total Sleep Diagnostics of Kan., Inc.*, No. 00-cv-2521, 2001 WL 789231, at *1–3, 2001 U.S. Dist. LEXIS 9907, at *3–8 (D. Kan. July 9, 2001).

15      The prohibition against "approbation and reprobation" derives from Scottish law. *See Heth v. Commonwealth*, 126 Va. 493, 498, 102 S.E. 66 (1920). At its core, this prohibition forces a litigant to elect a particular position and confines him to that first-adopted position. Nowadays, this concept is known as judicial estoppel. *Matthews v. Matthews*, 277 Va. 522, 529, 675 S.E.2d 157 (2009).

No matter the name, this doctrine is "a powerful weapon ... and there are often lesser weapons that can keep alleged inconsistent statements in check." *Lucero v. Citelum US, Inc.*, No. 18-cv-1088, 2019 WL 6877492 at *1, 2019 U.S. Dist. LEXIS 217729, at *3 (D.N.M. Dec. 17, 2019) (Johnson, C.J.) (quoting *Vehicle Market Rsch. v. Mitchell Intern., Inc.*, 767 F.3d 987, 992–93 (10th Cir. 2014)).

Additionally, the Court is not convinced the doctrine applies—given that the Cumbres Defendants are not arguing contrary positions. Rather, Defendants argue they are not subject to the NMWPA because of differences between New Mexico and Colorado law. This is not inconsistent with any other position previously advanced. *See New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (listing factors to "inform the decision" about whether to apply the doctrine).

ADD-88

16    Plaintiffs cite to: (1) *Del. River Port Auth. v. Frat. Order of Police*, 290 F.3d 567, 570 (3d Cir. 2002); (2) *Penn-Jersey Lodge 30 v. DRPA*, 323 N.J. Super. 444, 733 A.2d 545 (1999); (3) *Gray v. N.D. Game & Fish Dep't*, 706 N.W.2d 614, 620 (N.D. 2005); (4) *Int'l Union of Operating Eng'rs, Local 68 v. Del. River & Bay Auth.*, 147 N.J. 433, 447-48, 688 A.2d 569 (1997); (5) *Hubble v. Bi-State Dev. Agency*, 238 Ill. 2d 262, 278, 345 Ill.Dec. 44, 938 N.E.2d 483 (2010); and (6) *Holz v. Smullan*, 277 F.2d 58, 62 (7th Cir. 1960). *See* **Doc. 28 at 33–36**.

17    Although Plaintiffs may think they worked for the Commission, they did not. Only the Commissioners work for the Commission. The employees of the railroad are employees of the LLC. This is clear as a matter of law based upon the statutes mentioned throughout. And this Court need not accept as true Plaintiffs' conclusory allegation on their employer.

At the same time, the confusion likely comes from the organizational structure. For example, the Exhibits bear the name "Cumbres & Toltec Scenic Railroad." But as the Cumbres Defendants made clear, that is not the name of either the Commission or the LLC. It is, however, the label and imagery from the railroad's website. *See* https://cumbrestoltec.com/.

After clicking, searching, and reading the website, it becomes clear that the railroad "is operated by Cumbres Toltec Operating a non-profit LLC." In fact, the "Employment Application" on the website states the employer is "Cumbres Toltec Operating, LLC." *See* Cumbres & Toltec Scenic Railroad, *Employment Application*, https://cumbrestoltec.com/wp-content/uploads/2024/03/CTSRR-Employment-Application-.pdf [https://perma.cc/6FFF-7AXA]. The Court's reference to evidence outside the pleadings "does not convert the motion to dismiss into a motion for summary judgment." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023).

18    IPRA is the New Mexico state-level equivalent of the Freedom of Information Act. Both provide the public with access to governmental records.

19    Again, these factors are derived from IPRA cases. This Court was unable to find any New Mexico case citing these factors in the context of the NMWPA. *See, e.g., Pacheco*, 2018-NMSC-022, at ¶¶ 27–36, 415 P.3d 505 (finding a state judge's election campaign on social media were not a public record within the scope of IPRA); *N.M. Found. v. Corizon Health*, 2020-NMCA-014, 460 P.3d 43 (N.M. Ct. App. 2019) (discussing what documents are subject to disclosure under IPRA); *Libit v. Univ. of N.M. Lobo Club*, 2022-NMCA-043, 516 P.3d 217 (N.M. Ct. App. 2022) (construing IPRA broadly).

Nevertheless, a federal court sitting in diversity must apply state law. And if that court has not spoken, this Court must endeavor to predict the interpretation it would adopt. *See Moreno v. Zimmerman*, 2023 WL 4760343, at *8–9, 2023 U.S. App. LEXIS 19053, at *23 (10th Cir. July 26, 2023) (unpublished) (Holmes, C.J.) (citing *Arm.jo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988)). In this regard, these cases are helpful for determining if New Mexico courts would allow the LLC to be sued under the NMWPA.

20    There is one New Mexico Court of Appeals case that explains the NMWPA only applies to "employees *who presently* work for or contract with a public employer." *Anderson v. Second Jud. Dist. Ct.*, 2024 WL 493864, at *5, 2024 N.M. App. Unpub. LEXIS 44, at *14 (N.M. Ct. App. Feb. 8, 2024). This is consistent with the New Mexico Supreme Court's ruling in *Flores v. Herrera*, 2016-NMSC-033, 384 P.3d 1070 (N.M. 2016), wherein the Court held that the NMWPA does not apply to former officers. *Id.* at ¶ 11.

The Court does not apply this present tense requirement; but instead, simply points out another ruling that cuts against Plaintiffs.

21    The FAC alleges the following actions/inactions taken by Defendant Gibbs: (1) Plaintiff Bond complained verbally to Gibbs, *see* **Doc. 5 at ¶ 36**; (2) Bond also filed a complaint with Gibbs about Keenan-Coniglio's treatment, *id.* **at ¶ 39**; (3) Plaintiff Goodwin reported safety issues to Gibbs, *id.* **at ¶ 44**; (4) Plaintiffs Goodwin

ADD-89

and Hutson complained about repair work to Gibbs, *id.* at ¶ **48**; (5) Goodwin reported other safety issues to Gibbs, *id.* at ¶ **55**; and (6) so did Plaintiff Hutson, *id.* at ¶¶ **72 & 74**. These do not give rise to anything. Listening—even if done poorly—is not a legitimate basis for a lawsuit.

The FAC contains one concrete constitutional allegation—namely, Plaintiff Goodwin claims that Defendants Avery and Gibbs prohibited Goodwin from punishing Hispanic employees. *See* Doc. 5 at ¶ **46**.

22    Termination overstates what occurred, as alleged in the FAC. Plaintiff Goodwin voluntarily absconded from work and Plaintiff Keenan-Coniglio was placed on administrative leave (but did not seek re-employment). It's true that both Plaintiffs Bond and Hutson were terminated—albeit for timecard fraud.

23    A few other examples come to mind, too. In *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), a state-funded and state-regulated private school terminated employees for speaking against the administration's policies. In that case, the Supreme Court held there was no state action "with respect to decisions involving the discharge of personnel." *Id.* at 836, 102 S.Ct. 2764. The same is true here.

Likewise, in *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115 (10th Cir. 1991), the Tenth Circuit found there was no state action because Plaintiffs "presented no evidence tending to prove that the state was involved in the [private corporation's] decision to discharge them," and "[a]bsent any showing that the state directed, controlled, or influenced this particular personnel decision," there was not a viable § 1983 claim. *Id.* at 1118.

24    Colorado law defines this entity as "an interstate agency known as the Cumbres and Toltec scenic railroad commission." C.R.S. § 24-60-1902. New Mexico law says the same; explaining the "Cumbres and Toltec scenic railroad commission" is "an interstate agency." NMSA 1978 § 16-5-3.

25    The rail runs sixty-four miles in length—making it the "longest" and "highest" steam railroad in North America. *See* https://cumbrestoltec.com/.

26    Although not determinative, the Court notes some factual allegations fall outside the statute of limitations period. *See Herrera v. City of Espanola*, 32 F.4th 980, 989 (10th Cir. 2022) (noting that "for § 1983 claims arising in New Mexico the limitations period is three years"). Some of the facts alleged by Plaintiffs Bond, Goodwin, and Hutson date back to 2018 and 2019. *See* Doc. 5 at ¶¶ **34, 44–45, 68–70**.

27    Under Colorado law, the Commission's "employees are not officers and employees of either of the states." C.R.S. § 24-60-1902. Although New Mexico law is silent on this point, no statute says the commissioners are public employees.

---

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-90

2021 WL 5299585
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

Deborah LAUFER, Plaintiff,

v.

Randall J. LOOPER, and Cynthia C. Looper, Defendants.

Civil Action No. 20-cv-02475-NYW

|

Signed 01/27/2021

**Attorneys and Law Firms**

Suzette Michele Moore, S. Moore Law PLLC, Lakeland, FL, for Plaintiff.

Jennifer Lyn Gokenbach, Stephen B. Rotter, Workplace Counsel, Denver, CO, for Defendants.

### ORDER DENYING MOTION TO AMEND

Nina Y. Wang, United States Magistrate Judge

**\*1** This matter comes before the court on Plaintiff Deborah Laufer's ("Plaintiff" or "Ms. Laufer") Motion for Leave to Amend Complaint (or "Motion"), filed January 15, 2021. [#41]. The court considers the Motions pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes. See [#13]. The court concludes that neither oral argument nor additional briefing[1] will materially assist in the resolution of this matter. Accordingly, having reviewed the Motion and Response, the applicable case law, and being otherwise fully advised in its premise, the court **DENIES** the Motion for Leave to Amend Complaint.

### BACKGROUND

The court discussed the background of this matter in its Order dated January 11, 2021, [#37], and therefore limits its discussion to only those facts most salient to the instant Motion. Plaintiff initiated this civil action by filing her Complaint in this court, asserting Defendants Randall Looper and Cynthia Looper (collectively, "Defendants") violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 et seq. [#1]. Plaintiff, a resident of Pasco County, Florida, alleged she is a qualified individual with a disability under the ADA because she requires the use of a wheelchair or a cane when ambulating more than a few steps. [Id. at ¶ 1]. She continued that Defendants own and operate a place of public accommodation called the Elk Run Inn located in Craig, Colorado (the "PPA"). [Id. at ¶ 3]. According to Plaintiff, Defendants violated Title III of the ADA because their online reservation system does not give disabled patrons the ability to book, review, or request a handicap accessible room. See [id. at ¶¶ 7-11]. This, Plaintiff asserted, deprived her of Defendants' goods and services that are available to non-disabled individuals. See generally [id. at ¶¶ 11-21]. Accordingly, Plaintiff's Complaint asserted a claim for violations of Title III and the related provisions of the Colorado Anti-Discrimination Act ("CADA"). See generally [#1].[2]

On October 21, 2020, Defendants filed a Motion to Dismiss for Lack of Standing or Failure to State a Claim (the "Motion to Dismiss"). [#17]. Defendants argued that Ms. Laufer lacked standing to sue because she had not suffered a particularized and concrete injury and failed to allege a plausible Title III claim. See generally [id.]. Plaintiff opposed the Motion. See generally [#21]. On January 11, 2021, the court granted in part Defendants' Motion to Dismiss, concluding that Ms. Laufer failed to allege a concrete and particularized injury based on her mere use of Defendants' online reservation system because she did not allege any interference with her intended use of Defendants' PPA. See generally [#37]. The court additionally concluded that Ms. Laufer failed to allege an actual or imminent injury for purposes of prospective relief because she alleged only conjectural and speculative intentions to visit Defendants' PPA or Colorado generally. See generally [id.]. The court therefore dismissed Ms. Laufer's Complaint without prejudice, see [id.], and Final Judgment entered in favor of Defendants and against Ms. Laufer on January 12, 2021, see [#38].

**\*2** On January 14, 2021, Ms. Laufer filed a Notice of Filing Amended Complaint and tendered an Amended Complaint pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure and D.C.COLO.LCivR 15.1(a). See [#39]. The court struck the Notice of Filing Amended Complaint, because neither rule provided Ms. Laufer permission to file her Amended Complaint as a matter of right, she failed to confer with Defendants per D.C.COLO.LCivR 7.1(a), and she did not seek leave to amend at any time prior to the court's ruling on the Motion to Dismiss. See [#40]. Ms. Laufer

ADD-91

then filed the instant Motion on January 15, 2021. [#41]. She argues that the court should grant her leave to file an Amended Complaint to cure the pleading deficiencies identified in the court's Order granting in part the Motion to Dismiss regarding standing. *See* [*id.*]. Defendants oppose the Motion, arguing the court should deny leave to amend because amendment is unduly delayed, prejudicial, and futile. *See* [#43]. As noted, the court prohibited the filing of any replies absent leave of the court, *see* [#42], and I conclude the Motion is now ripe for disposition without any additional briefing, *see* D.C.COLO.LCivR 7.1(d). Accordingly, I consider the Parties arguments below.

**LEGAL STANDARDS**

When, as here, the plaintiff seeks to amend her Complaint following its dismissal, she must first move to reopen the case under Rule 59(e) or 60(b) of the Federal Rules of Civil Procedure and then she must move for leave to amend under Rule 15 of the Federal Rules of Civil Procedure. *Castanon v. Cathey*, 976 F.3d 1136, 1145 (10th Cir. 2020). In doing so, the plaintiff must give adequate notice of the basis of the proposed amendment. *Requena v. Roberts*, 893 F.3d 1195, 1208 (10th Cir. 2018). Because Ms. Laufer filed the instant Motion within 28 days of the entry of the Final Judgment, the Motion arises under Rule 59(e). *See Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995); *see also Sherman v. Klenke*, 653 F. App'x 580, 585 (10th Cir. 2016).

*Rule 59(e).* A Rule 59(e) motion typically requires the court to reconsider matters encompassed in the district court's decision on the merits. *Jennings v. Rivers*, 394 F.3d 850, 854-55 (10th Cir. 2005). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has explained, however, that a motion under Rule 59(e) is not an appropriate vehicle to revisit arguments already raised or those that could have been raised initially but were not. *Id.*

*Rule 15(a).* Rule 15(a)(2) provides that courts are to grant leave to amend "freely ... when justice so requires." Fed. R.

Civ. P. 15(a)(2). The Rule's purpose is "to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018) (internal quotation marks omitted). "A court may deny leave, however, on account of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101-02 (10th Cir. 2019) (internal quotation marks omitted). Whether to permit amendment is within the court's discretion. *See Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1189 (10th Cir. 2019).

**ANALYSIS**

**I. Rule 59(e)**

As explained, to amend her Complaint now after dismissal, Ms. Laufer must first move to reopen the case under Rule 59(e). *Castanon*, 976 F.3d at 1145. Ms. Laufer does not address Rule 59(e) in the instant Motion. Instead, she focuses exclusively on leave to amend. To that end, she argues the court should grant her leave to amend to allow her to test her claims on the merits and to "add additional facts that clarify her ties and prior visits to Colorado and her future intentions to travel [to Colorado]." [#41 at 3]. Respectfully, Ms. Laufer fails to demonstrate an entitlement to relief under Rule 59(e).

**\*3** To start, Ms. Laufer fails to present an intervening change in controlling law or any newly discovered evidence. *See Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995). Rather, Ms. Laufer makes clear that she seeks to add more facts regarding her alleged ties to Colorado and her intent to travel here someday. But Ms. Laufer alluded to these allegations in her Complaint, and she attempted to bolster these assertions in her Declaration attached to her Response to the Motion to Dismiss. Thus, Ms. Laufer fails to present any change in controlling law or newly discovered evidence.

In addition, Ms. Laufer fails to identify any need for the court to correct clear error or prevent manifest injustice. "[T]o show clear error or manifest injustice, the [movant] must base its motion on arguments that were previously raised but were overlooked by the Court--[p]arties are not free to relitigate issues that the Court has already decided." *Bethel v. United*

ADD-92

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 160

Laufer v. Looper, Not Reported in Fed. Supp. (2021)

*States*, No. CIV.A. 05-CV-01336-P, 2007 WL 3024283, at *1 (D. Colo. Oct. 12, 2007) (first alteration added) (internal quotation marks omitted). Again, Ms. Laufer bases the instant Motion on her attempts to bolster her alleged injury-in-fact. But the court considered similar allegations in ruling on the Motion to Dismiss and concluded they were insufficient to establish an injury-in-fact for standing purposes. And at no point prior to the court's ruling on the Motion to Dismiss did Ms. Laufer express an intent or desire to further amend her Complaint—something she could have done as a matter of right in response to Defendants' Motion to Dismiss under Rule 15(a)(1)(B). Further, as explained below, the court concludes that the tendered amendments do not cure the deficiencies already identified by the court.

Ultimately, Ms. Laufer fails to demonstrate that relief under Rule 59(e) is appropriate. While this basis alone would be sufficient to deny the instant Motion, I consider whether amendment is appropriate under Rule 15 for the sake of completeness. *Cf. Moncier v. Jones*, 557 F. App'x 407, 410 (6th Cir. 2014) (affirming the denial of the plaintiff's motion to amend filed after entry of an adverse judgment because the plaintiff made no argument under Rules 59 or 60, but noting the district court would have acted within its discretion to deny the motion to amend under the more liberal Rule 15 standard).

## II. Rule 15(a)

In some instances, like those here, courts may deny leave to amend when amendment would be futile. *Moya v. Garcia*, 895 F.3d 1229, 1239 (10th Cir. 2018). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (internal quotation marks omitted). Whether an amendment is futile "is functionally equivalent" to whether a complaint, as amended, would survive a Rule 12(b)(6) motion to dismiss. *See Bauer v. City & Cty. of Denver*, 642 F. App'x 920, 925 (10th Cir. 2016) (quoting *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999)). For the following reasons, I respectfully conclude that Ms. Laufer's proposed amendments are futile. [3]

Ms. Laufer's tendered Amended Complaint is nearly identical to her original Complaint. *Compare* [#1] *with* [#41]. She alleges she visited Defendants' online reservation system and could not review, book, or identify whether Defendants' PPA

had any accessible rooms. *See generally* [#41]. As to how this harmed Ms. Laufer, she offers the following amendment:

> *4    Plaintiff has family in Colorado and has been to the State numerous times to visit. This includes approximately once each year for the past several years. Since 2019, Plaintiff has had, and continues to have, plans to drive from her home in Florida all the way to Maine, then westward all the way to Colorado. When in Colorado, she plans to travel throughout the entire State to visit various points of interest, the mountains and other attractions. This includes the northwestern area where Defendant's hotel is located. She will bring her grandchild along on the trip as an educational excursion and will tour many states along the East Coast, the northern states, then the southern states and through Texas on the return trip home. Initially, Plaintiff planned to make this trip during the summer of 2020, but now awaits the passing of the Covid crisis to subside. As soon as it becomes safe to travel, she will take her trip. Plaintiff needs to be able to compare the accessibility information of each hotel so that she can determine where to stay. The failure of this defendant's and other hotels to comply with the Regulation deprive Plaintiff of the information she requires to make a meaningful choice in selecting what hotels she can stay in.

[#41-1 at ¶ 11 (underlining in original)]. [4] She also alleges that Defendants' non-compliant online reservation system hindered her ability to "compare [Defendants' PPA's] accessible features with other hotels in ascertaining what hotel she can stay in during her upcoming trip." [*Id.* at ¶¶ 12, 13 (underlining in original)].

Defendants argue that amendment is futile. [#43 at 5-6]. They contend that Ms. Laufer's proposed amendments "are no

ADD-93

different than the allegations regarding travel she previously made—except to provide a few additional non-material details." [*Id.* at 6]. According to Defendants, Ms. Laufer still fails to address the court's conclusion that Ms. Laufer did not suffer an injury-in-fact because she offers no allegations that the Defendants' online reservation system obstructed her intended and actual use of Defendants' PPA at a concrete time. *See* [*id.* at 6-8]. I respectfully agree with Defendants.

As explained in its Order on the Motion to Dismiss, "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy" and it requires Ms. Laufer to have (1) suffered an injury in fact that (2) is fairly traceable to the Defendants' conduct and (3) can be redressed by a favorable judicial decision. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020). These three elements apply equally to so-called "ADA testers," "regardless of [their] motivation in encountering" an invasion of their rights under Title III. *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) ("Like any plaintiff, a tester must demonstrate that she has indeed suffered a cognizable injury in fact that will be redressed by the relief sought."). As before, the court's inquiry hinges on whether Ms. Laufer pleads an injury-in-fact.

**\*5** "Injury in fact involves invasion of a legally protected interest that is concrete, particularized, and actual or imminent." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014); *see also Colo. Cross Disability Coal.*, 765 F.3d at 1211 (stating that ADA "testers," "[l]ike any plaintiff," must establish a cognizable injury in fact). For purposes of prospective relief, Ms. Laufer must "be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). Conjectural or hypothetical injuries, or future injuries that are not certainly impending, are insufficient. *See Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016). Thus, Ms. Lauer "must adequately allege a plausible claim of injury," as conclusory allegations are insufficient. *COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1215, 1221 (10th Cir. 2016). This Ms. Laufer fails to do.

Most notably, Ms. Laufer's proposed amendments again fail to link the alleged harm (informational or dignitary) to some concrete, particularized injury. *See Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 654 (4th Cir. 2019) (explaining that the withholding of information itself does not constitute a concrete injury—the information must have some relevance to the litigant); *Wilson v. Glenwood Intermountain Properties, Inc.*, 98 F.3d 590, 596 (10th Cir. 1996) (explaining that a dignitary harm will constitute an injury-in-fact when the defendant actually discriminates against the plaintiff). This is because Ms. Laufer's proposed amendments still do not identify an intent to procure an accessible room at Defendants' PPA at a definite time. *Cf. Juscinska v. Paper Factory Hotel, LLC*, No. 18-CV-8201 (ALC), 2019 WL 2343306, at *3 (S.D.N.Y. June 3, 2019) (concluding the plaintiff suffered a concrete injury where the plaintiff alleged she could not book an accessible room online for her planned "stay-cation" in New York). Without this, Ms. Laufer cannot demonstrate "some connection between [her] and [Defendants] that 'differentiates' [her] so that h[er] injury is not 'common to all members of the public.'" *Griffin*, 912 F.3d at 655 (alterations and citation omitted).

Indeed, Ms. Laufer concedes that the COVID-19 pandemic has put her proposed cross-country trip on hold indefinitely. *See* [#41-1 at ¶ 11]. And "[s]peculative, 'someday' intentions do not support standing to seek prospective relief." *Tandy*, 380 F.3d at 1284 (citation omitted). Ms. Laufer's assertions that she intended to compare the accessibility information with other hotels in the area does not compel the court to find otherwise. When she initially visited the Defendants' online reservation system, "she did so as a concerned bystander, rather than an individual actually seeking to use the websites to book a hotel room or to plan for an upcoming trip." *Laufer v. Naranda Hotels, LLC*, No. CV SAG-20-1974, 2020 WL 7384726, at *5 (D. Md. Dec. 16, 2020) (concluding Ms. Laufer's injuries were conjectural or speculative given the COVID-19 pandemic). And courts assess standing "as of the time the action is brought." *Planned Parenthood of Kansas v. Andersen*, 882 F.3d 1205, 1217 (10th Cir. 2018).

Further, the indefinite hold on Ms. Laufer's travel plans also fails to establish an actual and imminent injury for purposes of prospective relief. *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1197 (10th Cir. 2010) (explaining that for purposes of prospective injunctive relief a plaintiff "must demonstrate standing by establishing they are suffering a continuing injury or are under an imminent threat of being injured in the future."). Ms. Laufer's proposed amendments rely on "some amorphous intent to visit this particular hotel," *Laufer v. Ft. Meade Hosp., LLC*, No. 8:20-CV-1974-

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 162

Laufer v. Looper, Not Reported in Fed. Supp. (2021)

PX, 2020 WL 6585955, at *4 (D. Md. Nov. 10, 2020), but "[a] claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction," Lip.poldt v. Cole, 468 F.3d 1204, 1218 (10th Cir. 2006) (quotations omitted)).

**\*6** For these reasons, the court respectfully concludes that Ms. Laufer's proposed amendments do not cure the deficiencies identified in the court's Order on the Motion to Dismiss. Thus, the proposed amendments are futile. [5]

**CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that:

(1) Plaintiff's Motion for Leave to Amend Complaint [#41] is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5299585

---

### Footnotes

1    The court ordered Defendants Randall Looper and Cynthia Looper to file their Response to the Motion for Leave to Amend Complaint by January 22, 2021 and prohibited any replies absent leave of court. *See* [#42]. Having reviewed the Motion for Leave to Amend Complaint and the Response, the court concludes it is appropriate to rule on this matter presently without any additional briefing. *See* D.C.COLO.LCivR 7.1(d) (providing the court discretion to rule on a motion at any time).

2    This court's independent review of this District's Electronic Court Filing system reveals that Ms. Laufer has filed approximately 41 lawsuits in this District asserting similar claims under Title III.

3    For this reason, I do not consider Defendants' arguments regarding undue delay and prejudice.

4    I note that Ms. Laufer has offered nearly identical assertions in her other lawsuits around the country. *See, e.g.,* Laufer v. Naranda Hotels, LLC, No. CV SAG-20-1974, 2020 WL 7384726, at *2 (D. Md. Dec. 16, 2020).

5    Finally, though not raised by Defendants, this court also notes that "[e]ven if subject matter jurisdiction exists, the Court has unique and substantial discretion to determine the propriety of declaratory judgment [.]" *Sardakowski v. Clements*, No. 12-CV-01326-RBJ-KLM, 2013 WL 3296569, at *5 (D. Colo. July 1, 2013) (citations omitted). A trial court may *sua sponte* consider the appropriateness of declaratory judgment claims even if not raised by either party. *Peck v. Asset Mgmt. Assocs., LLC*, Civ. No. 3:17-cv-2923-N, 218 WL 3455511, at *3 (N.D. Tex. July 18, 2018); 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2759 (4th ed. 2018). The use of 'may' within the Declaratory Judgment Act vests the courts with "unique and substantial discretion" to hear actions for declaratory judgment even if those actions are otherwise justiciable. United States v. City of Las Cruces, 289 F.3d 1170, 1183 (10th Cir. 2002); *see also* State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994) ("[T]he district court is not obliged to entertain every justiciable declaratory claim brought before it."). Given the lack of factual allegations specific to Ms. Laufer's intent to visit Defendants' inn; the number of cases raising the identical issue by Ms. Laufer in various jurisdictions; the split of authority on the issue of Ms. Laufer's standing, including appeals now pending before the Fourth, Fifth and Seventh Circuit Courts of Appeals, *see* Laufer v. Lily Pond LLC C

ADD-95

*Series*, No. 20-CV-617-WMC, 2020 WL 7768011, at *5 (W.D. Wis. Dec. 30, 2020), it is not entirely clear that circumstances would favor the exercise of discretion to proceed to the merits of this action at this time.

**End of Document**                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-96

Long v. Eastern New Mexico University Board or Regents, Not Reported in Fed. Supp....
2015 WL 13667230

2015 WL 13667230
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Robinette LONG, Plaintiff,
v.
EASTERN NEW MEXICO UNIVERSITY BOARD
OR REGENTS, Lee Quick, Jane Blakeley, Scott
Smart, Kathy Knoll, and Julie Gawehn, Defendants.

No. CIV 13-380 RB/SMV
|
Filed 01/26/2015

**Attorneys and Law Firms**

Paul Michael Gayle-Smith, Law Offices of Paul M. Gayle-Smith, Las Cruces, NM, for Plaintiff.

Chelsea Rae Green, Stephen Shanor, Hinkle, Hensley, Shanor & Martin, LLP, Roswell, NM, for Defendants.

**MEMORANDUM OPINION AND ORDER**

ROBERT C. BRACK, UNITED STATES DISTRICT JUDGE

**\*1** After being fired, Plaintiff Robinette Long sued her former employer for violations of federal and state law. Defendants, all affiliated with Eastern New Mexico University, moved to dismiss the Complaint. (Doc. 73.) Having reviewed the parties' submissions and arguments, the Court **GRANTS** the motion in part and **DENIES** the motion in part.

**I. Background**

Plaintiff began working for Defendant Eastern New Mexico University ("ENMU") in 1992. (Am. Compl., Doc. 4 ¶ 15.) Initially a department secretary, Plaintiff worked her way up and became a buyer for ENMU. (Doc. 4 ¶ 16; Doc. 73 at 2.)

Defendant Lee Quick, a fellow ENMU employee, worked in the same building as Plaintiff. (Doc. 4 ¶ 17.) Defendant Quick repeatedly invited Plaintiff out for lunch and for engagements after work, but Plaintiff always declined. (Doc. 4 ¶ 17.) Defendant Quick would also touch Plaintiff in an "unwelcome and painful" manner. (Doc. 4 ¶ 17.) Sometimes

he would push down on a tumor on Plaintiff's shoulder even though it caused her pain. (Doc. 4 ¶ 18.) Plaintiff complained about Defendant Quick's unwelcome touching and invitations to her supervisor, Defendant Jane Blakely, and ENMU's Comptroller, Defendant Kathy Knoll. (Doc. 4 ¶ 18.) Defendants Blakely and Knoll dismissed Plaintiff's complaints about the harassment and told Plaintiff to "be the bigger person." (Doc. 4 ¶ 18.)

On January 31, 2012, Defendant Quick yelled at Plaintiff and threatened her with clenched fists. (Doc. 4 ¶ 19.) Plaintiff, who suffered from post-traumatic stress disorder ("PTSD"), was traumatized by the encounter. (Doc. 4 ¶¶ 1, 19.) That afternoon, Plaintiff informed Defendants Blakely and Knoll about the incident and her distress. (Doc. 4 ¶ 20.) Defendants Blakely and Knoll told Plaintiff that she should not allow Defendant Quick to do such things. (Doc. 4 ¶ 20.) The next day, Plaintiff wrote Defendants Blakely and Knoll an email describing Defendant Quick's "habitual" solicitations and sometimes violent behavior. (Doc. 4 ¶ 21.)

Defendant Knoll advised Plaintiff to take a week off and informed her that Defendant Quick would be instructed to enter the warehouse only for legitimate, work-related reasons. (Doc. 4 ¶ 22.) Plaintiff claims that Defendants did not enforce this so-called agreement. When Plaintiff returned to work, she still saw Defendant Quick during her work day and suffered work-related stress because of the encounters. (Doc. 4 ¶ 23.)

On February 27, 2012, Plaintiff informed ENMU's Vice President of Business Affairs, Defendant Scott Smart, about Defendant Quick's history of harassment and intimidation. (Doc. 4 ¶ 24.) Instead of conducting an investigation, Defendant Smart told Plaintiff that if he were in her position, he would quit his job. (Doc. 4 ¶ 24.) On March 6, 2012, Plaintiff informed Defendant Smart and ENMU's Director of Human Resources, Defendant Julie Gawehn, that she had PTSD and requested a transfer away from Defendant Quick as a reasonable accommodation. (Doc. 4 ¶ 25.) Defendants denied the transfer. (Doc. 4 ¶ 25.) Plaintiff requested, as a compromise, that Defendant Quick be ordered to have no contact or minimal contact. (Doc. 4 ¶ 26.) Defendant Smart again suggested the Plaintiff should quit her job. (Doc. 4 ¶ 27.)

**\*2** At some point, unstated in the Complaint, Plaintiff took Family Medical Leave Act ("FMLA") leave because of her PTSD. (Doc. 4 ¶ 20.) Defendants Gawehn, Blakely, and Smart repeatedly told Plaintiff that she would not have job protection once her twelve weeks of FMLA leave were over. (Doc. 4

ADD-97

¶ 35.) Defendants sent Plaintiff a poor performance review while she was on FMLA leave. (Doc. 4 ¶ 34.) While Plaintiff was still on FMLA leave, Defendants posted Plaintiff's position as vacant. (Doc. 4 ¶ 36.) Plaintiff submitted to Defendants a letter from her doctor that was ambiguous about Plaintiff's ability to return to work immediately. (Doc. 4 ¶ 39.) As soon as Plaintiff's twelve weeks of FMLA leave expired, Defendants terminated Plaintiff. (Doc. 4 ¶ 39.) The parties did not identify the date of Plaintiff's termination.

On May 1, 2012, Plaintiff submitted paperwork requesting authorization to file a workers' compensation claim. (Doc. 4 ¶ 30.) Defendant Blakely refused to sign the authorization and told Plaintiff that her request would be denied. (Doc. 4 ¶ 30.) Six weeks later, on June 13, 2012, the Risk Management Division denied Plaintiff's applications for workers' compensation. (Doc. 4 ¶ 32.)

Plaintiff filed a charge with the Equal Employment Opportunity Commission on May 21, 2012. (Doc. 4 ¶ 31.) She filed her Complaint with this Court on April 24, 2013. (Doc. 1.) In her Complaint, she named her employer, Defendant ENMU, several ENMU supervisors, and Defendant Lee Quick. (Doc. 1; Am. Compl., Doc. 4.) Defendants filed this current motion to dismiss the case.

## II. Legal Standard

Defendants styled their motion as a motion to dismiss, or in the alternate, a motion for summary judgment. (Doc. 73.) Defendants asked the Court to review certain, limited documents in support of its arguments for dismissal. Generally, courts consider only the four corners of the complaint when ruling on a motion to dismiss, but courts can consider "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (listing exceptions to the general rule that a court may only consider the four corners of the complaint when ruling on a motion to dismiss). With this in mind, the Court treats this motion as a motion to dismiss.

In order to survive a motion to dismiss, a plaintiff's "complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.' " *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing the sufficiency of a complaint, the court must first identify the factual allegations and disregard any conclusory statements.

*See Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Next, the court must determine if the plaintiff's factual allegations state a plausible claim. *Id.* "A claim has facial plausibility when the [pleaded] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The complaint need not recite "detailed factual allegations, but the factual allegations must be enough to raise the right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted). "Plaintiff's general assertions of discrimination and retaliation, without any details whatsoever of events leading up to her termination, are insufficient to survive a motion to dismiss." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

## III. Discussion

Plaintiff alleges several claims, ranging from state contract claims to violations of constitutional law. Defendants claim that they are immune from Plaintiff's claims based on the Eleventh Amendment, sovereign immunity, or qualified immunity. If not immune, Defendants argue that Plaintiff has failed to state a claim. The Court looks at each claim individually.

### A. FMLA Claim

*3 In Count 1, Plaintiff claims that Defendants violated her rights under FMLA. The Act expressly prohibits employers from interfering with employees' rights to take FMLA leave. *See* 29 U.S.C. § 2615(a)(1). Defendants argue that the Eleventh Amendment bars this suit against them. (Doc. 73 at 9.) In fact, the Supreme Court ruled that the Eleventh Amendment bars suits from litigants who, like Plaintiff, requested leave for self-care and seek damages against a state. *Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327, 1332 (2012).

For other federal laws, the Tenth Circuit recognizes an *Ex Parte Young* exception which allows plaintiffs to bring suits against state officials so long as they seek prospective injunctive relief. *See, e.g.*, *Frazier v. Simmons*, 254 F.3d 1247, 1255 (10th Cir. 2001) (plaintiff suing under ADA can seek prospective injunctive relief against state officer); *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (plaintiff pursuing constitutional rights can seek

ADD-98

Long v. Eastern New Mexico University Board or Regents, Not Reported in Fed. Supp....

2015 WL 13667230

prospective injunctive relief against state officers). Given the Circuit's prior rulings, the Court finds that the exception applies here. *See Corrforth v. Univ. of Oklahoma Bd. of Regents*, 263 F.3d 1129, 1134 (10th Cir. 2001) (reasoning that the *Ex Parte Young* exception would apply to FMLA); *accord Coleman*, 132 S. Ct. at 1350 (Ginsburg, J., dissenting) ("An employee wrongly denied self-care leave ... may, pursuant to *Ex parte Young*[ ], seek injunctive relief against the responsible state official.").

Under the *Ex Parte Young* doctrine, a plaintiff cannot seek damages and cannot directly subject the state to suit. *See Buchwald*, 159 F.3d at 495. Thus, Plaintiff's FMLA claims against Defendant ENMU and its Regents are barred. A plaintiff may, however, seek prospective injunctive relief against state officers who are sued in their official capacities. *Id.* Here, Plaintiff sued ENMU officers and sought reinstatement. (Compl. at 21; Pretrial Conf., Jan. 9, 2015.) The Eleventh Amendment does not bar this prayer for reinstatement. *See Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1232 (10th Cir. 2004) ("Reinstatement of employment is a form of prospective equitable relief that is within the doctrine of *Ex parte Young*."). Thus, the Court will consider Plaintiff's request for reinstatement under FMLA.

Having ruled that Plaintiff may bring this particular claim, the Court now assesses whether the Complaint states a plausible claim. In assessing plausibility, the Court is guided by the requirements for a prima facie case. To make a prima facie case for interference, a plaintiff must allege that "(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (quoting *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005)).

The parties agree that Plaintiff was eligible for FMLA leave. The plausibility of Plaintiff's claim turns on whether Defendants violated the FMLA in a way that entitles her to relief. Plaintiff claims that Defendants harassed her while she was on leave and misinformed her about her FMLA rights. (Doc. 4 ¶¶ 34-35, 37.) Purportedly, Defendants Gawehn, Blakely, and Smart repeatedly told Plaintiff that she would not have job protection once her twelve weeks of FMLA leave were over and sent her a poor performance review while she was on leave. (Doc. 4 ¶¶ 34-35.) Most troublingly, Plaintiff alleges that Defendants advertised her position as vacant

while she was still on lawful FMLA leave. (Doc. 4 ¶ 36.) Defendants then notified Plaintiff about their advertisement. (Doc. 4 ¶ 36.) Plaintiff claims that Defendants' harassment exacerbated her PTSD symptoms and made it more difficult for her "to promptly return to her former position." (Doc. 4 ¶ 71.)

**\*4** By the express terms of the statute, the FMLA prohibits employers from "interfere[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1). FMLA creates the right for employees on protected leave to be reinstated "to the position of employment held by the employee when the leave commenced." 29 U.S.C. § 2614(a)(1)(A). Plaintiff's factual averments state a plausible claim that Defendants interfered with her right to reinstatement under FMLA. *Accord Speight v. Sonic Restaurants, Inc.*, 983 F. Supp. 2d 1324, 1328 (D. Kan. 2013) (finding an FMLA violation when plaintiff's manager removed her from the work schedule without explanation, making plaintiff believe she was fired). The Court finds that Plaintiff alleged sufficient facts to state a plausible claim for FMLA interference.

**B. Title VII Claims**

In Counts 1 and 4, Plaintiff claims that Defendants violated her rights under Title VII. It is unclear from the Complaint which theory Plaintiff intends to invoke. The Court will consider a discrimination claim, a retaliation claim, and a hostile work environment claim. Defendants argue, without support, that they are immune from Title VII money damages suits under the Eleventh Amendment. (Doc. 73 at 10.) To the contrary, the Supreme Court ruled that Congress properly abrogated states' Eleventh Amendment immunity by passing Title VII pursuant to section five of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Alternatively, Defendants argue that Plaintiff has failed to allege sufficient facts for any Title VII claim. (Doc. 89 at 8.) The Court agrees.

*1. Discrimination Claim*

To set forth a claim for discrimination, a plaintiff must allege that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class. *See Khalik*, 671 F.3d at 1192 (citing *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998)).

ADD-99

For the first prong, Plaintiff claims she suffered sex discrimination. (Doc. 4 ¶ 51.) Sex is a protected class. For the second prong, Plaintiff says her employment was terminated, a clear adverse action. (Doc. 4 ¶ 15.) On the third prong, the Court will assume for the purposes of this Motion that Plaintiff was qualified for the job she was hired to perform. The only question left is whether Plaintiff can meet the fourth prong—was she treated less favorably than others not in the protected class?

Plaintiff argues that because she was denied the opportunity to take alternate leave, Plaintiff lost her job. Her discrimination claim centers on the idea that other employees were able to take sick or annual leave after exhausting their FMLA leave while Plaintiff was not. (Doc. 4 ¶¶ 42, 49, 56.)

Plaintiff's allegation is too broad and too general. If allegations are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191 (quotations omitted). She does not offer any examples of her supervisors engaging in sex discrimination. Nor does she ever allege that the "other employees" were not in her protected class—in other words, she never says that males were treated more favorably. *See id.* at 1194 (affirming dismissal where complaint failed to allege that similarly situated employees were treated better). Without any allegations that one class was treated better than another protected class, the facts do not support a claim of discrimination under Title VII. Plaintiff's claim of sex discrimination is dismissed.

### 2. Retaliation Claim

 **\*5** Title VII prohibits employers from discriminating against employees "because [they] ha[ve] opposed any practice made an unlawful employment practice" by the Act. 42 U.S.C. § 2000e-3(a). To state a prima facie claim of retaliation under Title VII, a plaintiff must allege (1) she opposed a violation of Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the opposition activity and the adverse employment action. *Meiners*, 359 F.3d at 1229 (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001)).

Plaintiff's Complaint falls shy of stating a plausible Title VII retaliation claim. She successfully alleges that she opposed violations of Title VII and that she suffered an adverse action. First, she complained to her superiors, in seeming good faith, that Defendant Quick was subjecting her to sexual

harassment. (Doc. 4 ¶¶ 17, 18, 21, 24.) That constitutes protected opposition activity under Title VII. *See Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) ("Protected opposition can range from filing formal charges to voicing informal complaints to superiors."). Second, she was terminated, a clear adverse action. (Doc. 4 ¶ 15.) However, Plaintiff does not allege any facts to support a causal connection between the two acts.

A close temporal proximity can support an inference that protected activity and the adverse action were connected. *See Annett v. Univ. of Kansas*, 371 F.3d 1233, 1240 (10th Cir. 2004) (citing cases where an adverse action one to two months after protected activity supported a prima facie case of retaliation). While Plaintiff states in her Complaint the specific dates when she complained to supervisors, she does not state the date when her employment was terminated. That alone could be sufficient to dismiss the claim. *See Khalik*, 671 F.3d at 1194 (affirming dismissal for failure to state a claim, reasoning that the plaintiff "should know generally when she complained ... and when she was terminated"). Given that Plaintiff was terminated at the end of her FMLA leave, the Court surmises that she was terminated approximately twelve weeks, or slightly less than three months, after opposing the sexual harassment. A less than "three-month period [between the opposition and the adverse action], standing alone, is insufficient" to support a causal inference. *Meiners*, 359 F.3d at 1231; *see also Hanson v. Colorado Judicial Dep't*, 564 Fed.Appx. 916, 919-20 (10th Cir. 2014) (quoting same). "[U]nless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

Moreover, "temporal proximity has minimal probative value in a retaliation case where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1001-02 (10th Cir. 2011). Here, between the time Plaintiff complained about the harassment and her termination, she was unable to return to work after twelve weeks of FMLA. While Plaintiff may have legal theories for challenging her inability to return to work, it does not erase the fact that her failure to return to work provided an intervening event that "undermines[s] her temporal-proximity argument"—that is, if she had any temporal-proximity argument. *Id.* at 1002.

ADD-100

**\*6** Without any facts suggesting that Plaintiff's termination was causally connected to her complaints, Plaintiff's claim is merely speculative. Plaintiff's claim for retaliation under Title VII is dismissed.

### 3. Hostile Work Environment

The final theory Plaintiff could have raised under Title VII is a hostile work environment claim. To state a hostile work environment claim, a plaintiff must show "(1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Morris v. Colorado Springs*, 666 F.3d 654, 663 (10th Cir. 2012) (quoting *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009)); *see also Mobley v. Dillon Companies, Inc.*, 153 F.3d 727, 1998 WL 314589, at \*3 (10th Cir. 1998) (affirming dismissal of claim because the harassment "must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment"). "A plaintiff must show that the environment was both objectively and subjectively hostile or abusive." *Morris*, 666 F.3d at 664 (quoting *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998)).

Plaintiff's Complaint manifests a subjective impression that her work environment was hostile and abusive. She alleges that Defendant Quick "periodically subjected Plaintiff to unwelcome and painful physical touching and to unwelcome social invitations ... out to lunch, to work-out, [and] to basketball game[s]." (Doc. 4 ¶ 17.) She complains that Defendant Quick would push down on her shoulder tumor, causing her pain. (Doc. 4 ¶ 18.) She also describes an incident where he "red-faced and angry, physically and verbally assaulted Plaintiff" by yelling and clenching his fists. (Doc. 4 ¶ 19.)

The Tenth Circuit, however, has established a high standard for what can be considered "sufficiently severe or pervasive" under an objective standard. *See Morris*, 666 F.3d at 663-64. "A plaintiff does not make a sufficient showing of a pervasively hostile work environment by demonstrating a few isolated incidents of sporadic slurs. Instead, there must be a steady barrage of opprobrious comments." *Id.* at 666 (quotations omitted). In *Morris*, the Tenth Circuit affirmed a judgment on the pleadings where a supervising physician hit the plaintiff on the head twice, regularly yelled demeaning comments, and "intentionally" threw organ tissue at her

while they were in the operating room. *Id.* The Tenth Circuit ruled that this conduct was not sufficient to be considered "pervasive." *Id.* Nor did the Tenth Circuit consider the allegations of harassment "severe." *Id.* Given the standard laid out in *Morris*, Plaintiff's allegations of social invitations, tumor-pushing, and red-faced yelling do not meet the Tenth Circuit's threshold for "severe or pervasive."

Plaintiff has not alleged sufficient facts to state a hostile work environment claim under Title VII.

## C. ADEA Claim

In Counts 1 and 4, Plaintiff claims that Defendants violated her rights under the Age Discrimination in Employment Act ("ADEA"). Defendants claim that they are immune from ADEA suits under the Eleventh Amendment and the Supreme Court precedent in *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000). In *Kimel*, the Supreme Court held that states are immune from money damages suits that private plaintiffs bring to enforce the ADEA. 528 U.S. at 91. By the clear terms of this ruling, Plaintiff's claims for money damages are barred.

**\*7** A majority of the Circuits, however, determined that a private plaintiff can enforce the dictates of the ADEA by suing for injunctive relief under the *Ex Parte Young* exception. *See State Police for Automatic Ret. Ass'n v. DiFava*, 317 F.3d 6, 12 (1st Cir. 2003) (holding that a plaintiff may sue for injunctive relief to enforce ADEA under the *Ex Parte Young* exception); *Natarelli v. VESID Office*, 420 Fed.Appx. 53, 55 (2d Cir. 2011) (reasoning that a plaintiff could have pursued equitable relief to enforce ADEA violations); *Shahin v. Delaware*, 563 Fed.Appx. 196, 198 (3d Cir. 2014) (reasoning that a plaintiff may sue for injunctive relief to enforce ADEA under the *Ex Parte Young* exception); *McGarry v. Univ. of Mississippi Med. Ctr.*, 355 Fed.Appx. 853, 857 (5th Cir. 2009) (same); *Meekison v. Voinovich*, 67 Fed.Appx. 900, 901 (6th Cir. 2003) (same); *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007) (same); *but see Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1060 (9th Cir. 2009) (holding that the ADEA's remedial scheme precludes the *Ex Parte Young* exception). This Court is persuaded by the weight of the authority. Similar to her FMLA claim, because Plaintiff named ENMU officers and requests reinstatement, Plaintiff can proceed with her ADEA claim under the *Ex Parte Young* exception.

Defendants alternatively argue that Plaintiff did not allege any facts to support her ADEA claim. (Doc. 73 at 12.) The

ADD-101

Long v. Eastern New Mexico University Board or Regents, Not Reported in Fed. Supp....

2015 WL 13667230

ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). To state a plausible claim for relief, Plaintiff needs to allege facts to support the inference that (1) she was terminated (2) because of her age. Plaintiff alleges that she was born in 1960. (Doc. 4 ¶ 14.) However, that is the only age-related factual allegation in the Complaint. Plaintiff offers no examples of age-related animus, no comparators, nor any other facts to support her claim. As such, Plaintiff's claim is purely speculative. For that reason, Plaintiff's claim under the ADEA is dismissed.

**D. ADA Claims**

In Counts 2-5, Plaintiff claims that Defendants violated her rights under Title I of the Americans with Disabilities Act ("ADA"). Defendants argue that they are immune from suits brought under the ADA because of the Eleventh Amendment. (Doc. 73 at 10.) Similar to the ADEA and FMLA, the Supreme Court ruled that state employees are barred from seeking damages against states in ADA actions because of Eleventh Amendment immunity. *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 (2001). And again, private plaintiffs may seek injunctive relief against state officials under *Ex Parte Young*. *Id.* at 374 n.9; *Frazier*, 254 F.3d at 1255 (plaintiff suing under ADA can seek prospective injunctive relief against state officer). Thus, Plaintiff's claims for money damages are barred, but her claim for reinstatement is not. The Court will look to the sufficiency of the allegations for each ADA claim.

*1. Failure to Accommodate*

In Count 2, Plaintiff claims that Defendants failed to accommodate her disability in violation of the ADA. Under the ADA, an employer engages in discrimination by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability...." 42 U.S.C § 12112 (b)(5)(A). To ensure that employees and employers find workable accommodations, "[t]he federal regulations implementing the ADA 'envision an interactive process that requires participation by both parties.' " *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999) (en banc) (quoting *Templeton v. Neodata Services, Inc.*, 162 F.3d 617, 619 (10th Cir. 1998)). "The obligation to engage in an interactive process is inherent in the statutory obligation to offer a reasonable accommodation to an otherwise qualified disabled employee." *Id.* at 1172.

**\*8** Again, the Court looks to the elements of a prima facie case to inform the analysis of whether Plaintiff has stated a plausible entitlement to relief. To make a prima facie case, Plaintiff must show "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *Allen v. SouthCrest Hosp.*, 455 Fed.Appx. 827, 830 n.2 (10th Cir. 2011) (quoting *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 747-48 (7th Cir. 2011)).

Plaintiff's Complaint states a plausible claim that Defendant failed to provide her a reasonable accommodation. First, Plaintiff sufficiently alleges that she is a qualified individual with a disability, namely PTSD. (Doc. 4 ¶ 2, 16.) Second, Plaintiff informed Defendants Smart and Gawehn on March, 6, 2012, that she suffered from PTSD. (Doc. 4 ¶ 25.) Third, Plaintiff initiated the interactive process by requesting an accommodation, which the Defendants denied. (Doc. 4 ¶¶ 25, 26, 29, 41.) Plaintiff alleges that Defendant denied these requests without engaging in a good faith dialogue. (Doc. 4 ¶ 41.)

The accommodations Plaintiff requested were (1) a transfer so that she would not have to interact with Defendant Quick, or (2) a quasi-restraining order where Defendant Quick would be ordered to have minimal or no contact with Plaintiff. To be a considered a "reasonable accommodation" within the meaning of the ADA, the plaintiff must "only show that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002). Job reassignments to vacant positions are, by Congress' definition, reasonable accommodations. 42 U.S.C. 12111(9)(B); *see also Midland Brake*, 180 F.3d at 1167 (citing same).

Because Plaintiff stated sufficient factual allegations to support her claim that Defendants failed to provide reasonable accommodations, the Defendants' motion to dismiss this claim is denied.

*2. Hostile Work Environment*

In Count 3, Plaintiff claims that Defendants subjected her to a hostile work environment based on her disability and in violation of the ADA. The Tenth Circuit permits hostile work environment claims under the ADA. *Lanman v. Johnson Cnty., Kansas*, 393 F.3d 1151, 1156 (10th Cir. 2004). Given the dearth of ADA hostile environment precedent, the Court will look to the standards set out in Title VII hostile environment claims. *See id.* (reasoning that the statutory

ADD-102

Long v. Eastern New Mexico University Board or Regents, Not Reported in Fed. Supp....

2015 WL 13667230

language in the ADA and Title VII "mean the same" and have "parallel purposes.").

To state a hostile work environment claim under ADA, a plaintiff must allege (1) that she was discriminated against because of her disability; and (2) that "the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *See Morris*, 666 F.3d at 663 (stating requirements for a Title VII hostile work environment claim). Plaintiff's hostile work environment claim based on disability discrimination runs into the same obstacle she faced in her hostile work environment claim for sex discrimination. The only disability-related harassment that the Plaintiff claims to have suffered occurred when her supervisors brushed off her complaints. When Plaintiff went to Defendant Smart to request accommodation, he "repeatedly made statements to Plaintiff suggesting that she should voluntarily quit her job." (Doc. 4 ¶ 27.) This does not rise to the "severe and pervasive" standard necessary to maintain a hostile work environment claim. *See Morris*, 666 F.3d at 663.

*\*9* Plaintiff's hostile work environment claim arising under the ADA is dismissed.

### 3. Retaliation

In Count 4, Plaintiff claims that Defendants retaliated against her for demanding accommodations under the ADA. Under the ADA, employers are prohibited from retaliating "against any individual because such individual has opposed any act or practice made unlawful by [the ADA]." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the ADA, a plaintiff must show that (1) she opposed workplace discrimination, (2) she suffered an adverse employment decision, and (3) there is a causal connection between the protected activity and the adverse action. *Fryer v. Coil Tubing Servs., LLC*, 415 Fed.Appx. 37, 45 (10th Cir. 2011).

Plaintiff does not point to any particular protected activity. Plaintiff filed EEOC charges on May 21, 2012, but based on the Complaint, the Court has no way of knowing if Plaintiff was terminated before or after she filed the charge. (Doc. 4 ¶ 31.) Alternatively, requesting an accommodation can be protected activity. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1194 (10th Cir. 2007). Accordingly, if at no other time, Plaintiff engaged in protected activity on March 6, 2012, when she requested an accommodation. (Doc. 4 ¶ 25.)

Plaintiff suffered an adverse employment action when she was terminated, but in order to state a claim for retaliation, Plaintiff needs to provide factual allegations that support an inference that her protected activity caused the adverse decision. Again, the Court is left to surmise the timeline. Plaintiff made her request for an accommodation over a month after she first complained about Defendant Quick's harassment. (Doc. 4 ¶¶ 20, 25.) Thus, the temporal proximity is much tighter between her ADA protected activity and her termination than it was between her Title VII protected activity and her termination. Viewing the facts in the light most favorable to Plaintiff, the temporal proximity is close enough to support an inference that there was a "causal connection" between her protected activity and her termination. *See E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011) (holding that a causal connection can be supported by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action"). Additionally, Plaintiff alleges that Defendant Smart repeatedly told her to voluntarily quit her job when she requested her accommodations. (Doc. 4 ¶ 27.) Such statements could reveal a retaliatory animus that further supports Plaintiff's claim that her requests and termination were causally linked.

In sum, Plaintiff's Complaint states a plausible claim for retaliation under the ADA.

### 4. Discrimination

In Count 5, Plaintiff claims that Defendants terminated her employment in violation of the ADA. The Court construes this to allege a discrimination claim. The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To make a prima facie case, Plaintiff must show "(1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, that is, she is able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (internal citations omitted).

*\*10* Plaintiff's Complaint states a plausible claim that Defendant discriminated against her based on her disability.

ADD-103

First, Plaintiff sufficiently alleges that she is a qualified individual with a disability. (Doc. 4 ¶ 2, 16.) Second, viewing the facts in the light most favorable to Plaintiff, the Court assumes that the Plaintiff was qualified for the job she was hired to perform and could have continued her job with reasonable accommodations. Third, similar to the claim for disability discrimination, Plaintiff alleges sufficient facts to support an inference that her termination was causally linked to her disability. Plaintiff was terminated soon after she advised Defendants that she was disabled and Defendant Smart responded to the information with comments that Plaintiff should "just" quit. (Doc. 4 ¶¶ 25, 27.)

Plaintiff stated a plausible claim that she is entitled to relief under the ADA based on a claim of discrimination.

### E. NMHRA Claims
In Counts 2-4, Plaintiff claims that Defendants violated her rights under the New Mexico Human Rights Act ("NMHRA"). Plaintiff's NMHRA claims parallel her ADA claims. Defendants claim that Plaintiff's claims must be dismissed on procedural grounds. (Doc. 73 at 12.) Specifically, Defendants argue that because Plaintiff filed her claim in federal court and not a New Mexico state district court, she waived her right to appeal. (*Id.*) Citing to the New Mexico statute, Defendants argue that state district courts have exclusive jurisdiction over Plaintiff's appeals under the NMHRA. (*Id.*) For appeals from the New Mexico Human Rights Bureau, the New Mexico statute provides that "[t]he jurisdiction of the district court is exclusive and its judgment is final...." N.M. Stat. Ann. § 28-1-13(C).

Several courts have grappled with the meaning of this statute. *Compare Clayton v. Pioneer Bank*, No. CIV 07-0680 JB/LAM, 2008 WL 5787472, at *9-10 (D.N.M. Dec. 31, 2008) (finding that federal courts can exercise supplemental jurisdiction over NMHRA appeals); *and Padilla v. Davis Selected Advisors, L.P.*, No. CIV 98-0186 JC/LFG, 1998 WL 35433888, at *7 (D.N.M. May 8, 1998) (same) (citing *Wojciechowski v. Harriman*, 607 F. Supp. 631, 634 (D.N.M. 1985)); *with Re v. Vistas*, 173 F.3d 864 (10th Cir. 1999) (stating in dicta that people seeking appeal under NMHRA may not sue in federal district court); *and Royal v. City of Albuquerque*, 653 F. Supp. 102, 108 (D.N.M. 1986) (declining to exercise pendent jurisdiction over NMHRA claim because it was an unsettled question of law). The Court is persuaded that federal courts may exercise jurisdiction over NMHRA appeals.

Federal district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "The conferral [of jurisdiction] is in mandatory terms" though a court could "decline to exercise the supplemental jurisdiction in various circumstances." *Id.* cmt. This legislative grant of authority is "a creature of federal law ... and state law may not control or limit federal jurisdiction." *Wojciechowski*, 607 F. Supp. at 634. "Because states may not abrogate a federal court's ability to exercise pendent jurisdiction, the exclusivity language of N.M. Stat. Ann. § 28–1–13(C) which purports to limit the jurisdiction of the federal court is ineffective." *Padilla*, 1998 WL 35433888, at *7.

In sum, the Court indisputably has original jurisdiction over Plaintiff's federal claims. Because Plaintiff's claims under the NMHRA arise out of the same facts and controversy, the Court may exercise its jurisdiction over Plaintiff's state claims, including her NMHRA claims. Hearing the cases in common is an efficient use of judicial resources. *See Sw. Bell Tel. Co. v. Brooks Fiber Commc'ns of Oklahoma, Inc.*, 235 F.3d 493, 498 (10th Cir. 2000) ("[I]t would be a waste of judicial resources to limit the court's consideration to federal issues only.").

**\*11** Separately, Defendants argue that Plaintiff cannot maintain her NMHRA claims against Defendants in their individual capacities because Plaintiff did not exhaust her administrative remedies against them. (Doc. 73 at 13.) The NMHRA defines "employer" as "any person employing four or more persons and any person acting for an employer." N.M.S.A.1978, § 28–1–2(B). The Supreme Court of New Mexico recognizes that individual defendants can be held personally liable under the NMHRA. *Sonntag v. Shaw*, 22 P.3d 1188, 1193 (N.M. 2001). Defendants correctly contend that in order to hold a defendant individually liable, "a plaintiff must exhaust his or her administrative remedies...." *Id.*

Despite the exhaustion requirement, the New Mexico Supreme Court held that the NMHRA "Charge of Discrimination form fails to provide a fair and adequate opportunity to exhaust administrative remedies against individual defendants as required by the NMHRA." *Lobato v. State Env't Dep't*, 267 P.3d 65, 68 (2011). As a result, the Supreme Court held that "the requisite administrative exhaustion of the NMHRA should not be required in order

ADD-104

for Plaintiff to pursue [her] judicial remedies under the statute." *Id.* at 69. The Supreme Court suggested that the New Mexico's Human Rights Department amend its forms "to instruct filers in plain language to include the names and addresses of all individuals involved." *Id.* The Court takes judicial notice of the fact that the forms Plaintiff had to complete, six months after the *Lobato* opinion was issued, did not include this instruction. (Docs. 73-1; 85-1.) Thus, under *Lobato*, Plaintiff cannot be required to exhaust her administrative remedies before pursuing her NMHRA claims against Defendants in their individual capacities.

Because Plaintiff exhausted her NMHRA claims to the extent necessary, the court denies Defendants' motion to dismiss these claims.

### F. Wrongful Termination Claim

In Count 5, Plaintiff claims that Defendants wrongfully terminated her in violation of New Mexico public policy. New Mexico common law recognizes a separate tort of retaliatory discharge. *See Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 850 P.2d 996, 1006 (N.M. 1993). Defendants argue that they are immune from this tort under the New Mexico Tort Claims Act ("NMTCA"). (Doc. 73 at 15.) They note that it is not enumerated anywhere in the statute. Under the NMTCA, "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by [statute]." N.M. Stat. Ann. § 41-4-4. Without an express waiver, New Mexico governmental entities are not liable for wrongful termination claims. Thus, Plaintiff's wrongful termination claim is dismissed.

### G. Workers Compensation Act

In Count 4, Plaintiff claims that Defendants retaliated against her for initiating a claim under New Mexico's Workers' Compensation Act. Under New Mexico law, "[a]n employer shall not discharge, threaten to discharge or otherwise retaliate in the terms or conditions of employment against a worker who seeks workers' compensation benefits for the sole reason that that employee seeks workers' compensation benefits." N.M. Stat. Ann. § 52-1-28.2. In her Complaint, Plaintiff alleges that she filed a claim for workers' compensation benefits and that Defendants discharged her because of it. (Doc. 4 ¶ 76.)

Defendants claim that Plaintiff is barred from bringing this claim because she did not exhaust her remedies with

the New Mexico Workers' Compensation Administration. (Doc. 73 at 14.) Specifically, Defendants argue that Plaintiff must file her claim under the Workers' Compensation Act with the appropriate administrative division. (Doc. 73 at 14.) Generally, "administrative procedures must be exhausted before the court gains jurisdiction." *Maples v. State*, 791 P.2d 788, 790 (N.M. 1990). The Court notices the procedural posture of this claim: the Court is not reviewing a Workers' Compensation hearing officer's ruling. For this claim, Plaintiff cannot invoke the protection of administrative procedures because she did not properly exhaust her claim.

**\*12** New Mexico law recognizes that the Workers' Compensation Act is not Plaintiff's exclusive remedy for retaliatory discharge. *See Michaels v. Anglo Am. Auto Auctions, Inc.*, 869 P.2d 279, 281 (N.M. 1994). ("[I]ssues involving the hiring and firing of employees are independent of, and separate from, the cause of action contemplated by the Workers' Compensation Act.") (quotations omitted). The New Mexico Supreme Court permitted a plaintiff to bring a retaliatory discharge claim based on the claim that the employer terminated him in violation of the clear public policy announced in the Workers' Compensation Act. *Id.* However, New Mexico governmental entities have not waived their immunity for wrongful termination claims. Thus, Plaintiff cannot bring her claim under the Workers' Compensation Act or under the tort of retaliatory discharge. Accordingly, Plaintiff's claim is dismissed.

### H. Workplace Violence and Negligent Supervision

In Count 6, Plaintiff claims that Defendants are liable for the torts of workplace violence and negligent supervision. Defendants argue that they are immune from these claims under the NMTCA. (Doc. 73 at 15.) In her Response, Plaintiff withdrew the claims in Count 6. (Doc. 85 at 17.) Accordingly, Count 6 is dismissed.

### I. First Amendment Claim

In Count 7, Plaintiff claims that Defendants violated her constitutional rights guaranteed by the First Amendment. Defendants claim that they are immune under the Eleventh Amendment and that they are not "a person" suable under Section 1983. (Doc. 73 at 19.)

The Supreme Court clearly ruled that "a State is not a 'person' within the meaning of § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989). As such, Plaintiff cannot bring her claims against ENMU and the Defendants in their official

ADD-105

Long v. Eastern New Mexico University Board or Regents, Not Reported in Fed. Supp....
2015 WL 13667230

capacities. State officials, however, are persons within the definition of the statute. The Eleventh Amendment does not bar suits against state officials sued in their personal capacity. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). Defendants sued in their personal capacities, however, are entitled to qualified immunity.

Defendants claim that Plaintiff failed to plead claims against the Defendants in their personal capacities, requesting the Court to adopt the more stringent pleading standards that other courts have adopted. Plaintiff's Complaint does not specify whether she brings her claims against the individually-named Defendants in their official or their personal capacity. In her Response, Plaintiff clarifies that she intended to sue Defendants in their official and personal capacities, as evidenced by the factual averments. (Doc. 85 at 2.)

In the Tenth Circuit, Plaintiff has sufficiently named Defendants in both their official and personal capacities. *See Trapp v. U.S. Marshals Serv.*, 139 Fed.Appx. 12, 14-15 (10th Cir. 2005). In *Trapp*, the Tenth Circuit concluded that a pro se plaintiff, whose complaint expressly indicated that he was suing defendants only in their official capacities, nonetheless named the defendants both in their official and personal capacities. *Id.* at 15. Based on "the context of the complaint," including the plaintiff's factual averments and his attempt to seek punitive damages, the Tenth Circuit ruled that the plaintiff raised claims against the defendants in both capacities. *Id.* The Tenth Circuit was careful to point out that the individual defendants did not suffer any prejudice from the meager notice because they argued qualified immunity in their motion to dismiss. *Id.* The Court finds the same is true here. As a whole, Plaintiff's Complaint raises claims against Defendants in both capacities. Additionally, Defendants raised qualified immunity arguments in their Motion to Dismiss, anticipating against them in both capacities. (Doc. 73 at 20.)

Defendants finally argue that Plaintiff's First Amendment claim fails as a matter of law. Public employees are protected by the First Amendment and "public employers may not condition employment on the relinquishment of constitutional rights." *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014). To state a claim, the public employee must speak "as a citizen on a matter of public concern." *Id.* at 2378. If the public employee can show that an employer retaliated against her for speaking about a matter of public concern, then the court must consider "whether the relevant government entity had

an adequate justification for treating the employee differently from any other member of the general public." *Id.*

**\*13** In her Complaint, Plaintiff alleges that Defendants retaliated against her for expressing:

> "[H]er opinions regarding employer wrongdoing and because of her complaints and stated opinions about her being significantly underpaid and poorly treated, about the harassment against her for complaining about Defendant Quick, and her complaints regarding Defendant ENMU's failure to accommodate her disability, and for her complaints about the mishandling of her claim for workers['] compensation."

(Doc. 4 ¶ 101.) The entirety of Plaintiff's opinions relate to her own work conditions. Defendants argue that Plaintiff's speech was "personal in nature to her" and not a matter of public concern. (Doc. 73 at 21-22.)

"Speech involves matters of public concern 'when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest.' " *Lane*, 134 S. Ct. at 2380 (quoting *Snyder v. Phelps*, 131 S.Ct. 1207, 1216 (2011)). "The inquiry turns on the 'content, form, and context' of the speech." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). "Speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern." *Morris*, 666 F.3d at 661 (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996)). Private grievances over personal working conditions, like the complaints Plaintiff alleges she expressed, do not "pertain to a matter of public concern on [their] face." *Id.* at 662.

Because the content of Plaintiff's speech was not related to a matter of public concern, Plaintiff has not stated a claim for a First Amendment violation. Defendants are entitled to qualified immunity and Plaintiff's claim is dismissed.

### J. State Assault and Battery Claim

In Count 8, Plaintiff claims that Defendants are liable for Defendant Quick's assault and battery. Defendants argue that they are immune under the NMTCA. (Doc. 73 at 15-17.) Plaintiff does not contest this reading of New Mexico statutory law, but responds that she can sue the tortfeasor, Defendant Quick. (Doc. 85 at 13.)

ADD-106

An assault under New Mexico law requires an "unlawful act, threat, or menacing conduct which causes another person to reasonably believe [s]he is in danger of receiving an immediate battery." *See* N.M. Stat. Ann. § 30–3–1(B); *see also Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1100 (10th Cir. 2005). A battery under New Mexico law requires an unlawful, harmful, intentional, or offensive touching of another. *Chavez*, 396 F.3d at 1100 (citing *State v. Ortega*, 827 P.2d 152, 155 (Ct. App. 1992)). Plaintiff states in her Complaint that Defendant Quick regularly pushed down on Plaintiff's shoulder tumor and once threatened her "with clenched fists." (Doc. **4** ¶¶ 18-19.) These allegations state a plausible claim for assault and battery against Defendant Quick. The assault and battery claims against all other Defendants are dismissed.

**K. Contract Claims**

In Counts 9-11, Plaintiff claims that Defendants violated her contractual rights under New Mexico state law. Citing New Mexico Annotated Statute section 37-1-23(A), Defendants argue that they are immune from contract claims unless the employee had "a valid written contract." (Doc. 73 at 22.) Plaintiff did not have a written contract with EMNU. In her Response, Plaintiff withdrew the claims in Counts 9-11. (Doc. 85 at 17.) Accordingly, Counts 9-11 are dismissed.

**IV. CONCLUSION**

**\*14** Under the *Ex Parte Young* exception, Plaintiff can proceed with her claim for FMLA interference, ADA reasonable accommodation, ADA retaliation, and ADA discrimination. However, the relief she can seek is limited to reinstatement.

Plaintiff did not allege sufficient facts in support of her other federal claims. Plaintiff failed to state a claim to support her ADEA claim, Title VII claims, ADA hostile work environment claim, and First Amendment claim.

Under state law, Plaintiff can proceed with her NMHRA disability claims. She may also bring her assault and battery claim against Defendant Quick. All other state claims are barred under the NMTCA.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss and/or Motion for Summary Judgment (Doc. 73) is **GRANTED** in part and **DENIED** in part.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 13667230

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-107

Mercer v. Viacombcs/Paramount, Slip Copy (2024)

2024 WL 3553133

2024 WL 3553133
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Amirah MERCER, Plaintiff,

v.

VIACOMCBS/PARAMOUNT, Defendant.

22 Civ. 6322 (LGS)
|
Signed July 26, 2024

**Attorneys and Law Firms**

Amirah Mercer, Baltimore, MD, Pro Se.

Marjorie Beth Kulak, Kauff McGuire & Margolis LLP, New York, NY, for Defendant.

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

**\*1** Pro se Plaintiff Amirah Mercer brings this action against Defendant VIACOMCBS/PARAMOUNT, for violations of the Americans with Disabilities Act ("ADA"), the New York City Human Rights Law ("NYCHRL"), the New York State Human Rights Law ("NYSHRL"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Genetic Information Nondiscrimination Act ("GINA"), the Rehabilitation Act, Centers for Disease Control ("CDC") guidelines, Occupational Safety and Health Administration ("OSHA") guidelines, 42 U.S.C. § 1983 ("Section 1983") and 18 U.S.C. § 242, and for wrongful termination. Defendant moves under Rule 12(b)(6) to dismiss all claims in the Second Amended Complaint ("SAC"). The motion is granted because the SAC fails to state any claim upon which relief can be granted.

**I. BACKGROUND**

The following facts are taken from the SAC, its attachments and documents it incorporates by reference. *See Bellin v. Zucker, 6 F.4th 463, 473 (2d Cir. 2021).* These facts are assumed to be true for purposes of this motion and are construed in the light most favorable to Plaintiff as the non-moving party. *See Int'l Code Council, Inc. v. UpCodes Inc., 43 F.4th 46, 53 (2d Cir. 2022).*

Plaintiff was employed by Defendant. In the fall of 2021, Defendant required all employees who worked in-person at Defendant's offices to become fully vaccinated against COVID-19 by January 10, 2022. Employees were allowed to seek exemptions from the mandate for medical or religious accommodations.

Plaintiff submitted several requests for exemption from the vaccination requirement. In September 2021, Plaintiff submitted an exemption request through Defendant's third-party human resources ("HR") and leave platform called UNUM, which resulted in her being referred to Defendant's HR department. On November 2, 2021, Plaintiff submitted a request for a medical exemption to Defendant's HR department and attached two supporting documents, which are also attached to the SAC. The first document is a fill-in-the-blank, unsigned "Affidavit for Tribal Medical Contraindication to Vaccine," purportedly from Dr. Amaru Xi-Ali on behalf of the Aboriginal Medical Association, dated September 14, 2021. The document states that Plaintiff is contraindicated from receiving a COVID-19 vaccine because "Clients genetic bio-variance could cause massive allergic reaction to mRNA complimentary modified dna in vaccine and induce massive receptor membrane changes that impact the HLA/MHC formation of the client that adversely impacts client's immunity permanently and clients future offspring." The second document is titled Tribal Medical Contraindication to Vaccination issued by the Indigenous Political Authority, Xi-Amaru Tribal Government. The document states that people of the Xi-Amaru tribal government have a "natural, personal and political right" to exemptions from required vaccinations, and that "[f]orced Vaccinations are an ACT OF GENOCIDE ... against Peoples allergic to their contents and who can have short term and long-term adverse impact due to the vaccination." The document is signed by Plaintiff and notarized on September 16, 2021.

**\*2** On November 24, 2021, Plaintiff received a response from Defendant's HR department denying Plaintiff's medical exemption request. The response states, "Although these documents refer to the possibility of allergic reactions to the COVID-19 vaccine (and other impacts), and other individuals who have allergic reactions to the COVID-19 vaccine, these documents do not advise that you presently have any medical condition which renders you medically unable to receive a COVID-19 vaccine."

ADD-108

Mercer v. Viacomcbs/Paramount, Slip Copy (2024)

2024 WL 3553133

Plaintiff spoke by phone with another member of Defendant's HR department on November 29, 2021, and received a follow-up email from HR on December 6, 2021. The email states that Plaintiff could apply for a religious accommodation and provided Plaintiff with the process for doing so.

On December 6, 2021, Plaintiff submitted a religious accommodation request, which was denied on January 7, 2022. On January 26, 2022, Plaintiff re-submitted the supporting documents previously submitted with her medical exemption request. On January 31, 2022, Plaintiff submitted a request to continue working from home, which was denied. Plaintiff was terminated on March 21, 2022.

Plaintiff submitted an inquiry with the Equal Employment Opportunity Commission (the "EEOC") on July 19, 2022. The adverse actions listed include denial of Plaintiff's medical and religious accommodation requests, resulting in her termination. Plaintiff responded to the question of whether she has a disability with the statement, "I do not have a disability." On July 22, 2022, Plaintiff filed this action.

On September 21, 2022, Plaintiff filed a Charge of Discrimination with the EEOC, stating that her medical exemption was denied despite her providing legal and medical documentation. The only box selected as a reason for discrimination is Genetic Information. At Plaintiff's request, the EEOC issued a notice of right to sue on September 28, 2022, which states that the notice is issued under Title VII, the ADA or GINA.

On December 18, 2022, before Defendant was served, Plaintiff filed a first amended complaint. Defendant moved to dismiss the first amended complaint on July 22, 2023. After briefing was completed on the motion to dismiss, on October 2, 2023, Plaintiff filed the operative SAC, which the Court construed as a request for leave to amend and granted. Defendant moved to dismiss the SAC.

## II. STANDARD

On a motion to dismiss, a court accepts as true "all well-pleaded factual allegations" and draws all reasonable inferences in favor of the non-moving party but does "not consider conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).[1] To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a complaint to allege facts that are consistent with liability; it must "nudge[ ] ... claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which their claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019).

**\*3**  In considering a motion to dismiss for failure to state a claim, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024). "Moreover, even if a document is not expressly incorporated by reference, the court may still consider it if the complaint relies heavily upon its terms and effect, rendering the document integral to the complaint." *Id.*

It is well established that "pro se submissions are reviewed with special solicitude and must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021).

## III. DISCUSSION

### A. ADA Claims (Counts I, VIII, IX)

As explained below, Plaintiff has exhausted her administrative remedies to pursue a disability discrimination claim under the ADA, but the SAC fails to plead sufficient facts to state a claim under the ADA because it does not allege facts showing that Plaintiff has a legally protected disability.

### 1. Exhaustion

Plaintiff has administratively exhausted her ADA claim for disability discrimination, but has not exhausted her claim

ADD-109

2024 WL 3553133

for retaliation. Under the ADA, in order to pursue a claim in federal court, plaintiffs "must exhaust administrative remedies through the EEOC." *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018); *accord Rosado v. Port Auth. of N.Y. & N.J.*, No. 22-587, 2024 WL 658776, at *2 (2d Cir. Feb. 16, 2024) (summary order) ("[P]laintiffs asserting claims under the ADA must first file a charge of discrimination with the EEOC."). Administrative exhaustion in both "the Title VII and ADA context is not a jurisdictional prerequisite, but only a precondition to bringing suit that can be waived by the parties or the court." *Anderson v. City of New York*, No. 22 Civ. 3990, 2024 WL 183103, at *6 n.6 (S.D.N.Y. Jan. 17, 2024). "However, the Court should grant a motion to dismiss if [non]exhaustion is clear from the face of the complaint (and incorporated documents)." *Id.*

"[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Soules*, 882 F.3d at 57. A claim "is reasonably related to conduct in an EEOC charge if ... the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination." *Id.*

Defendant argues that Plaintiff's ADA claims were not included in her EEOC charge and are not reasonably related to the charge as the charge includes only a claim of genetic information discrimination and not claims of disability discrimination. Although Plaintiff focuses on genetic information as the source of the discrimination and states that she does not have a disability in her EEOC inquiry, it is reasonable to infer that a denied medical accommodation, which was the primary claim made, would implicate the ADA and that the EEOC would investigate possible disability discrimination on that basis. Defendant's arguments to the contrary based on *Shi v. Batgatelle International, Inc.*, No. 20 Civ. 8473, 2023 WL 4187557, at *7 (S.D.N.Y. June 26, 2023), are unpersuasive. In that case, the plaintiff's primary complaints in the charge were race- and national origin-based discrimination, and she did not check the box for a disability claim. *Id.* Here, both Plaintiff's EEOC inquiry and charge primarily reference a denied medical accommodation request. Plaintiff's ADA claims based on disability discrimination are reasonably related to the claims Plaintiff exhausted through the EEOC.

**\*4** Plaintiff has not exhausted her retaliation claims, either under the ADA or Title VII, as those claims are not reasonably related to the conduct in the charge. The charge does not reference any retaliation for seeking a vaccine exemption. The charge states that Plaintiff was "unfairly released from the company," but does not suggest Plaintiff believed that this termination was the result of her seeking accommodations or the result of any activity protected by the ADA or Title VII. Rather, the charge suggests that Plaintiff's claim is that she was wrongly denied a medical exemption, that she refused the vaccine despite her lack of exemption and that, as a result, she was terminated for failing to comply with company policy. Plaintiff also did not select the box for retaliation on the charge. The EEOC could not reasonably infer that Plaintiff sought to bring a claim that her termination was in retaliation for her seeking an accommodation. Plaintiff therefore has not administratively exhausted her ADA or Title VII claims of retaliation for seeking an exemption to the vaccine mandate.

Plaintiff also filed this suit prior to obtaining a right to sue notice, but that failure is excused on equitable grounds. "The right to sue letter is a necessary prerequisite to filing suit," both under the ADA and Title VII. *Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 177 (S.D.N.Y. 2023) (discussing the right to sue notice under the ADA); *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (discussing the right to sue notice under Title VII), *vacated and remanded on other grounds*, No. 22-1251, 2024 WL 2813563 (2d Cir. June 3, 2024). This requirement is not jurisdictional and may be "waived by the parties or the court," or "excused by the [c]ourt on equitable grounds." *Syeed*, 568 F. Supp. 3d at 321. "Courts in this circuit have already held that where a plaintiff has received a right to sue letter subsequent to commencement of a [discrimination] action and while the federal action is still pending, the statutory exhaustion requirements have been met based on equitable principles." *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 651 F. Supp. 3d 695, 702 n.1 (S.D.N.Y. 2023). Plaintiff filed suit on July 22, 2022, after filing her initial inquiry with the EEOC on July 19, 2022, and did not receive a right to sue letter until September 28, 2022. Because Plaintiff received her right to sue notice while this action was pending, her filing suit before receiving the notice is excused on equitable grounds.

### 2. Protected Disability

The SAC does not state a sufficient ADA claim because the SAC does not allege that Plaintiff had a disability within the meaning of the ADA. A sufficient ADA claim must allege, among other things, facts showing that the plaintiff had a

ADD-110

disability. *See Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 23-466, 2024 WL 3289475, at *1 (2d Cir. July 3, 2024)* (summary order). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002); *accord Patterson v. EmblemHealth Inc.*, No. 22 Civ. 2177, 2023 WL 5671531, at *4 (S.D.N.Y. Sept. 1, 2023). After amendment of the ADA in 2008, "the term 'substantially limits' shall be construed broadly in favor of expansive coverage ... and is not meant to be a demanding standard. Relatedly, the term 'substantially limits' is to be interpreted and applied to require a lower degree of functional limitation than the standard required" prior to the amendment. *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 (2d Cir. 2021).

The Complaint alleges that "Plaintiff has a disability as defined by the ADA," "has a medical allergy/contraindication to all COVID-19 Vaccine," "has never received any COVID-19 vaccines" and that she can be provided an exemption if she "has known diagnosed allergy to component in all three Covid-19 vaccines." Among the exhibits to the Complaint are two documents that Plaintiff submitted to Defendant in support of her request for a medical exemption. The first document is a fill-in-the-blank, "Affidavit for Tribal Medical Contraindication to Vaccine." Handwritten entries are provided for Plaintiff's name, date of birth, the type of immunization ("COVID-19 / CORONAVIRUS"), and date of the affidavit. Included in the typewritten text is the typewritten signature of the purported affiant -- Dr. Amaru Xi-Ali on behalf of the Aboriginal Medical Association. Also typewritten is the statement that Plaintiff "is medically contraindicated" from receiving a COVID-19 vaccine because "Clients genetic bio-variance could cause massive allergic reaction ...." The document does not state that Plaintiff actually has an allergy to the COVID-19 vaccine or that the vaccine would cause her to have an allergic reaction, merely that it could. The second document, titled "Tribal Medical Contraindication to Vaccination," is issued by the Indigenous Political Authority, Xi-Amaru Tribal Government, but does not address Plaintiff's own medical condition.

*5 These allegations and documents are insufficient to plead that Plaintiff has a disability as defined by the ADA. The SAC asserts in a conclusory manner that Plaintiff has a qualifying disability, but the SAC and its exhibits also make clear that the assertion of an allergy to the vaccine

is speculative and medically unsupported. The SAC states not only that Plaintiff has never had a COVID vaccine, but also that she has never had any vaccines. Accordingly, the SAC does not allege that Plaintiff has suffered an allergic reaction to the vaccine, much less one that substantially limits a major life activity, or any activity at all. Likewise, the SAC states possible COVID-19 vaccination side effects but does not allege that Plaintiff has experienced any of these side effects. An alleged medical contraindication to a vaccine, even if predicated on prior adverse reactions to a vaccination, is insufficient to allege a protected disability if it does not result in "a substantial limitation of a major life activity." *See Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d 154, 160, 164-65 (S.D.N.Y. 2020), *aff'd*, No. 20-3624, 2021 WL 5986999 (2d Cir. Dec. 17, 2021) (finding that a plaintiff who had previously experienced allergic reaction to flu vaccination, and was contraindicated from receiving flu vaccine on that basis, had failed to show that she had a protected disability under the ADA). The SAC does not allege that Plaintiff has a disability as defined by the ADA, and as a result, the SAC does not state a claim of disability discrimination under the ADA.

In her opposition to the motion to dismiss, Plaintiff seems to argue that she also has asthma, which counts as a disability under the ADA. "[I]t is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." *Wang v. Clocpen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 227 n.5 (S.D.N.Y. 2023). Such an amendment likely would be futile because any claim for wrongful termination under the ADA would have to plead facts alleging that Plaintiff "suffered adverse employment action because of [her] disability." *Woo v. Strada*, 949 F.3d 89, 93 (2nd Cir. 2020). Similarly, any claim for failure to accommodate under the ADA would have to plead facts alleging that Plaintiff could have performed the essential functions of her job with a reasonable accommodation and that Defendant refused to make that accommodation. *See Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023). Nothing in the record suggests that Plaintiff was fired on account of her having asthma, or that she requested an exemption from the vaccine because of her asthma.

**B. Other Claims Based on Medical Disability**

**1. NYCHRL and NYSHRL Claims (No Count)**

ADD-111

Mercer v. Viacomcbs/Paramount, Slip Copy (2024)

2024 WL 3553133

The SAC is construed to assert claims for failure to accommodate and wrongful termination under the NYCHRL or the NYSHRL. These claims are dismissed for the same reasons as the SAC's ADA claims.

Section 8-107(1)(a) of the NYCHRL prohibits employment discrimination based on an "actual or perceived ... disability." N.Y.C. Admin. Code § 8-107(1)(a). The statute defines "disability" as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." *Id.* § 8-102. The NYCHRL is broader than the ADA in its definition of disability because the NYCHRL does not "require[ ] any showing that the disability substantially limits a major life activity." *Statuto v. NIKE, Inc.*, No. 23 Civ. 1788, 2024 WL 1380810, at *3 (S.D.N.Y. Mar. 29, 2024). "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 68 (2d Cir. 2021).

The NYSHRL is now also more generous than federal law. For claims that accrued on or after October 11, 2019, the effective date of recent amendments, "the standard for [NYSHRL] claims [is] closer to the standard of the NYCHRL." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021). Because all of Plaintiff's NYSHRL claims stem from events occurring after the 2019 amendments, they "rise and fall with her NYCHRL claims." *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) *vacated and remanded on other grounds*, No. 22-1251, 2024 WL 2813563 (2d Cir. June 3, 2024).

 *6 The alleged contraindication to the vaccine does not meet the NYCHRL's or NYSHRL's more lenient standard for a disability. The SAC, as described above, alleges that Plaintiff may have an allergic reaction to the vaccine. It does not allege that Plaintiff actually has an allergy that constitutes a physical or medical impairment. As a result, the SAC does not state a claim under the NYCHRL or NYSHRL.

### 2. Wrongful Termination (Count VIII)

The SAC includes allegations of wrongful termination as a separate count of the complaint but does not raise additional causes of action for that count beyond Title VII, the ADA and OSHA. As explained, the SAC does not state claims under these laws or regulations, and so this count is dismissed.

### C. GINA Claims (Count II)

The SAC does not state a claim under GINA because the SAC does not allege facts sufficient to show that Defendant discriminated against Plaintiff because of her genetic information. GINA prohibits employment discrimination "because of genetic information with respect to the employee," and prohibits employers from "request[ing], requir[ing], or purchas[ing] genetic information with respect to an employee," with certain exceptions. 42 U.S.C. § 2000ff-1. GINA defines genetic information as "information about -- (i) such employee's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." *Id.* § 2000ff. To state a claim under GINA, "a plaintiff must allege (1) that [she] was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from Plaintiff's genetic tests." *Harris v. Archcare at Mary Manning Walsh Nursing Home*, No. 23 Civ. 1799, 2023 WL 5101503, at *2 n.2 (S.D.N.Y. Aug. 7, 2023).

The SAC alleges that Defendant requested authorization to access Plaintiff's genetic information, used genetic information to terminate Plaintiff wrongfully and discriminated against Plaintiff due to her choice not to modify her genetic structure by receiving the vaccine. The SAC also incorporates an authorization, signed by Plaintiff, allowing health information to be shared with UNUM, Defendant's third-party leave administrator. These allegations are insufficient to state a claim under GINA as they do not allege Plaintiff was terminated because of information from Plaintiff's genetic tests as defined by GINA. See *Karpaiyan v. CVS Health Corp.*, No. 19 Civ. 8814, 2021 WL 4341132, at *7 n.13 (S.D.N.Y. Sept. 23, 2021) (dismissing the plaintiff's GINA claim because "[n]owhere in the Amended Complaint does [p]laintiff suggest that any [d]efendant possessed or considered any of his genetic information, as statutorily defined."). The SAC alleges only that Defendant and UNUM were authorized to access Plaintiff's health information, but does not allege that either had access to -- or did at any point access -- any specific genetic testing information regarding Plaintiff or her family, or any information regarding diseases or disorders in her family. The allegation that Plaintiff chose not to modify her genetic structure is not the type of genetic information protected by GINA, which requires discrimination because of specific genetic test results or

ADD-112

Mercer v. Viacomcbs/Paramount, Slip Copy (2024)

2024 WL 3553133

diseases that Plaintiff or her family currently have. *See* 42 U.S.C. § 2000ff. Nor does the SAC allege that Defendant took adverse employment action against Plaintiff because of any genetic information Defendant had about Plaintiff. The SAC does not state a claim under GINA.

### D. CDC Guidelines (Count III)

**\*7** The SAC does not state a claim under the CDC guidelines because those guidelines do not have the force of law. The SAC alleges that Defendant's failure to accept Plaintiff's contraindication documents violated CDC guidelines. The CDC's COVID-19 guidelines never "purported to interpret some rule or regulation with force of law capable of being violated," and "did not constitute laws, rules, or regulations." *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 98-99 (S.D.N.Y. 2020); *see also Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (noting that agency policy statements, manuals and enforcement guidelines "lack the force of law"). As a result, failing to follow CDC guidelines does not create a private right of action that can be pursued before a court. The SAC's allegations related to CDC guidelines do not state a claim upon which relief can be granted.

### E. OSHA (Counts IV, V and VI)

The SAC does not state a claim under OSHA regulations as OSHA can be enforced only by the Secretary of Labor. "Under OSHA, employees do not have a private right of action." *Donovan v. Occupational Safety & Health Rev. Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983) (OSHA "permit[s] the Secretary, proceeding before an administrative agency, (1) to obtain abatement orders requiring employers to correct unsafe working conditions and (2) to impose civil penalties on any employer maintaining any unsafe working condition."); *accord Quirk v. DiFiore*, 582 F. Supp. 3d 109, 115 (S.D.N.Y. 2022) (an employee "cannot bring a lawsuit under OSHA."). The OSHA claims are dismissed.

### F. Title VII (Count VII)

Unlike the medical disability claims, the SAC's Title VII claim of discrimination on the basis of religion and Title VII claims of retaliation for seeking accommodations, discussed above, were not administratively exhausted. Like ADA claims, Title VII claims are exhausted if they were brought before the EEOC or if they are reasonably related to claims brought before the EEOC. *See Buon v. Spindler*, 65 F.4th 64, 77 (2d Cir. 2023). A claim is reasonably related to the conduct in an EEOC charge if "the claim would fall within

the reasonably expected scope of an EEOC investigation of the charges of discrimination." *Soules*, 882 F.3d at 57.

Plaintiff's initial EEOC charge does not discuss conduct that is reasonably related to her current claims. The SAC alleges Title VII claims of discrimination on the basis of religion and retaliation for seeking accommodations. Plaintiff's EEOC charge states only that her "medical exemption was denied despite providing legal and medical documentation." The charge does not reference religion or Plaintiff's beliefs and, as discussed above, the only basis for discrimination that Plaintiff selected on the EEOC charge was genetic information. A claim of religious discrimination would not fall within the reasonably expected scope of an EEOC investigation as there was no basis in the charge for the EEOC to determine that Plaintiff had raised any religion-related claims. *See Anderson*, 2024 WL 183103, at \*5 (dismissing race and religion discrimination claims for lack of exhaustion where in the EEOC charge, "[n]owhere does [p]laintiff's description of the alleged discrimination mention, or even hint at, her race or religion."); *Rusis v. Int'l Bus. Machs. Corp.*, 529 F. Supp. 3d 178, 204 (S.D.N.Y. 2021) (collecting cases and concluding plaintiff failed to exhaust ADEA claims when he did not check the box for age discrimination or allege any facts concerning discrimination based on age before the EEOC).

Plaintiff's initial EEOC inquiry states that she had applied for and been denied both a medical and a religious exemption and that she "had the support of [her] manager that vaccination was against [her] beliefs," but again states only genetic information as the basis for the complaint and does not detail what Plaintiff's beliefs were. This information was also omitted from Plaintiff's eventual EEOC charges. The initial inquiry is therefore not sufficient to bring Plaintiff's religious discrimination claims into the reasonably expected scope of the EEOC investigation, and these claims have not been administratively exhausted.

### G. Rehabilitation Act Claim (Count X)

**\*8** The SAC fails to state a Rehabilitation Act claim because the SAC does not allege that Defendant receives federal funding. "The Rehabilitation Act provides that no individual shall be subject to discrimination in any program or activity receiving federal financial assistance solely by reason of her or his disability." *Natofsky v. City of New York*, 921 F.3d 337, 344 (2d Cir. 2019); *Ramirez v. Bernstein*, No. 17 Civ. 3825, 2020 WL 7230729, at \*7 (S.D.N.Y. Dec. 7, 2020) ("Additionally, to establish a violation under [the

ADD-113

Mercer v. Viacomcbs/Paramount, Slip Copy (2024)

2024 WL 3553133

Rehabilitation Act], a plaintiff must show that the defendants receive federal funding."). The Rehabilitation Act claim is dismissed.

### H. 42 U.S.C. § 1983 (No Count)

The SAC references Section 1983 and is construed to assert a claim that Defendant violated Plaintiff's Due Process and First Amendment rights. That claim is dismissed because Section 1983 claims can be brought only against state government entities or individuals acting on behalf of a state government. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Buon, 65 F.4th at 78. The SAC does not allege that Defendant was a state actor or acting under the color of state law. This claim is dismissed.

### I. 18 U.S.C. § 242 (No Count)

The SAC references 18 U.S.C. § 242, a criminal statute, and is deemed to assert a claim that Defendant's rejection of Plaintiff's contraindication violated this statute. This allegation likewise does not state a claim as "federal criminal statutes do not provide private causes of action." Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order); accord Jallow v. City of New York, No. 20 Civ. 6511, 2021 WL 1867629, at *3 (S.D.N.Y. May 7, 2021). This claim is dismissed.

### J. Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15, a "court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Denial of leave to amend is proper if amendment would be futile. McCracken v. Verisma Sys., Inc., 91 F.4th 600, 609 (2d Cir. 2024). Ultimately, it is "within the sound discretion of the court whether to grant leave to amend." John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994); accord Hartmann v. Popcornflix.com LLC, 690 F. Supp. 3d 309, 321 (S.D.N.Y. 2023).

Plaintiff may seek leave to amend only her ADA, NYCHRL, NYSHRL, GINA and Rehabilitation Act claims. To decide whether to seek permission to amend, Plaintiff shall review this decision carefully as to each claim she seeks to amend to ensure that any future pleadings allege required facts. To state an ADA, NYCHRL or NYSHRL claim for disability discrimination, Plaintiff would have to plead additional facts explaining why she personally is disabled as defined by those laws. To state a GINA claim, Plaintiff would have to plead additional facts that demonstrate what specific genetic information Defendant had possession of and how that information was used to discriminate against Plaintiff. To state a Rehabilitation Act claim, Plaintiff would have to plead additional facts to show that Defendant received federal funding. Plaintiff should not seek leave to amend any claim for which she does not have sufficient additional facts. Plaintiff shall not seek to amend claims based on CDC guidelines, OSHA guidelines, Section 1983, 18 U.S.C. § 242 or Title VII because the deficiencies in those claims cannot be cured.

**\*9** If Plaintiff chooses to seek leave to amend, she may do so by filing a letter on or before August 23, 2024, explaining how the deficiencies are cured and including as an attachment a proposed third amended complaint marked to show changes compared with the SAC. If Plaintiff determines that she cannot in good faith cure the deficiencies, or for any reason does not file such a letter, the case will be dismissed with prejudice.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**. By **August 23, 2024**, Plaintiff may, but is not required to, seek leave to amend as set forth above.

### All Citations

Slip Copy, 2024 WL 3553133

---

**Footnotes**

ADD-114

2024 WL 3553133

1       Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

---

**End of Document**                                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-115

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 183

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

2022 WL 3998643
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Danielle L. NERI, Plaintiff,

v.

BOARD OF EDUCATION FOR ALBUQUERQUE
PUBLIC SCHOOLS and Cynthia Hoppman, Defendants.

CIV 19-8 JCH/SCY
|
Signed September 1, 2022

**Attorneys and Law Firms**

Danielle L. Neri, Elephant Butte, NM, for Plaintiff.

Jennifer G. Anderson, Nathan T. Nieman, Modrall, Sperling,
Roehl, Harris, & Sisk, PA, Albuquerque, NM, Laura Meghan
Unklesbay, Albuquerque, NM, for Defendants.

**PROPOSED FINDINGS AND
RECOMMENDED DISPOSITION**

STEVEN C. YARBROUGH, UNITED STATES
MAGISTRATE JUDGE

**\*1** Plaintiff Danielle Neri quit her teaching job with Atrisco
Heritage Academy (part of Albuquerque Public Schools) after
an assistant principal, Defendant Cynthia Hoppman, moved
her from an IEP position to a math teaching position. Plaintiff
has long suffered from post-traumatic stress syndrome
("PTSD") and, although she makes several arguments, the
gravamen of her lawsuit is that, in violation of the American
with Disabilities Act and the New Mexico Human Rights
Act, Defendants took adverse action against her because of
her disability. After this Court granted summary judgment
in Defendants' favor on all Plaintiff's federal claims and
remanded her state-law claims, she appealed to the Tenth
Circuit. The Tenth Circuit affirmed in part and reversed in
part, remanding some federal claims back to this Court. *See*
Neri v. Bd. of Educ. for the Albuquerque Pub. Schs.,
860 F. App'x 556 (10th Cir. 2021). Upon remand, the
parties filed a number of motions: (1) Plaintiff's Motion to
Reinstate her Federal Discrimination Claims, Doc. 140; (2)
Defendants' Motion to Dismiss or in the Alternative Motion
for Summary Judgment on Purported Retaliation Claim(s),
Doc. 154; (3) Defendants' Motion for Summary Judgment

on State Claims and Damages, Doc. 168; (4) Defendants'
Motion for Reconsideration, Doc. 169; (5) Plaintiff's Motion
to Strike Defendants' Motions for Summary Judgments,
Motion to Dismiss and Motion for Reconsideration due to
Non-Compliance with Local Civil Rules of the United States
District Court for the District of New Mexico (Doc. 183);
(6) Plaintiff's Motion for Expedited Order for Defendants to
File Other Relevant Parts of Deposition (Doc. 184); and (7)
Plaintiff's Motion for Leave to File Surreply to Defendants'
Supplemental Briefing in Support of Defendants' Motion
for Summary Judgment on State Claims and Damages
(Doc. 196). Additionally, the parties filed two sets of
supplemental briefing: Plaintiff's Memorandum in Support
of her Motion to Reinstate Federal Discrimination Claims
with Particular Reference to her Retaliation Claim (Doc.
153) and Defendants' Supplemental Briefing in Support of
Defendants' Motion for Summary Judgment on State Claims
and Damages (Doc. 168).

After addressing each of these motions, I ultimately
recommend that the Court find the following claims are no
longer viable: Plaintiff's claims under the ADA and NMHRA
for alleged discrimination based on actual impairment or
record of impairment; hostile work environment; constructive
discharge; failure to accommodate; and FMLA and disability
retaliation claims. [1] This leaves on track for trial Plaintiff's
claims for alleged discrimination under the ADA and the
NMHRA based on a demotion because APS regarded Plaintiff
as being disabled. For the remaining claims, I recommend
that the Court find Plaintiff is unable to recover back and
front pay and compensatory damages for her auto loan,
moving expenses, and future pecuniary losses, but may seek
compensatory damages for emotional distress.

**FACTUAL BACKGROUND**

**\*2** The motions presently before the Court are a mix of
summary judgment, motions to dismiss, and other types
of motions relating to several different claims brought by
Plaintiff. To the extent resolution of a motion is dependent on
facts the Court must find, I will set forth the facts I recommend
the Court find specific to each motion when I analyze that
specific motion (as different levels of deference that apply to
different motions could affect factual findings). For context,
however, I recite from the Tenth Circuit's Order the following
factual background:

ADD-116

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 184

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

Mrs. Neri worked for APS as a special education math teacher for several years. Starting in the 2013-2014 school year, however, she was chosen to fill a new position as the Individualized Educational Program (IEP) Teacher at a high school in Albuquerque with a large number of special-education students. As the IEP Teacher, her duties included ensuring that the school met federal standards for special education; creating procedures for IEPs; training teachers on IEP requirements; and facilitating and conducting meetings with students, parents, teachers, and service providers regarding students' IEPs. Mrs. Neri's first two school years as the IEP Teacher were uneventful.

Things changed in the 2015-2016 school year. Mrs. Neri asserts that she "was under a yearlong attack, a group hunt orchestrated by" her supervisor, Ms. Hoppman. Aplt. Opening Br. at 18. "This attack was not so obvious to the observer, but it was to Mrs. Neri." *Id.* "Ms. Hoppman would change the requirements of the IEP teacher position[,] even procedures they had come up with, that had been proven to work." *Id.* (footnote omitted). "Ms. Hoppman sought to create a false paper trail showing Mrs. Neri was not doing her job" by sending e-mail messages inquiring as to the status of various IEPs. *Id.* One time, she sent an e-mail inquiring as to Mrs. Neri's whereabouts, after the end of the duty day.

On April 14, 2016, Mrs. Neri led an IEP meeting for a student whose parent did not speak English. Daniel Kegler, a teacher attending the meeting, had not arranged for an interpreter to attend. When Mrs. Neri realized there was no interpreter, she cancelled the meeting. Mr. Kegler became frustrated. As Mrs. Neri describes, he "stood up with such force that his chair flew into the wall behind him, he then grabbed it and slammed it into the table, then slammed his laptop shut with his hand about 18 inches from Mrs. Neri's face." *Id.* at 19-20. The April 14 incident frightened Mrs. Neri and triggered her Post-Traumatic Stress Disorder (PTSD). She told Ms. Hoppman of the incident, her feeling that Mr. Kegler had assaulted her, and that he triggered her PTSD. Ms. Hoppman interviewed other staff members who had been in the meeting, who reported that Mr. Kegler had not been violent. Ms. Hoppman told Mrs. Neri that she did not think the incident was a big deal.

The next day, April 15, Mrs. Neri had another IEP meeting involving Mr. Kegler. Ms. Hoppman sent a head teacher to attend the meeting with Mr. Kegler. Initially Mrs. Neri thought the head teacher was there to support her in case

Mr. Kegler again lashed out. But during the meeting, she learned that Ms. Hoppman had sent the head teacher to support Mr. Kegler because she had just given him some bad news. Mrs. Neri believed that Ms. Hoppman had minimized her feelings about the April 14 incident, and she felt betrayed, unsupported, and unsafe.

Mrs. Neri took leave under the Family and Medical Leave Act (FMLA) from April 26 to May 9, 2016. Her leave was supported by a note from her therapist, licensed clinical social worker Billie Poteet. When Mrs. Neri returned to work, with only nine days left in the school year, she attempted to meet with Ms. Hoppman to discuss potential accommodations for her PTSD, but Ms. Hoppman avoided her.

**\*3** On May 23, 2016, Ms. Hoppman conducted Mrs. Neri's year-end evaluation. Mrs. Neri felt that the evaluation was going well, until Ms. Hoppman told her that she (Ms. Hoppman) was transferring her (Mrs. Neri) to a special education math teacher position because Mrs. Neri "could not handle the contention of that room" and Ms. Hoppman "didn't want to trigger [Mrs. Neri] again." R. Vol. 1 at 268. Mrs. Neri considered the transfer to be a demotion. That night, she sent Ms. Hoppman an e-mail protesting the decision. Ms. Hoppman responded by identifying several areas in which Mrs. Neri had performed deficiently as the IEP Teacher during the 2015-16 school year, allegedly leading to her decision to transfer Mrs. Neri. She also stated, "[o]n a personal level, I am concerned about your health. I have seen your reactions to stressful situations become more apparent and frequent. The comments you made in your email exhibit a paranoia that you are being isolated and targeted." *Id.* Vol. 2 at 79.

Mrs. Neri took an unpaid personal leave of absence for the 2016-2017 school year. On March 8, 2017, she submitted her resignation to APS.

📁 *Neri*, 860 F. App'x at 559–60.

## PROCEDURAL HISTORY

Plaintiff filed her Complaint for Employment Discrimination on November 9, 2018 in state court. Doc. 1-1 at 8. Defendants Board of Education for the Albuquerque Public Schools ("APS") and Cynthia Hoppman[2] removed this action to federal court on January 7, 2019. Doc. 1. Plaintiff's

ADD-117

Operative Complaint—the Third Amended Complaint—alleges violations under the Americans with Disabilities Act ("ADA") and the New Mexico Human Rights Act ("NMHRA") for discrimination based on her position transfer, hostile work environment, constructive discharge, failure to accommodate, and possibly retaliation.[3] Doc. 38.

After conducting discovery, Defendants moved for summary judgment on all Plaintiff's claims. Doc. 68. I entered a Proposed Findings and Recommended Disposition ("PFRD") on April 22, 2020, recommending that the Court grant summary judgment as to all Plaintiff's federal claims and decline supplemental jurisdiction over her state-law claims, remanding them to state court. Doc. 110. Over objection from Plaintiff, the presiding judge adopted the PFRD. Doc. 119. Plaintiff appealed, and the Tenth Circuit affirmed in part and reversed and remanded in part. Doc. 138.

The Tenth Circuit first looked at whether Plaintiff has a disability as defined by the ADA, and held that Plaintiff had not established that she has an actual impairment. *Neri, 860 F. App'x at 563*. The Tenth Circuit, however, found that a genuine issue of material fact exists as to whether Defendants regarded Plaintiff as having a disability. *Id. at 565*. Turning to her claims of adverse employment actions under the ADA, the Tenth Circuit affirmed this Court's grant of summary judgment on Plaintiff's claims for constructive discharge and hostile work environment. *Id. at 567-68*. The Tenth Circuit, however, reversed this Court's grant of summary judgment on Plaintiff's demotion claim, finding that a genuine issue of material facts exists regarding whether the transfer was a demotion and therefore an adverse employment action. *Id. at 565*. The Tenth Circuit next affirmed this Court's grant of summary judgment on Plaintiff's failure to accommodate claim under the ADA. *Id. at 568*. Lastly, the Tenth Circuit directed this Court on remand to consider whether Plaintiff properly asserted a retaliation claim. *Id.* In addition to the federal claims revived as a result of the Tenth Circuit's decision and partial reversal, the Court must also address the issue of supplemental jurisdiction over Plaintiff's state-law claims. Because the Tenth Circuit has reversed this Court's grant of summary judgment on one of Plaintiff's federal claims (discrimination based on the transfer because APS regarded her as disabled), I recommend that the Court no longer decline supplemental jurisdiction over Plaintiff's state-law claims. *See 28 U.S.C. § 1367(c)(3)* (district courts may

decline supplemental jurisdiction over state-law claims when "the district court has dismissed all claims over which it has original jurisdiction").

**\*4** After the Tenth Circuit issued its mandate, Plaintiff filed with this Court a Motion to Reinstate her Federal Discrimination Claims (Doc. 140), which is now fully briefed (Doc. 144 (response); Doc. 146 (reply)). Shortly thereafter, I held a status conference and set a briefing schedule for motions related to the retaliation claim and any other dispositive motions. Doc. 142. Instead of filing a new motion related specifically to her retaliation claim, Plaintiff filed a supplemental brief regarding her motion to reinstate (Doc. 153), Defendants filed a supplemental response (Doc. 156), and Plaintiff filed a supplemental reply (Doc. 166). Defendants also filed several dispositive motions, which are fully briefed: (1) Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment on Purported Retaliation Claim(s) (Docs. 154, 164, 170); (2) Defendants' Motion for Summary Judgment on State Claims and Damages (Docs. 168, 172, 175); and (3) Defendants' Motion for Reconsideration (Docs. 169, 174, 178). Following briefing of the dispositive motions, I ordered the parties to file supplemental briefs regarding an issue in Defendants' motion for summary judgment. Doc. 182. The parties filed the supplemental briefing (Docs. 186, 193, 194), and Plaintiff filed an opposed motion for a surreply to the supplemental briefing (Docs. 196, 199). Lastly, Plaintiff filed two motions addressing procedural concerns—her motion to strike (Docs. 183, 185, 187) and her motion to file depositions (Docs. 184, 189, 190). The Court held a hearing on several of the pending motions on August 18, 2022. *See* Doc. 204 (order setting hearing); Doc. 208 (clerk's minutes).

## ANALYSIS

I will address each pending motion in turn, first considering preliminary matters and then turning to motions on the merits of Plaintiff's claims.

### 1. Plaintiff's Motion for Deposition Transcripts (Doc. 184)

After the parties finished briefing all dispositive motions, Plaintiff filed a "Motion for Expedited Order for Defendants to File Relevant Parts of Deposition", in which she requests that Defendants be ordered to file on the docket a complete copy of the transcript from three depositions—that of her

ADD-118

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 186

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

deposition, her expert witness Billie Poteet, and her witness Diane Horton—because she is unable to afford copies of the transcripts. Doc. 184; Docs. 189, 190 (response, reply); *see also* Doc. 193 at 4 (same argument made in supplemental briefing on summary judgment).

To support her request, Plaintiff cites Federal Rule of Civil Procedure 32(a)(6), New Mexico Rule 1-032(a)(4) NMRA, and Federal Rule of Evidence 106.[4] First, New Mexico state-court procedural rules do not apply in this Court and so I need not consider Rule 1-032(a)(4). I instead turn to Federal Rule of Civil Procedure 32(a)(6) and Federal Rule of Evidence 106. Rule 32(a)(6) provides that "[i]f a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts." Rule 106, also known as the rule of completeness, similarly provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time."

Plaintiff cites these rules to argue that because Defendants attached portions of depositions as exhibits to their briefing on summary judgment, they should be required to file the entire depositions on the docket. As an initial matter, these rules appear to be applicable in hearings and at trial, not on summary judgment. *See* Fed. R. Civ. P. 32(a)(1) (rules of using depositions at a hearing or trial); *Chevron Mining Inc. v. United States*, No. 113-CV-00328 PJK-JFR, 2021 WL 5742987, at *1 (D.N.M. Dec. 2, 2021) ("The main purpose of Rule 32(a)(6) is to avoid testimony that presents evidence out of context or leads to misinterpretation of the evidence by the trier of fact."); *United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010) ("The purpose of Rule 106 is to prevent a party from misleading the jury by allowing into the record relevant portions of a writing or recorded statement which clarify or explain the part already received.") (citing *United States v. Moussaoui*, 382 F.3d 453, 481 (4th Cir. 2004)). Rather than offering an opinion as to what action the Court should take if, at trial, Defendants seek to introduce deposition testimony that Plaintiff believes is incomplete, I limit my analysis to whether the Court should order Defendants to file the complete transcripts Plaintiff requests so that she can use them in connection with the motions presently before the Court.

**\*5**  There is some support for the contention that these rules are appropriate to consider on summary judgment. *See Lopez v. Delta Int'l Mach. Corp.*, 312 F. Supp. 3d 1115, 1154–55 (D.N.M. 2018) (Browning, J.) ("The rule of completeness appears to be uniquely applicable in a trial setting. The purpose of Rule 106 is to prevent a party from misleading the jury, but there is no jury on a summary judgment motion. Nevertheless, the general principle animating the rule of completeness—guarding against deception—is appropriate at the summary judgment phase. A judge, just like a jury, should not be misled, especially on a dispositive motion." (internal quotation marks and citation omitted)). To the extent Rules 32(a)(6) and 106 are applicable to exhibits used in summary judgment briefing, I recommend rejecting Plaintiff's request that Defendants file the complete deposition transcripts. Plaintiff argues that she needs the complete deposition transcripts so that she can "point to the omitted deposition testimony that links Plaintiff's limitations to her diagnosed PTSD, as well as Ms. Poteet's testimony regarding Plaintiff's record of PTSD and the link between them and her limitations, of her 'actual' and 'record of' disability, which is medical evidence needed as the Tenth Circuit stated." Doc. 184 at 2; *see also* Doc. 190 at 4.[5] She also seeks Ms. Horton's complete deposition to "support[ ] the intentional discrimination and the effects of the intended humiliation creating an objectively hostile work environment, and that these actions would cause Plaintiff[']s constructive discharge." Doc. 184 at 2; *see also* Doc. 190 at 4.

First, as discussed later in this PFRD, some of those claims which Plaintiff seeks to support with the depositions—hostile work environment and constructive discharge—are no longer viable. Additionally, Plaintiff has not shown why this evidence was uniquely obtainable via deposition testimony. Especially in the case of her own testimony, her own medical provider's testimony (Ms. Poteet), and her own witness (Ms. Horton), Plaintiff could have presented it in another format such as affidavits. To the extent the deposition testimony is not evidence at all, but mere argument from Plaintiff about her disability, it can be adequately presented by Plaintiff in briefing.

Plaintiff also argues that Defendants should file the complete deposition transcripts "so that she could point to other parts of these depositions to clarify the manipulated testimony." Doc. 184 at 2. Plaintiff is not specific as to what she claims Defendants have manipulated, giving this Court no basis to find that manipulation has occurred.

ADD-119

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 187

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

Lastly, in her supplemental brief regarding retaliation, Plaintiff makes a similar request that Defendants file on the record a complete copy of the deposition transcripts from her deposition, Billie Poteet's deposition, and Diane Horton's deposition; in support, Plaintiff this time cites Federal Rule of Civil Procedure 30(f). Doc. 153 at 7. She reads Rule 30(f) as requiring an attorney who cites a deposition to file the complete transcript on the docket. Id. Rule 30(f), in its current form, however, includes no such requirement. [6] Instead, it provides that "[w]hen paid reasonable charges, the officer must furnish a copy of the transcript or recording to any party or the deponent." Fed. R. Civ. P. 30(f)(3). If a party does file a transcript, that party must notify all other parties of the filing. Fed. R. Civ. P. 30(f)(4). This Court's local rules clarify that "[d]eposition transcripts are not filed unless otherwise ordered." D.N.M. LR-Civ. 30.3.

Though not fully developed by Plaintiff, her argument for deposition transcripts actually seems to be that she cannot afford to pay for the transcripts and so, in fairness, Defendants, who already have copies of the transcripts, should share them with Plaintiff. Yet, "[t]he general rule, established expressly by the Federal Rules of Civil Procedure, is that a party must obtain copies of deposition transcripts directly from the court reporter upon the payment of a reasonable charge, and not from opposing counsel or the court." 🚩 Schroer v. United States, 250 F.R.D. 531, 537 (D. Colo. 2008); see also Young v. United Parcel Serv., Inc., No. CIV.A. DKC 08-2586, 2014 WL 858330, at *3 (D. Md. Mar. 4, 2014) ("[I]t is typical that the court reporter be paid by each party receiving a copy of a transcript."); Watson v. Ohio Ambulance Sols., LLC, No. 1:20-CV-802, 2022 WL 2133739, at *3 (S.D. Ohio June 14, 2022) (collecting cases and holding that "Plaintiff has not directed the Court to any authority that would require a party to provide a copy of a deposition transcript, free of charge, to an opposing party").

*6 Here, although Plaintiff states that she cannot afford the transcripts she desires, she has provided no information to substantiate that claim. And, even if she had, she has not cited any authority for an order requiring a civil defendant to pay for, and provide for free to a civil plaintiff, deposition transcripts. For these reasons, I recommend denying Plaintiff's Motion for Expedited Order for Defendants to File Other Relevant Parts of Deposition (Doc. 184) and her related requests for deposition transcripts made in other filings.

### 2. Plaintiff's Motion to Strike (Doc. 183)

Similar to her motion for depositions, after the parties finished briefing the dispositive motions, Plaintiff filed a "Motion to Strike Defendants' Motions for Summary Judgments, Motion to Dismiss and Motion for Reconsideration Due to Non-Compliance with Local Civil Rules of the United States District Court for the District of New Mexico." Doc. 183; see also Docs. 185, 187 (response, reply). In this motion, Plaintiff raises two arguments that she also raises in other briefing: (1) the Court should strike Defendants' pending motion to dismiss and motion for summary judgment for failure to comply with Local Rule 56.1 and (2) the Court should strike Defendants' motion for reconsideration as untimely. Because the same analysis applies to each instance Plaintiff has raised these arguments, my analysis below applies to these arguments across all briefing—that is, the analysis applies regardless of when and where Plaintiff makes the argument.

I first address Plaintiff's assertion that the Court should strike Defendants' pending motion to dismiss and motion for summary judgment for failure to comply with Local Rule 56.1. Doc. 183; see also Doc. 172 at 4-5 & Doc. 193 at 4 (same argument made in response to Defendants' motion for summary judgment and supplemental briefing on summary judgment). Local Rule 56.1(b) requires that "[t]he moving party must file with the motion a written memorandum containing a short, concise statement of the reasons in support of the motion with a list of authorities relied upon." Plaintiff reads this rule as requiring a table of authorities, which Defendants did not include in their pending motions. This rule, however, is open to interpretation. On the one hand, Plaintiff's reading could be correct—that Rule 56.1(b) requires parties, in their opening briefs, to separately list all authorities relied on. On the other hand, consistent with the next sentence in Rule 56.1(b)—which only requires a party filing a response to include a "statement of the reasons in opposition to the motion with authorities—the rule does not specify a form for the list of authorities, such as a table. As such, a memorandum in support of a motion containing reasons and authorities relied on complies with the rule.

The Court need not resolve this issue to decide Plaintiff's motion. This is because, regardless of how the Court reads the above language, Defendants' failure to include a separate list of authorities does not prejudice Plaintiff such that striking the motion to dismiss and motion for summary judgment would be appropriate. At the hearing, Plaintiff indicated that the lack of a separate list of authorities prejudiced her because she was forced to sort through Defendants' briefs

ADD-120

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 188

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

to pull out authorities to look up. However, Plaintiff does not argue, and could not credibly argue, that she would not have read Defendants' entire briefs anyway, as she could only learn what arguments Defendants were making by reading the briefs Defendants filed. I therefore recommend denying Plaintiff's motion to strike.

**\*7** Next, Plaintiff argues that the Court should strike Defendants' motion for reconsideration as untimely. Doc. 183. at 2; *see also* Doc. 172 at 6 (raising the same issue in response to Defendants' motion for summary judgment). Plaintiff fails to develop this argument in her motion to strike. Instead, the parties discussed this issue in briefing the motion for reconsideration. *See* Docs. 174, 178. Because the issue is more fully developed in the briefing on the motion for reconsideration, I will address it below in connection with that motion.

### 3. Defendants' Motion for Reconsideration (Doc. 169)

When briefing their original summary judgment motion, Defendants filed a Motion to Exclude from Summary Judgment Consideration, seeking to exclude certain exhibits used by Plaintiff in her response to summary judgment. Doc. 100. In my April 2020 PFRD addressing Defendants' prior motion for summary judgment, I recommended denying the motion to exclude as moot because none of the exhibits were material to resolving the summary judgment motion. Doc. 110. The Court adopted this recommendation. Doc. 119. Because the Tenth Circuit reversed and remanded certain claims, Defendants now seek reconsideration of their motion to exclude, arguing that is it no longer moot. Doc. 169. I agree that the Tenth Circuit remand order requires this Court to reexamine its earlier ruling and consider whether the motion to exclude continues to be moot. *See* [Fed. R. Civ. P. 60(b) (5)](#) (listing grounds for relief from judgment including that "it is based on an earlier judgment that has been reversed or vacated").

In the original motion, Defendants sought to exclude an "unverified and possibly altered letter" from Plaintiff to Ms. Hoppman, an affidavit of Mitchell Neri, and a letter from Dr. Stephanie Tucker. Doc. 100 at 1. Defendants argued that Plaintiff failed to disclose those documents and witnesses in violation of [Federal Rule of Civil Procedure 37(c)](#), and as such the Court should exclude them from summary judgment consideration. In the present motion for reconsideration, Defendants argue that their motion to exclude is no longer moot because "Plaintiff may choose to use these improper

exhibits again in the future. Indeed, Plaintiff recently utilized one of the concerning documents in response to Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment on Purported Retaliation Claim." Doc. 169 at 4. The document they reference is Plaintiff's letter to Ms. Hoppman. *See* Doc. 164 at 39 (citing Doc. 82-14 at 1). Defendants do not allege that Plaintiff has used the other exhibits (Mr. Neri's affidavit and Dr. Tucker's letter) in any pending motion and, having reviewed the pending motions myself, I found no reference to those exhibits.

I recommend finding that Defendants are only partially correct that their motion to exclude is no longer moot. In their motion to exclude, Defendants do not request to exclude information from trial but specifically request that certain exhibits be excluded from summary judgment consideration. Because Plaintiff does not use two of the exhibits in any pending motions, a request to exclude them from consideration is moot. That is, the motion to exclude is still moot as to Mr. Neri's affidavit and the letter and mention of Dr. Tucker because Plaintiff does not attempt to introduce those exhibits in any pending motion. If Defendants believe Plaintiff will improperly use witnesses or exhibits at trial, they may file motions in limine in advance of trial or raise their objections at trial. I recommend that the Court not make an advisory ruling about trial exhibits that are not currently at issue. Regarding Plaintiff's letter to Ms. Hoppman (that Plaintiff does cite, Doc. 164 at 39 (response to motion to dismiss)), Defendants' request to exclude is not moot and so I recommend addressing the merits of Defendants' argument that this letter should be excluded. That is, I recommend reconsidering Defendants' motion to exclude as to that letter.

**\*8** Plaintiff argues that the Court should decline Defendants' request to reconsider because their motion was untimely. Doc. 174 at 1. As discussed above, she also made this request in a separate motion. Doc. 183. Relevant to Plaintiff's untimeliness argument is some procedural history following the Tenth Circuit remand.

Following the Tenth Circuit remand, I held a status conference with the parties and subsequently set a briefing schedule for forthcoming motions. Doc. 142. I set a deadline of October 8, 2021 for Defendants to refile their motion to exclude, as well as to file any other dispositive motions. *Id.* Defendants missed this deadline and filed their motion for reconsideration on October 18, 2021. Doc. 169. Defendants, however, point out that they were unaware of the need to refile their motion to exclude until October 6, 2021 when Plaintiff

ADD-121

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 189

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

included citations to her letter in her response to the motion to dismiss.[7] Doc. 178 (citing Plaintiff's response, Doc. 164). This explanation tracks with my analysis of the motion to reconsider: Defendants do not need to seek reconsideration to exclude exhibits Plaintiff is no longer relying on in pending motions. The timing of their filing is reasonable, given that it is a response to Plaintiff introducing exhibits they seek to exclude.[8] As such, I recommend denying Plaintiff's request to deny or strike the motion for reconsideration as untimely. *See* Docs. 174, 183. Commensurately, I recommend granting Defendants' Motion for Reconsideration (Doc. 169) in part and reconsidering the motion to exclude (Doc. 100) as it relates to Plaintiff's letter to Ms. Hoppman.

### 4. Defendants' Motion to Exclude (Doc. 100)

Because I recommend granting Defendants' motion for reconsideration in part, I next will address the substance of their reconsideration request—Defendants' Motion to Exclude—as it relates to Plaintiff's letter to Ms. Hoppman. Doc. 100. The letter at issue is attached to Plaintiff's response to the prior summary judgment motion, Doc. 82-12 ("Exhibit 12") and Doc. 82-14 at 1 ("Exhibit 14 (page 1)").[9] Exhibit 12 and Exhibit 14 (page 1) are the same letter, except Plaintiff highlighted portions of Exhibit 14 (page 1). The exhibits are a letter dated April 26, 2016 from Plaintiff to Cindy Benefield (Defendant Cindy Hoppman's prior name), discussing the April 16, 2016 incident with Mr. Kegler. Defendants assert that this letter is different from the one Plaintiff produced in discovery. They attached the letter she produced in discovery as Exhibit C to their motion to exclude, with the differences highlighted. *See* Doc. 100-3. Plaintiff does not dispute that the letters are different and explains that she accidently produced a draft of the letter in discovery and that Exhibits 12 and 14 (page 1) are copies of the letter she actually sent to Ms. Hoppman. Doc. 101 at 1-2.

**\*9** Defendants move to strike the letter under Rule 37(c), arguing that because Plaintiff disclosed a different letter in discovery, Exhibits 12 and 14 (page 1) are undisclosed. Federal Rule of Procedure 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rule 26(a)(1)(A)(ii) requires a party to provide to the other parties "a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has

in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Rule 26(e) requires timely supplements of disclosures made under Rule 26(a). Under these Rules, I agree with Defendants that Plaintiff should be prohibited from using Exhibits 12 and 14 (page 1) as evidence in a motion because that letter is different than the letter she disclosed according to Rule 26(a), unless her failure to disclose was substantially justified or is harmless.

In determining whether her failure to disclose was substantially justified or harmless under Rule 37(c), the Court should consider: (1) whether the other party will be prejudiced, (2) the ability to cure any prejudice, (3) whether allowing the evidence would disrupt the trial, and (4) the violator's bad faith or willfulness. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952-52 (10th Cir. 2002). Plaintiff argues that her failure to produce the final version of the letter in discovery was substantially justified or harmless because "the letter to Cindy dated April 26, 2016 was not altered, it was purely a mistake that a draft copy (which has 3 minute differences, nothing that changed the reason, information, nor meaning of anything in the letter) was produced instead of the copy sent to Cindy." Doc. 101 at 1-2. In other words, Plaintiff argues that the differences between the draft letter she produced in discovery and final copy of the letter she attached as exhibits are so small, Exhibits 12 and 14 (page 1) should not be excluded from consideration. Defendants, on the other hand, argue that Plaintiff has failed to authenticate either letter—i.e. she failed to produce the email she sent to Ms. Hoppman attaching the letter.

Looking at the four factors, first, Defendants are not prejudiced by Plaintiff's failure to disclose Exhibits 12 and 14 (page 1). That is, having reviewed the letter Plaintiff disclosed and those used in briefing, I agree with Plaintiff that there are no meaningful differences between Exhibits 12 and 14 (page 1) and the letter she disclosed. *Compare* Docs. 82-12 & 82-14 at 1 (letters used in briefing)*, with* Doc. 100-3 (disclosed letter). The second factor—ability to cure prejudice—weighs in favor of a harmless finding since there is no, or very little, prejudice to be cured. Factors three and four also weigh in favor of finding the failure to disclose is substantially justified or harmless because a trial is not yet set, and so new evidence will not disrupt trial, and I find no evidence of bad faith or willfulness on Plaintiff's part. These factors, therefore, weigh in favor of finding Plaintiff's failure to disclose Exhibits 12 and 14 (page 1) is harmless.

ADD-122

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 190

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

Defendants' objection to the Exhibits 12 and 14 (page 1) seems to be less with disclosure of the letter and more about Plaintiff's failure to authenticate it—i.e., her failure to produce the email showing which letter she actually sent. But Defendants make no arguments regarding exclusion for failure to authenticate, and I recommend that the Court not make those arguments for Defendants. As such, I recommend denying the motion to exclude (Doc. 100) as to Exhibits 12 and 14 (page 1).[10]

*10 In addition to exclusion, Defendants request that the Court grant sanctions, including payment of reasonable attorney's fees caused by Plaintiff's failure to provide information during discovery. Doc. 100 at 1. Federal Rule of Civil Procedure 37(c)(1)(A) provides that in addition to, or instead of excluding undisclosed information, the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure." Given that I recommend denying the motion to exclude, I recommend denying Defendants' request for attorney's fees.

Plaintiff likewise requests that Defendants be sanctioned for the timing of their motion to exclude. As background, Plaintiff filed her response to the prior summary judgment motion (in which she attached the exhibits at issue in the motion to exclude) on October 8, 2019. Doc. 82. Defendants first sent a letter to Plaintiff regarding the contested exhibits on October 25, 2019. Doc. 100-4 at 2. Thereafter, I set in-person oral arguments on the motion for summary judgment for December 17, 2019. Doc. 95. Plaintiff then filed a motion for continuance, explaining that she would be in another state from November 28, 2019 to January 1, 2020. Doc. 94. Defendants sent another letter to Plaintiff on December 12, 2019 about the contested exhibits (Doc. 100-1), and then filed their motion to exclude on December 20, 2019, Doc. 100. Plaintiff asserts that Defendants waited until they knew she was unavailable to ask her for information and then filed their motion—conduct which she argues is sanctionable. Doc. 101 at 6. However, Defendants first sent a good faith letter to Plaintiff in October, well before she was out of town. Additionally, her request for continuance indicated that she would be out of town and unavailable for an in-person hearing, not that she would be unavailable for all correspondence. *See* Doc. 94. Lastly, Plaintiff does not explain what she would have done differently in response to the December letter that she did not have an opportunity to do in response to the October letter. In other words, Plaintiff does not show she suffered any prejudice by not being able to respond to Defendants' December 12 letter before Defendants

filed their motion on December 20. For these reasons, I do not find Defendants' timing of their motion to be sanctionable and recommend denying Plaintiff's request for sanctions.

**5. Plaintiff's Motion to Reinstate (Doc. 140)**
In her motion to reinstate, Plaintiff seeks to reinstate all her federal ADA claims raised in her operative complaint. *See* Docs. 140 (motion); 144 (response); 146 (reply). While Plaintiff's motion focuses on claims for which the Tenth Circuit affirmed summary judgment (failure to accommodate, hostile work environment, and constructive discharge) and a claim the Tenth Circuit declined to address (record of impairment), she also discusses claims the Tenth Circuit reversed and remanded (discrimination based on her perceived demotion). To clarify the status of her claims and address her motion to reinstate, I will address which claims the Tenth Circuit's reversal reinstated, which claims are no longer viable because the Tenth Circuit affirmed summary judgment, and which claims the Tenth Circuit did not consider other than directing the Court to give further consideration.

a. Claims Reinstated Given the Tenth Circuit Mandate

In the April 2020 PFRD (as later adopted by the presiding judge), I recommended granting summary judgment in Defendants' favor on Plaintiff's federal claim for discrimination based on her transfer of position (demotion). To establish a prima facie case of disability discrimination under the ADA, a plaintiff must prove that she "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer ... because of that disability."

🚩 *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011). For element one, "[d]isability is defined by the ADA as '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.' " 🚩 *Lanman v. Johnson County, Kansas*, 393 F.3d 1151, 1156 (10th Cir. 2004) (quoting 42 U.S.C. § 12102(2)). For element three, "a plaintiff must generally show that [s]he has suffered an adverse employment action because of the disability." 🚩 *C.R. England, Inc.*, 644 F.3d at 1038.

ADD-123

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 191

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

**\*11** I found that element two (whether Plaintiff was qualified to perform the essential functions of the job) was easily resolved in Plaintiff's favor because Defendants did not contest it. Looking at element one (whether Plaintiff is disabled) I found it to be a close call whether Plaintiff had an actual impairment or whether Defendants regarded her as having an impairment. Doc. 110 at 12-15. I did not consider whether Plaintiff had a record of impairment because the parties did not address it. *Id.* at 13. I ultimately did not resolve the question of disability under element one because I found that Plaintiff's claim for discrimination based on the position transfer failed under element three. *Id.* at 21-25. That is, I found she was unable to show she suffered an adverse action as a result of her disability. *Id.*

On appeal, as to element one, the Tenth Circuit found that Plaintiff was not able to establish the elements needed for an actual impairment, and so it affirmed the grant of summary judgment on claims based on actual impairment. *Neri v. Bd. of Educ. for the Albuquerque Pub. Schs.*, 860 F. App'x 556, 563 (10th Cir. 2021). It likewise declined to address whether Plaintiff had a record of impairment because that issue was not adequately argued before the district court. *Id.* at 561 n.3. The court did, however, find a genuine issue of material fact as to whether Defendants regarded Plaintiff as disabled. *Id.* at 563-65. The court proceeded to examine element three and found "that a reasonable factfinder could conclude that the transfer was a demotion." *Id.* at 565. In sum, the Tenth Circuit reversed the grant of summary judgment and "remanded for further proceeding with regard to [Plaintiff's claim] of discrimination by being demoted because APS regarded her as being disabled." *Id.* at 569. As such, Plaintiff's claim for discrimination by being demoted because APS regarded her as being disabled is reinstated in this Court. *See Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003) ("[A] district court is bound to follow the mandate [from an appellant court], and the mandate controls all matters within its scope ...." (internal quotation marks and citation omitted)).

In addition to Plaintiff's federal claims under the ADA, she brought the same discrimination claims under the New Mexico Human Rights Act ("NMHRA"), over which the Court should exercise supplemental jurisdiction. New Mexico courts rely on federal ADA guidance in applying the NMHRA. *See Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*,

2002-NMSC-004, ¶ 8, 41 P.3d 333 ("In interpreting our state Human Rights Act, we have previously indicated that it is appropriate to rely upon federal adjudication for guidance in analyzing a claim under the Act", and that the "closest federal counterpart would be the Americans with Disabilities Act."); *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 23, 91 P.3d 58 (New Mexico courts "may look at federal civil rights adjudication for guidance in interpreting the NMHRA"). Therefore, given the Tenth Circuit's conclusion that a reasonable trier of fact could conclude that Plaintiff was demoted and because the NMHRA tracks the ADA (a claim which the Tenth Circuit reinstated), I recommend the Court reinstate Plaintiff's claim under the NMHRA that APS demoted her because it regarded her as being disabled.

    b. <u>Claims Dismissed on Summary Judgment and Affirmed by the Tenth Circuit</u>

This Court granted summary judgment on Plaintiff's remaining federal claims, which the Tenth Circuit affirmed: "The district court is affirmed with regard to Mrs. Neri's allegations that APS discriminated against her because of an actual impairment, that she suffered a hostile work environment and a constructive discharge, and that APS failed to accommodate her PTSD." *Neri*, 860 F. App'x at 569. In her present motion to reinstate, Plaintiff moves to reinstate these federal claims, confusing them with the demotion claim that the Tenth Circuit reversed and remanded. In her motion to reinstate, Plaintiff repeats her allegations for these claims contained in the original summary judgment briefing—allegations that both this Court and the Tenth Circuit have considered and rejected. I recommend denying Plaintiff's request to reinstate those claims and instead following the Tenth Circuit's mandate, which affirmed summary judgment.[11] *See Procter & Gamble Co.*, 317 F.3d at 1126.

**\*12** At the hearing, Plaintiff argued that this Court can consider her failure to accommodate claim because the Tenth Circuit dismissed it on a procedural error, not on the merits. That is, the Tenth Circuit affirmed summary judgment on Plaintiff's failure to accommodate claim because Plaintiff failed to address whether that claim was timely. *Neri*, 860 F. App'x at 568. Plaintiff cites no authority, and I am aware of none, that would allow this Court to consider the merits of a that claim following the Tenth Circuit order.[12]

ADD-124

In her supplemental briefing on her retaliation claim, Plaintiff argues that the Tenth Circuit order regarding her claims for hostile work environment and constructive discharge were based on evidence "intentionally hidden and misrepresented by defendants." Doc. 166 at 6. She elaborates that the "[t]he Tenth Circuit along with this court [have] been misled to believe that Plaintiff cannot support any of her claims." *Id.* At the hearing, Plaintiff explained that she has now more evidence regarding her hostile work environment and constructive discharge claims that the Tenth Circuit did not consider and which this Court should now consider. However, the Tenth Circuit has already affirmed dismissal of those claims. A Tenth Circuit remand of other claims does not open her dismissed claims for further litigation.

Further, to the extent Plaintiff is seeking reconsideration from this Court, I recommend rejecting her request. A motion for reconsideration "may be construed in one of two ways: if filed within [28] [13] days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e); if filed more than [28] days after entry of judgment, it is treated as a motion for relief from judgment under Rule 60(b)." *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002). Plaintiff filed her request well after 28 days since this Court entered its final judgment, and so she must show she is entitled to reconsideration based on one of the grounds for relief in Rule 60. *See* Fed. R. Civ. P. 60(b) (listing grounds for relief from judgment including mistake, inadvertence, surprise, or excusable neglect; newly discovery evidence; fraud, misrepresentation, or misconduct; the judgment is void; the judgment has been satisfied, released or discharged; or any other reason that justifies relief). Plaintiff points to no such grounds. Indeed, she does not explain what evidence she believes Defendants intentionally hid and misrepresented. Instead, she repeats her arguments that she was subjected to a hostile work environment forcing her constructive discharge—arguments that both this Court and the Tenth Circuit have already rejected.

**\*13** Lastly, as discussed above, the Tenth Circuit declined to consider whether Plaintiff had established a record of impairment because she had not adequately argued that issue in the district court. *Neri*, 860 F. App'x at 561 n.3. In her present motion, Plaintiff asks to reinstate a claim that she has a record of impairment, which I recommend rejecting for two reasons.

First, Plaintiff presents no authority as to why this Court should consider her new argument raised for the first time after remand. Plaintiff disputes that it is the first time she raised this argument, pointing out that she attached medical records to her response to the original motion for summary judgment in order to show her record of impairment. I disagree. Attaching medical records without accompanying explanation or argument is not sufficient to raise the issue. *See* United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994) ("Although we must liberally construe Defendant's pro se petition, we are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." (internal citation omitted)).

Second, even assuming such attachments had been sufficient to notify the Court that Plaintiff was arguing she had a record of impairment, for the reasons explained by the Tenth Circuit, her argument fails on the merits under both the ADA and NMHRA. A record of impairment claim requires that "(1) the plaintiff has a record of, or has been misclassified as having, (2) a recognized impairment that (3) the plaintiff 'actually suffered' and that (4) substantially limited (5) a major life activity." *Zwygart v. Bd. cf Cnty. Comm'r cf Je,fferson Cnty. Kan.*, 483 F.3d 1086, 1091 (10th Cir. 2007); *Tr.jillo*, 2002-NMSC-004, ¶ 8 (relying on federal ADA guidance to interpret the NMHRA). In considering whether Plaintiff established an actual impairment, the Tenth Circuit considered whether Plaintiff could show an impairment that substantially limits one or more appropriate major life activities. *Neri*, 860 F. App'x at 562-63. It found she could not. *Id.* at 563. While she presented testimony from her therapist, Ms. Poteet, that she has been diagnosed with PTSD, she did not present any expert evidence to "link her PTSD diagnosis with her symptoms to establish that her PTSD substantially limits at least one major life activity." *Id.* To the contrary, Ms. Poteet testified at her deposition that the "only expert opinion she would offer is whether, in fact, Mrs. Neri has PTSD." [14] *Id.* at 562 (internal quotation marks omitted). Plaintiff's lack of expert medical evidence would also prove fatal to a record of impairment claim. That is, without the evidence to link her diagnosis and symptoms, she would not be able to establish that she has a record of an impairment that substantially limits a major life activity.

ADD-125

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 193

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

**\*14**  At the hearing, Plaintiff pointed to a number of documents in the record which she argues provide the missing link between her PTSD diagnosis and her symptoms to establish that her PTSD substantially limits at least one major life activity. For example, she cites Ms. Poteet's deposition in which Ms. Poteet discusses certain symptoms Plaintiff suffers, Doc. 89-4 at 35:2 to 36:1, and letters Ms. Poteet wrote indicating that Plaintiff should take time off work because "her emotions have been dysregulated," Doc. 1-1 at 34-35. Plaintiff also pointed to the 75 pages of medical records she attached to prior briefing, Doc. 146-1. However, none of these documents and records provide the link the Tenth Circuit found missing. That Ms. Poteet discussed Plaintiff's PTSD symptoms is not the same as offering an expert opinion regarding limitations of a major life activity. As such, I recommend rejecting her request to reinstate her claim for a record of impairment under the ADA or the NMHRA.

c.  <u>Claims For This Court to Consider Further</u>

In the April 2020 PFRD, I briefly discussed whether Plaintiff properly brought a claim for retaliation based on either taking FMLA leave or telling Defendant Hoppman that she has a disability. Doc. 110 at 29. Ultimately, I did not resolve this matter because I found that even if Plaintiff did bring such a claim, she could not establish a prima facie case for retaliation because she did not suffer an adverse employment action due to her position transfer. *Id.* at 30; *see also Foster v. Mountain Coal Co.*, 803 F.3d 1178, 1187 (10th Cir. 2016) (in order to establish a prima facie case for retaliation under the ADA, a plaintiff must show "(1) that [s]he engaged in protected activity; (2) [s]he was subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action").

On appeal, the Tenth Circuit reiterated that Plaintiff had established a genuine issue of material fact as to whether the transfer was a demotion (and therefore an adverse employment action) and as such reversed in part this Court's grant of summary judgment. 🚩 *Neri, 860 F. App'x at 568*. However, the Tenth Circuit also directed that "[o]n remand, the district court may choose to examine whether Mrs. Neri properly asserted a retaliation claim before conducting further proceedings on any such claim." *Id.*

Given the Tenth Circuit's directive, I set a briefing schedule regarding motions related to Plaintiff's retaliation claim. Doc.

142. In her motion to reinstate, Plaintiff asks to reinstate her retaliation claim and argues that she properly asserted such a claim, citing the standard for reviewing a motion to dismiss for failure to state a claim. Doc. 140 at 2-4. But Plaintiff also acknowledged that she planned to file a motion on that claim according to the briefing schedule. Doc. 146 at 4 ("Mrs. Neri's motion with reference to the Tenth Circuit 'vacate' and 'remand' of her retaliation claim is not her complete argument, and because of the decision made by Judge Yarbrough and defendants during the Status Conference on August 5, 2021, she will address this issue through a motion due on September 8, 2021."). Accordingly, Plaintiff filed supplemental briefing for her motion to reinstate, specifically directed at her retaliation claim (Doc. 153) and Defendants filed a motion to dismiss her retaliation claim (Doc. 154). Therefore, I will address the retaliation claim and Plaintiff's supplemental briefing below when discussing Defendants' motion to dismiss.

d.  <u>Conclusion</u>

Issues that need no further discussion are those on which the Tenth Circuit provided definitive direction. Namely, the Tenth Circuit affirmed this Court's dismissal of Plaintiff's federal claims of actual impairment, record of impairment, hostile work environment, constructive discharge, and failure to accommodate. Because these claims are no longer viable, I recommend denying Plaintiff's motion to reinstate (Doc. 140) these claims. Conversely, the Tenth Circuit concluded that Plaintiff's claim for discrimination based on demotion because APS regarded Plaintiff as disabled presented genuine issues of material fact that could not be resolved on summary judgment. Accordingly, I recommend granting her motion as to this claim.

**6. Motion to Dismiss Retaliation Claims (Docs. 153, 154)**

**\*15**  In the April 2020 PFRD (as adopted by the Court), I noted an issue as to whether Plaintiff pleaded a claim for retaliation. Doc. 110 at 29. However, I did not address that issue, finding that even if she had alleged a retaliation claim, it would fail because she had not suffered an adverse action. *Id.* at 29-30. Because the Tenth Circuit found a genuine question of material fact as to whether Plaintiff's transfer was a demotion and therefore an adverse action, it remanded the retaliation issue, allowing this Court to decide whether Plaintiff properly asserted a retaliation claim. 🚩 *Neri, 860*

ADD-126

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 194

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

F. App'x at 568. Accordingly, Defendants filed a "Motion to Dismiss or in the Alternative Motion for Summary Judgment on Purported Retaliation Claims." Doc. 154; *see also* Docs. 164, 170 (response and reply). For her part, Plaintiff filed a "Memorandum in Support of Her Motion to Reinstate Federal Discrimination Claims with Particular Reference to her Retaliation Claim." Doc. 153; *see also* Docs. 156, 166 (response and reply). I will address the arguments in both.

As an initial matter, Defendants assert that Plaintiff failed to allege a retaliation claim in her complaint and also failed to address it in the prior summary judgment briefing. Whether Plaintiff alleged a retaliation claim in her complaint is an issue I address below. That Plaintiff did not discuss an alleged retaliation claim in prior summary judgment briefing does not impact this analysis. Defendants, as the moving party, carried the initial burden on summary judgment. *See Shapolia v. Los Alamos Nat'l Lab., 992 F.2d 1033, 1036 (10th Cir. 1993)* ("The moving party bears the initial burden of showing that there is an absence of any issues of material fact."). If Defendants failed to move for summary judgment on a claim in the complaint, it is not Plaintiff's duty to discuss that issue in her response to summary judgment.

Thus, I turn to whether Plaintiff's operative complaint includes a retaliation claim. When I asked Plaintiff at the January 16, 2020 hearing to describe any retaliation claims she is bringing, she replied that APS retaliated against her because of her disability and/or because she took leave under the Family and Medical Leave Act ("FMLA"). *See* Doc. 109 (clerk's minutes); Recording at 10:21. I will thus examine Plaintiff's allegations of fact in her operative complaint to determine if she stated a claim for FMLA retaliation or some other disability retaliation.

a. Legal Standard for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines, 671 F.3d 1188, 1190 (10th Cir. 2012)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)*). While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Twombly, 550 U.S. at 555.*

"A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards, 826 F.3d 1252, 1255 (10th Cir. 2016).* The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).* The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt, 14 F.3d 1457, 1465 (10th Cir. 1994).* Nor is the court required to accept as true legal conclusions that are masquerading as factual allegations. *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).* The court must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v. Wyeth, Inc., 727 F.3d 1273, 1280 (10th Cir. 2013).*

**\*16** When a plaintiff proceeds pro se, the court construes her pleadings liberally, holding them to a less stringent standard than those a party represented by counsel files. *Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).* In so doing, the court makes allowance for a pro se litigant's "failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements." *Id.* The court will not, however, construct arguments or search the record for the pro se party." *Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005).*

b. FMLA Retaliation

Looking first at FMLA retaliation, under 29 U.S.C. § 2615(a)(2), it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by FMLA. The Tenth Circuit has "construed this provision of the FMLA as creating a retaliation theory of recovery." *Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 1004 (10th Cir. 2011).* If a plaintiff does not have direct proof of retaliation, her claim is subject to the burden-shifting analysis of *McDonnell Douglas. Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299,*

ADD-127

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 195

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

1318 (10th Cir. 2017). Under this analysis, Plaintiff bears the initial burden of establishing a prima facie case of retaliation by showing that: "(1) she engaged in a protected activity; (2) [Defendants] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). Temporal proximity between the protected activity and adverse action may be sufficient to establish a causal connection, depending on how close the two are. *Id.* The *McDonnell Douglas* analysis is an evidentiary standard, not a pleading standard; however, to determine if a plaintiff has alleged a plausible claim, the court should examine whether the plaintiff has alleged facts to state a plausible prima-facie case. *See* *Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 933-34 (10th Cir. 2015). [15]

"Alternatively, a plaintiff may proceed under a mixed motives theory and provide direct evidence of retaliation, although the Tenth Circuit Court of Appeals has questioned whether this approach is applicable in an FMLA retaliation claim." *Cordova v. New Mexico*, 283 F. Supp. 3d 1028, 1043 (D.N.M. 2017) (citing *Twigg*, 659 F.3d at 1004); *see also* *Debord v. Mercy Health Sys. of Kansas, Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) (implying the direct/mixed motive theory applies in FMLA retaliation cases by its statement "[w]here, as here, the plaintiff does not have direct evidence of retaliation, we follow the three-step framework from *McDonnell Douglas Corp. v. Green*"). "[A] plaintiff proceeding under the direct/'mixed motives' approach must present direct or circumstantial evidence that directly shows that retaliation played a motivating part in the employment decision at issue." *Twigg*, 659 F.3d at 1004-05. "Evidence of discrimination, if believed, is only direct evidence if it proves the existence of a fact in issue without inference or presumption." *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 883 (10th Cir. 2018) (internal quotation marks and citation omitted). Indeed, "in the employment context, this type of evidence is usually impossible to obtain." *Ford v. Jackson Nat'l Life Ins. Co.*, No. 21-1126, 2022 WL 3589672, at *5 (10th Cir. Aug. 23, 2022) (internal quotation marks and citation omitted).

*17 Looking at Plaintiff's form complaint, it includes a check-box list of discriminatory conduct for her to choose

from, but she did not check the box for retaliation. Doc. 38 at 4-5. Citing *Shepherd v. Precision Drilling Co., L.P.*, No. CV 12-0351 WPL/CEG, 2013 WL 11865970, at *4 (D.N.M. Apr. 9, 2013), Defendants argue that Plaintiff's failure to check the "retaliation" box creates a presumption that she did not intend to bring a retaliation claim. Doc. 154 at 10. In *Shepherd*, this court examined whether the plaintiff had exhausted his administrative remedies for a retaliation claim when he failed to check the box for "retaliation" on his EEOC Charge of Discrimination. *Id.* at *4-5. The court held that "[w]hen the complaining party fails to check a particular box, there is a presumption that the complaining party is not asserting a claim represented by the unchecked boxes. However, this presumption may be overcome if the text detailing the allegations clearly sets forth the claim." *Id.* at *4 (citing *Gunnel v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998)). Assuming *Shepherd* and *Gunnel* apply to a complaint (and not just an EEOC Charge of Discrimination), I must examine the text of Plaintiff's complaint to determine if she detailed allegations of retaliation.

A different section of Plaintiff's form complaint provides a check-box list of reasons defendant discriminated against plaintiff. Under that section, Plaintiff checked the box for discrimination based on "disability or perceived disability." *Id.* at 6. She then elaborated, "Mental Health Disabilities: PTSD and Anxiety Disorder, which up until the time of plaintiff filing her complaint, was not in question. Along with retaliation for taking FMLA leave." *Id.* at 6-7. Nowhere else in the complaint does Plaintiff mention retaliation or her FMLA leave. Plaintiff's one conclusory sentence —"[a]long with retaliation for taking FMLA leave"—is insufficient to state a plausible claim for FMLA retaliation.

*See* *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). She provides no facts about her FMLA leave, such as when she took leave or what retaliatory action Defendants took against her following her leave, and therefore fails to allege that she engaged in protected activity or that there was a causal connection between her protected activity and an adverse action.

Plaintiff points to her prior complaints to argue that she did include allegations related to an FMLA retaliation claim. Doc. 164 at 25. I, however, have reviewed her prior complaints and find no further allegations regarding an FMLA retaliation claim. *See* Docs. 1-1, 12, 30. Further,

ADD-128

even if her prior complaints contained such allegations, "[a]n amended complaint supersedes the original complaint and renders the original complaint of no legal effect." *Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005). The Court, therefore, should look only to her third amended complaint as the operative complaint and the allegations contained within it.

Plaintiff next argues that the attachments to her prior complaints were carried over to her operative complaint under Local Rule 10.7 and that one of the attachments support her claim for FMLA retaliation. Doc. 164 at 24. Local Rule 10.7 provides that "[a]n exhibit should be submitted only once and may later be referred to by document title and filing date." "In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). I must therefore examine whether any of the attachments save Plaintiff's FMLA retaliation claim.

First, Plaintiff points to exhibits attached to her original complaint—two letters from her therapist, Billie Poteet—to argue that she has stated an FMLA retaliation claim. Doc. 164 at 39 (citing Doc. 1-1 at 34-35, Exhibits 6 and 7). I, however, find no reference to those exhibits in Plaintiff's operative complaint. And, even if those exhibits are referenced, they do not support her FMLA retaliation claim. The letters, dated April 27 and May 4, 2016, state that Plaintiff's PTSD had been triggered by "several incidences at her place of employment" and that Ms. Poteet suggested Plaintiff take a week off work, and then a second week. Doc. 1-1 at 35, 34. Plaintiff's one sentence that Defendants "retaliated against [her] for taking FMLA leave" along with a note from her therapist saying she should take time off work is not sufficient to state a prima facie case for FMLA retaliation. Taken together, those statements still fail to provide information such as when Plaintiff took FMLA leave and therefore fail to allege that there was a causal connection between her protected activity (FMLA leave) and the adverse action (demotion).

**\*18**  Next, in her operative complaint Plaintiff cites Exhibits A, B, and C (Doc. 38 at 7, 10), which correspond to exhibits attached to her first amended complaint (Docs. 12-1, 12-2, and 12-3). Of those exhibits, only Exhibit A makes any reference to Plaintiff's FMLA leave or retaliation. Doc. 12-1. Exhibit A is Plaintiff's EEOC Charge of Discrimination in which she explains, in part, that she took 10 days of FMLA leave due to her disability and that 2 weeks after she returned

from leave, Ms. Hoppman informed Plaintiff about the demotion, stating "You have been out an excessive amount, due to the stress of the position, and we don't want to trigger your PTSD." Doc. 12-1 at 2. Said another way, Plaintiff alleges facts that state a prima facie case for retaliation by alleging she engaged in protected activity (taking FMLA leave), suffered an adverse action (the demotion), and that the two were close enough in time to establish a causal connection.[16]

Weighing against a conclusion that Plaintiff provided sufficient notice of an FMLA retaliation claim is that Plaintiff does not repeat the allegations in Exhibit A in her operative complaint and that her reference to Exhibit A occurs in a section unrelated to a retaliation claim. Specifically, the one and only reference to Exhibit A that Plaintiff makes in her complaint is under the section "Exhaustion of Federal Administrative Remedies." Doc. 38 at 10. In other words, she attached Exhibit A to show that she exhausted her administrative remedies, not to provide facts related to retaliation.

Under these circumstances, Defendants' argument that Plaintiff's complaint did not put them on notice that she was bringing an FMLA retaliation claim has some force. Nonetheless, Plaintiff does clearly state in her complaint that Defendants retaliated against her for taking FMLA leave. Doc. 38 at 7. Even though this lone sentence provides insufficient allegations to state a claim, it does put Defendants on notice that Plaintiff is alleging FMLA retaliation. This notice, combined with Exhibit A, which is attached to the complaint, does state a plausible claim for FMLA retaliation. This is especially true given the liberal construction the court applies to pro se pleadings. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Thus, I recommend finding that Plaintiff has alleged a plausible prima facie case for FMLA retaliation under the *McDonnell Douglas* test. She alleges that she engaged in protected activity (taking FMLA leave), she suffered an adverse action (demotion), and there is a causal connection with temporal proximity between the two (two weeks after Plaintiff returned from FMLA leave, Ms. Hoppman told her about the demotion).

For these reasons, I recommend denying the portion of Defendants' motion to dismiss addressed to Plaintiff's claim for FMLA retaliation by demotion. I recognize that this decision, however, is a very close call. On the one hand, the Court must read pro se pleadings liberally. *Hall,*

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

935 F.2d at 1110. On the other hand, "the analysis is not whether I, having read [Plaintiff's] pleadings, can liberally construe a retaliation claim from the text of [Plaintiff's complaint]; the question is whether the [Defendants] would have been on notice of a claim of retaliation." *Shepherd, 2013 WL 11865970, at *5.* In any event, as discussed below, even if the Court agrees with me that Plaintiff has stated an FMLA retaliation claim, because Plaintiff can show no recoverable damages, I recommend granting summary judgment in Defendants' favor on that claim.

### c. Disability Retaliation Under the ADA or NMHRA

**\*19** To the extent Plaintiff is asserting Defendants retaliated against her because of her disability in violation of the ADA or the NMHRA, such claims require similar prima facie allegations. "To establish a prima facie case of ADA retaliation, a plaintiff must prove that (1) [she] engaged in a protected activity; (2) [she] was subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action." 🚩 *Foster v. Mountain Coal Co., LLC, 830 F.3d 1178, 1186–87 (10th Cir. 2016)* (internal quotation marks and citation omitted); *see also* 🚩 *Ulibarri v. State of NM Corr. Acad., 2006-NMSC-009, ¶ 16, 131 P.3d 43* (applying the same standard under the NMHRA). Plaintiff's operative complaint and all referenced exhibits fail to provide any facts regarding any alleged protected activity [17] or a causal connection between a protected activity and an adverse employment action.

In her supplemental brief on retaliation, Plaintiff mentions for the first time that she was retaliated against for calling the EOS office on April 21, 2016 to complain about Ms. Hoppman failing to do anything about her PTSD being triggered. Doc. 153 at 10. But her operative complaint contains no allegations to make a prima facie case for such retaliation.

For these reasons, I recommend finding that Plaintiff has failed to state a plausible claim for disability retaliation under the ADA or NMHRA and therefore recommend granting Defendants' motion to dismiss these claims.

### d. Leave to Amend

If the Court finds that Plaintiff has failed to state a retaliation claim, she requests leave to amend her complaint. Doc. 153 at 3; Doc. 164 at 7. Because I recommend granting the motion to dismiss as to any disability retaliation claim under the ADA or NMHRA, I will address Plaintiff's request for leave to amend.

Under Federal Rule of Civil Procedure 15(a)(2), once the time for amending a pleading as a matter of course has expired, a party may only amend "with the opposing party's written consent, or the court's leave." "The court should freely give leave when justice so requires." *Id.* However, if the deadline established by the court for amendments has expired, the movant must also establish good cause under Rule 16(b)(4) to amend the scheduling order. Fed. R. Civ. P. 16(b)(4) (a scheduling order may be modified "only for good cause and with the judge's consent."); *see also* 🚩 *Gorsuch Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n, 771 F.3d 1230, 1240-41 (10th Cir. 2014).* Indeed, this Court's Scheduling Order reminded the parties that

> Federal Rule of Civil Procedure 16 requires that the Court set a deadline for amendment of pleadings and joinder of parties. A party seeking to amend the pleadings after the above dates must both demonstrate good cause to amend the scheduling order as required by Federal Rule of Civil 16(b) and satisfy the requirements for amendment under Federal Rule of Civil Procedure 15(a).

Doc. 22 at 2 n.1 (citing 🚩 *Gorsuch, 771 F.3d at 1242*).

The good cause standard requires the movant "to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts." 🚩 *Gorsuch, 771 F.3d at 1240* (quotations omitted). In this way, "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." 🚩 *Trujillo v. Bd. of Educ. of the Albuquerque*

ADD-130

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 198

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

*Pub. Sch.*, No. CIV 02-1146 JB/LFG, 2007 WL 2296955, at *3 (D.N.M. June 5, 2007). Examples of good cause include "if a plaintiff learns new information through discovery or if the underlying law has changed." 🚩 *Gorsuch*, 771 F.3d at 1240. If, however, "the plaintiff knew of the underlying conduct but simply failed to raise [the] claims, ... the claims are barred." *Id.*

 **\*20** Here, I recommend finding that Plaintiff has not shown good cause to allow another amendment to her complaint. Her request to amend comes over two years after the deadline to amend passed on May 6, 2019 and after discovery closed on August 16, 2019. Doc. 22. True, the case was pending on appeal for ten months (from September 2020 to July 2021) (Docs. 135, 138), but even carving out that time, Plaintiff's request to amend comes too late. She presents no arguments to explain why she could not have brought her ADA or NMHRA retaliation claim earlier and offers no explanation why the Court should allow a further amendment at such a late stage in the case.

### e. Conclusion

For these reasons, I recommend finding that Plaintiff has stated a plausible claim for FMLA retaliation but has failed to state a plausible claim for disability retaliation under the ADA or NMHRA. As to the ADA and NMHRA disability retaliation claims she has failed to state, I recommend that the Court deny her request for leave to amend. I therefore recommend granting in part and denying in part Defendants' motion to dismiss (Doc. 154).

In their motion, Defendants move, in the alternative, for summary judgment on any retaliation claims. Because I recommend denying the motion to dismiss as to Plaintiff's FMLA retaliation claim, I will address their motion for summary judgment below as to the FMLA retaliation claim. Because I recommend granting Defendants' motion to dismiss as to the ADA and NMHRA disability retaliation claims, I recommend that the Court not address Defendants' alternative request for summary judgment on those disability retaliation claims.

### 7. Motions for Summary Judgment (Doc. 154, 168, 186)

I next turn to Defendants' request for summary judgment on a number of Plaintiff's claims. First, if the Court declines to dismiss Plaintiff's FMLA retaliation claim for failure to state a claim, Defendants move in the alternative for summary judgment. Doc. 154. Therefore, I address whether the Court should grant summary judgment on Plaintiff's FMLA retaliation claim and conclude that the Court should because Plaintiff has no viable claim for FMLA retaliation damages.

Additionally, in her operative complaint, Plaintiff brings discrimination claims under both the federal ADA and the state NMHRA. In my April 2020 PFRD (as adopted by the Court), I recommended dismissing all Plaintiff's federal claims and declining supplemental jurisdiction over her state-law claims. Doc. 110 at 30. Because the Tenth Circuit has remanded some federal claims and they are not subject to resolution before trial, the Court should not decline supplemental jurisdiction over the state-law claims. Given that the NMHRA is back in play, Defendants presently move for summary judgment on Plaintiff's claims for hostile work environment and constructive discharge under the NMHRA. *See* Docs. 168 (motion); 172 (response); 175 (reply). I also ordered supplemental briefing on Plaintiff's NMHRA claim for discrimination based on actual impairment. *See* Docs. 186 (supplement); 193 (response); 194 (reply). Having reviewed this briefing, I recommend that the Court rejected Plaintiff's claims under the NMHRA for the same reasons her parallel claims under the ADA fail.

Lastly, in the April 2020 PFRD I recommended that the Court not consider Defendants' motion for summary judgment as to damages because I recommended dismissing all her federal claims and remanding all her state claims. Doc. 110 at 33. Because the Tenth Circuit has reinstated one of her federal claims, Defendants again move for summary judgment on damages. Doc. 168. Below, I describe which of Plaintiff's claims for damages are viable and which are not.

### a. Legal Standard for Summary Judgment

 **\*21** "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. 🚩 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the

ADD-131

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 199

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

But, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id. at 322-23*. When "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is "entitled to a judgment as a matter of law." *Id. at 323*. Therefore, "a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The movant may show an entitlement to summary judgment "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.*

b. Undisputed Material Facts

In their briefs on both summary judgment motions, the parties present undisputed material facts, which I review with a few rules in mind. First, facts not specifically controverted will be deemed undisputed. *See* D.N.M. LR-Civ. 56.1(b). Additionally, facts without supporting citations to the record will not be considered undisputed material facts. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot

be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials ...."); D.N.M. LR-Civ. 56.1(b) ("The response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion. Each additional fact must be lettered and must refer *with particularity to those portions of the record upon which the non-movant relies*." (emphasis added)). To that end, Plaintiff included a number of additional material facts in her response brief without citations to the record that I recommend not considering in determining summary judgment. *See* Doc. 172 at 28 ¶¶ A-1, B-2, E-5. The uncontroverted and supported material facts, taken in the light most favorable to Plaintiff, are as follows:

From 2013 to 2016 Plaintiff worked for APS as an Individualized Education Program ("IEP") teacher at Atrisco Heritage Academy ("AHA"). Doc. 168 at 2 ¶ 5; Doc. 172 at 9 ¶ 5; Doc. 154 at 2 ¶ 4; Doc. 164 at 9 ¶ 3. Cynthia "Cindy" Hoppman (formerly Cynthia Benefield) was Plaintiff's supervisor at AHA. Doc. 168 at 2 ¶ 6; Doc. 172 at 10 ¶ 6; Doc. 154 at 2 ¶ 5; Doc. 164 at 9.

**\*22** Around April 25, 2016, following the April 14 incident with Mr. Kegler and Plaintiff's subsequent interactions with Ms. Hoppman, Plaintiff took 10 days of FMLA leave. Doc. 154-2 at 119:12 to 120:2 (Plf. Depo.); Doc. 154 at 4 ¶ 19; Doc. 164 at 13 ¶ 13. She returned to work on May 11, 2011. Doc. 154-2 at 120:1-5 (Plf. Depo.); Doc. 154 at 4 ¶ 20; Doc. 164 at 13 ¶ 14. Plaintiff had her year-end evaluation with Ms. Hoppman on May 23, 2016. Doc. 168 at 2 ¶ 7; Doc. 172 at 10 ¶ 7; Doc. 154 at 4 ¶ 21; Doc. 164 at 8. During the elevation, Plaintiff and Ms. Hoppman discussed Plaintiff's self-evaluation form ("PDP"), which reflected that Plaintiff was overwhelmed, had quite a few late IEPs, failed to meet deadlines, and was behind on a project. Doc. 154-2 at 210:6 to 213:16 (Plf. Depo); Doc. 154 at 4 ¶ 22; Doc. 164 at 13-14 ¶ 15.

After the evaluation, Ms. Hoppman told Plaintiff that she would be assigned to a special education math teacher position at AHA for the 2016-2017 school year. Doc. 168 at 2 ¶ 8; Doc. 172 at 10 ¶ 8; Doc. 154 at 4 ¶ 23; Doc. 164 at 8. Plaintiff testified in her deposition that there had been a need for a special education math teacher for the last two years and

ADD-132

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 200

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

that she had a lot of experience at such a job, but that she felt it was a demotion. Doc. 168-2 at 136:7-25 (Plf. Depo.); *see also* Doc. 168 at 2 ¶ 9; Doc. 172 at 11 ¶ 9; Doc. 154 at 4 ¶ 24; Doc. 164 at 14 ¶ 16. Ms. Hoppman, however, did not view the transfer as a demotion. Doc. 168 at 2 ¶ 10; Doc. 172 at 12 ¶ 10; Doc. 154 at 5 ¶ 25; Doc. 164 at 14 ¶ 17. Plaintiff would have received the same salary and medical and dental benefits as a special education math teacher as she received as the IEP teacher. Doc. 168-2 at 71:11-17 (Plf. Depo.); *see also* Doc. 168 at 2 ¶ 11; Doc. 172 at 12-13 ¶ 11; Doc. 154 at 5 ¶ 26; Doc. 164 at 15-16 ¶ 18. The day after their meeting, Ms. Hoppman sent Plaintiff a letter summarizing her stated reasons for the transfer, including missed and rescheduled IEPs, missed deadlines, Plaintiff's failure to respond to emails, and poor attendance, including excessive absences during the second semester. Doc. 82-14 at 2-3.

On May 16, 2016, one week before Plaintiff learned that Ms. Hoppman intended to transfer her, Plaintiff told her therapist that she planned to transfer schools at the end of the year because Ms. Hoppman had betrayed her trust. Doc. 168-2 at 175:22 to 177:25 (Plf. Depo.); *see also* Doc. 168 at 3 ¶ 13; Doc. 172 at 14 ¶ 13. Plaintiff testified that at the time she made such statements to her therapist, she had not looked for other available jobs with APS or identified any other available IEP teacher positions. Doc. 168 at 3 ¶ 14; Doc. 172 at 14-15 ¶ 14.

After the end of the 2016 school year, Plaintiff took a year's leave of absence, which she testified was for the purpose of determining if she could return to APS. Doc. 168-2 at 139:5-22 (Plf. Depo.). During her leave of absence, Plaintiff did not look for other jobs. Doc. 168 at 3 ¶ 15; Doc. 172 at 14 ¶ 15. When Plaintiff finally resigned from APS on March 9, 2017, AHA Principal Antonio Gonzales told her that she "always had a home as long as he was there." Doc. 168 at 3 ¶ 16; Doc. 172 at 15-16 ¶ 16. Following her resignation, Plaintiff never contacted Dr. Gonzales regarding available jobs with APS. Doc. 168 at 3 ¶ 17; Doc. 172 at 16 ¶ 17. Instead, she testified that during that time "we were still making a six-figure salary in my house" so she did not have to work. Doc. 168-2 at 147:21 to 148:4; 232:8-17 (Plf. Depo.); *see also* Doc. 168 at 3 ¶¶ 17, 22; Doc. 172 at 16, 20 ¶¶ 17, 22.

Since her resignation in March 2017, Plaintiff has not applied for any jobs with any public schools in New Mexico. Doc. 168 at 3 ¶ 18; Doc. 172 at 16 ¶ 18. Between May 23, 2016 and the present, Plaintiff applied to at least six out-of-state jobs. Doc. 168 at 3 ¶ 19; Doc. 172 at 17-18 ¶ 19. At her deposition, she could not remember more than six applications (Doc.

168-2 at 249:4-11), but in response to summary judgment Plaintiff attached screen shots of applications to the Austin and Houston Independent School Districts (Doc. 172-6). At least two of the jobs Plaintiff applied for were in higher education for which Plaintiff testified she had no experience. Doc. 168 at 3 ¶ 20; Doc. 172 at 18-19 ¶ 20. Plaintiff testified that all her job applications occurred shortly after her resignation in 2017. Doc. 168 at 3 ¶ 21; Doc. 172 at 19-20 ¶ 21. She further testified that her teaching license expired in 2018 because she could not pay to renew it and that she did not apply to any jobs in 2019. Doc. 168-2 at 41:1-23 (Plf. Depo.); *see also* Doc. 168 at 3 ¶ 21; Doc. 172 at 19-20 ¶ 21.

**\*23** Plaintiff has no plans to return to work as a teacher. Doc. 168 at 4 ¶ 25; Doc. 172 at 22 ¶ 25. Instead, she started her own business transferring images onto fabric and other items. Doc. 168 at 4 ¶ 23; Doc. 172 at 20 ¶ 23. As of her deposition in 2019, Plaintiff had not made any money off her business. Doc. 168-2 at 233:2-4 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 24; Doc. 172 at 21 ¶ 24. Plaintiff also testified that she feels this lawsuit is a full time job. Doc. 168-2 at 21:5-9 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 24; Doc. 172 at 21 ¶ 24.

At her deposition, Plaintiff stated the damages she seeks are as follows: (1) 40 months of back pay (Doc. 168-2 at 226:6 to 231:2 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 27; Doc. 172 at 23 ¶ 27 (Plaintiff's response, stating she now seeks 66 months of backpay)); (2) 48 months of front pay, based on "four years of getting a new education", during which time she hopes to go to law school (Doc. 168-2 at 231:12 to 232:4 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 28; Doc. 172 at 23-24 ¶ 28); (3) compensatory damages in the amount of $175,000 for the cost of paying off auto loans and moving to Elephant Butte (Doc. 168-2 at 233:10 to 236:10 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 29; Doc. 172 at 24-26 ¶ 29); (4) future pecuniary losses in the amount of $521,060 (Doc. 168-2 at 236:16 to 238:5 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 29; Doc. 172 at 24-26 ¶ 29); and (5) $1.7 million for emotional pain, suffering, mental anguish, loss of enjoyment of life, and inconvenience (Doc. 168-2 at 238:22 to 240:3 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 29; Doc. 172 at 24-26 ¶ 2). Plaintiff testified that part of her claims for emotional pain, suffering, mental anguish, and loss of enjoyment of life are based on the stress of pursuing this lawsuit. Doc. 168-2 at 238:22 to 240:3 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 31; Doc. 172 at 27-28 ¶ 31. However, Plaintiff also asserts, and Defendants dispute, that the actions of APS and Ms. Hoppman caused Plaintiff's "downward spiral." Doc. 172-1 ¶ 47 (Plf. Aff.).

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 201

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

On May 28, 2020, this Court entered a final order granting summary judgment in Defendants' favor as to all Plaintiff's federal claims and remanded her state claims to state court. Doc. 168 at 1 ¶ 1; Doc. 172 at 8 ¶ 1; Doc. 186 at 1 ¶ 1; Doc. 193 at 1 ¶ 1. In particular, Plaintiff's operative complaint alleged claims that Ms. Hoppman's conduct during the 2015-2016 school year created a hostile work environment and forced a constructive discharge. Doc. 168 at 4 ¶ 26; Doc. 172 at 22-23 ¶ 26. The Court granted summary judgment in Defendants' favor as to the claims for hostile work environment and constructive discharge under the federal ADA. Doc. 110 (as adopted by Doc. 119). The Tenth Circuit affirmed that judgment as to Plaintiff's federal hostile work environment and constructive discharge claims. Doc. 168 at 2 ¶ 3; Doc. 172 at 9 ¶ 3.

Additionally, the Tenth Circuit affirmed summary judgment on Plaintiff's claim based on actual impartment under the ADA. Doc. 186 at 2 ¶ 5; Doc. 193 at 11-13 ¶ 5. Plaintiff designated her therapist Billie Poteet as her only expert witness. Doc. 186 at 1 ¶ 2. During Ms. Poteet's deposition, she testified that she will offer an opinion that Plaintiff has PTSD, but that she would not offer any other expert opinions such as whether Plaintiff is disabled pursuant to the ADA or NMHRA. Doc. 186-2 at 12:20 to 13:5, 14:14 to 15:16 (Poteet Depo.); Doc. 186 at 2 ¶¶ 3-4; Doc. 193 at 8-10 ¶¶ 3-4. [18] Considering this evidence, the Tenth Circuit found that Plaintiff had "provided sufficient evidence that she has been diagnosed with PTSD" but that she had not pointed to "any opinion by Ms. Poteet linking any of her alleged limitations to her PTSD." *Neri*, 860 F. App'x at 562; Doc. 186 at 2 ¶ 5; Doc. 193 at 11-13 ¶ 5. It held that "[b]ecause Mrs. Neri did not present medical evidence to link her PTSD diagnosis with her symptoms to establish that her PTSD substantially limits at least one major life activity, we affirm the grant of summary judgment on claims based on the actual impairment definition of 'disability' under the ADA." *Neri, 860 F. App'x at 563*; Doc. 186 at 2 ¶ 5; Doc. 193 at 11-13 ¶ 5.

### c. Procedural Issues

**\*24**  As an initial matter, in her response briefs, Plaintiff argues that the Court should deny summary judgment because Defendants violated a number of this District's local rules. Doc. 172 at 6; Doc. 193 at 4. First, she argues the Court should deny the motion for summary judgment because Defendants' briefing failed to comply with Local Rule 56.1, which

Plaintiff reads as requiring a table of authorities. As discussed above in considering Plaintiff's motion to strike, even if Local Rule 56.1(b) requires a separate list of authorities, Defendants' failure to include one in their motion did not prejudice Plaintiff.

Next, Plaintiff takes issue with Defendants' motion for reconsideration, which they filed after the deadline set by the Court. *See* Docs. 142, 169. I also discuss the timeliness of that motion above when considering the motion for reconsideration and so will not repeat that analysis here. Lastly, Plaintiff argues that Defendants filed their response to her motion to recuse after the deadline to do so. Doc. 172 at 5-6. Indeed, Defendants filed their response two days late. *See* Docs. 149, 155; *see also* D.N.M. LR-Civ. 7.4(a) ("A response must be served and filed within fourteen (14) calendar days after service of the motion."). This delay, however, in no way impacts the present summary judgment motions and the Court has already ruled on the motion to recuse.

Defendants also raise a procedural issue. In their reply briefs, Defendants argue that Plaintiff failed to respond to their legal arguments, which constitutes waiver and consent to grant the motions for summary judgment. Doc. 170 at 12; 175 at 10; Doc. 194 at 6. Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Tenth Circuit has explained, the burden is on the moving party and "the burden on the nonmovant to respond arises only if the summary judgment motion is properly 'supported' as required by Rule 56(c)." *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002). "If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Id. at 1194-95*. Accordingly, the Court cannot grant summary judgment simply because Plaintiff failed to address Defendants' arguments, as Defendants assert.

For these reasons, I recommend declining to deny or grant summary judgment based on the procedural issued raised by the parties and proceed to address the motions on their merits.

ADD-134

#### d. FMLA Retaliation

Defendants first argue that Plaintiff's retaliation claim fails because she has not exhausted her administrative remedies.[19] Doc. 154 at 9. They appear to be making this argument only in reference to potential disability retaliation claims (which I recommend dismissing for failure to state a claim). Indeed, "[t]here is no administrative exhaustion requirement for bringing a FMLA claim." *Ramsey v. Advance Stores Co.*, No. 15-4854-RDR, 2015 WL 3948119, at *5 (D. Kan. June 29, 2015). Therefore, to the extent Defendants argue that Plaintiff has failed to exhaust her FMLA retaliation claim, I recommend rejecting this argument.

**\*25**  Turning to the merits of Plaintiff's FMLA retaliation claim, as discussed above, "[a] plaintiff may proceed under a mixed motives theory and provide direct evidence of retaliation, although the Tenth Circuit Court of Appeals has questioned whether this approach is applicable in an FMLA retaliation claim." *Cordova v. New Mexico*, 283 F. Supp. 3d 1028, 1043 (D.N.M. 2017) (citing *Twigg*, 659 F.3d at 1004); *see also Debord v. Mercy Health Sys. of Kansas, Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) (implying the direct/mixed motive theory applies in FMLA retaliation cases by its statement "[w]here, as here, the plaintiff does not have direct evidence of retaliation, we follow the three-step framework from *McDonnell Douglas Corp. v. Green*"). "[A] plaintiff proceeding under the direct/'mixed motives' approach must present direct or circumstantial evidence that directly shows that retaliation played a motivating part in the employment decision at issue." *Twigg*, 659 F.3d at 1004-05. "Evidence of discrimination, if believed, is only direct evidence if it proves the existence of a fact in issue without inference or presumption." *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 883 (10th Cir. 2018) (internal quotation marks and citations omitted). Indeed, "in the employment context, this type of evidence is usually impossible to obtain." *Ford v. Jackson Nat'l Life Ins. Co.*, No. 21-1126, 2022 WL 3589672, at *5 (10th Cir. Aug. 23, 2022) (internal quotation marks and citation omitted).

Alternatively, if a plaintiff does not have direct proof of retaliation, her claim is subject to the burden-shifting analysis of *McDonnell Douglas*. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017). Under this analysis, Plaintiff bears the initial burden of establishing a prima

facie case of retaliation by showing that: "(1) she engaged in a protected activity; (2) [Defendants] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). Temporal proximity between the protected activity and adverse action may be sufficient to establish a causal connection, depending on how close the two are. *Id.* If the plaintiff establishes a prima facie case for retaliation, "then the defendant must offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Id. at 1170* (internal quotation marks and citation omitted).

Defendants analyze Plaintiff's FMLA retaliation claim under the *McDonnell Douglas* test (used when direct evidence of discrimination does not exist) and I will do the same. Defendants do not dispute the first two elements for a prima facie case: that Plaintiff engaged in protected activity (FMLA leave) and that they took an action that a reasonable employee would have found materially adverse (the demotion).[20] Instead, Defendants focus on the last element: whether there exists a causal connection between the protected activity and the adverse action. Doc. 154 at 12. Looking at the material facts related to causal connection, I recommend finding there is a genuine issue of material fact regarding the causal connection between Plaintiff's FMLA leave and the demotion. Plaintiff took FMLA leave from April 25, 2016 to May 10, 2016. She returned to work on May 11, 2016 and had her year-end evaluation with Ms. Hoppman on May 23, 2016, during which time Ms. Hoppman told her about the alleged demotion. The closeness of these events "give[s] rise to an inference of unlawful discrimination." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (finding a termination that occurred between 4 and 6 weeks after protected activity was "very closely connected in time").

**\*26**  When confronted with this temporal proximity, Defendants argue that Plaintiff "was transferred to the math teacher position for performance-based reasons and because there was a need at AHA for a special education math teacher." Doc. 154 at 12. In other words, although framing their argument as an attack on Plaintiff's burden to establish a prima facie case, Defendants move on to step two of the *McDonnell Douglas* test—offering a legitimate, non-

ADD-135

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 203

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

retaliatory reason for the employment action. *See* 🚩 *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1319 (10th Cir. 2017)* ("Once the plaintiff successfully asserts a prima facie retaliation case, the burden shifts to the defendant to offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." (internal quotation marks and citation omitted)). To the extent the Court interprets Defendants' argument as asserting that Plaintiff has failed to present evidence of a pretextual motive (as opposed to interpreting Defendants' argument as asserting that Plaintiff has failed to make a prima facie case), I recommend that the Court reject Defendants' argument.

To show that Defendants had a legitimate, non-retaliatory reason for the alleged demotion, Defendants point to "performance-based reasons and because there was a need at AHA for a special education math teacher." Doc. 154 at 12. Indeed, during Plaintiff's evaluation, Plaintiff and Ms. Hoppman discussed Plaintiff's self-evaluation form ("PDP"), which reflected that Plaintiff was overwhelmed, had quite a few late IEPs, failed to meet deadlines, and was behind on a project. Doc. 154-2 at 210:6 to 213:16 (Plf. Depo); Doc. 154 at 4 ¶ 22; Doc. 164 at 13-14 ¶ 15. Plaintiff also testified at her deposition that there had been a need for a special education math teacher for the last two years and that she had a lot of experience at such a job. Doc. 168-2 at 136:7-25 (Plf. Depo.); *see also* Doc. 168 at 2 ¶ 9; Doc. 172 at 11 ¶ 9; Doc. 154 at 4 ¶ 24; Doc. 164 at 14 ¶ 16.

To meet her burden of showing that these reasons are pretextual, Plaintiff argues that Ms. Hoppman referenced excessive absences after Plaintiff's FMLA leave as a reason for the transfer.[21] Doc. 164 at 23. Plaintiff cites an email that Ms. Hoppman sent her on May 24, 2016 (the day after Plaintiff's evaluation in which Ms. Hoppman told her about the transfer and 13 days after she returned from FMLA leave). *Id.* (citing 82-14 at 2). In that May 24 email, Ms. Hoppman lists the reasons for Plaintiff's transfer, including "excessive absences [that] continued putting several staff members in difficult situations." Doc. 82-14 at 2. It is undisputed that from April 25 to May 11, 2016 Plaintiff was on FMLA leave. Viewing this evidence in the light most favorable to Plaintiff, an issue of material fact exists as to whether the excesses absences to which Ms. Hoppman referred were absences due to FMLA, meaning Defendants demoted Plaintiff in retaliation for taking FMLA leave and their proffered, non-retaliation reasons are pretextual. Thus, applying the *McDonnell Douglas* test, Plaintiff gets past

summary judgment even if the Court interprets Defendants' argument as an attack on Plaintiff's pretext evidence.[22]

**\*27** This is not the end of the analysis, however. The Court must still consider whether Plaintiff can show any redressable damages in connection with her FMLA retaliation claim. *See* Doc. 154 at 14 (Defendants move for summary judgment on Plaintiff's FMLA retaliation claim based on the argument that she is not entitled to any damages under such a claim).

Damages under the FMLA are limited to

**(A)** for damages equal to--

**(i)** the amount of--

**(I)** any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

**(II)** in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;

...

**(B)** for such equitable relief as may be appropriate, including employment, reinstatement, and promotion

🚩 29 U.S.C. § 2617(a)(1). As a starting point, Plaintiff does not request equitable relief. *See* Doc. 38 at 11 (complaint listing damages sought). As a result, only section (A) above applies to Plaintiff's FMLA retaliation claim.

Under this section, Defendants argue that Plaintiff is not entitled to any damages in the difference in pay or benefits because "there was no change in salary or medical and dental benefits between the two positions." Doc. 154 at 15. Indeed, Plaintiff's FMLA retaliation claim is premised on the allegation that after she took FMLA leave, Defendants discriminated against her by demoting her to the special education math position. And is it undisputed that Plaintiff would have received the same salary and medical benefits between the two positions. Doc. 154 at 5 ¶ 26; Doc. 164 at 15-16 ¶ 18.

ADD-136

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 204

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

At her deposition, Plaintiff did testify that there was a difference in the amount of paid leave between the two positions. Doc. 168-2 at 71:18-20; *see also* Doc. 172 at 13-14 ¶ 11 (Plaintiff's argument). When pressed to explain the difference, however, she stated that the difference had to do with compensatory time but that during her last year as the IEP teacher she was not allowed to use any compensatory time. Doc. 168-2 at 71:18-73:21; *see also* Doc. 164-4 ¶ 16 (Plaintiff's affidavit, stating the same). In her response to summary judgment, she provides no other information such as what compensatory time the IEP teacher position received compared to the compensatory time the math teacher position received. Thus, I recommend finding that Plaintiff has not created a genuine issue of fact. *See* 📑 *Becker,* 709 F.3d at 1022 (10th Cir. 2013) (holding that a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way") (internal quotation marks omitted).

Plaintiff also argues that had she stayed in the IEP teacher position she "would have received a higher pay." Doc. 164 at 15 ¶ 18. To support this argument, she points to evidence that the person who followed her in the IEP teacher position is now called the "relief head teacher." *Id.* (citing Doc. 82-1 at 1). But the "evidence" she points to is an email from defense counsel which states, "David Adviento-Mackey replaced Sheleeha Ballard in October, 2018 as Special Education: Department Head. Steve Heredia is replacing David Adviento-Mackey effective August 5, 2019 as Special Education: Release Head Teacher." Doc. 82-1. This email does not show that Plaintiff would have received a higher pay as it does not even state what the "release head teacher" makes. I therefore recommend finding that Plaintiff has failed to show a dispute of material fact regarding the pay and compensation between the two jobs and that the undisputed facts show that Plaintiff would not have lost any wages, salary, employment benefits, or other compensation by reason of the transfer.

 **\*28**  As to other actual monetary losses, Plaintiff lists in her complaint that she is seeking damages for the cost of her education she is not able to use, the cost of a new education, spouse's wages, moving costs, and future medical care. Doc. 38 at 11. However, these damages were not "sustained by the employee as a direct result of the violation." 📑 29 U.S.C. § 2617(a)(1). That is, the alleged FMLA violation is that Defendants demoted Plaintiff by assigning her to a new position. She sustained the listed damages when she voluntarily quit her job with APS, an action that the Tenth

Circuit has affirmed was not constructive discharge. *See* 📑 *Strickland v. United Parcel Serv., Inc.,* 555 F.3d 1224, 1228 (10th Cir. 2009) ("The FMLA only permits the recovery of actual monetary losses, which in this case would be lost wages. Strickland did not stop working because she was terminated, so to recover damages in the form of lost wages, she must demonstrate she was constructively discharged."). Plaintiff has failed to make a showing that she incurred any actual monetary losses as a result of the alleged FMLA retaliation. *See* 📑 *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) ("📑 Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Thus, the only remaining damages at issue are for emotional distress. *See* Doc. 38 at 11. However, because recovery under the FMLA is "unambiguously limited to actual monetary losses, courts have consistently refused to award FMLA recovery for such other claims as consequential damages and emotional distress damages." 📑 *Walker v. United Parcel Serv., Inc.,* 240 F.3d 1268, 1277 (10th Cir. 2001) (internal citations omitted); *see also* 📑 *id.* at 1278 ("📑 Section 2617(a)(1) does not provide for compensatory damages in general, but is instead expressly limited to lost compensation and other actual monetary losses.").

In sum, although I recommend finding that material issue of fact exist regarding whether Plaintiff can establish a prima facie case and show pretext, I ultimately recommend granting Defendants' motion for summary judgment as to Plaintiff's FMLA retaliation claim because Plaintiff suffered no injury redressable under the FMLA.[23] *See* 📑 *Walker,* 240 F.3d at 1277 (affirming summary judgment on an FMLA claim when the district court found the plaintiff suffered no damages redressable under the FMLA). I therefore recommend granting Defendants' motion for summary judgment on Plaintiff's FMLA retaliation claim (Doc. 154).

### e. State-Law Claims: Hostile Work Environment and Constructive Discharge

In my April 2020 PFRD (as adopted by the Court), I recommended granting summary judgment in Defendants'

ADD-137

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 205

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

favor on Plaintiff's federal ADA claims for hostile work environment and constructive discharge, reasoning that "no reasonable person could find that Plaintiff was subjected to a hostile work environment," and that Plaintiff failed to "provide any other facts through which a reasonable jury could determine that Defendants constructively discharged her." Doc. 110 at 21, 25. The Tenth Circuit affirmed these holdings. *Neri, 860 F. App'x at 567-68*. Defendants now argue, and I agree, that Plaintiff's state-law claims under the NMHRA for hostile work environment and constructive discharge fail for the same reasons her federal claims failed.

Under the NMHRA, "it is an unlawful discriminatory practice for an employer to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of ... physical or mental handicap or serious medical condition ...." *NMSA § 28-1-7(A)*. As discussed above, the New Mexico Supreme Court, in interpreting the NMHRA, has indicated that it is appropriate to rely on the ADA, as the closest federal counterpart. *Trujillo v. N. Rio Arriba Elec. Co-op, Inc., 2002-NMSC-004, ¶ 8, 612, 41 P.3d 333* ("In interpreting our state Human Rights Act, we have previously indicated that it is appropriate to rely upon federal adjudication for guidance in analyzing a claim under the Act", and "the 'closest federal counterpart would be the Americans with Disabilities Act."); *see also Goodman v. OS Rest. Servs., LLC, 2020-NMCA-019, ¶ 22, 461 P.3d 906* ("Our Supreme Court has instructed that in interpreting the NMHRA, it is appropriate to rely upon federal adjudication for guidance in analyzing a claim under the Act, with the caveat that we have not adopted federal law as our own, and that we do not bind New Mexico law to interpretations made by the federal courts of the federal statute." (internal quotation marks and citation omitted));

*Ocana v. Am. Furniture Co., 2004-NMSC-018, ¶ 23, 91 P.3d 58* (New Mexico courts "may look at federal civil rights adjudication for guidance in interpreting the NMHRA").

**\*29** The standard under the NMHRA to establish a claim for hostile work environment is the same as under the ADA: "when the offensive conduct becomes so severe and pervasive that it alters the conditions of employment in such a manner that the workplace is transformed into a hostile and abusive environment for the employee." *Ocana, 2004-NMSC-018, ¶¶ 23-24* (citing *Meritor Savings Bank, FSB*

*v. Vinson, 477 U.S. 57, 67 (1986))*; *see also Neri, 860 F. App'x at 566* (under the ADA, "[t]o avoid summary judgment on a hostile work environment claim, 'a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " (quoting *Payan v. United Parcel Serv., 905 F.3d 1162, 1171 (10th Cir. 2018)*)). Under both the NMHRA and the ADA, "[t]he work environment must be both objectively and subjectively offensive—one that a reasonable person would find hostile or abusive and one that the employee did perceive as being hostile or abusive." *Ocana, 2004-NMSC-018, ¶ 24*; *see also Neri, 860 F. App'x at 566* ("The environment must have been both objectively and subjectively hostile." (internal quotation marks and citation omitted)).

The Tenth Circuit reviewed the following undisputed material facts regarding Plaintiff's ADA claim for hostile work environment: "Ms. Hoppman continually harassed her throughout the 2015/2016 school year; Ms. Hoppman changed her job's expectations and benefits throughout the 2015/2016 school year; in the April 14, 2016 IEP meeting Mr. Kegler shoved his chair into the wall and slammed his laptop shut; Ms. Hoppman told [her] that the April 14, 2016 incident was 'no big deal'; and Ms. Hoppman sent support for Mr. Kegler at the April 15, 2016 IEP meeting." *Neri, 860 F. App'x at 567*. The court found that Plaintiff "failed to show that these incidents were either pervasive or severe enough to create an objectively hostile work environment." *Id.* In the present summary judgment motion, the only fact Plaintiff adds is that she finished the 2015/2016 school year with the same amount of completed IEPs as the previous two years. Doc. 172 at 29 ¶¶ C-3, D-4. This fact adds little to Plaintiff's hostile work environment claim. As the Court previously found, and as affirmed by the Tenth Circuit, Plaintiff fails to show pervasive or severe incidents to create an objectively hostile work environment under the NMHRA. As such, I recommend granting summary judgment in Defendants' favor as to Plaintiff's claim for hostile work environment under the NMHRA.

Looking next at constructive discharge, to establish a claim for constructive discharge under both the ADA and the NMHRA, a plaintiff must show that the conditions of employment were objectively intolerable and that she "had

ADD-138

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 206

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

no other choice but to quit." *Gormley v. Coca-Cola Enter., 2005-NMSC-003, ¶ 10, 109 P.3d 280* (internal quotation marks and citations omitted); *see also Neri, 860 F. App'x at 567*. That is, "[a]n employee must allege facts sufficient to find that the employer made working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign." *Gormley, 2005-NMSC-003, ¶ 10; see also Neri, 860 F. App'x at 567*.

Reviewing her federal constructive discharge claim and the undisputed material facts, the Tenth Circuit found that "although Mrs. Neri perceived the transfer to be a demotion, she has not shown that a reasonable jury could find the conditions of the math teacher position so objectively intolerable that she had no other choice but to quit," because, in part, she "was offered a job making the same salary and carrying the same medical and dental benefits that she would have had as the IEP Teacher." *Neri, 860 F. App'x at 567* (internal quotation marks and citation omitted). In the present motion, Plaintiff presents no new facts that would change this analysis. As such, for the reasons the Tenth Circuit explained, I recommend granting summary judgment in Defendants' favor as to Plaintiff's constructive discharge claim under the NMHRA.

### f. State-Law Claim: Actual Impairment

**\*30** In addition to the state-law claims already discussed, one other claim under the NMHRA remains at issue: discrimination based on actual impairment. Defendants did not move for summary judgment on this state-law claim. However, given that the Tenth Circuit affirmed summary judgment on Plaintiff's ADA claim for discrimination based on an actual impairment, and given the similarity between the ADA and the NMHRA, I recommend granting summary judgment on this state-law claim. Federal Rule of Civil Procedure 56(f) allows the Court to grant summary judgment on grounds not raised by the parties or consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. That Rule, however, first requires the Court to give notice to the parties and a reasonable time to respond. Fed. R. Civ. P. 56(f). As such, I directed the parties to file supplemental briefs regarding this state-law claim, Doc. 182, which they did, Docs. 186, 193, 194.

As discussed above, under the NMHRA, "it is an unlawful discriminatory practice for an employer to refuse to hire, to discharge, to promote or to demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of ... *physical or mental handicap or serious medical condition* ...." NMSA § 28-1-7(A) (emphasis added). The NMHRA defines physical or mental handicap as "*a physical or mental impairment that substantially limits one or more of a person's major life activities*. A person is also considered to be physically or mentally handicapped if the person has a record of physical or mental handicap or is regarded as having a physical or mental handicap." NMSA § 28-1-2(M) (emphasis added). This is similar to the ADA's definition: "Disability is defined by the ADA as '(A) *a physical or mental impairment that substantially limits one or more of the major life activities of such individual*; (B) a record of such an impairment; or (C) being regarded as having such an impairment.' " *Lanman v. Johnson County, Kansas, 393 F.3d 1151, 1156 (10th Cir. 2004)* (quoting 42 U.S.C. § 12102(2) (emphasis added)). I am unaware of any New Mexico law interpreting "a physical or mental impairment that substantially limits one or more of a person's major life activities" under the NMHRA differently than the federal counterpart and so will rely on the ADA case law. *See Trujillo, 2002-NMSC-004, ¶ 8*. Indeed, "in the context of an NMHRA medical condition discrimination case, the NMHRA terms 'serious medical condition' and 'handicap' are interchangeable with the ADA term 'disability.' " *Goodman, 2020-NMCA-019, ¶ 22* (citing *Trujillo, 2002-NMSC-004, ¶ 8*).

Under the ADA, to establish actual impairment, a plaintiff "must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Felkins v. City of Lakewood, 774 F.3d 647, 650 (10th Cir. 2014)*. Using this test to examine Plaintiff's ADA claim for actual impairment, the Tenth Circuit did not dispute that Plaintiff has been diagnosed with PTSD and held that Plaintiff could testify about the physical and mental symptoms she has experienced. *Neri, 860 F. App'x at 563*. However, the court further held that her actual impairment claim failed because she did not "present medical evidence to link her PTSD diagnosis with her symptoms to establish that her PTSD substantially limits at least one major life activity."

ADD-139

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 207

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

*Neri*, 860 F. App'x at 563; *see also* *Felkins*, 774 F.3d at 652-53 (10th Cir. 2014) ("[T]he failure of proof on which our decisions turns is that [the plaintiff] has not provided proper evidence that any limitation she may have is *caused* by [her claimed disability]."). In reaching this conclusion, the court noted that Plaintiff's expert, Ms. Poteet, "stated that the only expert opinion she would offer 'is whether, in fact, [Mrs.] Neri has PTSD' ", and that Plaintiff "does not point to any opinion linking any of her alleged limitations to her PTSD." *Neri*, 860 F. App'x at 562. Plaintiff's claim for discrimination under the NMHRA for actual impairment fails this same reason. In the supplemental briefing, she continues to point to no expert opinion linking her alleged limitations to her PTSD.

**\*31** Plaintiff makes several arguments in her supplemental brief that I recommend rejecting. First, she argues that under the NMHRA a person claiming discrimination is entitled to a trial de novo. Doc. 193 at 16; *see also* Doc. 193 at 20 (arguing that, because the Tenth Circuit remanded her claim for discrimination based on demotion, "this court needs to reinstate her claims and look at each of them anew."). Plaintiff's assertion about de novo review is correct. The NMHRA provides a grievance procedure through the human rights division of the labor department which ends in allowing the complainant to "seek a trial de novo in the district court." NMSA § 28-1-10(J). However, a trial "de novo" review does not mean that Plaintiff moves automatically to trial, but that the court makes "an independent determination of the issues, giving no special weight to the [administrative proceeding's] decision." *In re Hilgers*, 371 B.R. 465, 468 (B.A.P. 10th Cir. 2007), *aff'd*, 279 F. App'x 662 (10th Cir. 2008). Such is the case here—I am examining the issues without giving any weight to a decision in any administrative proceeding. Plaintiff's citation to *Contreras v. Miller Bonded, Inc.* is inapplicable to this case because *Contreras* deals with the application of collateral estoppel between an administrative adjudication and a de novo review in the district court—an issue not present in this case. 316 P.3d 202, 204 (10th Cir. 2013).

Next, Plaintiff discusses her entitlement to backpay (Doc. 193 at 18), an issue unrelated to determining actual impairment under the NMHRA and which I address below when considering Defendants' request for summary judgment on Plaintiff's damages.

Lastly, after the parties filed their supplemental briefs as directed by the Court, Plaintiff filed a "Motion for Leave to File Surreply to Defendants' Supplemental Briefing in Support of Defendants' Motion for Summary Judgment on State Claims and Damages." Doc. 196; *see also* Doc. 199 (Defendants' response in opposition). Plaintiff attached to her motion her proposed surreply (Doc. 196-1) and separately, filed the same surreply on the docket a few days later (Doc. 197). "A surreply is appropriate and should be allowed where new arguments are raised in a reply brief." *Nava.jo Health Foundation-Sage Memorial Hosp., Inc. v. Burwell*, 110 F. Supp 3d. 1140, 1180 (D.N.M. 2015). Plaintiff asserts that she needs a surreply in order to address several new arguments Defendants raised in their supplemental reply. Those "new" arguments include Defendants' argument that Plaintiff did not supply any evidence that would create a dispute of material fact and Defendants' argument in response to Plaintiff's assertion that they did not follow the local rules. Doc. 196 at 1-2. These arguments that Defendants made in their supplemental reply, however, are not new; instead, they address arguments and deficiencies in Plaintiff's response brief. *See* Doc. 193 at 4-7 (Plaintiff's supplemental response brief). Plaintiff also uses her motion for surreply to repeat her argument regarding a table of authorities, which she has made in multiple other fillings. Doc. 196 at 2. Because Defendants did not raise new arguments or issues in their reply, I recommend that the Court deny the motion for surreply (Doc. 196) and strike from the docket Plaintiff's surreply (Doc. 197).

Alternatively, if the Court disagrees with my recommendation and grants the motion for surreply, her surreply does not change my recommendation to grant summary judgment in Defendants' favor as to Plaintiff's claim for actual impairment under the NMHRA. That is, her surreply does not point to any medical evidence linking her alleged limitations to her PTSD but instead repeats arguments she previously made which do not overcome the fact that (as the Tenth Circuit observed) she has failed to present evidence establishing that her PTSD has limited a major life activity. Plaintiff's citation to her medical records to argue that her PTSD substantially limits at least one major life activity does not alter this outcome. Doc. 196-1 at 2-3 (citing Doc. 146-1). Plaintiff still fails to point to any opinion by Ms. Poteet, or another medical expert, linking her alleged limitations to her PTSD. Thus, I recommend finding that Plaintiff's claim for discrimination based on actual impairment under the NMHRA fails.

g. Damages Under the ADA and NMHRA

ADD-140

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 208

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

**\*32**  In her operative complaint, Plaintiff requests damages for front pay, back pay (including her pension), and compensatory damages to include: (1) cost of the education she is no longer able to use (i.e. her student loans); (2) cost of a new education; (3) emotional distress; (4) future medical care; (5) loss of enjoyment of life; (6) health deterioration; (7) cost of lost home and cost of moving; (8) cost of unpaid bills; and (9) spouse's lost wages. The ADA incorporates the remedies available under Title VII, which in turn allows for recovery of back pay, front pay, and compensatory damages. *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(3)(B), (g); 42 U.S.C. § 1981a. Likewise, a plaintiff can recover actual damages under the NMHRA. NMSA § 28-1-13(D). Defendants move for summary judgment on Plaintiff's claims for damages under the ADA and NMHRA, and I will address each category of damages in turn. [24]

First, Plaintiff requests front pay in the amount of her salary ($45,000) for 10 years—the amount of time before she had planned to retire. Doc. 38 at 11. She also requests back pay in the amount of her salary from September 2016 to August 2019. *Id.* Defendants correctly argue that Plaintiff is unable to recover back pay and front pay under the ADA and NMHRA because she resigned and was not constructively discharged. *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 342 (10th Cir. 1986) (examining damages under Title VII and holding that an employee is not entitled to back or front pay unless she was constructively discharged); *see also Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1237 (10th Cir. 2000) (holding that the 1991 amendments to the Civil Rights Act of 1964 embodied in 42 U.S.C. § 1981a (which allow for recovery of compensatory damages) do not alter *Derr* and the holding that a plaintiff is only entitled to back or front pay under § 2000e-5(g) when constructively discharged); *Chavez-Acosta v. Sw. Cheese Co., LLC*, No. 12 CV 353 JAP/CG, 2013 WL 11327604, at \*3 (D.N.M. Sept. 4, 2013) ("The Court concludes that under the NMHRA, as under Title VII, lost wages are not recoverable by a claimant who resigns employment but fails to prove constructive discharge."). Here, as discussed above, the Tenth Circuit found that Plaintiff's federal claim for constructive discharge fails and I likewise recommend that her state-law claim for constructive discharge fails. As such, I recommend granting summary judgment in Defendants' favor on this issue and finding that Plaintiff is not entitled to recover back or front pay under the ADA and NMHRA. [25]

Defendants also move for summary judgment on Plaintiff's claims for compensatory damages under the ADA and NMHRA. According to § 1981a, the 1991 amendments to the Civil Rights Acts of 1964, a plaintiff may recover compensatory damages under the ADA, subject to the cap in § 1981a(b)(3), as the result of an illegal employment practice even when workplace discrimination did not rise to the level of constructive discharge. *Mallinson-Montague*, 224 F.3d at 1236 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 253-55 (1994)). As defined in § 1981a, compensatory damages include future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. 42 U.S.C. § 1981a(b)(3). Likewise, the NMHRA allows for recovery of actual damages and "the phrase *actual damages* is synonymous with compensatory damage." *Behrmann v. Phototron Corp.*, 1990-NMSC-073, ¶ 24, 795 P.2d 1015 (emphasis in original). Defendants argue that Plaintiff is not entitled to compensatory damages because APS did not cause any of her requested compensatory damages. *See Carter v. Sedgwick Cnty., Kan.*, 36 F.3d 952, 957 (10th Cir. 1994) ("[O]ne of the central purposes of Title VII is to make persons whole for injuries suffered on account of unlawful employment discrimination." (internal quotation marks and citation omitted)); *Davoll v. Webb*, 194 F.3d 1116, 1143 (10th Cir. 1999) (applying *Carter* to a claim under the ADA).

**\*33**  First, Defendants argue that there is no evidence that Plaintiff incurred $175,000 in auto loans and moving expenses because of APS. In response, Plaintiff points to no evidence to establish that Defendants cause such damages. Because Plaintiff bears the burden to prove her damages, *see Niemi v. Lasshofer*, 770 F.3d 1331, 1355 (10th Cir. 2014), Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is "entitled to a judgment as a matter of law." *Id.* at 323. As such,

ADD-141

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 209

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

I recommend granting summary judgment in Defendants' favor as to Plaintiff's claim for compensatory damages for her auto loan and moving expenses.

Next, Defendants cite to Plaintiff's deposition and argue that she is unable to explain her claim for $521,060 in future pecuniary loss or that Defendants caused such damages. At her deposition, when asked about future pecuniary losses Plaintiff testified that she does not "know what that means." Doc. 168-2 at 238:2-5 (Plf. Depo.). Her lack of knowledge regarding the phrase "pecuniary losses" is not the same as being unable to explain those losses, as Defendants argue. In her operative complaint she specifies that she is seeking damages for the cost of a new education, future medical care including therapy, unpaid bills, and her spouse's lost wages. Doc. 38 at 11.

As Defendants correctly point out and as discussed above regarding her auto loan and moving expenses, Plaintiff has presented no evidence to support her damages for future pecuniary losses—including costs of a new education, future medical care, cost of unpaid bills, spouse's lost wages—and that Defendants caused such damages by transferring her to the IEP position. See *Salazar v. Cont. Freighters, Inc.*, No. 18-CV-651-GKF-JFJ, 2019 WL 7605822, at *2 (N.D. Okla. Oct. 4, 2019) ("What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in [her] complaint in opposition to a properly supported summary judgment motion made against [her]." (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968))). As such, I recommend granting summary judgment in Defendants' favor as to future pecuniary losses. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Lastly, Defendants argue that Plaintiff cannot recover emotional distress damages because she testified that her claims for emotional pain, suffering, mental anguish, and loss of enjoyment of life are based on the stress of pursuing this lawsuit and not a result of the underlying discrimination at issue in this case. I disagree with Defendants' characterization of her deposition testimony. Plaintiff testified at her deposition that her emotional pain is based on "the games everyone plays, based on ... [her] 17 years in a position, based on the fact that every time [she] turn[s] around [she is] having to figure out what game is being played, what things are being done so [she] can make sure that [she] follow[s] the law." Doc. 168-2 at 239:8-13. I do not read this statement as narrowly as Defendants. That is, making all reasonable inferences in

the light most favorable to Plaintiff, while this testimony indicates that Plaintiff attributes some emotional distress to the lawsuit, she also talks about her 17-year career with APS and her reference to "what game is being played" could be a reference to the alleged demotion by APS and Ms. Hoppman that led to this lawsuit. In other words, Plaintiff attributes her "downward spiral" to the actions of APS and Ms. Hoppman. See Doc. 172-1 ¶ 47 (Plf. Aff). Defendants' argument that most of Plaintiff's emotional distress is attributable to her own decision to file a lawsuit, rather than Defendants' actions, is more properly directed to the jury. As such, a dispute of fact exists regarding whether Defendants caused Plaintiff's emotional distress.

### RECOMMENDATION

**\*34** For the reasons stated above, I recommend as follows:

- Given the Tenth Circuit mandate remanding a federal claim, the Court should no longer decline supplemental jurisdiction over Plaintiff's state-law claims.

- DENY Plaintiff's Motion for Expedited Order for Defendants to File Other Relevant Parts of Deposition (Doc. 184).

- DENY Plaintiff's Motion to Strike Defendants' Motions for Summary Judgments, Motion to Dismiss and Motion for Reconsideration due to Non-Compliance with Local Civil Rules of the United States District Court for the District of New Mexico (Doc. 183).

- GRANT IN PART Defendants' Motion for Reconsideration (Doc. 169) and reconsider the Motion to Exclude (Doc. 100) as it relates to Plaintiff's letter to Ms. Hoppman. DENY the remainder of Defendants' Motion for Reconsideration (Doc. 169).

- DENY Defendants' Motion to Exclude from Summary Judgment Consideration (Doc. 100) as to Exhibit 12 (Doc. 82-12) and Exhibit 14 (page 1) (Doc. 82-14 at 1), DENY AS MOOT the remainder of the Motion to Exclude, and DENY Defendants' request for attorney's fees and Plaintiff's request for sanctions.

- DENY IN PART Plaintiff's Motion to Reinstate her Federal Discrimination Claims (Doc. 140) as to claims that were dismissed by this Court and affirmed by the Tenth Circuit, and GRANT IN PART the motion as

ADD-142

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 210

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

to those claims reversed and remanded by the Tenth Circuit.

• DENY Defendants' Motion to Dismiss (Doc. 154) as to Plaintiff's claim for FMLA retaliation and GRANT the motion to dismiss as to any claims for disability retaliation under the ADA or NMHRA.

• GRANT Plaintiff's request to reinstate her FMLA retaliation claim as made in her Memorandum in Support of her Motion to Reinstate Federal Discrimination Claims with Particular Reference to her Retaliation Claim (Doc. 153) and DENY her request to reinstate as to any disability retaliation claim under the ADA and NMHRA. Additionally, DENY Plaintiff's request for leave to amend her complaint to add disability retaliation claims.

• GRANT Defendants' Motion for Summary Judgment on Purported Retaliation Claims (Doc. 154) as to Plaintiff's claim for FMLA retaliation.

• GRANT IN PART Defendants' Motion for Summary Judgment on State Claims and Damages (Doc. 168 with Supplemental Doc. 186) as to Plaintiff's state-law claims for hostile work environment, constructive discharge, discrimination based on actual impairment, back and front pay, and compensatory damages for Plaintiff's auto loan, moving expenses, and future pecuniary losses; and DENY IN PART Defendants' motion for summary judgment as to Plaintiff's claim for compensatory damages for emotional distress.

• DENY Plaintiff's Motion for Leave to File Surreply to Defendants' Supplemental Briefing in Support of Defendants' Motion for Summary Judgment on State Claims and Damages (Doc. 196) and STRIKE Plaintiff's Surreply in Opposition to Defendants['] Motion for

Summary Judgment on State Claims and Damages (Doc. 197).

For clarity, I also recommend finding that Plaintiff's claims fall into these categories:

• Claims remaining to be addressed at trial: alleged discrimination under the ADA and the NMHRA based on a demotion because APS regarded Plaintiff as being disabled.

**\*35** • Claims dismissed: claims under the ADA and NMHRA for alleged discrimination based on actual impairment or record of impairment; hostile work environment; constructive discharge; failure to accommodate; FMLA and disability retaliation claims.

• For her remaining ADA and NMHRA discrimination claim, Plaintiff is unable to recover back and front pay, and compensatory damages for her auto loan, moving expenses, and future pecuniary losses, but may seek compensatory damages for emotional distress based on the demotion.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 🚩 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3998643

---

**Footnotes**

1      The Honorable Judith C. Herrera referred this matter to me pursuant to 🚩 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), Doc. 37, and as such I enter this Proposed Findings and Recommended Disposition addressing the pending motions.

2      Cynthia Hoppman is sometimes referred to in exhibits by her previous last name, Ms. Benefield, or as Cindy.

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 211

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

3    As will be discussed later in this PFRD, there is a question as to whether Plaintiff properly asserted a retaliation claim.

4    Plaintiff also cites Federal Rule of Civil Procedure 32(a)(5)(B), which provides limitations for use of "[a] deposition taken without leave of court under the unavailability provisions of Rule 30(a)(2)(A)(iii) ...." Plaintiff provides no further information, such as which deposition she believes was taken under the unavailability provisions of Rule 30(a)(2)(A)(iii).

5    To support this argument, Plaintiff points to portions of Ms. Poteet's deposition, which she argues shows that Ms. Poteet "linked Plaintiff's undisputed diagnosis of PTSD and some limitation." Doc. 190 at 3 (citing Doc. 172-4). I disagree with Plaintiff's read of Ms. Poteet's depositions, attached as Doc. 172-4. In the cited deposition excerpts, Ms. Poteet discusses her treatment of Plaintiff and Plaintiff's symptoms, but does not "link Plaintiff's undisputed diagnosis of PTSD and some limitation." *See generally*, Doc. 172-4.

6    Prior to 2000, Rule 30(f) provided that depositions would be sealed and filed with the court. That requirement was eliminated with the 2000 amendment to Rule 30(f).

7    Defendants argue that Plaintiff's October 6 response failed to follow the Court's briefing schedule. Doc. 178 at 1. I, however, find no fault in the timing of Plaintiff's filing because she sought and received extensions for her response. *See* Docs. 158, 163.

8    Plaintiff also points out that Defendants' motion for reconsideration fails to follow Local Rule 7.1(a) to include a recitation of whether the motion is opposed. While parties should always attempt to confer regarding motions before their filing, given that the motion to exclude was opposed, it was reasonable for Defendants to presume the motion for reconsideration also would be opposed.

9    For clarity, Exhibit 14 (Doc. 82-14) is 12 pages in total. The first page is the letter at issue here—the letter Plaintiff sent to Ms. Hoppman. The remaining pages are emails Ms. Hoppman sent, hand written notes, and leave paperwork. In their motion to exclude, Defendants are only concerned with the first page of Exhibit 14.

10    If the presiding judge disagrees with my recommendation and excludes Exhibits 12 and 14 (page 1), excluding the letter contained in these exhibits does not change my recommendation in connection with the motion where the letter is used—Plaintiff uses the letter in her response to Defendants' motion to dismiss (Doc. 164).

11    I discuss Plaintiff's state-law claims for actual impairment, hostile work environment, and constructive discharge below when considering Defendants' motion for summary judgment on state-law claims.

12    Because Plaintiff did not include a failure to accommodate claim in her complaint (she first alleged bringing such a claim at the January 16, 2020 hearing), it is unclear if she purports to assert that claim under the ADA or NMHRA. *See* Doc. 110 at 26 (discussing failure to accommodate claim); *see generally* Doc. 38 (operative complaint). In my prior PFRD I only addressed the claim under the ADA, Doc. 110 at 26-27, which the Tenth Circuit affirmed. Neri, 860 F. App'x at 568. To the extent Plaintiff's failure to accommodate claim is alleged under the NMHRA, such a claim fails for the same reason as a federal claim: that she did not timely bring a claim for failure to accommodate. *Id.*

13    After *Computerized Thermal Imagining* was published in 2002, the relevant time period under Rule 59(e) changed from 10 days to 28 days.

14    At the hearing, Plaintiff alleged Defendants failed to provide the Court with that the part of Ms. Poteet's deposition testimony that includes contrary evidence. Defendants confirmed that no contrary testimony was missing. Indeed, in their reply to the motion for summary judgment, Defendants attached the portion of Ms. Poteet's deposition in which she makes the statement at issue, as well as the following four pages of testimony

ADD-144

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 212

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

in which she discusses her role in treating Plaintiff. Doc. 186-2. Nothing in that testimony indicates that Ms. Poteet would offer an expert opinion contrary to the opinion she explicitly said she would not offer and Plaintiff presents no such evidence to support her assertion.

15   I cite unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

16   Plaintiff's allegations in Exhibit A do not allege direct evidence of FMLA retaliation because the statement "You have been out an excessive amount" requires at least one inference to link it to Plaintiff's FMLA retaliation claim—that Plaintiff has been out an excessive amount due to her FMLA leave and not due to other, non-FMLA absences.

17   Plaintiff's Third Amended Complaint does make references to Plaintiff's "complaint" and Defendants failing to investigate her complaint. Doc. 38 at 8-9. In the context of the paragraph that contains those references and the next few paragraphs, the "complaint" appears to refer to her complaint to the EEOC for disability discrimination made *after* she alleges APS demoted her, not a complaint she made to Defendants which led to the demotion. *See id.* at 9 ¶ 7 ("APS had a mandatory responsibility to investigate my complaint sent to them the same day I filed my charge with the EEOC ....").

18   To dispute this testimony, Plaintiff attached letters Ms. Poteet wrote to Plaintiff's employer, explaining that Plaintiff's "PTSD has been triggered by several instances at her place of employment," and as such "her emotions have been dysregulated and she is unable to attend to the requirements of work." Doc. 193-1. These letters, Plaintiff argues, shows that Ms. Poteet did link Plaintiff's PTSD to her limitations. Doc. 193 at 9. However, these letters only show that Ms. Poteet suggested Plaintiff take time off of work and do not controvert Ms. Poteet's deposition testimony that she would offer no expert opinions, other than the opinion that Plaintiff has PTSD. *See* Doc. 193-1 (letters); Doc. 186-2 at 13:2-5 (Poteet Depo.).

19   In their answer to Plaintiff's third amended complaint, Defendants include an affirmative defense that she failed to exhaust her administrative remedies. Doc. 41 at 4. In her response to the motion to dismiss, Plaintiff "moves this court to strike Defendants' Failure to Exhaust Administrative Remedies Third Affirmative Defense." Doc. 164 at 26. Plaintiff provides no other argument and, therefore, her request is not properly briefed. As such, the argument is not properly before the Court and the Court should not consider it.

20   To be clear, Defendants do not concede that the position transfer/demotion was a materially adverse action. But because the Tenth Circuit previously found that a genuine issue of material facts exists as to whether the transfer was an adverse action, they do not move for summary judgment on that element. Doc. 154 at 12.

21   As discussed above, Plaintiff included the allegation about excessive absences in an exhibit to her complaint. *See* Doc. 12-1. That allegation is just that—an allegation and not evidence in the summary judgment record. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials ...."). For this summary judgment motion, the Court will thus not rely on that allegation, but look at materials in the record.

22   As mentioned above, the parties brief this issue under *McDonell Douglas* and do not discuss whether Plaintiff has direct evidence of FMLA retaliation. To the extent the Court wishes to examine direct evidence, I recommend concluding that Plaintiff has presented no direct evidence because Ms. Hoppman's statement in her email regarding excessive absences requires an inference—that Plaintiff's excessive absences, which caused Defendants to demote her, were due to her FMLA leave (and not due to non-FMLA absences).

ADD-145

**Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....**

23    Nominal damages are also not available to Plaintiff under the FMLA. *See* 🚩 *Walker*, 240 F.3d at 1277.

24    Because I already discussed damages under the FMLA above (for Plaintiff's FMLA retaliation claim) I do not discuss those damages here.

25    Defendants raise alternative arguments regarding Plaintiff's claims for back and front pay including that she cannot show her damages were caused by Defendants and that she failed to mitigate her lost wages. Doc. 168 at 9-11. Because I find that Plaintiff is not entitled to lost wage damages because she was not constructively discharged, I do not address these alternative arguments. Additionally, Defendants argue that Plaintiff is not entitled to nominal damages (Doc. 168 at 11), which I do not address because Plaintiff has not requested nominal damages.

---

**End of Document**                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 214

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

2022 WL 4546250
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Danielle NERI, Plaintiff,

v.

BOARD OF EDUCATION FOR ALBUQUERQUE
PUBLIC SCHOOLS and Cynthia Hoppman, Defendants.

Civ. No. 19-8 JCH/SCY
|
Filed September 29, 2022

**Attorneys and Law Firms**

Danielle L. Neri, Elephant Butte, NM, for Plaintiff.

Jennifer G. Anderson, Nathan T. Nieman, Laura Meghan
Unklesbay, Modrall, Sperling, Roehl, Harris & Sisk, P.A.,
Albuquerque, NM, for Defendants.

**ORDER ADOPTING MAGISTRATE
JUDGE'S PROPOSED FINDINGS AND
RECOMMENDED DISPOSITION**

Judith C. Herrera, SENIOR UNITED STATES DISTRICT
JUDGE

  **\*1**  This matter is before the Court on a series of motions
and supplemental filings: (1) Plaintiff's Motion to Reinstate
her Federal Discrimination Claims, Doc. 140; (2) Plaintiff's
Memorandum in Support of her Motion to Reinstate Federal
Discrimination Claims with Particular Reference to her
Retaliation Claim, Doc. 153; (3) Defendants' Motion to
Dismiss or in the Alternative Motion for Summary Judgment
on Purported Retaliation Claim(s), Doc. 154; (4) Defendants'
Motion for Summary Judgment on State Claims and
Damages, Doc. 168; (5) Defendants' Supplemental Briefing
in Support of Defendants' Motion for Summary Judgment on
State Claims and Damages, Doc. 186; (6) Defendants' Motion
for Reconsideration, Doc. 169; (7) Defendants' Motion
to Exclude from Summary Judgment Consideration, Doc.
100; (8) Plaintiff's Motion to Strike Defendants' Motions
for Summary Judgments, Motion to Dismiss and Motion
for Reconsideration due to Non-Compliance with Local
Civil Rules of the United States District Court for the
District of New Mexico, Doc. 183; (9) Plaintiff's Motion
for Expedited Order for Defendants to File Other Relevant

Parts of Deposition, Doc. 184; and (10) Plaintiff's Motion for
Leave to File Surreply to Defendants' Supplemental Briefing
in Support of Defendants' Motion for Summary Judgment on
State Claims and Damages, Doc. 196.

The Court referred these matters to Magistrate Judge
Steven Yarbrough, Doc. 37, and on September 1, 2022 he
issued a Proposed Findings and Recommended Disposition
("PFRD") addressing all pending motions. Doc. 209. The
PFRD recommends that the following claims are no longer
viable: Plaintiff's claims under the federal American with
Disabilities Act ("ADA") and the state New Mexico
Human Rights Act ("NMHRA") for alleged discrimination
based on actual impairment or record of impairment;
hostile work environment; constructive discharge; failure to
accommodate; and FMLA and disability retaliation claims.
This leaves on track for trial Plaintiff's claim for alleged
discrimination under the ADA and the NMHRA based on a
demotion because APS regarded Plaintiff as being disabled.
The PFRD recommends that for the remaining claim, Plaintiff
is unable to recover back and front pay and compensatory
damages for her auto loan, moving expenses, and future
pecuniary losses, but may seek compensatory damages for
emotional distress. On September 14, 2022, Plaintiff timely
filed her *Memorandum in Opposition to the Honorable Judge
Steve Yarbrough's Proposed Findings and Recommended
Disposition (PFRD), filed September 1, 2022.* Doc. 210.
Plaintiff's objections are now before the Court.

**LEGAL STANDARD**

District courts may refer dispositive motions to a magistrate
judge for a recommended disposition pursuant to 28
U.S.C. § 636 and Federal Rule of Civil Procedure 72, 28
U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). "Within
14 days after being served with a copy of the [magistrate
judge's] recommended disposition, a party may serve and
file specific written objections to the proposed findings and
recommendations." Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §
636(b)(1). When resolving objections to a magistrate judge's
proposal, "[t]he district judge must determine de novo any
part of the magistrate judge's disposition that has been
properly objected to. The district judge may accept, reject,
or modify the recommended disposition; receive further
evidence; or return the matter to the magistrate judge with

ADD-147

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 215

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

**\*2** "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop., 73 F.3d 1057, 1060 (10th Cir. 1996)*. Further, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)*; *see also United States v. Garfinkle, 261 F.3d 1030, 1031 (10th Cir. 2001)* ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

When a plaintiff proceeds pro se, the court generally construes her pleadings liberally, holding them to a less stringent standard than those filed by counsel. *Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)*. In so doing, the court makes allowance for a pro se litigant's "failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements." *Id.* The court will not, however, construct arguments or search the record for the pro se party. *Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005)*. Issues will be waived if the pro se party's briefing "consists of mere conclusory allegations with no citations to the record or any legal authority for support." *Id.*

**ANALYSIS**

At the end of the PFRD, Judge Yarbrough summarized his recommendations regarding each pending motion and summarized which claims he recommends should be dismissed and which claims should proceed to trial. Doc. 209 at 69-71. Plaintiff opens her filing by summarizing her objections to many of the recommend holdings. Doc. 210 at 4-9. Plaintiff then discusses each objection in depth and the Court will address each in turn.

**1. Motion to File Depositions**

In the PFRD, Judge Yarbrough recommends denying Plaintiff's request to order the Defendants to file on the docket copies of three deposition transcripts—her deposition, her

expert witness Billie Poteet, and her witness Dianne Horton. Doc. 209 at 7-11. In her objections, Plaintiff clarifies that "she is not asking for complete deposition transcripts," but is asking "this court to order Defendants to introduce other relevant portions of these transcripts." Doc. 210 at 9. Plaintiff cites Federal Rule of Civil Procedure 32(a)(6) and Federal Rule of Evidence 106.

Rule 32(a)(6) provides that "[i]f a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts." Rule 106, also known as the rule of completeness, similarly provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." "The rule of completeness appears to be uniquely applicable in a trial setting. The purpose of Rule 106 is to prevent a party from misleading the jury, but there is no jury on a summary judgment motion." *Lopez v. Delta Int'l Mach. Corp., 312 F. Supp. 3d 1115, 1154–55 (D.N.M. 2018)* (Browning, J.). "Nevertheless, the general principle animating the rule of completeness—guarding against deception—is appropriate at the summary judgment phase. A judge, just like a jury, should not be misled, especially on a dispositive motion." *Id.*

**\*3** Although her motion to file depositions discusses three transcripts, in her objections Plaintiff only discusses Ms. Poteet's deposition transcript, and so the Court will do the same. Plaintiff argues that portions of Ms. Poteet's deposition transcript need to be introduced under the rule of completeness in order to support her claim for actual impairment. That is, the Tenth Circuit found that Plaintiff's claim for actual impairment fails because "Mrs. Neri does not point to any opinion by Ms. Poteet linking any of her alleged limitations to her PTSD." *Neri v. Bd. of Educ. for the Albuquerque Pub. Schs., 860 F. App'x 556, 562 (10th Cir. 2021)*. Plaintiff now argues that unintroduced portions of Ms. Poteet's deposition will provide that necessary link. She points to parts of Ms. Poteet's deposition in which Ms. Poteet discusses Plaintiff's PTSD symptoms and treatment and argues that "[w]hether Ms. Poteet knew it or not, her answers would be the medical evidence necessary to link Plaintiff's PTSD diagnosis with Plaintiff's symptoms to establish that her PTSD substantially limited a[t] least one major life activity." Doc. 201 at 11. But listing Plaintiff's symptoms is not the same as linking an alleged limitation of

ADD-148

Appellate Case: 24-2179   Document: 25   Date Filed: 04/23/2025   Page: 216

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

a major life activity to PTSD. *See Neri, 860 F App'x at 562*. And Ms. Poteet specifically testified that the only expert opinion she would offer is that Plaintiff does, in fact, have PTSD. Doc. 186-2 at 12:20 to 13:5. Thus, it does not appear to the Court that other portions of Ms. Poteet's deposition need to be introduced to guard against deception.

Finally, Plaintiff presents no information to explain why information from Ms. Poteet is uniquely obtainable via deposition testimony. To the extent Plaintiff believed that Ms. Poteet would offer evidence necessary on summary judgment, Plaintiff could have presented that information in another form, such as an affidavit. Plaintiff's objections on the motion to file depositions are overruled.

**2. Record of Impairment**

In her motion to reinstate, Plaintiff seeks to reinstate her "record of impairment claim" even though the Tenth Circuit declined to address that issue on the grounds it was not adequately argued before this Court. Doc. 140; *see also Neri, 860 F. App'x at 561 n.3*. The PFRD recommends rejecting Plaintiff's record of impairment claim for two reasons: (1) Plaintiff presents no authority as to why this Court should consider her new arguments raised for the first time after remand; and (2) even considering the merits of Plaintiff's claim, it fails because, as the Tenth Circuit found regarding her claim for actual impairment, Plaintiff lacks medical evidence to link her PTSD diagnosis with her symptoms to establish that she has a record of an impairment that substantially limits at least one major life activity. Doc. 209 at 25-26.

Plaintiff objects to this recommendation but the Court finds no error. First, Plaintiff asserts that Judge Yarbrough "predetermined" that her state claim for record of impairment should fail merely because the federal claim fails. Doc. 210 at 13-14. The PFRD, however, analyzes the merits of Plaintiff's record of impairment claim under both the federal ADA and the state NMHRA. Doc. 209 at 25-27.

Next, Plaintiff argues that she did raise a claim for record of impairment earlier in the case (prior to the Tenth Circuit Order) when she discussed "relevant medical records." Doc. 210 at 14 (citing Doc. 82 at 3). Even assuming Plaintiff is correct that she raised a record of impairment claim prior to the Tenth Circuit Order, the Court agrees with the PFRD that such a claim fails on the merits.

A record of impairment claim requires that "(1) the plaintiff has a record of, or has been misclassified as having, (2) a recognized impairment that (3) the plaintiff 'actually suffered' and that (4) substantially limited (5) a major life activity." *Zwygart v. Bd. of Cnty. Comm'r of Jefferson Cnty., Kan., 483 F.3d 1086, 1091 (10th Cir. 2007); Trujillo v. N. Rio Arriba Elec. Co-op, Inc., 2002-NMSC-004, ¶ 8, 131 N.M. 607* (relying on federal ADA guidance to interpret the NMHRA). As discussed above, the Tenth Circuit considered whether Plaintiff could show an impairment that substantially limits one or more appropriate major life activities and found she could not. *Neri, 860 F. App'x at 562-63*. While Plaintiff presented testimony from her therapist, Ms. Poteet, that she has been diagnosed with PTSD, she did not present any medical evidence to "link her PTSD diagnosis with her symptoms to establish that her PTSD substantially limits at least one major life activity." *Id.* This omission is also fatal to her record of impairment claim. In her objections, Plaintiff repeats her argument that Ms. Poteet offered testimony about Plaintiff's symptoms. Doc. 210 at 16-17, 20. But as the Tenth Circuit explained,

**\*4** We do not dispute that Mrs. Neri has provided sufficient evidence that she has been diagnosed with PTSD. As stated, she offered her therapist, Ms. Poteet, as an expert witness regarding that issue. But in her deposition, Ms. Poteet stated that the only expert opinion she would offer "is whether, in fact, [Mrs.] Neri has PTSD." R. Vol. 1 at 283. Mrs. Neri does not point to any opinion by Ms. Poteet linking any of her alleged limitations to her PTSD. But it is that type of medical evidence that she must present.

*Neri, 860 F. App'x at 562*. The same is true of her record of impairment claim.

Plaintiff also points to 75 pages of medical records attached to prior briefing that she argues list her PTSD diagnosis and symptoms. Doc. 210 at 19 (citing Doc. 146-1). But again, merely listing Plaintiff's subjective symptoms is not the same as linking "her PTSD diagnosis with her symptoms to establish that her PTSD substantially limits at least one major life activity" as is required for a claim of record of impairment. *Neri, 860 F. App'x at 563*. Plaintiff's objections are overruled on her claim for record of impairment.

**3. Hostile Work Environment**

ADD-149

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 217

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

The Tenth Circuit affirmed summary judgment of Plaintiff's hostile work environment claim brought under the ADA and, for the same reasons discussed by the Tenth Circuit, the PFRD recommends granting summary judgment in Defendants' favor as to Plaintiff's hostile work environment claim brought under the NMHRA. Doc. 209 at 57-60. Plaintiff objects to this recommendation. Doc. 210 at 23-42.

As the PFRD correctly recites, the standards to establish a claim for hostile work environment under the NMHRA and ADA are the same. Under both statutes, a hostile work environment exists "when the offensive conduct becomes so severe and pervasive that it alters the conditions of employment in such a manner that the workplace is transformed into a hostile and abusive environment for the employee." *Ocana v. Am. Furniture Co., 2004-NMSC-018, ¶¶ 23-24, 91 P.3d 58* (citing *Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)*); *see also Neri, 860 F. App'x 556, 566* (under the ADA, "[t]o avoid summary judgment on a hostile work environment claim, 'a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' ") (quoting *Payan v. United Parcel Serv., 905 F.3d 1162, 1171 (10th Cir. 2018)*). Under both the NMHRA and the ADA, "[t]he work environment must be both objectively and subjectively offensive—one that a reasonable person would find hostile or abusive and one that the employee did perceive as being hostile or abusive." *Ocana, 2004-NMSC-018, ¶ 24; see also Neri, 860 F. App'x at 566* ("The environment must have been both objectively and subjectively hostile." (internal quotation marks and citation omitted)).

When analyzing Plaintiff's hostile work environment under the ADA, the Tenth Circuit considered the following facts alleged by Plaintiff:

> Ms. Hoppman continually harassed [Plaintiff] throughout the 2015/2016 school year; Ms. Hoppman changed her job's expectations and benefits throughout the 2015/2016 school year; in the April 14, 2016 IEP meeting Mr. Kegler shoved his chair into the wall and slammed his laptop shut; Ms. Hoppman told [her] that the April 14, 2016 incident was 'no big deal'; and Ms. Hoppman sent support for Mr. Kegler at the April 15, 2016 IEP meeting.

*\*5 Neri, 860 F. App'x at 567*. The Tenth Circuit found that Plaintiff "failed to show that these incidents were either pervasive or severe enough to create an objectively hostile work environment." *Id.* The PFRD found that "in the present summary judgment motion, the only fact Plaintiff adds is that she finished the 2015/2016 school year with the same amount of completed IEPs as the previous two years." Doc. 209 at 60 (citing Doc. 172 at 29 ¶¶ C-3, D-4). The PFRD continued: "This fact adds little to Plaintiff's hostile work environment claim. As the Court previously found, and as affirmed by the Tenth Circuit, Plaintiff fails to show pervasive or severe incidents to create an objectively hostile work environment under the NMHRA." *Id.*

In her current objections, Plaintiff lists "actions by Defendants that should have been considered [when] looking at the totality of circumstances" for her hostile work environment claim. But many of her listed actions merely repeat those already considered by the Tenth Circuit: throughout the 2015-2016 school year, Ms. Hoppman added additional duties to Plaintiff's job, changed the requirements of her position, and revoked her comp time, and Ms. Hoppman sent support for Mr. Kegler during a meeting that followed the April 14, 2016, incident. Doc. 210 at 26-28. As discussed above, these facts are insufficient to show pervasive or severe incidents that create an objectively hostile work environment. Plaintiff also argues that Ms. Hoppman created a hostile work environment by creating "a false paper trail in order to try and claim Plaintiff was not doing her job," and that Ms. Hoppman and Albuquerque Public Schools ("APS") failed to follow "APS' own policies." Doc. 210 at 27, 40. In her original briefing, she lumped these arguments together with her argument that Ms. Hoppman changed her job duties. Doc. 164-31-34; Doc. 172 at 30. In any event, the Tenth Circuit already considered, and found insufficient, the fact that "Ms. Hoppman continually harassed [Plaintiff] throughout the 2015/2016 school year." *Neri, 860 F. App'x at 567*.

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 218

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

Finally, Plaintiff argues that Defendants created a hostile work environment by demoting Plaintiff due to her disability, transferring her in retaliation for taking FMLA leave, and failing to accommodate Plaintiff's PTSD after the April 14, 2016 incident. Doc. 210 at 28-29, 40-41. While Plaintiff has previously raised these arguments as separate causes of action, she includes these arguments in her hostile work environment claim for the first time in her objections; as a result, the Court deems her new theories waived. *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). Plaintiff's objections are overruled.

### 4. Constructive Discharge

Similar to her claim for hostile work environment under the ADA, the Tenth Circuit considered Plaintiff's claim for constructive discharge under the ADA and held that she had "not shown that a reasonable jury could find the conditions of the math teacher position so objectively intolerable that she had no other choice but to quit." *Neri, 860 F. App'x at 567* (internal quotation marks and citation omitted). Thus, the Tenth Circuit affirmed summary judgment on her federal constructive discharge claim. *Id.* Defendants moved for summary judgment on Plaintiff's claim for constructive discharge under the NMHRA and the PFRD recommends granting summary judgment for the same reasons discussed by the Tenth Circuit. Doc. 209 at 60-61. Plaintiff objections to this recommendation. Doc. 210 at 42-54.

In her objections, Plaintiff focuses on three arguments she attributes to Defendants: that during Plaintiff's meeting with Ms. Hoppman before the transfer, Plaintiff indicated she was overwhelmed (Doc. 210 at 45-48); that she admitted Mr. Kegler did not threaten her (*id.* at 48-51); and that Ms. Poteet is not qualified to link Plaintiff's PTSD with her symptoms to establish that her PTSD substantially limited a major life activity (*id.* at 51-54). Plaintiff argues that Defendants misrepresented the facts related to these arguments. Even if true, none of these arguments relate to the constructive discharge claim. The Tenth Circuit, and likewise the PFRD, found that Plaintiff's constructive discharge claim (under the ADA or the NMHRA) fails because the transfer to the math teacher position, a position with the same salary and medical benefits, was not "so objectively intolerable" that Plaintiff "had no other choice but to quit." *Neri, 860 F. App'x at 567*. Plaintiff does not challenge this holding and so her objections are overruled.

### 5. Burden of Proof for Summary Judgment

*\*6* Under this heading, Plaintiff makes a variety of objections. First, she again argues that Defendants did not attach missing but relevant potions of the deposition transcripts as required under the Federal Rules of Civil Procedure and Federal Rules of Evidence. The Court has already addressed this argument. Plaintiff also asserts, without providing any details, that "Defendants' support for their motions includes very little documented evidence to support their motions. Plaintiff however supports that genuine issues of Material facts still exist with numerous amounts of documented evidence, pointed to within the record." Doc. 210 at 54. Without more information, it is unclear what Plaintiff is objecting to. *See United States v. One Parcel of Real Prop., 73 F.3d 1057, 1060 (10th Cir. 1996)* ("[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.").

Second, Plaintiff objects to the PFRD's recommendation to deny her motion to strike. Doc. 210 at 54. In her motion, Plaintiff seeks a Court order striking a number of Defendants' motions due to Defendants' failure to comply with Local Rule 56.1(b) by filing a table of authorities. Doc. 183. The PFRD recommends denying her motion to strike because Rule 56.1 is open to interpretation, but even accepting Plaintiff's interpretation of the rule (that a table of authorities is required with every motion), Defendants' failure to include a table did not prejudice Plaintiff. Doc. 209 at 12-13. Plaintiff does not address this recommendation, but she argues that "a rule is a rule is a rule." Doc. 210 at 55. However, the Court fundamentally disagrees with Plaintiff's interpretation of Local Rule 56.1(b). The undersigned judge has never read that rule to require an itemized list of cases and other authorities in a summary judgment brief and is unaware of any other judge in the District of New Mexico who has imposed such a requirement. It is enough that the authorities are listed and discussed within the body of the brief. Furthermore, the Court agrees with the PFRD that, even if a table of authorities were required (which it is not), Defendants' failure to include table in their motions did not prejudice Plaintiff such that striking their motions would be appropriate. Plaintiff's objections are overruled.

Next, Plaintiff cites the definition of disability as defined in 42 U.S.C. § 12102 and lists general objections to recommendations made in the PFRD, without providing

ADD-151

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 219

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

any details as to the recommendation or her objection. Doc. 209 at 55-57. Then, Plaintiff argues that she suffered an adverse employment action. Doc. 210 at 57-59. She starts with discussing the transfer as a demotion—an issue that is not presently before the Court as the Tenth Circuit has already found that a genuine issue of material fact exists. Plaintiff then discusses hostile work environment and constructive discharge (Doc. 210 at 57-59), which the Court addressed above. Plaintiff also mentions failure to accommodate, without making any arguments. Doc. 210 at 59. Lastly, Plaintiff "requests this court to receive further evidence supporting her claim, the attached excerpts from DSM-IV on PTSD and the article from World Psychiatry, attached herein before determining, whether or not to throw Plaintiff's claims out." Doc. 201 at 61; *see also id.* at 62-75 (attachments). It is not clear exactly what Plaintiff is asking the Court to review. As to all these objections, to the extent Plaintiff is make new objections or offering new evidence, as opposed to summarizing objections previously made, the Court overrules these objections as not specific. *See* 🚩 *One Parcel of Real Prop.*, 73 F.3d at 1060.

## CONCLUSION

Following its de novo review, the Court agrees with the Magistrate Judge's recommendations. Accordingly, the Court **ADOPTS** the PFRD (Doc. 209) and **OVERRULES** Plaintiff's Objections (Doc. 210). It is therefore ordered as follows:

**\*7** • Given the Tenth Circuit mandate remanding a federal claim, the Court no longer declines supplemental jurisdiction over Plaintiff's state-law claim;

• Plaintiff's Motion for Expedited Order for Defendants to File Other Relevant Parts of Deposition (Doc. 184) is **DENIED**;

• Plaintiff's Motion to Strike Defendants' Motions for Summary Judgments, Motion to Dismiss and Motion for Reconsideration due to Non-Compliance with Local Civil Rules of the United States District Court for the District of New Mexico (Doc. 183) is **DENIED**;

• Defendants' Motion for Reconsideration (Doc. 169) is **GRANTED IN PART** and the Court reconsiders the Motion to Exclude (Doc. 100) as it relates to Plaintiff's letter to Ms. Hoppman. The remainder of Defendants' Motion for Reconsideration (Doc. 169) is **DENIED**;

• Defendants' Motion to Exclude from Summary Judgment Consideration (Doc. 100) is **DENIED** as to Exhibit 12 (Doc. 82-12) and Exhibit 14 (page 1) (Doc. 82-14 at 1). The remainder of the Motion to Exclude (Doc. 100) is **DENIED AS MOOT**. Defendants' request for attorney's fees and Plaintiff's request for sanctions in the motion to exclude (Doc. 100) is **DENIED**;

• Plaintiff's Motion to Reinstate her Federal Discrimination Claims (Doc. 140) is **DENIED IN PART** as to claims that were dismissed by this Court and affirmed by the Tenth Circuit, and **GRANTED IN PART** as to those claims reversed and remanded by the Tenth Circuit;

• Defendants' Motion to Dismiss (Doc. 154) is **DENIED IN PART** as to Plaintiff's claim for FMLA retaliation and **GRANTED IN PART** as to any claims for disability retaliation under the ADA or NMHRA;

• Plaintiff's request to reinstate her FMLA retaliation claim as made in her Memorandum in Support of her Motion to Reinstate Federal Discrimination Claims with Particular Reference to her Retaliation Claim (Doc. 153) is **GRANTED**. Her request to reinstate as to any disability retaliation claim under the ADA and NMHRA is **DENIED**. Additionally, Plaintiff's request for leave to amend her complaint to add disability retaliation claims is **DENIED**;

• Defendants' Motion for Summary Judgment on Purported Retaliation Claims (Doc. 154) is **GRANTED** as to Plaintiff's claim for FMLA retaliation;

• Defendants' Motion for Summary Judgment on State Claims and Damages (Doc. 168 with Supplemental Doc. 186) is **GRANTED IN PART** as to Plaintiff's state-law claims for hostile work environment, constructive discharge, discrimination based on actual impairment, back and front pay, and compensatory damages for Plaintiff's auto loan, moving expenses, and future pecuniary losses. Defendants' motion for summary judgment (Doc. 168) is **DENIED IN PART** as to Plaintiff's claim for compensatory damages for emotional distress; and

• Plaintiff's Motion for Leave to File Surreply to Defendants' Supplemental Briefing in Support of Defendants' Motion for Summary Judgment on State Claims and Damages (Doc. 196) is **DENIED** and Plaintiff's Surreply in Opposition to Defendants['] 

ADD-152

Neri v. Board of Education for Albuquerque Public Schools, Not Reported in Fed. Supp....

Motion for Summary Judgment on State Claims and Damages (Doc. 197) is **STRICKEN**.

Following this Order and the Tenth Circuit's mandate (Doc. 138), Plaintiff's only remaining claim for trial is her claim of discrimination under the ADA and the NMHRA based on an alleged demotion because APS regarded her as being disabled. For her remaining claim, Plaintiff may seek compensatory damages for emotional distress based on the demotion.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 4546250

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-153

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 221

Norman v. NYU Langone Health System, Not Reported in Fed. Rptr. (2021)

64 NDLR P 86

2021 WL 5986999

United States Court of Appeals, Second Circuit.

Jasmine NORMAN, Plaintiff-Appellant-Cross-Appellee,

v.

NYU LANGONE HEALTH SYSTEM,

Defendant-Appellee-Cross-Appellant.

20-3624-cv (L), 20-3745-cv (XAP)

|

December 17, 2021

Appeal from an order of the United States District Court for the Southern District of New York (Torres, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR    PLAINTIFF-APPELLANT-CROSS-APPELLEE: Stephen Bergstein, Bergstein & Ullrich, New Paltz, NY.

FOR    DEFENDANT-APPELLEE-CROSS-APPELLANT: Kathryn J. Barry (Todd H. Girshon), New York, NY, on the brief), Jackson Lewis P.C., Melville, NY.

PRESENT: GERARD E. LYNCH, JOSEPH F. BIANCO, STEVEN J. MENASHI, Circuit Judges.

## SUMMARY ORDER

**\*1** Plaintiff-Appellant-Cross-Appellee Jasmine Norman appeals from the United States District Court for the Southern District of New York's September 30, 2020 order granting summary judgment to Defendant-Appellee-Cross-Appellant NYU Langone Health System ("NYU Langone") on, *inter alia*, Norman's failure-to-accommodate and retaliation claims brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("the ADA").[1] Norman alleges that NYU Langone violated her rights by failing to reasonably accommodate her disability—namely, her alleged allergy to flu vaccines—and then retaliated against her by suspending and threatening to terminate her due to her request for a reasonable accommodation. In its cross-appeal, NYU Langone contends that the district court abused its discretion in declining to exercise supplemental jurisdiction over similar claims brought under the New York State Human Rights Law,

N.Y. Exec. L. § 296, *et seq.* (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (the "NYCHRL"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

## BACKGROUND

The facts summarized below are derived from the parties' submissions on summary judgment in the district court and, unless otherwise noted, are undisputed.

Norman began working at NYU Langone in 2011, and she has been subsequently promoted several times; her role has never been patient-facing. Norman first requested and was granted an exemption from taking a flu vaccine in 2012. She previously experienced two negative reactions after receiving a flu vaccine: the first time, as a child, in an undocumented incident of which she recalled little detail, and then again as an adult in 2001. In the second instance, Norman's symptoms developed shortly after receiving the vaccine and included shortness of breath and heart palpitations. Norman was operating a motor vehicle at the time she experienced the symptoms, but she did not require medical attention. Instead, her symptoms subsided after fifteen to twenty minutes, and she was able to continue driving.

**\*2** Norman's oral requests for exemption from the flu vaccine were granted from 2012 until 2016, when NYU Langone updated its flu vaccination policy to eliminate exemptions based on personal (as opposed to medical or religious) reasons, and to establish an Influenza Vaccination Declination Review Board (the "Review Board"), which reviewed employees' written exemption requests anonymously on a case-by-case basis. Beginning in 2016, employees seeking medical exemptions were also required to submit a standardized request form to be completed by their physician. Norman's physician, Dr. Vinod Aggarwal, completed the form by checking the box indicating that Norman had suffered a "severe allergic reaction after a previous influenza vaccine." Joint App'x at 607. Norman's 2016 exemption was granted and, instead of taking the vaccine, she wore a surgical mask until the end of the 2016–2017 flu season.

The next year, for the 2017–2018 flu season, NYU Langone again revised its policy such that employees who were

ADD-154

denied an exemption must be vaccinated, and those who were denied an exemption but nevertheless declined the vaccine would face discipline, including discharge. The 2017 exemption request form asked, among other things, whether the employee suffered from an allergy to eggs, or had experienced a previous reaction to the vaccine. Dr. Aggarwal again completed the exemption request form on Norman's behalf. He noted that she had suffered a negative reaction to the flu vaccine in 2001, that her symptoms included heart palpitations and shortness of breath, and that her reaction persisted for three days (which was not accurate per to Norman's own report that the adverse reaction lasted only fifteen to twenty minutes). The form also indicated that Norman was allergic to eggs and had no other known allergies. The Review Board reviewed her exemption request and referred her to Dr. Amina Abdeldaim, an allergist at NYU Langone, to determine whether it would be appropriate to administer the FluBlok flu vaccine, recently developed as an alternative to traditional flu vaccines. The FluBlok vaccine, unlike traditional flu vaccines, is not manufactured using an egg-based manufacturing process. As part of her examination, and depending on the employee's medical history and physical examination, Dr. Abdeldaim would conduct a FluBlok skin test. A negative skin test would indicate that that the employee was not allergic to the FluBlok vaccine, and Dr. Abdeldaim would then administer it. In contrast, a positive skin test would suggest that the patient was allergic to some component within the FluBlok, and that patient would be granted a flu vaccine exemption.

After some email correspondence about whether the referral to Dr. Abdeldaim was necessary, which included Norman's indication that she would wear a mask (as she had during the prior flu season), the Review Board explained to Norman that "[b]ased on the documentation you've provided, you've indicated that you had an allergic reaction to eggs," and the "next step" was to refer her to an allergist. Joint App'x at 52. Norman was further informed that she would be referred to Human Resources if she did not make an appointment with Dr. Abdeldaim. Eventually, Norman made and then attended an appointment with Dr. Abdeldaim during which she explained her previous reactions to the flu vaccine. She was then offered the FluBlok skin test. Norman declined the skin test, which resulted in the denial of her exemption request. Two days later, on a Friday, Norman learned that she faced termination for failing to comply with the flu vaccine policy. Her supervisor intervened on her behalf and Norman offered to take the traditional flu vaccine immediately to avoid being terminated. Instead, NYU Langone suspended

Norman with pay over the weekend pending a second appointment with Dr. Abdeldaim for administration of the FluBlok skin test. The following Monday, Norman met again with Dr. Abdeldaim and was given the FluBlok skin test. She experienced no negative reaction. Accordingly, she was then administered the FluBlok vaccine.

**\*3** Shortly after receiving the FluBlok vaccine, Norman experienced shortness of breath and heart palpitations, similar to her two prior reactions to the flu vaccine. Dr. Abdeldaim treated her with Albuterol and an EpiPen injection, and sent Norman to the Emergency Department. Dr. Abdeldaim's patient notes described how Norman had experienced an adverse reaction to the flu vaccine, and "should not receive any formulation of the flu vaccination indefinitely." Joint App'x at 505. Norman's Emergency Department records stated, "[p]resentation inconsistent with allergic reaction though confounded by empiric epipen administration prior to arrival." Joint App'x 466. Norman was discharged from the hospital a few hours later and, after taking approximately a week of leave, she returned to work. The following month, she was promoted.

Norman subsequently filed suit asserting employment discrimination claims under federal, New York, and New York City law. The district court, *inter alia*, granted summary judgment to NYU Langone as to Norman's failure-to-accommodate and retaliation claims brought under the ADA, which she appeals, and declined to exercise supplemental jurisdiction over her NYSHRL and NYCHRL claims, which NYU Langone appeals.

## DISCUSSION

### I. Standard of Review

We review a grant of summary judgment de novo, "construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in h[er] favor." *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We review a district court's decision to decline to exercise supplemental jurisdiction over state and municipal

ADD-155

Norman v. NYU Langone Health System, Not Reported in Fed. Rptr. (2021)

64 NDLR P 86

claims for an abuse of discretion. 🚩 *Spiegel v. Schulmann, 604 F.3d 72, 78 (2d Cir. 2010)*.

Furthermore, "[i]t is well settled that we may affirm on any grounds for which there is a record sufficient to permit conclusions of law." 🚩 *Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp., 136 F.3d 273, 275 (2d Cir. 1998)* (internal quotation marks omitted). Thus, we are not limited in our review to the reasoning expressed by the district court. *See* 🚩 *Laurent v. PricewaterhouseCoopers LLP, 794 F.3d 272, 273 n.1 (2d Cir. 2015)*.

## II. Failure to Accommodate Claim

To establish a *prima facie* case of discrimination under the ADA based on an employer's failure to accommodate a disability, a plaintiff must demonstrate that "(1) the plaintiff is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." 🚩 *Natofsky v. City of New York, 921 F.3d 337, 352 (2d Cir. 2019)* (internal quotation marks and alterations omitted). A "reasonable accommodation" is one that "enable[s] an individual with a disability ... to perform the essential functions of [her] position" or "enjoy equal benefits and privileges of employment as are enjoyed by [ ] other similarly situated employees without disabilities." 🚩 *29 C.F.R. § 1630.2(o)(1)*.

Here, we do not reach the question of whether the district court properly concluded that Norman was not disabled within the meaning of the ADA at the time she sought an accommodation. Even assuming *arguendo* that Norman did have a disability that substantially limited a major life activity, as is required under the ADA, *42 U.S.C. § 12102*, and drawing all reasonable inferences in her favor, 🚩 *McElwee, 700 F.3d at 640*, Norman's failure-to-accommodate claim cannot survive summary judgment because the undisputed facts demonstrate that NYU Langone provided a reasonable accommodation.

**\*4** When an employer has taken measures to accommodate an employee's disability, "the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is plainly reasonable." 🚩 *Noll v. Int'l Bus.*

*Machines Corp., 787 F.3d 89, 94 (2d Cir. 2015)* (internal quotation marks omitted). Here, the uncontroverted evidence demonstrated that: (1) Norman had previously experienced heart palpitations and shortness of breath after twice receiving a traditional flu vaccine many years earlier (once as a child and once as an adult); (2) although she experienced a negative reaction during the adult incident, her symptoms subsided after fifteen to twenty minutes without medical attention, and she was able to resume driving after a short pause; (3) the traditional flu vaccine is made using an egg-based manufacturing process, and Norman's 2017 exemption request form from her doctor indicated that she was allergic to eggs; (4) NYU Langone, in an effort to accommodate her purported allergy to flu vaccines, referred her to an allergist, Dr. Abdeldaim, for examination; (5) the FluBlok vaccine was manufactured without the common allergens in the traditional flu vaccine, including eggs; (6) Dr. Abdeldaim conducted a skin test to determine if it was safe for Norman to receive the FluBlok vaccine; and (7) only after Norman tested negative to the FluBlok skin test was she administered the FluBlok vaccine.

Given these uncontroverted facts, we conclude the accommodation provided by NYU Langone—namely, an individualized examination by Dr. Abdeldaim and the administration of the FluBlok skin test to determine whether the FluBlok vaccine (which is not manufactured in a process that involves eggs) was an appropriate alternative to the traditional flu vaccine given Norman's known allergy to eggs —was "plainly reasonable." 🚩 *Noll, 787 F.3d at 94; accord* 🚩 *Wernick v. Fed. Reserve Bank, 91 F.3d 379, 385 (2d Cir. 1996)*. Only after the results of the FluBlok skin test showed that she tested negative for allergies to that vaccine was Norman required to receive the FluBlok vaccine to maintain her employment. The fact that Norman may have later suffered an adverse reaction to the FluBlok vaccine, notwithstanding that her FluBlok skin test was negative, does not undermine the reasonableness of the accommodation offered by NYU Langone at the time the decision was made. *See* 🚩 *Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 725 (2d Cir. 1994)* ("[A]n employer is only responsible for employment decisions based on information available to it when it decides."). In other words, given the undisputed information that NYU Langone had available at the time it required Norman to receive the FluBlok vaccine, no rational jury could find that the accommodation was unreasonable.

ADD-156

Norman v. NYU Langone Health System, Not Reported in Fed. Rptr. (2021)

64 NDLR P 86

We find similarly unpersuasive Norman's argument that her willingness to wear a mask creates a disputed issue of fact as to the reasonableness of the accommodation. We have emphasized that, although the employer must provide a reasonable accommodation, it is "not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll*, 787 F.3d at 95. Therefore, the fact that Norman's preferred accommodation was to wear a mask (and avoid the FluBlok vaccine) does not preclude summary judgment because the accommodation offered was plainly reasonable in light of the undisputed facts. Accordingly, summary judgment in NYU Langone's favor was warranted on the failure-to-accommodate claim under the ADA.

### III. Retaliation Claim

Norman also asserts that the district court erred in granting summary judgment to NYU Langone on her claim that NYU Langone retaliated against her by suspending her and threatening to terminate her due to her request for a reasonable accommodation. We disagree.

Under the ADA, a plaintiff must show that she "(i) ... was engaged in protected activity; (ii) the alleged retaliator knew that [she] was involved in protected activity; (iii) an adverse decision or course of action was taken against [her]; and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky*, 921 F.3d at 353 (internal quotation marks omitted). A causal connection may be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id.* (internal quotation marks omitted).

**\*5** "Claims for retaliation [under the ADA] are analyzed under the same burden-shifting framework established for Title VII cases." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). Therefore, "[o]nce a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision." *Id.* at 721. "If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Id.* (internal quotation marks omitted).

We agree with the district court that, even when the facts are construed most favorably to Norman, no rational jury could find the causation element necessary for the ADA retaliation claim.[2] It is uncontroverted that NYU Langone had a policy of terminating employees who lacked an exemption and refused to receive the flu vaccine, and that the 2017 revised influenza vaccine policy was broadly applicable to "all faculty, staff, students, volunteers and clinical contractors." Joint App'x at 609. Here, Norman's brief suspension and threat of termination were implemented pursuant to that policy. In fact, Norman was even granted an additional opportunity to comply with the policy by meeting with Dr. Abdeldaim for a second time after her supervisor intervened on her behalf to prevent her immediate termination. Moreover, her two-day suspension with pay took place over the weekend leading up to her appointment with Dr. Abdeldaim on Monday. Norman has thus failed to point to any evidence that she received differential treatment in this regard as compared to any other non-exempt employee who also refused the flu vaccine, but did not request a reasonable accommodation. The lack of any retaliatory animus due to her accommodation request is further demonstrated by the fact that, within a few weeks of taking the FluBlok vaccine, Norman was promoted. In short, on this record, no rational jury could find that any actions taken by NYU Langone were caused by any retaliatory animus based upon Norman's accommodation request, rather than by its desire to enforce its written flu vaccine policy.[3]

Accordingly, the district court properly granted summary judgment to NYU Langone on the retaliation claim under the ADA.

### IV. Supplemental Jurisdiction

NYU Langone's cross-appeal challenges the district court's decision to decline to exercise supplemental jurisdiction over Norman's NYSHRL and NYCHRL claims and, thus, to dismiss them without prejudice.

A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Under the pendent jurisdiction doctrine, the factors to be considered when a district court exercises its discretion include "judicial economy, convenience, fairness,

Appellate Case: 24-2179     Document: 25     Date Filed: 04/23/2025     Page: 225

Norman v. NYU Langone Health System, Not Reported in Fed. Rptr. (2021)

64 NDLR P 86

and comity." 🚩 *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) (quoting 🚩 *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191 (2d Cir. 1996)). We have emphasized that, "[w]hen all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims." 🚩 *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988); *see also* 🚩 *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims.").

**\*6** To be sure, we have upheld the exercise of supplemental jurisdiction over state and municipal disability claims when the plaintiff would have to prove the same elements. 🚩 *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010). However, we have also cautioned against unnecessarily delving into non-federal legal issues in the absence of any continuing basis for federal question jurisdiction. 🚩 *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) ("[I]n the absence of any remaining federal claims, the appropriate analytic framework to be applied to discrimination claims based on a 'disability' as defined by New York state and municipal law is a question best left to the courts of the State of New York.").

Although NYU Langone concedes that "declining to exercise supplemental jurisdiction in 'usual' ADA cases in line with 🚩 § 1367(c)" and "this Court's precedent," and acknowledges that "the NYSHRL and NYCHRL define disability differently than their federal counterpart," it nevertheless argues that the district court abused its discretion here because Norman was unable to meet certain *prima facie* elements that do not differ among these statutory provisions, such as the existence of a reasonable accommodation. Appellee's Br. at 57–58. We disagree. It was certainly not an abuse of discretion here for the district court to conclude, given the numerous issues being litigated (including whether Norman had a disability under NYSHRL and NYCHRL), that "the law of New York in regard to relative state and federal disability claims analysis is still developing," and that "the balance of factors counsels in favor of declining supplemental jurisdiction." Special App'x at 20 (internal quotation marks omitted). Accordingly, we conclude that NYU Langone's cross-appeal is without merit.

\* \* \*

We have considered all of the parties' remaining arguments and find no basis for reversal. Accordingly, we **AFFIRM** the order of the district court.

**All Citations**

Not Reported in Fed. Rptr., 2021 WL 5986999, 64 NDLR P 86

---

## Footnotes

1    The district court also dismissed Noman's parallel state and local claims without prejudice, but did not set out its judgment in a separate document as required by Federal Rule of Civil Procedure 58(a). Nevertheless, we exercise jurisdiction to hear the appeal, as the district court's order was a final decision "within the meaning of 🚩 28 U.S.C. § 1291." *Hamilton v. Westchester County*, 3 F.4th 86, 90 n.2 (2d Cir. 2021); *see also* 🚩 *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 263 n.1 (2d Cir. 1993) ("[W]e can treat the dismissal order as a final decision for purposes of 🚩 28 U.S.C. § 1291, since lack of compliance with the separate document rule is a waivable defect, and no party has complained."). In addition, in her reply brief, Norman stated that she was not challenging the district court's dismissal of the ADA discrimination claim. Thus, Norman's appeal is limited to the grant of summary judgment on her failure-to-accommodate and retaliation claims.

2    We have noted that "there is an unsettled question of law in this Circuit as to whether a plaintiff must show, in order to succeed on her ADA retaliation claim, that the retaliation was a 'but for' cause of the adverse

ADD-158

Norman v. NYU Langone Health System, Not Reported in Fed. Rptr. (2021)

64 NDLR P 86

employment action or merely a 'motivating factor.' " *Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017). However, we need not decide this issue here because Norman's ADA retaliation claim cannot survive summary judgment under either test.

3    Given our conclusion regarding the lack of proof of causation, we need not and do not address the other elements of Norman's retaliation claim, including whether there exists a genuine issue of material fact as to whether Norman suffered an adverse action by either threat of termination or her two-day suspension with pay.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-159

Sullivan v. America Online, Inc., Not Reported in Fed. Supp. (2005)

2005 WL 8163599

2005 WL 8163599
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Seree SULLIVAN, Plaintiff,

v.

AMERICA ONLINE, INC., and
the AOL Companies, Defendants.

Civ. No. 04-864 JH/DJS

|

Filed 08/23/2005

**Attorneys and Law Firms**

Michael L. Danoff, Michael L. Danoff & Associates PC, Albuquerque, NM, for Plaintiff.

Charles Robert Peifer, Peifer, Hanson & Mullins, PA, Christopher T. Saucedo, SaucedoChavez, P.C., Lauren Keefe, Peifer, Hanson, Mullins, PA, Albuquerque, NM, for Defendants.

## MEMORANDUM OPINION AND ORDER OF PARTIAL DISMISSAL

JUDITH C. HERRERA, UNITED STATES DISTRICT JUDGE

**\*1** This matter comes before the Court on two motions: *Defendants' Motion to Dismiss Counts I, II, III, V, and VI of Plaintiff's Complaint* [Doc. No. 2], and Plaintiff's *Motion to Amend Complaint* [Doc. No. 9]. After a careful review of the law, the pleadings, and the arguments of the parties, the Court concludes that the motion to dismiss should be granted, while the motion for leave to amend should be granted in part and denied in part as further explained herein.

## BACKGROUND

This case arises from Defendants' decision to terminate Plaintiff Seree Sullivan's ("Sullivan") employment as a supervisor at a customer call center in Albuquerque, New Mexico. According to Sullivan's Complaint, which she filed in Bernalillo County state district court on June 29, 2004, she began working for Defendants in November of 1999, and was promoted to supervisor on September 24, 2004.

Complaint at ¶ 4-5. On May 28, 2002, Defendants terminated her employment for unspecified "unprofessionalism," id. at ¶ 7, though Defendants never explained this charge to Sullivan. Id. at ¶ 8. Sullivan alleges that Defendants failed to fairly and properly investigate the events leading to her termination and that their decision to fire her was based upon false allegations. Id. at ¶ ¶ 10-12. The Complaint asserts claims for wrongful termination, defamation, intentional infliction of emotional distress, breach of employment contract, prima facie tort, and punitive damages.

On July 30, 2004, the Defendants removed the case to this Court on the basis of diversity jurisdiction. Shortly thereafter, they moved to dismiss all of Sullivan's claims (except for breach of employment contract) for failure to state a claim. Sullivan then contemporaneously filed two documents: her response to the motion to dismiss, and her own motion for leave to amend her complaint, which apparently is a reaction to the arguments raised in Defendants' motion to dismiss. Sullivan attached to her motion for leave to amend a proposed First Amended Complaint, in which she added new allegations and deleted her separate cause of action for punitive damages.

## LEGAL STANDARDS

A motion to dismiss for failure to state a claim under Rule 12(b)(6) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Elliott Indus. Ltd. Partnership v. BP America Production Co.*, 407 F.3d 1091, 1107 (10th Cir. 2005) (quoting *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976) ). The Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. However, this Court is "not bound by conclusory allegations, unwarranted inferences, or legal conclusions." *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) (citations omitted). Dismissal is appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kan. Dept. of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999).

The Federal Rules of Civil Procedure specifically address the amendment of a complaint, allowing a party to amend her complaint after twenty days have elapsed since the opposing party was served "only by leave of court or by written consent of the adverse party," with such leave to be "freely given when justice so requires." Fed. R. Civ. P. 15(a). "Although

ADD-160

Sullivan v. America Online, Inc., Not Reported in Fed. Supp. (2005)

2005 WL 8163599

Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, a district court may deny leave to amend where amendment would be futile." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). A proposed amended complaint is futile if it would be subject to dismissal. *See Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

**\*2** The Court will address the pending motions with these principles in mind.

## DISCUSSION

### I. WRONGFUL TERMINATION [1]

"New Mexico recognizes two exceptions to the doctrine of at-will employment: breach of implied contract and retaliatory discharge." *Whittington v. State of New Mexico Dept. of Public Safety*, 2004-NMCA-124 at ¶ 17, 136 N.M. 503. Therefore, when an employment contract protects an employee from wrongful discharge, that employee may not avail himself of the tort of retaliatory discharge. *See Silva v. American Fed. of State, Cty., and Mun. Employees*, 2001-NMSC-038 at ¶ 12, 131 N.M. 364. It is not clear whether Sullivan contends that her employment contract was express or implied. Accordingly, the Court makes no finding on that issue and, for the moment, views Sullivan's claims for breach of contract and retaliatory discharge in the alternative.

The New Mexico law governing the tort of retaliatory discharge is well developed. New Mexico has allowed employees to recover in tort when their discharge contravenes a "clear mandate of public policy." *Vigil v. Arzola*, 102 N.M. 682, 688, 699 P.2d 613, 619 (Ct. App. 1983), *rev'd in part on other grounds by* 101 N.M. 687, 687 P.2d 1038 (1984), *overruled in part on other grounds by Chavez v. Manville Prods. Corp.*, 108 N.M. 643, 777 P.2d 371 (1989). The basic burden on the employee in such a case is to prove that she was discharged because she performed an act that public policy has authorized or would encourage or that she refused to perform an act that public policy would condemn. *Id.* at 689, 699 P.2d at 620. Later New Mexico cases have clarified the elements of the cause of action to require the employee to prove that her actions were not "merely private or proprietary," but rather were undertaken to "further the public good." *Gutierrez v. Sundancer Indian Jewelry, Inc.*, 117 N.M. 41, 48, 868 P.2d 1266, 1273 (Ct. App. 1993) (citation omitted). *See also Garrity v. Overland Sheepskin Co. of Taos*, 1996-NMSC-032, ¶¶ 15-16, 121 N.M. 710. In

addition, the employee must prove that the employer was aware of his protected acts and discharged him, at least in part, because of that conduct. *Weidler v. Big J Enters., Inc.*, 1998-NMCA-021, ¶¶ 25, 34-35, 124 N.M. 591; *Lihosit v. I & W, Inc.*, 121 N.M. 455, 458, 913 P.2d 262, 265 (Ct. App. 1996).

Sullivan's Complaint asserts that Defendants failed to properly investigate the issues leading to her termination, that her termination was based upon false allegations that she had no opportunity to rebut, and that Defendants fired her without good cause. Her complaint contains no allegations to support an inference that Defendants discharged her because she performed an act that public policy has authorized or would encourage in order to further the public good. Similarly, the Complaint contains no facts to support a claim that she was fired because she refused to perform an act that public policy would condemn. Finally, Sullivan's proposed First Amended Complaint contains no allegations to correct this fatal omission. Accordingly, amendment of this claim would be futile, and it should be dismissed without leave to amend.

## II. DEFAMATION

**\*3** The sufficiency of a complaint alleging defamation under New Mexico law must be judged under Fed. R. Civ. P. 8(a) instead of under New Mexico pleading standards. *See, e.g., Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986); *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986). As Defendants correctly point out, the Tenth Circuit has observed that "in the context of a defamation claim, Fed. R. Civ. P. 8(a) requires that the complaint provide sufficient notice of the communications complained of to allow [a defendant] to defend itself." *McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989).

The United States District Court for the District of Kansas has interpreted *McGeorge* to mean that a plaintiff's complaint must identify with specificity the allegedly defamatory statements, the persons who made the statements, and the persons to whom the statements were made, as well as set forth the time frame during which the statements were made so that the defendant may assess whether the statute of limitations has been satisfied. *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1287 (D. Kan. 1997). In *Bushnell*, the court found that the plaintiff had failed to satisfy Rule 8(a) because although it had identified defamatory statements, it did not allege when the statements were made, who made the statements, or to whom they were made. *Id.* In reaching its decision, the U.S. District Court for the District of Kansas reasoned that "there is a significant exception to the general

ADD-161

2005 WL 8163599

rule of liberally construing a complaint in applying rule 12(b)(6): when the complaint attempts to state a 'traditionally disfavored' cause of action, such as defamation, courts have construed the complaint by a stricter standard." *Bushnell Corp.*, 973 F. Supp. at 1287 (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990) ). *Accord Lewis v. Herrman's Excavating, Inc.*, NO. 00-4036, 2000 WL 33407060, *4 (D. Kan. Nov. 02, 2000).

In addition, at least one judge in the District of New Mexico has applied similar reasoning. In *Schuler v. McGraw Hill*, Civ. No. 96-292 SC/RLP (D.N.M. Oct. 17, 1996) (unpublished slip. op.), the defendant moved to dismiss the plaintiff's defamation claim, which was based upon the publication of a magazine article. In an unpublished slip opinion, Judge Santiago Campos cited *McGeorge* and held that a plaintiff had failed to properly plead her claim for defamation where she had identified when and to whom the alleged defamatory statements were made, but neglected to list the specific statements contained in the article that she alleged were defamatory. *Id.*

In light of the foregoing, the Court holds that in order to satisfy Rule 8(a) and to survive a motion to dismiss, a plaintiff asserting a claim for defamation must identify the specific defamatory statements, who made them, to whom they were made, and when they were made. Sullivan's Complaint fails to meet every aspect of this standard. Therefore the issue becomes whether Sullivan's proposed First Amended Complaint corrects these omissions, or if allowing the amendment would be futile. Sullivan's amended pleading contains the following allegations relating to her claim for defamation:

24. When the Defendant decided to terminate the Plaintiff it relied on and made false statements to defame and injure the Plaintiff's reputation in the marketplace, so as to damage her prospects for suitable employment elsewhere.

*4 25. Among the defamatory allegations was a false charge that she had tried to sleep with a co-worker and with another co-worker's husband, and Defendant allowed the circulation of these false and defamatory statements and facilitated them rather than attempting to negate them.

26. Defamatory statements that Plaintiff was unprofessional were circulated by Defendants.

27. The intent and effect of the slanderous, libelous, or defamatory statements regarding Plaintiff which were published by Defendant or its agents was that her reputation be diminished, and her ability to find proper employment reduced, in the community in which Plaintiff and Defendant operate, and with any prospective employer or other interested person or entity which might have provided employment to Plaintiff.

28. None of the motives for libeling, slandering, or defaming the Plaintiff are appropriate, and the statements published about the Plaintiff to subsequent prospective employers and other [sic] were damaging to Plaintiff and to her reputation, and were untrue.

These allegations are largely conclusory and do not satisfy the standard set forth above. They contain no concrete factual allegations as to who made the defamatory statements, to whom the statements were made, or when they were made. The only information that Sullivan has provided is the substance of the defamatory statements themselves—that she had tried to sleep with a co-worker and with another co-worker's husband. Thus, allowing Sullivan to file her amended version of her defamation claim would be futile, and her motion will be denied. Further, Defendants' motion to dismiss this claim will be granted.

## III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to recover under a cause of action for intentional infliction of emotional distress under New Mexico law, the plaintiff must show that the tortfeasor's conduct was extreme and outrageous under the circumstances, that the tortfeasor acted intentionally or recklessly, and that as a result of the conduct the claimant experienced severe emotional distress. *Coates v. Wal-Mart Stores, Inc.*, 127 N.M. 47, 57, 976 P.2d 999, 1009 (1999).

When considering the tort of intentional infliction of emotional distress, the New Mexico Court of Appeals recognized that the judiciary must set the threshold of outrageousness high enough so that the social good from recognizing the tort will not be outweighed by unseemly and invasive litigation on meritless claims. *Hakkila v. Hakkila*, 112 N.M. 172, 178, 812 P.2d 1320, 1326 (Ct. App.) *cert. denied*, 112 N.M. 77, 811 P.2d 575 (1991). New Mexico courts have held that liability arises only where the conduct is so outrageous in character, and so extreme in degree,

ADD-162

Sullivan v. America Online, Inc., Not Reported in Fed. Supp. (2005)

2005 WL 8163599

as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Dominguez v. Stone*, 97 N.M. 211, 214, 638 P.2d 423, 427 (Ct. App. 1981); *Andrews v. Stallings*, 119 N.M. 478, 491, 892 P.2d 611, 624 (Ct. App. 1995). Mere insults do not exceed the bounds of decency. *Andrews*, 119 N.M. at 491. In addition, the emotional distress suffered by the plaintiff must have been reasonable and justified under the circumstances; there is no liability where the plaintiff suffered exaggerated and unreasonable distress, unless it results from a peculiar susceptibility of which the actor had knowledge. *Dominguez*, 97 N.M. at 215. "By 'severe' we intend that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances.' " *Jaynes v. Strong-Thorne Mortuary, Inc.*, 1998-NMSC-004 ¶ 20, 124 N.M. 613, 618 (1997).

**\*5** In the case currently before the Court, Sullivan's Complaint contains the following allegations in support of her claim for intentional infliction of emotional distress: (1) Defendants terminated her employment for "unprofessionalism," (2) such charges of unprofessionalism were based upon false accusations against Sullivan that are not described in the Complaint, (3) Defendants never explained the basis of the charges to Sullivan, (4) Defendants conducted two investigations into the events precipitating her dismissal, but failed to interview Sullivan or otherwise give her an opportunity to respond to the allegations, and (5) Sullivan experienced stress and anxiety that negatively affected her health and well being.

In evaluating whether these allegations are sufficient to support a claim under Rule 12(b)(6), it is helpful to review relevant precedent in which courts have evaluated the degree of outrageous conduct required to recover under a theory of intentional infliction of emotional distress. In *Padwa v. Hadley*, 1999-NMCA-067 ¶ ¶ 9-23, 127 N.M. 416, a husband claimed intentional infliction of emotional distress against his friend, alleging that the friend initiated sexual relationships with three different women to whom he had strong emotional attachments (husband's former wife and mother of his child, husband's then-current wife, and husband's former fiancée), all for the purpose of causing husband harm and humiliation. In *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 432, 773 P.2d 1231, 1239 (1989), plaintiff alleged that his employer discharged him in a loud voice and shouted that he did not trust the plaintiff, who was working on a public sales floor at the time. In *Steiber v. Journal Publishing Co.*, 120 N.M. 270, 273, 901 P.2d 201, 204 (Ct. App. 1995), a reporter

alleged that newspaper failed to allow her to work on special projects, as promised, and failed to give her due credit for her work. In each of these cases, the court found that the factual allegations did not describe conduct that was sufficiently extreme and outrageous in order to support a claim for intentional infliction of emotional distress.

In contrast, in *Ph.fer v. Herbert*, 115 N.M. 135, 848 P.2d 5 (Ct. App. 1993), *overruled on other grounds*, *Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 123 N.M. 170, 936 P.2d 852 (Ct. App. 1997), the plaintiff alleged that her supervisor made explicit and implied sexual remarks and made improper overtures toward her which embarrassed, shamed, degraded her, and caused her mental anguish to the extent that she was forced to quit her job. Similarly, in *Coates v. Wal-Mart Stores, Inc., supra*, another sexual harassment case, the New Mexico Supreme Court upheld a jury verdict awarding damages for intentional infliction of emotional distress. Plaintiffs in that case produced evidence that a supervisor physically assaulted and verbally sexually harassed them on several occasions over a one-year period, that the store's management took no action when plaintiffs repeatedly complained about the harassment, and that plaintiffs were forced to quit their jobs as a result. In *Jaynes v. Strong-Thorne Mortuary, Inc.*, 1998-NMSC-004 ¶ ¶ 19-20, 124 N.M. 613, the court held that siblings who witnessed the burial of their brother were not entitled to recover for intentional infliction of emotional distress against the mortuary, which disturbed their mother's grave, thereby exposing her remains to view. In each of these cases, the court found the alleged conduct to be sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress.

In *Stock v. Grantham*, 1998-NMCA-081, ¶ 35, 125 N.M. 564, 964 P.2d 125, the New Mexico Court of Appeals "recognize[d] that only in extreme circumstances can the act of firing an employee support a claim of intentional infliction of emotional distress." The Court agrees, as termination of employment is a common occurrence that rarely rises to the level of being "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." Based upon an analysis of the foregoing legal authorities, the Court concludes that the events alleged in Sullivan's Complaint are not sufficient to state a claim for intentional infliction of emotional distress. Rather, her allegations describe workplace unpleasantness not unlike that in *Newberry* and *Steiber*, but certainly do not shock the conscience like the horrible conduct described in *Ph.fer* and *Coates*.

ADD-163

Sullivan v. America Online, Inc., Not Reported in Fed. Supp. (2005)

2005 WL 8163599

**\*6** Once again, the question becomes whether Sullivan's proposed First Amended Complaint corrects the defects contained in her Complaint such that she should be permitted to amend. In her amended pleading, Sullivan adds the following allegations regarding her claim: (1) that she was the victim of false charges and rumors that she had tried to sleep with a co-worker and with another coworker's husband, and (2) that Defendant refused to tell her if its two investigations dealt with those rumors or with other matters. However, assuming that Sullivan will prove all of her allegations at trial, these additional allegations simply do not raise the events described to the level required to permit her claim for intentional infliction of emotional distress to go forward. Sullivan's motion to amend will be denied as futile, and her claim will be dismissed.

## IV. PRIMA FACIE TORT

Sullivan asserts, as an alternative to her other causes of action, a claim for prima facie tort. "The theory underlying prima facie tort is that a party that intends to cause injury to another should be liable for that injury, if the conduct is generally culpable and not justifiable under the circumstances." *Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990) (citing *Restatement (Second) of Torts § 870 (1977)* ). The elements of a prima facie tort adopted by the New Mexico Supreme Court in *Schmitz* are: (1) an intentional, lawful act, (2) committed with the intent to injure the plaintiff, (3) causing injury to the plaintiff; and (4) the absence of justification for the injurious act. *See also Kitchell v. Public Serv. Co. of N.M.*, 1998-NMSC-051, ¶ 15, 126 N.M. 525.

Plaintiff contends that Defendants intended to cause her harm by terminating her employment. Defendants argue that this claim fails because Sullivan has failed to allege that they harmed her without justification, because Sullivan is using prima facie tort in order to avoid the more stringent pleading requirements of her other claims, and because the theory behind prima facie tort cannot be used to evade the doctrine of employment at will.[2] In response, Sullivan argues summarily (without supporting authority or citations) that "prima facie tort is an alternative theory only, a catch-all that cures deficiencies in presentation, and it is always pled as an alternative."

The Court will address Defendants' final argument first. Under the at-will doctrine, an employer may terminate an employee for any reason or no reason at all provided that there is no express contractual provision stating otherwise and that the discharge is not motivated by a legally forbidden reason, such as racial discrimination. *Garrity v. Overland Sheepskin Co. of Taos*, 121 N.M. 710, 917 P. 2d 1382 (1996). Therefore, Defendant essentially argues, Plaintiff cannot establish prima facie tort because the requisite injury must be to a legally protected interest, and in New Mexico Plaintiff has no legally protected interest in continued employment or in termination only for just cause.

Federal courts sitting in New Mexico have interpreted state law in precisely this manner, holding that prima facie tort is not a valid cause of action in a case alleging wrongful termination from employment, because recognition of the tort in this context would completely undermine the at-will doctrine. *See, e.g., Hill v. Cray Research, Inc.*, 864 F. Supp. 1070 (D.N.M. 1991) (Burciaga, J.); *Yeitrakis v. Schering-Plough Corp.*, 804 F. Supp. 238 (D.N.M. 1992) (Burciaga, J.); *EEOC v. MTS Corp.*, 937 F. Supp. 1503, 1516 (D.N.M. 1996) (Hansen, J.); *Gioia v. Pinkerton's, Inc.*, 194 F. Supp. 2d 1207, 1222-23 (D.N.M. 2002) (Black, J.). *See also Ewing v. State Farm Mut. Auto. Ins. Co.*, 6 F. Supp. 2d 1281, 1291 (D.N.M. 1998) (Kelly, J., sitting by designation) ("Although prima facie tort can occur in a workplace setting, it is unlikely that it was meant to interfere with a company's prerogative to select its employees ...") (internal citations omitted). In an unpublished decision, the Tenth Circuit also held that New Mexico law does not recognize a claim for prima facie tort in employment-at-will situations, specifically citing *Hill*, *Yeitrakis*, and *Ewing*. *Cordova v. PNM Elec. & Gas Servs.*, 72 Fed. Appx. 789, 793, 2003 WL 21758414 at \*4 (10th Cir. July 31, 2003).

**\*7** The thrust of New Mexico state court decisions is along the same lines. For example, in *Schmitz v. Smentowski, supra*, the seminal New Mexico case on prima facie tort, the New Mexico Supreme Court specifically adopted the Missouri courts' approach to the doctrine, finding it analytically sound, and cited with approval a Missouri case holding that prima facie tort cannot be used to avoid the employment-at-will doctrine. *Schmitz, 109 N.M. at 395, 398*. This Court finds the reasoning of these cases persuasive. Accordingly, there is no need to address Defendants' other arguments, and the Court will grant Defendants' motion to dismiss Sullivan's claim under the theory of prima facie tort. Furthermore, because Sullivan's proposed First Amended Complaint does not cure the legal defect in her claim, she will not be permitted to amend.

## V. PUNITIVE DAMAGES

ADD-164

2005 WL 8163599

Plaintiff's Complaint asserts a separate claim for punitive damages. Defendants move to dismiss, arguing that under *Crawford v. Taylor*, 58 N.M. 340, 342-43 (1954) and *Sanchez v. Clayton*, 117 N.M. 761, 766 (1994), there is no separate cause of action for punitive damages. Sullivan does not dispute this argument, but rather concedes the point in her response to the motion to dismiss, and eliminated the separate claim in her proposed Amended Complaint. Accordingly, Count VI of Sullivan's Complaint will be dismissed with prejudice.

In accordance with the foregoing, **IT IS THEREFORE ORDERED** that:

(1) *Defendants' Motion to Dismiss Counts I, II, III, V, and VI of Plaintiff's Complaint* [Doc. No. 2] is **GRANTED**, and Count I (retaliatory discharge), Count II (defamation), Count III (intentional infliction of emotional distress), and Count V (prima facie tort) are **DISMISSED WITHOUT PREJUDICE**, while Count VI (punitive damages) is **DISMISSED WITH PREJUDICE**;

(2) Plaintiff's *Motion to Amend Complaint* [Doc. No. 9] is **DENIED IN PART** with regard to her claims for retaliatory discharge, defamation, intentional infliction of emotional distress, and prima facie tort, as the Court has determined that amendment of those claims would be futile.

(3) Plaintiff's *Motion to Amend Complaint* [Doc. No. 9] is **GRANTED IN PART** with regard to her remaining cause of action, breach of contract, and if she so chooses Plaintiff may file and amended complaint as to that cause of action no later than September 7, 2005.

**All Citations**

Not Reported in Fed. Supp., 2005 WL 8163599

---

### Footnotes

1   This cause of action is also known as wrongful discharge or retaliatory discharge.

2   Defendants also argue that Sullivan may not plead prima facie tort as an alternative cause of action when the remainder of her Complaint alleges that Defendants actions were unlawful. However, Defendants cite no New Mexico authority for this undeveloped argument, and accordingly the Court will not address it here.

---

                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-165

Appellate Case: 24-2179    Document: 25    Date Filed: 04/23/2025    Page: 233

West v. Scott Laboratories, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 2632210
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Stephen Michael WEST, Plaintiff,

v.

SCOTT LABORATORIES, INC., Defendant.

Case No. 22-cv-07649-CRB
|
Signed March 24, 2023

**Attorneys and Law Firms**

Stephen Michael West, for Plaintiff.

Sarah Jabin, San Jose, CA, Ronald A. Peters, Littler
Mendelson, P.C., San Jose, CA, for Defendant.


### ORDER GRANTING MOTION TO DISMISS

CHARLES R. BREYER, United States District Judge

*1   In this case, pro se Plaintiff Stephen West
("West") alleges that his former employer, Defendant Scott
Laboratories, Inc. ("Scott Labs"), violated the Americans
with Disabilities Act of 1990 ("ADA") and the ADA
Amendments Act of 2008 ("ADAAA") by discriminating and
retaliating against him based on a perceived disability. Compl.
(dkt. 1). Scott Labs moves to dismiss West's complaint for
failure to state a claim under Rule 12(b)(6) of the Federal
Rules of Civil Procedure. Mot. (dkt. 11). West opposes and
requests leave to amend. Opp'n (dkt. 12). Scott Labs replies.
Reply (dkt. 13). The Court finds this matter suitable for
resolution without oral argument pursuant to Civil Local Rule
7-1(b), and GRANTS Scott Labs' motion to dismiss with
prejudice.


## I. BACKGROUND

### A. Plaintiff's Allegations
West worked for Scott Labs as a Senior Service Technician,
providing field service technical assistance since September
2018. Compl. ¶ 35; West's Affidavit in Support of Complaint
("Affidavit") (dkt. 1-1) ¶ 10. On July 12, 2021, Tyler Smith
("Smith"), Scott Labs' Parts and Service Manager, emailed
West to ask him to enroll in Scott Labs' COVID-19 testing

program. Affidavit ¶ 11; Affidavit Ex. A-1. West told Smith
that he was not interested. Id.

On September 7, 2021, Smith informed West that West
needed to comply with Scott Labs' policy, which required
every employee who interacts with customers face-to-face to
complete at-home COVID-19 tests. Id. ¶ 12; id. Ex. A-2. West
replied to Smith the following day, requesting information
about, among other matters, the safety and ingredients of the
COVID-19 tests. Id. ¶ 13; id. Ex. A-3.

On September 9 or 10, 2021, Max Levine ("Levine"), COO of
Scott Labs, called West and "offered an ultimatum": West was
to comply with the COVID-19 testing policy or be terminated.
Id. ¶ 14. Levine called West again on September 13, 2021 to
ask West to consent to testing. Id. ¶ 15. Because West "had
not received the necessary safety information" that he had
previously requested from Smith, he did not consent. Id.

On September 14, 2021, Levine, Smith, and Evelyn Padilla
("Padilla"), a Scott Labs employee, called West to terminate
his employment for not submitting to Scott Labs' COVID-19
testing policy. Id. ¶ 16. Later that day, Padilla emailed West
a letter reiterating the explanation for West's termination,
and stating that West's employment with Scott Labs was
terminated, effective immediately. Id. Ex. A-4.

West subsequently filed a complaint with the U.S. Equal
Employment Opportunity Commission ("EEOC"). Id. ¶ 17.
On September 19, 2022, West received a Notice of Right to
Sue from EEOC, which stated that he could bring suit under
the ADA within ninety (90) days of receipt of the notice. Id.
¶ 18; id. Ex. A-6.


### B. Procedural History
West timely filed suit against Scott Labs on December 5,
2022. Compl. at 1. He summarizes his discrimination and
retaliation claims under the ADA and ADAAA as follows:

> Defendant discriminated and retaliated
> against plaintiff based upon disability.
> When   the   plaintiff   objected,
> the   defendant   sought   to   impose
> non-job-related   medical   treatments
> and   accommodations   without
> first   conducting   an   individualized

ADD-166

West v. Scott Laboratories, Inc., Not Reported in Fed. Supp. (2023)

assessment to determine if he was a direct threat.

**\*2** Id. ¶ 9. West further states that he is proceeding "under both the 'regarded as' and the 'record of' prongs of the ADA" because Scott Labs' COVID-19 testing policy regarded him as having a disability. [1] Id. ¶¶ 52–53. He alleges that Scott Labs violated the ADA and ADAAA by imposing COVID-19 testing and terminating his employment. Id. ¶¶ 53, 56–57. Scott Labs now moves to dismiss the complaint, arguing that: (1) West fails to state a claim for disability discrimination under the ADA; and (2) West fails to state a claim for retaliation under the ADA. Mot. at 4–10. Scott Labs also requests judicial notice of EEOC policy regarding the ADA compliance of COVID-19 tests. [2] Request for Judicial Notice ("RJN 1") (dkt. 11-2). West opposes the motion to dismiss, and requests leave to amend. Opp'n at 13. Scott Labs replies and requests judicial notice of the Center for Disease Control's ("CDC") explanation on how to use COVID-19 tests at home. [3] Reply; Request for Judicial Notice ("RJN 2") (dkt.13-1).

After Scott Labs replied, West filed an amended complaint on March 2, 2023. Am. Compl. (dkt. 14). This filing was improper because it did not comply with Rule 15 of the Federal Rules of Civil Procedure. [4] Accordingly, the Court disregards West's amended complaint. [5]

## II. LEGAL STANDARD

**\*3** A complaint may be dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice" to survive a Rule 12(b)(6) motion. Id. (citing Twombly, 550 U.S. at 555). When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend "is not to be granted automatically." In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013). A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Finally, courts must construe pro se pleadings liberally and hold such pleadings to a less stringent standard than those drafted by attorneys. Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Hughes v. Rowe, 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of [a pro se litigant's complaint] 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers....' " (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). A court should dismiss a pro se complaint if "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).

## III. DISCUSSION
The Court discusses first (A) West's discrimination claim and then (B) his retaliation claim. As explained below, the Court dismisses both claims with prejudice.

ADD-167

West v. Scott Laboratories, Inc., Not Reported in Fed. Supp. (2023)

**A. Discrimination Claim**

West alleges first that Scott Labs unlawfully discriminated against him by implementing a COVID-19 policy that perceived him as having a disability. Compl. ¶ 53 ("regarded as having a disability by the 'Covid-19 Policy.' "). Scott Labs counters that COVID-19, a temporary illness, is not a disability under the ADA, and that, without a disability, West cannot state a discrimination claim under the ADA. Mot. at 4–8. In response, West reiterates that "defendant's 'Covid policy' regarded him as disabled and defendant made a record of this perceived disability," which is that West was "perpetually disabled by a deadly, contagious disease until and unless he was mitigated for this disability." Opp'n at 3–4.

To state a claim for disability discrimination under the ADA, a plaintiff must allege that: (1) they are disabled; (2) they are qualified for the job (i.e., able to perform the job's essential functions); and (3) they were subjected to an adverse employment action because of their disability. Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999). Regarding the first element of a discrimination claim, the ADA defines a "disability" as a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)–(C). Thus, to satisfy the "disabled" element of a disability discrimination claim, a plaintiff may allege that they are disabled, that they had a record of disability, or that their employer regarded them as disabled. See id.

*4 Here, West alleges that Scott Labs both regarded him as disabled and had a record of him as disabled. Compl. ¶¶ 53, 80, 116–18. Both prongs fail.

First, West's "regarded as" theory—that Scott Labs perceived him as "infected or may in the future become infected with a deadly, infectious disease"—does not satisfy the ADA. See Compl. ¶ 86. Under the statute, being regarded as disabled does not apply to impairments that are "transitory and minor," or impairments with an actual or expected duration of six or fewer months. 42 U.S.C. § 12102(3)(b). Federal courts have consistently held that COVID-19 is "transitory and minor" and therefore not a disability under the ADA. See, e.g., Linne v. Alameda Health Sys., No. 22-cv-375687, 2023 WL 375687, at *2 (N.D. Cal. Jan. 24, 2023) (holding that employees cannot bring claims for being regarded as having an impairment because of workplace COVID-19 policies); Johnson v. Mount Sinai Hosp. Group, No. 22-cv-2936, 2023 WL 2163774, at *6 (E.D. N.Y. Feb. 22, 2023) (holding that COVID-19 is "transitory and minor" and thus does not fall under the ADA); Lundstrom v. Contra Costa Health Servs., No. 22-cv-06227, 2022 WL 17330842, at *5 (N.D. Cal. Nov. 29, 2022) (holding that "federal courts generally agree that a COVID-19 infection is not a disability" (collecting cases)); Sambrano v. United Airlines, Inc., No. 21-11159, 2022 WL 486610, at *29 n.51 (5th Cir. Feb. 17, 2022) (dissent noting that a COVID-19 infection "is far from meeting the ADA's 'demanding' definition of disability" (case citation)). Because COVID-19 is generally "transitory" and not a disability under the ADA, being perceived as having COVID-19 is not a disability under the ADA. [6] See 42 U.S.C. § 12102(3)(b).

Second, West's "record of" theory also fails to satisfy the ADA. To state a claim for disability discrimination based on a record of a disability, a plaintiff must plausibly allege that they have "a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." 29 C.F.R. § 1630.2(k)(2). Here, West alleges that Scott Labs "made a record of impairment by imposing its policy," and that it misclassified West as having or being "vulnerable" to contracting COVID-19. Compl. ¶¶ 115, 117. But a record that an employee has a condition that is not a disability does not satisfy the ADA requirements for disability discrimination. See 29 C.F.R. § 1630.2(k)(2). There simply is nothing to suggest that Scott Labs ever classified West as having an impairment that substantially limited one or more major life activities. See id.

*5 Because West does not have a disability under the ADA, he fails to satisfy the first element necessary for stating a viable discrimination claim, and thus his claim fails. See Nunes, 164 F.3d at 1246. The Court therefore need not address his other arguments on this claim. [7]

Because West does not allege that he has a disability protected by the ADA, he cannot state a discrimination claim. Accordingly, because "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," the Court GRANTS Scott Labs' motion to dismiss West's disability discrimination claim with prejudice. See Akhtar, 698 F.3d at 1212.

ADD-168

**B. Retaliation Claim**

West alleges next that Scott Labs retaliated against him "by imposing punitive measures and adverse employment actions," including terminating his employment. Compl. ¶¶ 144, 153. Scott Labs argues that West "did not engage in protected activity," and, alternatively, there was no "causal link between his protected activity and his termination." Mot. at 10. In response, West reiterates that he "was within a protected class and engaged in protected activity" because he invoked his rights under the ADA, and that the COVID-19 policy "was the direct and proximate cause of [Scott Labs'] decision to terminate" his employment. Opp'n at 12.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the ADA, an employee must show that (1) they engaged in a protected activity, (2) they suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. Pardi v. Kaiser Permanente Hosp., Inc., 389 F.3d 840, 849 (9th Cir. 2004).

Here, West's claim fails because he has not demonstrated that there was a causal link between his alleged protected activity and an adverse employment action. [8] West states that Scott Labs took two adverse actions: (1) implementing a COVID-19 testing policy and (2) terminating his employment. Compl. ¶¶ 145, 149.

**\*6** First, as West and Scott Labs both observe in their pleadings, Scott Labs enacted its COVID-19 testing policy before West opposed the testing requirement. Affidavit ¶¶ 11–13; Mot. at 2–3. Scott Labs did not enact this policy in response to West's objection. Moreover, West does not allege that Scott Labs enacted the policy because of him. See generally Compl. Thus, it is unreasonable to infer that there was a connection between West's criticism of Scott Labs' policy and the implementation of the policy. See O'Hailpin v. Hawaiian Airlines, Inc., 583 F. Supp. 3d 1294, 1311 (D. Haw.

2022) ("Plaintiffs are unlikely to establish a prima facie case of retaliation ... because the adverse employment actions ... appear to be unconnected to their [accommodation] requests. Indeed, the vaccine policy was established, as well as the consequences for failing to comply[,] ... before Plaintiffs submitted their [accommodation] requests.").

Second, West was not terminated for objecting to Scott Labs' COVID-19 policy. Rather, he was terminated for refusing to comply with it. Affidavit Ex. A-4 ("[Y]our refusal to submit to COVID-19 testing poses a direct threat to your fellow employees and to the Company's customers with whom you come into contact. Accordingly, your employment with Scott Laboratories is hereby terminated, effective immediately."). Thus, it is also unreasonable to infer that there was a causal connection between West's criticism of Scott Labs' policy and his termination. See Together Emps., 573 F. Supp. 3d at 444–45 (finding that plaintiffs likely could not show a causal connection between protected activity and an adverse employment action where defendant asserted that "plaintiffs [were] subject to unpaid leave and potential termination not because they requested exemption, but because they were not approved and remain[ed] noncompliant with the Vaccination Policy").

Because West cannot plausibly allege that Scott Labs' policy or his termination were retaliatory under the ADA, "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." See Akhtar, 698 F.3d at 1212. Accordingly, the Court GRANTS Scott Labs' motion to dismiss West's retaliation claim with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Scott Labs' motion to dismiss. The Court denies West leave to amend because amendment would be futile. See Leadsinger, 512 F.3d at 532.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2632210

---

## Footnotes

1    West does not appear to assert a failure-to-accommodate claim. If he did, such claim would fail. As explained in Section III.A, West does not have a disability under the ADA. Accordingly, Scott Labs is not required to make reasonable accommodations for West pursuant to the ADA. 🚩 42 U.S.C. § 12112(b)(5)(A); see, e.g., Allen v. Pac. Bell, 348 F.3d 1113, 1114 (9th Cir. 2003) ("to establish a prima facie case under the [ADA] ... [employee] must first demonstrate that: (1) he is disabled within the meaning of the ADA....").

2    The Court GRANTS Scott Labs' RJN 1. The contents of the policy are not "subject to reasonable dispute because [they] ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Courts "may take judicial notice of undisputed matters of public record," and EEOC policy is instructive in the instant action. See 🚩 Harris v. County of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012).

3    The Court DENIES Scott Labs' RJN 2. While the CDC's explanation is not "subject to reasonable dispute," it is not instructive here. See Fed. R. Evid. 201(b)(2). Scott Labs requests judicial notice of this explanation to demonstrate that COVID-19 tests are "non-invasive." Reply at 4. However, the Court need not reach that question because EEOC policy establishes that Scott Labs' testing policy fully complied with the ADA. See RJN 1 Ex. A.

4    Relevant here, FRCP 15(a)(1) allows a party to amend its pleading within 21 days of serving the original complaint or 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1). West satisfied neither provision in filing his amended complaint. First, because Scott Labs was served on January 17, 2023, West filed his amended complaint forty-four (44) days after service, and thus the filing was not proper pursuant to FRCP 15(a)(1)(A). See Summons Returned Executed (dkt. 10); Am. Compl. Second, because West was served with Scott Labs' Rule 12(b) motion on February 7, 2023, West filed his amended complaint twenty-three (23) days after service, and thus the filing was not proper pursuant to FRCP 15(a)(1)(B). See Proof of Service (dkt. 11-5); Am. Compl. Moreover, because the Court did not grant leave and there is no indication that Scott Labs consented to the filing, the amended complaint is not proper pursuant to FRCP 15(a)(2).

5    Although a court may grant leave to amend even when a plaintiff does not request it, see 🚩 Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990), the Court declines to do so here because the amended complaint does not cure the deficiencies in the original complaint. Instead, West restates the exact same claims under the ADA that he made in his initial filing. See Am. Compl. ¶¶ 80–191. Therefore, based on the reasons presented below, the amended complaint would also be subject to dismissal with prejudice for failure to state a claim.

6    As West states, based on guidance by the Department of Health and Human Services and Department of Justice, the court in Matias v. Terrapin House, Inc. held that certain forms of COVID-19 "may be considered a disability under the ADA." 🚩 No. 21-cv-02288, 2021 WL 4206759, at *4 (E.D. Pa. Sept. 16, 2021); Opp'n at 2. Here, West does not allege, and there is nothing in the complaint to suggest, that Scott Labs perceived him as having such a form of COVID-19. Thus, the Court finds that his claimed disability is a transitory form of COVID-19 that is not a disability under the ADA.

7    West's additional arguments likely lack merit. West argues that Scott Labs determined that he was a "direct threat" without conducting an "individualized assessment" as required by the ADA. Opp'n at 6; see 🚩 29 C.F.R. § 1630.2(r). However Scott Labs' determination likely satisfies the ADA. See Affidavit Ex. A-4;

    Together Emps. v. Mass Gen. Brigham, Inc., 573 F. Supp. 3d 412, 433 (D. Mass. 2021) (holding that it was reasonable for defendant to determine that unvaccinated employees pose a direct threat to hospital patients). West's final arguments—that Scott Labs' COVID-19 testing policy was a non-job related medical inquiry prohibited by 29 C.F.R. § 1630.13(b), and that the policy violated medical privacy rights pursuant to 29 C.F.R. § 1630.14(c)—also fail because, according to EEOC policy, companies such as Scott Labs could test employees for COVID-19 without violating the ADA. Compl. ¶¶ 88, 98; RJN 1 Ex. A. At the outset of the COVID-19 pandemic, EEOC's policy was that "the ADA standard for conducting medical examinations was ... always met for employers to conduct worksite COVID-19 viral screening testing." RJN 1 Ex. A.

8    In addition, West likely fails to demonstrate that his opposition to Scott Labs' COVID-19 policy was protected activity, which is generally defined as an action that requests an ADA remedy or that challenges a violation of the ADA. 42 U.S.C. § 12203(a). West simply alleges that he asked questions about the at-home COVID-19 tests, such as their ingredients and where they were made. Compl. ¶ 41; Ex. A-3. He then refused to comply with Scott Labs' testing policy. Id. ¶¶ 45–46. Asking questions about and refusing to take an at-home COVID-19 test is not protected activity under the ADA. West did not plausibly allege that Scott Labs' policy violated the ADA, or that his unwillingness to abide by the policy was a request for an ADA remedy, as he was not disabled. See Lundstrom, 2022 WL 17330842, at *6 n.7. But see Speaks v. Health Sys. Mgmt., Inc., No. 22-cv-00077, 2022 WL 3448649, at *6 n.9 (W.D.N.C. Aug. 17, 2022) (construing pro se plaintiff's complaint liberally to allege protected ADA activity because they raised concerns about the defendant's COVID-19 policy).

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

  © 2025 Thomson Reuters. No claim to original U.S. Government Works.  

ADD-171

2023 WL 6172009
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

Stephen Michael WEST, Plaintiff-Appellant,

v.

SCOTT LABORATORIES, INC., Defendant-Appellee.

No. 23-15502

|

Submitted September 12, 2023 [*]

|

FILED September 22, 2023

Appeal from the United States District Court for the Northern District of California, Charles R. Breyer, District Judge, Presiding, D.C. No. 3:22-cv-07649-CRB

**Attorneys and Law Firms**

Stephen Michael West, Napa, CA, Pro Se.

Sarah Jabin, Ronald A. Peters Esquire, Littler Mendelson, PC, San Jose, CA, for Defendant-Appellee.

Before: CANBY, CALLAHAN, and OWENS, Circuit Judges.

MEMORANDUM [**]

**\*1** Stephen Michael West appeals pro se from the district court's judgment dismissing for failure to state a claim his employment action alleging discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA").

We have jurisdiction under 28 U.S.C. § 1291. We review de novo a dismissal under Federal Rule of Civil Procedure 12(b)(6). Curtis v. Irwin Indus., Inc., 913 F.3d 1146, 1151 (9th Cir. 2019). We affirm.

The district court properly dismissed West's action because West failed to allege facts sufficient to show that his employer regarded West as having an impairment within the meaning of the ADA, that his employer had a record of West's having had any such impairment, or that his employer retaliated against him because of protected activity. *See Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433-34 (9th Cir. 2018) (discussing elements of a disability discrimination claim under the ADA); *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004) (explaining that a plaintiff alleging retaliation under the ADA must show that there was a causal link between a protected activity and an adverse employment action); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (citation and internal quotation marks omitted)).

We reject as unsupported by the record West's contentions that the district court applied an improper heightened pleading standard to evaluate West's claims or was biased against him.

**AFFIRMED.**

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 6172009

---

**Footnotes**

[*]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    1

ADD-172

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

Counsel for Appellee hereby certifies that all required privacy redactions have been made, which complies with the requirements of Federal Rules of Appellate Procedure 25 (a)(5).

Counsel also certifies that the hard copies submitted to the Court are exact copies of the ECF filing of April 23, 2025.

Counsel further certifies that the ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program (Vipre software version 13.1.8510; Definitions version 110357 – 7.98758 [April 23, 2025, Vipre engine version 1.1.0.69), and according to the program, is free of viruses.

Dated: April 23, 2025                          Respectfully submitted,

                                          /s/ Ryan S. Carlson
                                          Ryan S. Carlson
                                          *Attorney for Appellee,*
                                          *Coherus Biosciences, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 23, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 23, 2025                                  Respectfully submitted,

  /s/ Ryan S. Carlson
Ryan S. Carlson
*Attorney for Appellee,*
*Coherus Biosciences, Inc.*